**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**AMERIWAY CORPORATION**                    **19 -cv-09407 (VSB)**

                              **Plaintiff,**

              **v.**

**MAY YAN CHEN,**

**ABILITY CUSTOMS, INC.**

                              **Defendants**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REARGUE THE
DECEMBER 27, 2022 DECISION & ORDER PURSUANT TO FRCP 60 OR IN THE
ALTERNATIVE TO ORDER A JOINT TRIAL PURSUANT TO FRCP 42**

Respectfully submitted,
Shayne Law Group

By: William Shayne, Esq.
    Richard E. Schrier, Esq.
Attorneys for the Defendants
64 Fulton Street
New York, New York 10038
212-566-4949

To:    Stratum Law LLC (via ECF)
       150 Monument Road Suite 207
       Bala Cynwyd, Pa. 19004
       215-621-8008
       Att: Xiyan Zhang, Esq.
            Pete Wolfgram, Esq.

# INDEX

Page

**PRELININAY STATEMENT AND UNDERLYING FACTS ------1**

**Point I: <u>EAGLE WAS THE IMPORTER OF RECORD OF ALL CONTAINERS THAT CHEN CLEARED THROUGH CUSTOMS AND THEREFORE IS THE PROPER PARTY TO ENFORCE CLAIMS WITH RESPECT TO CONTAINERS CLEARED BY CHEN PURSUANT TO THE POWER OF ATTORNEY</u>** ---------- 10

**POINT II: <u>CHEN HAD THE RIGHT TO LIEN THE CONTAINERS & CARGO PURSUANT TO THE TERMS AND CONDITIONS OF THE POWER OF ATTORNEY</u>** -----------------12

**POINT III: <u>EAGLE WAS UNDERCAPITALIZED, AND ZHANG AND JIA MADE MATERIAL MISREPRESENTATIONS AND FRAUDULENTLY INDUCED CHEN TO PERFORM SERVICES AND ADVANCE EXPENSES ON BEHALF OF EAGLE AND THEREFORE THE "CORPORATE VEIL" SHOULD BE "PIERCED" AND EAGLE'S OWNERS, ZHANG AND JIA SHOULD BE HELD PERSONALLY RESPONSIBLE</u>** --------------15

**POINT IV: <u>CHEN'S FAILURE TO OPPOSE THE MOTION TO DISMISS THE THIRD-PARTY COMPLAINT WAS NOT WILFULL AND REARGUEMENT SHOULD BE GRANTED PURSUANT TO FRCP RULE 60</u>** ---------------------------------------19

**POINT V. <u>EVEN IF THIS COURT IS NOT PERSUADED TO GRANT REARGUMENT, THE DISMISSSAL OF THE THIRD-PARTY COMPLAINT "WITHOUT OPPOSITION" WAS A DISMISSAL WITHOUT PREJUDICE, THEREFORE ORDERING A JOINT TRIAL WITH THE NEWLY FILED COMPLAINT PURSUANT TO FRCP RULE 42 IS APPROPRIATE</u>** --------------22

**<u>CONCLUSION</u>**……………………………………………**24**

# TABLE OF AUTHORITIES

**CASES CITED**

Page

Abu–Nassar v. Elders Futures, Inc., No. 88 Civ. 7906 (PKL),1991 WL 45062, at *10 (S.D.N.Y. March 28, 1991)  ----------------------------15, 17

Am. Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir.) ----------15,16

cert. denied, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988)

Atateks Foreign Trade, Ltd. v. Private Label Sourcing, LLC, 402 Fed. App'x 623, 625 (2d Cir. 2010)  ----------------------------------------------15

Brien v. Kullman Indus., 71 F.3d 1073, 1077 (2d Cir. 1995) ---------19, 20

Brunswick Corp. v. Waxman, 599 F.2d 34, 35 (2d Cir. 1979) ---------16

Camilli v. Grimes, 436 F.3d 120, 123 (2d Cir. 2006) --------------------22

Cardell Fin. Corp., 2012 WL 12932049, at *22  ----------------------------17

CCBF Industria De Gusa S/A, et.al. v AMCI Holdings, Inc. et.al. (316 F. Supp3d 635, USDC SDNY, 2018) --------------------------------------------15

Cody v. Mello, 59 F.3d 13, 15 [2d Cir 1995]

Cohen v Schroeder, 248 F. Supp 3d 511, (S.D.N.Y., 2017) ----------------17

Colucci v. Beth Israel Med. Ctr., No. 12–cv-3694, at *2 (2d Cir. Aug. 27, 2013))  -----------------------------------------------------------------------19, 21

Cone v. W. Va. Pulp & Paper Co., 330 U.S. 212, 217, 67 S. Ct. 752, 91 L. Ed. 849 (1947)  -----------------------------------------------------------------23

Ctr. for Discovery, Inc. v. D.P., No. 16-CV-3936, 2018 U.S. Dist. LEXIS 55450, 2018 WL 1583971, at *5 (E.D.N.Y. Mar. 31, 2018)  ----23

Davis v. Musler, 713 F.2d 907, 915 (2d Cir. 1983) -------------------19, 20

Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 [2d Cir. 1993] ----------20

Eagle Transp. Ltd., Inc. v. O'Connor, 470 F.Supp. 731, 733 (S.D.N.Y. 1979) --------------------------------------------------------------------------17

Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 [2d Cir. 1993] -----------20

GFE Glob. Fin. & Eng'g Ltd. v. ECI Ltd. (USA), Inc., 291 F.R.D. 31, 36 (E.D.N.Y. 2013) -----------------------------------------------------------22

In re 310 Assocs., (346 F.3d at 35) -------------------------------------19, 21

Freeman v. Complex Computing Co., 119 F.3d 1044, 1052 (2d Cir. 1997) -----------------------------------------------------------------16

Kearins as successor in interest to Pinnacle v Panalpina (E.D.N.Y., 2013 WL 12357486) -----------------------------------------------------------------14

Kwan v. Schlein, 634 F.3d 224, 230 (2d Cir. 2011) ----------------------23

May Yan Chen d/b/a Ability Customs Brokers  v Eagle Trading USA, LLC, Xiyan Zhang and Shiping Jia [S.D.N.Y., 22-cv-658]) ------9, 14, 24

Mendez v. Republic Bank, (No. 12-cv–2585, WL 3821532, at *4 (7th Cir. July 25, 2013)) -----------------------------------------------------------------20

Network Enter., Inc. v. APBA Offshore Prods., Inc., No. 01 Civ. 11765 (CSH), 2002 WL 31050846, at *4 (S.D.N.Y. Sept. 12, 2002) ------------16

Oriental Commercial & Shipping Co., Ltd. v. Rosseel, N.V., 702 F.Supp. 1005, 1018 (S.D.N.Y. 1988) --------------------------------------------------16

Republic Bank (WL 3821532, at *4) --------------------------------------21

Rhoden v. Mittal, No. 18-CV-6613-LDH-SJB, 2020 U.S. Dist. LEXIS 250486, at *5-6 (E.D.N.Y. Oct. 26, 2020) ---------------------------------23

S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998) --------------------19

Shantou Real Lingerie Manufacturing Co, Ltd v Native Group International, Ltd. [401 F. Supp 3d 433, S.D.N.Y., 2018] ---------------17

Thomson–CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 777 (2d Cir. 1995) -----------------------------------------------------------------16

Wagstaff-El v. Carlton Press Company, 913 F.2d 56, 57 [2d Cir. 1990], [*5] cert. denied, 499 U.S. 929, 111 S. Ct. 1332, 113 L. Ed. 2d 263 [1991]) ----------------------------------------------------------19

Well Luck v F.C. Gerlach, 421 F.Supp2d 533 (E.D.N.Y., 2005) -------14

William Wrigley, Jr. Co. v. Waters,
890 F.2d 594, 600–01 (2d Cir. 1989) - ---------------------------------16

Zagano v. Fordham Univ., 900 F.2d 12 (2d Cir. 1990) ------------------23

## STATUTES AND REGULATIONS CITED

Page

18 USC 1962(C) --------------------------------------------------6

18 U.S.C. 1962(c) (RICO) ------------------------------------6

19 USC 1448(a)(2)(B) ----------------------------------------- 10

19 USC 1448 ------------------------------------------------ 11

FRCP RULE 1 --------------------------------------------21

FRCP Rule 6(c)(1) --------------------------------------------8

Fed. R. Civ. P. 8(a) -----------------------------------------16

FRCP 9(b) --------------------------------------------------8

FRCP 12(b)(6) --------------------------------------------7, 8

FRCP RULE 42 --------------------------------------------22

FRCP RULE 42(a) ---------------------------------------------22

FRCP RULE 60 -----------------------------------------------19, 24

FRCP 60(b)(1) --------------------------------------------19, 21

 **OTHER AUTHORITIES**

Customs Directive CSMS # 12-000482 --------------------4, 5

Customs Directive #3530-002A ------------------------------11

19 CFR 111.29 ----------------------------------------------4

19 CFR 141.1(b)(1) -----------------------------------------4

19 CFR 141.1(b)(3) -----------------------------------------4

19 CFR 143.44 ----------------------------------------------4

## PRELIMINARY STATEMENT AND FACTS

Defendant, May Yan Chen (hereinafter "Chen") is a licensed customs broker with offices in San Leandro, California and operates under the trade name Ability Customs Brokers. Eagle Trading USA LLC (hereinafter "Eagle") by its COO and managing member, Xiyan Zhang (hereinafter "Zhang") represented to Chen that Eagle was an importer of an array of products from China. On or about April 11, 2017 Zhang, in his capacity as the COO of Eagle, executed a power of attorney appointing "May Y Chen d/b/a Ability Customs Brokers'" as Eagle's representative to import products into United States (see Exhibit "G").

Zhang is also an attorney admitted in New York and is an attorney with a law firm of Stratum (with offices in Philadelphia, Pennsylvania), the Plaintiff's attorney in this action. Zhang has also identified himself as the CEO of Plaintiff, Ameriway, a shareholder and director of Ameriway, the COO of Eagle and a managing member of Eagle. Jia held himself out as a managing member of Eagle.

From the date of the issuance of the Power of Attorney on April 11, 2017 until August, 2019 Chen cleared over 450 containers of cargo in which Eagle was identified as the Importer of Record ("IOR") of the containers that originated in China and arrived in various ports including also the Port of New York. With respect to all containers cleared through customs by Chen, Zhang and Jia, on behalf of Eagle, represented to Chen that Eagle was the IOR for each container. However, with respect to those invoices that were paid to Chen, Ameriway was the payee in all cases. Zhang and Jia represented to Chen that Ameriway was a logistics company that was arranging the "complete" supply chain of the cargo from the China factory to the final delivery of the cargo to its U.S. purchaser and Chen's role was to clear the Cargo through Customs and when asked, arrange for trucking from the U.S port to a warehouse. Zhang advised

Chen that although Eagle, as the IOR, was the "responsible party" pursuant to the power of attorney, payment for Eagle's bills would be coming from Ameriway.

Soon after the issuance of the Power of Attorney on April 11, 2017 Chen began clearing containers on behalf of Eagle. Chen invoiced Eagle **and** Zhang for the customs broker services rendered, disbursements related to supply chain services and the advance payment of taxes in the form of customs duties. As represented, Ameriway paid all of the invoices sent to Eagle and Zhang until Ameriway stopped making any payments for containers that had cleared customs in March 2019 and thereafter. (In other words, payments continued through June 2019 for containers that had cleared customs through the beginning of March 2019, however no payments were made for any containers that cleared customs from early March 2019 until Chen ceased performing services or advancing expenses and customs duties in August 2019).

By August 2019 there were 131 unpaid invoices, each for a separate container in which Eagle was the IOR and the outstanding balance owed to Chen was well over $300,000. In August 2019, Chen advised Zhang that she was going to cease clearing Eagle's containers through customs unless a substantial payment was made, which did not occur.

At that time there were also five (5) containers of goods in which Eagle was the IOR that had cleared customs, but had not yet been delivered and were still under Chen's "control". Chen exercised her lien rights pursuant to the power of attorney Eagle signed with Chen on April 11, 2017 on the following containers of cargo (see containers that are part of Exhibit "B" in support of this motion):

| Container # | Customs Entry # | |
|---|---|---|
| BMOU4739454 | 9NK-0010492-5 | |

| | | |
|---|---|---|
| | Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |
| APHU7253481 | 9NK-0010528-6<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |
| BMOU5390536 | 9NK-0010461-0<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |
| HLXU8057236 | 9NK-0010498-2<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |
| OOLU9537235 | 9NK-0010554-2<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |
| OOCU6964350 | 9NK-0010377-8<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |

When payment was still not forthcoming, including and especially for the

payment of customs duties, Chen had the obligation and did put Customs on notice that she had not received payment from her customer for customs duties.

For perspective, IORs are responsible for the payment of Customs duties. 19 CFR 141.1(b)(1). The IOR has the option of making payment directly to Customs. 19 CFR 141.1(b)(3), however a Customs broker is often utilized as a conduit for payment of duties, in which event the imported cargo is designated as a "Remote Location Filing" or RLF. (See: 19 CFR 111.29). However, when an IOR refuses to pay the Customs duties, the Customs broker is obligated to notify Customs to remove the RLF designation from the import documentation pursuant to Customs regulation CSMS # 12-000482 which provides as follows:



## CSMS# 12-000482 - Guidance Regarding Removal of Remote Location Filing (RLF) Entry from an ABI statement

*U.S. Customs and Border Protection sent this bulletin at 11/01/2012 04:23 PM EDT*

You are subscribed to ACE Portal Accounts for U.S. Customs and Border Protection. This information has recently been updated, and is now available.

### CSMS# 12-000482 - Guidance Regarding Removal of Remote Location Filing (RLF) Entry from an ABI statement

*11/01/2012 05:06 PM EDT*

**ACE Portal Accounts**

The purpose of this message is to provide guidance on removing an RLF entry from an ABI statement. **RLF regulations require that the broker or importer direct the payment of RLF transactions using the Automated Clearinghouse (ACH) or other electronic payment authorized by CBP [see 19 CFR 143.44(b)].** ***However, there are circumstances under which the RLF entry must be removed from the ABI statement,*** including cases of a duplicate entry or ***when***

*__the importer refuses to pay the broker for the duties, taxes, and fees. In these cases, the following steps will be used:__*

• Please note: ABI filers have the ability to remove an entry summary from an ACH statement until the entry summary is scheduled for payment on a preliminary statement.

• If the entry summary has already been scheduled on a preliminary statement, the filer will advance the statement date to provide time for CBP to process the removal.

• The filer will submit the statement removal request in writing to the Entry Division. The request will include the entry number, statement number, and the reason for removal. It is critical that CBP process the request as soon as possible, to enable the importer or filer to make alternative payment arrangements.

• *__In cases where the entry was removed from statement because the importer is refusing to pay the broker:__*

o __CBP will remove the entry summary from the statement__

o The filer will submit the entry summary package to CBP with a cover letter citing Treasury Decision 89-49. If the filer is not permitted at the specific port of entry, or if the entry summary is for a Center of Excellence and Expertise participant, the filer will mail, fax, or email (as directed by the port or Center) the paper entry summary package to the port or Center.

o CBP will then accept the entry summary and notify the filer that the entry summary has been removed from the statement.

o CBP will initiate a "No Pay" liquidated damage case against the entry summary; however, if the importer pays CBP prior to the case initiation, CBP will issue a "Money Late File" liquidated damage case.

o If the importer subsequently chooses to pay the duties on this entry summary, the port may accept payment on the entry via single pay.


In the case of the Five (5) containers in which the duties had not been advanced by

Chen, and since Eagle never tendered the Customs duties to Chen, pursuant to CSMS# 12-

000482, Chen notified Customs of the non-receipt of the Customs duties so that Customs would remove the RLF designation and so that Customs would look to the IOR and not Chen for the duties.

In response, Zhang, as the attorney for Ameriway, instituted the instant lawsuit on behalf of Ameriway, not on behalf of Eagle, the IOR, claiming that (see ECF 16 and 21):

1st Cause: Chen had converted the above five (5) containers and the cargo and Ameriway (not Eagle) was damaged as a result;

2nd Cause: Chen had "tortiously interfered" with Ameriway's business relationships by reason of withholding delivery of the above five (5) containers;

3rd Cause: Chen had engaged in unfair business practices as to Ameriway;

4th Cause: Chen had defamed Ameriway (related to the notification to customs of Eagle's failure to pay the customs duties);

5th and 8th Cause: Chen had defrauded Ameriway;

6th Cause: Chen had breached the fiduciary duty Chen allegedly owed to Ameriway;

7th Cause: Chen had engaged in a scheme to defraud Ameriway and was responsible to Ameriway for treble damages under 18 USC 1962(c) (RICO);

It has been and still is Chen's position that Ameriway has no legal rights with regard to the five (5) containers it is holding pursuant to its exercise of its lien rights pursuant to the terms and conditions of the power of attorney that Chen signed with Eagle.

Further, it has been and still is Chen's position that all of the customs brokers services, advances paid by Chen for "supply chain services", and advances for customs' duties and taxes were incurred in connection with and furtherance of the authority given to Chen by Eagle where Eagle was the Importer of Record and that at no time was any action taken by Chen on behalf of Ameriway.

Therefore, it is Chen's position that Ameriway does not have standing to bring the pending lawsuit. As a result, Chen made a motion to dismiss the Amended Complaint pursuant to FRCP 12(b)(6) on December 31, 2019 based upon the lack of standing of Ameriway to bring the action asserted (ECF #19). Two (2) days later, on January 2, 2020, without having received any opposition whatsoever, this Court issued an order granting Plaintiff the right to file a Second Amended complaint (ECF #20).

On July 31, 2020 Chen timely filed a Third-Party Complaint against Eagle and its two (2) principal members, Xiyan Zhang (who is Eagle's COO, and is also Plaintiff's counsel and an officer, director and shareholder of Plaintiff, Ameriway) and Shiping Jia, Eagle's managing member (ECF 41). In the Third-Party Complaint, Chen alleged the following causes of action:

1st Cause: Implied guarantee of payment by Zhang and Jia on behalf of Eagle

2nd Cause: Guarantee of payment by Zhang and Jia on behalf of Eagle

3rd Cause: Misrepresentation by Zhang that he would pay or make arrangements for the payment of Chens invoices

4th Cause: Fraud in the Inducement

5th Cause: Declaratory Judgment that Eagle's "Corporate Veil" should be "pierced" and Zhang and Jia should be held liable for the unpaid invoices to Chen

6th Breach of Contract by Eagle

7th Unjust enrichment (Quantum Meruit) by Eagle

8th Account stated by Eagle

On October 20, 2020, the Third-Party Plaintiffs filed a motion to dismiss the Third-Party Complaint pursuant to FRCP 12(b)(6) and FRCP 9(b)  (ECF 59).  The motion was made via the filing of a memorandum of law and two (email exhibits) without a Notice of Motion identifying a return date for the motion or any affidavits setting forth evidence as to why the allegations in the Third-Party Complaint were defective.

FRCP Rule 6(c)(1) requires that "…a written motion and **notice of the hearing** (emphasis added) must be served at least 14 days before the time specified for the hearing…".  As set forth above, no notice of a hearing date was ever served, therefore without the Court setting a briefing schedule and a return date, there was no way to know what the return date of the motion to dismiss was.

For further perspective, at the time the motion to dismiss the Third-Party Complaint was filed on October 20, 2020 the parties were facing a Court ordered December 31, 2020 discovery deadline and between October 20, 2020 to December 30, 2020 when Chen's counsel requested that the Court address the discovery deadline and set a briefing schedule for the motion to dismiss the Third-Party Complaint (ECF # 60), both parties were actively compiling and exchanging literally tens of thousands of pages of demanded documents;

Although the Court addressed the discovery issues brought to this Court's attention at the time the request for a briefing schedule was made on December 30, 2020 (See ECF # 60, 61, 62, 63, 64, 65, 66, 67, and 68), the Court never addressed the request for a briefing schedule (ECF #60), nor indicated to the parties that the Court had set a return date for the motion to dismiss or that the Court had deemed the motion unopposed.  By reason of the discovery issues that were fundamental to the issues raised in the Third-Party Complaint, as described above, it was

believed that the Court was tabling the issue of dismissal of the Third-Party Complaint until those discovery issues had been resolved.

Without any further action by the Third-Party Defendant as to the motion to dismiss (including a request for an order dismissing the Third-Party Action by Default), this Court issued the order of October 6, 2021 (ECF# 68) referring the case to the Magistrate Judge to supervise the continuing discovery issues between the parties that, in part related to the issues raised in the Third-Party Complaint and the motion to dismiss, and then on the following day, October 7, 2021 (ECF #69) issued the order "deeming" the motion to dismiss "unopposed".

Thereafter, this Court issued the December 27, 2021 Decision & Order dismissing the Third-Party Complaint as "unopposed" (ECF 81)

As a matter of equity between the parties, instead of granting the motion to dismiss as "unopposed", it is respectfully submitted that Chen should have been given the opportunity to amend the Third-Party Complaint (as this Court ordered Plaintiff to do when Chen made a motion to dismiss the Amended Complaint (ECF 19 and 20)) or oppose the motion rather than dismissing the action against the Third-Party Defendants as "unopposed".

Since this Court issued its Opinion & Order on December 27, 2021 dismissing the Third-Party Complaint (ECF 81) Chen has instituted a new lawsuit against Eagle, Zhang and Jia (**May Yan Chen d/b/a Ability Customs Brokers –v- Eagle Trading USA, LLC, Xiyan Zhang and Shiping Jia** [22-cv-658]) (Exhibit "J" submitted herewith in support of this motion) in which the following causes of action are asserted:

1st Cause: Breach of Contract (against Eagle based upon the terms of the Power of Attorney for non-payment of invoices sent by Chen for services rendered and money advanced by Chen);

2nd Cause: Account Stated (against Eagle and Zhang based upon invoices sent to both parties for non-payment for services rendered and money advanced by Chen);

3rd Cause: Quantum Meruit (against Eagle for fair value of services rendered and money advanced by Chen on Eagle's behalf);

4th Cause: Pierce the corporate veil of Eagle (against Zhang and Jia based upon the undercapitalization of Eagle);

5th Cause: Pierce the corporate Veil (against Zhang based upon his course of conduct and representations made to promise to pay Chen for services rendered and money advanced by Chen);

6th Cause: Misrepresentation (against Zhang and Jia based upon their promises to pay Chen for services rendered and money advanced by Chen);

7th Cause: Fraud in the Inducement: (against Zhang and Jia based upon their promises to pay Chen for services rendered and money advanced by Chen to induce her to continue to clear containers on behalf of Eagle when both knew that Eagle did not have the resources to pay Chen.

**Point I: <u>EAGLE WAS THE IMPORTER OF RECORD OF ALL CONTAINERS THAT CHEN CLEARED THROUGH CUSTOMS AND THEREFORE IS THE PROPER PARTY TO ENFORCE CLAIMS WITH RESPECT TO CONTAINERS CLEARED BY CHEN PURSUANT TO THE POWER OF ATTORNEY</u>**

1.     19 USC 1448(a)(2)(B) defines an Importer of Record as follows:

"…(B) When an entry of merchandise is made under this section, the **required documentation or information shall be filed or electronically transmitted either by the owner or purchaser of the merchandise or, when appropriately designated by the owner, purchaser, or consignee of the merchandise, a person holding a valid license under section 1641 of this title.** When a consignee declares on entry that he is the owner or purchaser of merchandise the Customs Service may,

without liability, accept the declaration. **For the purposes of this chapter, the importer of record must be one of the parties who is eligible to file the documentation or information required by this section…"**

2.      Pursuant to Customs Directive #3530-002A, which was issued in furtherance of

19 USC 1484, only certain parties to a transaction may act as the Importer of Record

when making a declaration and entry of goods imported into the United States.

3.      Customs Directive 3530-002A provides in part that:

"…5.1.2   Section 1484 provides that only the "importer of record" has the right to make entry.  "Importer of Record" is defined as the owner or purchaser of the goods, or when designated by the owner, purchaser, or consignee, a licensed Customs broker…"

4.      Customs Directive 3530-002A further provides in part that:

"…5.3      **OWNER OR PURCHASER DEFINED**

**5.3.1   The terms "owner" and "purchaser" include any party with a financial interest in a transaction, including, but not limited to, the actual owner of the goods, the actual purchaser of the goods, a buying or selling agent, a person or firm who imports on consignment,** a person or firm who imports under loan or lease, a person or firm who imports for exhibition at a trade fair, a person or firm who imports goods for repair or alteration or further fabrication, etc.  Any such owner or purchaser may make entry on his own behalf or may designate a licensed Customs broker to make entry on his behalf and may be shown as the importer of record on the CF 7501.  **The terms "owner" or "purchaser" would not include a "nominal consignee" who effectively possesses no other right, title, or interest in the goods except as he possessed under a bill of lading, air waybill, or other shipping document…"** [Emphasis added.]

"…5.3.2 E x a m p l e s  of nominal consignees not authorized to file Customs entries are **express consignment operators (ECO), freight consolidators who handle consolidated shipments as described in 5.10 below, and Customs brokers** who are not permitted to transact business in Customs ports where a shipment is being entered…"

Despite Ameriway's claims that it owns the containers and the cargo to the contrary, the

paperwork is clear that for all the containers of cargo at issue in this case, Eagle was the sole

Party in Interest as the Importer of Record (see copies of all the unpaid invoices and customs

entry documents at Exhibit "D" submitted in support of this motion, all of which identify Eagle

as the Importer of Record). Moreover, since the motion to dismiss the Third-Party Complaint

was filed 15 months ago, despite numerous demands by Chen in the present case for proof of

ownership or possessory rights from Ameriway, Ameriway has failed/refused to produce the

demanded documentation, even to this day, which issue is presently being addressed by the

appointed Magistrate Judge.

By reason of the foregoing, the proper party to enforce any claims with regard to the

containers/cargo Chen cleared through customs pursuant to the Power of Attorney that gave

Chen the authority to do so would be Eagle and its principals, Xiyan Zhang and Shiping Jia.

## POINT II: CHEN HAD THE RIGHT TO LIEN THE CONTAINERS & CARGO PURSUANT TO THE TERMS AND CONDITIONS OF THE POWER OF ATTORNEY

Zhang, executed the Power of Attorney as COO on behalf of Eagle Trading USA, LLC

(see Exhibit "G" in support of this motion). The Power of Attorney Zhang signed with Chen

(Exhibit "G") provides as follows:

> "Grantor acknowledges receipt of May Y Chen DBA Ability Customs
> Brokers' Terms and Conditions of Service between the parties.  If the
> Grantor is a Limited Liability Company, the signatory certifies that
> he/she has full authority to execute this power on behalf of the Grantor."
> (See copy of Power of Attorney with Terms and Conditions at Exhibit "G" annexed hereto).

Paragraph 11 of the Terms and Conditions of the Power of Attorney entered

into by Defendant, Eagle with Plaintiff, Chen provide as follows:

> "…11. <u>Indemnification/Hold Harmless</u>.
> The Customer agrees to indemnify, defend, and hold the Company harmless from
> any claims and/or liability arising from the importation or exportation of
> Customer's merchandise and/or any conduct of the Customer, including but not
> limited to the inaccuracy of entry, export or security data supplied by Customer or
> its agent or representative which violates any Federal, State and/or other laws, and

further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which the Company may hereafter incur, suffer or be required to pay by reason of such claims; in the event that any claim, suit or proceeding is brought against the Company, it shall give notice in writing to the Customer by mail at its address on file with the Company…"

Paragraph 13 of the Terms and Conditions of the Power of Attorney entered into by Defendant, Eagle with Plaintiff, Chen provide as follows:

"…13. <u>Costs of Collection.</u>
In any dispute involving monies owed to Company, the Company shall be entitled to all costs of collection, including reasonable attorney's fees and interest at 15% per annum or the highest rate allowed by law, whichever is less, unless a lower amount is agreed to by Company…"

Paragraph 14 of the Terms and Conditions of the Power of Attorney entered into by Defendant, Eagle with Plaintiff, Chen provide as follows:

"…14. <u>General Lien and Right To Sell Customer's Property</u>.
(a) Company shall have a general and continuing lien on any and all property of Customer coming into Company's actual or constructive possession or control for monies owed to Company with regard to the shipment on which the lien is claimed, a prior shipment(s) and/or both;
(b) Company shall provide written notice to Customer of its intent to exercise such lien, the exact amount of monies due and owing, as well as any on-going storage or other charges; Customer shall notify all parties having an interest in its shipment(s) of Company's rights and/or the exercise of such lien.
(c) Unless, within thirty days of receiving notice of lien, Customer posts cash or letter of credit at sight, or, if the amount due is in dispute, an acceptable bond equal to 110% of the value of the total amount due, in favor of Company, guaranteeing payment of the monies owed, plus all storage charges accrued or to be accrued, Company shall have the right to sell such shipment(s) at public or private sale or auction and any net proceeds remaining thereafter shall be refunded to Customer…"

By reason of Eagle's failure to pay the foregoing invoices (Exhibits B, C and D), Chen exercised her general lien rights with respect to the five (5) Containers listed above both with respect to services and expenses associated with those 5 containers as well as with respect to the 126 containers, which Chen had already cleared through Customs and which Chen had

advanced expenses and Customs duties. The claims asserted by Chen against Eagle, Zhang and Jia with respect to the unpaid invoices for the 131 containers Chen cleared through Customs are the subject of the now dismissed Third-Party Complaint in this action and the complaint filed in the case of <u>May Yan Chen d/b/a Ability Customs Brokers -v- Eagle Trading USA, LLC, Xiyan Zhang and Shiping Jia</u> (the "22-cv- 658 case").

The courts have consistently enforced the terms and conditions of Customs Broker's powers of attorney as contractual provisions between the parties. (See: <u>Well Luck v F.C. Gerlach</u>, 421 F.Supp2d 533 (USDC EDNY, 2005); and <u>Kearins as successor in interest to Pinnacle v Panalpina</u> (USDC EDNY- 2013 WL 12357486);

Of note is the fact that Ameriway does not appear as the owner or purchaser of the goods nor as the shipper or consignee on the bills of lading with respect to any of the entries identified by Ameriway in its Second Amended Complaint, (ECF #21).

By reason of the foregoing, Chen has set forth a good and meritorious action against Eagle in contract (the sixth cause of action in the Third-Party Complaint and the first cause of action in the "22-cv-658" complaint). By reason of the foregoing, Chen has set forth a good and meritorious action against Eagle for Unjust Enrichment/Quantum Meruit (the seventh cause of action in the Third-Party Complaint and the third cause of action in the "22-cv-658" complaint). By reason of the foregoing, Chen has set forth a good and meritorious "Account Stated action against Eagle (the eighth cause of action in the Third-Party Complaint and the Second cause of action in the "22-cv-658" case) based upon the submission of the invoices to Eagle and Zhang, which invoices were not objected to when invoiced or any reasonable time thereafter [see Exhibit B, C, D and E submitted in support of this motion].

**POINT III:** <u>EAGLE WAS UNDERCAPITALIZED, AND ZHANG AND JIA MADE MATERIAL MISREPRESENTATIONS AND FRAUDULENTLY INDUCED CHEN TO PERFORM SERVICES AND ADVANCE EXPENSES ON BEHALF OF EAGLE AND THEREFORE THE "CORPORATE VEIL" SHOULD BE "PIERCED" AND EAGLE'S OWNERS, ZHANG AND JIA SHOULD BE HELD PERSONALLY RESPONSIBLE</u>

The Fifth cause of action in the Third-Party Complaint seeks a declaratory judgment that Eagle's "corporate veil" should be pierced. In the newly filed complaint (Chen –v- Eagle, et. al. 22-cv-658) (Exhibit "J" in support of this motion) the Fourth cause of action specifically alleges that Eagle was undercapitalized, the Fifth Cause of actions alleges that Zhang and Jia made material misrepresentations to Chen concerning the viability of Eagle and its ability to pay its debts and the Sixth cause of action alleges that Zhang and Jia fraudulently induced Chen to perform services and advance expenses and customs duties based upon the aforementioned representations and therefore the "corporate veil" should be pierced.

Judge Sweet of this Court in the recent case of <u>CBF Industria De Gusa S/A, et.al. –v- AMCI Holdings, Inc. et.al.</u> (316 F. Supp3d 635, USDC SDNY, 2018) rendered a very comprehensive decision with regard to the standards regarding pleading and proving circumstances where a plaintiff may "pierce the corporate veil" to hold individual owners of a business entity personally liable for the debts of the business.

"…1. <u>Plaintiffs May Pierce the Corporate Veil to Hold Defendants Liable as Alter Egos of SBT</u>

[4] [5]As a general rule, "courts are reluctant to disregard the corporate entity in large part because there is a presumption of separateness between a corporation and its owners, which is entitled to substantial weight." *Abu–Nassar v. Elders Futures, Inc.*, No. 88 Civ. 7906 (PKL), 1991 WL 45062, at *10 (S.D.N.Y. March 28, 1991) (citing *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988) ) (internal quotation marks and citations omitted). Nevertheless, the corporate form may be pierced where "(1) the owner has exercised such control that the corporation has become a mere instrumentality of the owner, which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." *Atateks Foreign Trade, Ltd. v. Private Label Sourcing,*

*LLC*, 402 Fed. App'x 623, 625 (2d Cir. 2010) (citing *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1052 (2d Cir. 1997) ("While complete domination of the corporation is the key to piercing the corporate veil, ... such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required."); *see also Oriental Commercial & Shipping Co., Ltd. v. Rosseel, N.V.*, 702 F.Supp. 1005, 1018 (S.D.N.Y. 1988) (citing *Am. Protein Corp.*, 844 F.2d at 60) (internal quotation and citation omitted) ("The parent ... exercise[d] complete domination in respect to the transaction attacked so that the subsidiary had at the time no separate will of its own, and such domination [was] ... used to commit fraud or wrong against plaintiff, which proximately caused plaintiff's injury.") *Oriental Commercial & Shipping Co., Ltd.*, 702 F.Supp. at 1018 (citing *Am. Protein Corp.*, 844 F.2d at 60) (internal quotation and citation omitted) ).

[6]Courts consider a variety of factors in assessing the control element, including "(1) intermingling of personal and corporate funds and siphoning of corporate funds by a principal; (2) failure to observe corporate formalities and keep proper books and records; (3) failure to pay dividends; (4) inadequate capitalization; (5) insolvency; and (6) perpetuation of fraud by shareholders in maintaining the corporate form." *Abu–Nassar*, 1991 WL 45062, at *11 (citations omitted). Other factors considered include (7) "overlap in ownership, officers, directors, and personnel," (8) "common office space, address, and telephone numbers of corporate entities," (9) "the degree of discretion shown by the allegedly dominated corporation," (10) "whether the dealings between the entities are at arms length," (11) "whether the corporations are treated as independent profit centers," and (12) "payment or guarantee of the corporation's debts by the dominating entity." *Freeman*, 119 F.3d at 1053.

[7]There is no set rule regarding how many factors must weigh in favor of piercing the corporate veil for control to be found. **\*647** *William Wrigley, Jr. Co. v. Waters*, 890 F.2d 594, 600–01 (2d Cir. 1989) (citing *Brunswick Corp. v. Waxman*, 599 F.2d 34, 35 (2d Cir. 1979) ); *see Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995) ("Veil piercing determinations are fact specific and differ with the circumstances of each case.") (internal quotation and alteration omitted). Instead, "the general principle followed by the courts has been that liability is imposed when doing so would achieve an equitable result." *Id.* at 601 (noting that when fraud sufficient to pierce the corporate veil has been found in this Circuit, "the evidence demonstrated an abuse of that form either through on-going fraudulent activities of a principal, or a pronounced and intimate commingling of identities of the corporation and its principal or principals, which prompted the reviewing courts, driven by equity, to disregard the corporate form.").

[8]Further, at this stage of the proceedings, Plaintiffs need only detail the factual allegations to the degree required by Federal Rule of Civil Procedure 8(a)'s liberal pleading standard to show the domination or control necessary to pierce the corporate veil. *See Network Enter., Inc. v. APBA Offshore Prods., Inc.*, No. 01 Civ. 11765 (CSH), 2002 WL 31050846, at *4 (S.D.N.Y. Sept. 12, 2002); Fed. R. Civ. P. 8(a) (a claim for relief "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief.")…"

"…Plaintiffs have pleaded facts supporting the reasonable inference that SBT was

inadequately capitalized at the time of the transaction. "Evidence of substantial undercapitalization ... is significant because it can be evidence of a company's lack of independent substance." *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, No. 09 Civ. 6148 (VM) (MHD), 2012 WL 12932049, at *22 (S.D.N.Y. July 17, 2012). While undercapitalization is just "an additional factor to be weighed in the balance," *see Abu–Nassar*, 1991 WL 45062, at *13, "it weighs heavily in favor of a finding that the corporate form of an entity should be disregarded." *Eagle Transp. Ltd., Inc. v. O'Connor*, 470 F.Supp. 731, 733 (S.D.N.Y. 1979). A corporation will be found undercapitalized "when its liabilities exceed its assets." *Cardell Fin. Corp.*, 2012 WL 12932049, at *22; *see also Abu–Nassar*, 1991 WL 45062, at *13 (finding corporation "currently undercapitalized and essentially insolvent, in that its liabilities exceed its assets, it is no longer in business and it can no longer meet its obligations without financial assistance from [the shareholders-principals]"). As to the timing of insolvency, the relevant inquiry for liability purposes is that of the transaction at issue. *Cardell Fin. Corp.*, 2012 WL 12932049, at *22…" (see also Shantou Real Lingerie Manufacturing Co, Ltd –v- Native Group International, Ltd. [401 F. Supp 3d 433, USDC, SDNY, 2018]; Cohen v Schroeder [248 F. Supp 3d 511, USDC, SDNY, 2017])

Chen, in her affidavit, detailed the fact that despite the fact that all invoices for services rendered were sent to Zhang, individually and to Eagle, no payment was ever received from Eagle. Rather, all invoices sent by Chen that were paid, were paid by Ameriway, the other company Zhang clearly controlled on the premise that Ameriway was the "logistics" company retained by Eagle to assist in the transportation of the cargo.

Initially, Chen had no reason to believe that Eagle was a "shell company" since, as the IOR, presumably it owned the literally millions of dollars of cargo that was being cleared through Customs. However, once Ameriway ceased making any payments and Chen exercised the lien against the five (5) containers, it became clear that Eagle was/is a "shell company" and apparently, Ameriway, who apparently did have assets ran into serious financial problems.

Ameriway claims that the value of the cargo in the five (5) containers far exceeded the amount owed to Chen, however no effort was made by Eagle nor Ameriway, on Eagle's behalf to work out a payment arrangement with Chen or to otherwise mitigate the damages they claimed were incurred.

Through independent investigation, we have learned that Ameriway was dissolved on March 1, 2020, which would lead to the "strong probability" that it was having serious financial problems in August 2019 (The Certificate of Dissolution of Ameriway is attached as Exhibit "I"). More importantly Eagle was dissolved on June 1, 2019 while Chen was still clearing containers on behalf of Eagle, as the IOR at the request and behest of Zhang. In fact, 71 of the 131 containers that Chen cleared Customs and which Chen advanced out-of-pocket expenses and Customs duties on Eagle's behalf, were cleared after June 1, 2019 (See Exhibits "C" [list of invoices and dates], "D" [copies of all the invoices], and "K" [Certification of Dissolution of Eagle] submitted in support of this motion).

Why hasn't Ameriway provided any documentation showing the identity of the owner of the cargo in any of the containers in which invoices are outstanding (Exhibits "B, C, D, and E")?

Why is Ameriway the Plaintiff in this action and not Eagle, the clearly identified Importer of Record on all cargo/containers subject to this lawsuit (See Exhibit "D")?

Why is Ameriway now a defunct corporation (See Exhibit "I")?

Why was Chen not notified that Eagle was dissolved on June 1, 2019 while she was still performing customs brokers services and advancing out of pocket expenses and Customs duties?

Why has Ameriway refused to provide any proof to Chen that Eagle even had a bank account?

It is respectfully submitted that now, knowing the foregoing information, Zhang and Jia's promises to Chen in 2017 and 2018 and especially in 2019 that Chen's invoices would be paid if she continued to provide Customs brokers services, and advance expenses on Eagle's behalf gives rise to the allegations set forth in the Third-Party Complaint and, in much greater detail in the "22-cv-658" complaint that the "Corporate veil" of Eagle should be "pierced" and both Zhang and Jia

should be held personally liable for the outstanding invoices owed to Chen.

**POINT IV: <u>CHEN'S FAILURE TO OPPOSE THE MOTION TO DISMISS THE THIRD-PARTY COMPLAINT WAS NOT WILFULL AND REARGUEMENT SHOULD BE GRANTED PURSUANT TO FRCP RULE 60</u>**

FRCP RULE 60(b)(1) provides as follows:

"…Rule **60— Relief From Judgment or Order**

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

**(1)** mistake, inadvertence, surprise, or excusable neglect…"

Rule 60 further provides that:

"…The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. **<u>This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, (emphasis added) o</u>**r to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. § 1655, or to set aside a judgment for fraud upon the court…"

**The Second Circuit** addressed the issue in ***<u>In re 310 Assocs.</u>**, (346 F.3d at 35*) finding

that "…<u>Rule 60(b)(1)</u> [is] available for a district court to correct legal errors by the court…"

(see also *Colucci v. Beth Israel Med. Ctr., No. 12–cv-3694, , at \*2 (2d Cir. Aug. 27, 2013)*).

 "…In applying Rule 60(b) in the context of default judgments, the court must consider (1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the plaintiff if relief is granted. See, e.g., Brien v. Kullman Indus., 71 F.3d 1073, 1077 (2d Cir. 1995)(citing Wagstaff-El v. Carlton Press Company, 913 F.2d 56, 57 [2d Cir. 1990], [\*5] cert. denied, 499 U.S. 929, 111 S. Ct. 1332, 113 L. Ed. 2d 263 [1991]); Davis v. Musler, 713 F.2d 907, 915 (2d Cir. 1983). Since "an absence of prejudice to the non-defaulting party would not in itself entitle the defaulting party to relief," a court may deny a motion to vacate "if it is persuaded that the default was willful and is unpersuaded that the defaulting party has a meritorious defense…" S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998)…"

In the case at bar, as set forth in the Chen's affidavit in support of the instant motion  and as set forth hereinabove, the default was clearly not willful and Chen has a meritorious action against Eagle, Zhang and Jia.  Further, in that the discovery is virtually identical to that in Ameriway's case against Chen, is based upon the same series of facts, with the same witnesses and most of the same documentary evidence, and further that neither depositions nor expert discovery has taken place, and further that Zhang is an officer and principal owner of both Eagle and Ameriway in addition to being both parties attorney, neither Ameriway nor Eagle has any basis whatsoever to claim prejudice.

The determination to grant or deny a Rule 60(b) motion is within the district court's discretion. See Davis, 713 F.2d at 912; Brien, 71 F.3d at 1077. However, "dismissal is a harsh remedy to be utilized only in extreme situations." Brien, 71 F.3d at 1077 (quoting Cody v. Mello, 59 F.3d 13, 15 [2d Cir 1995]). Consequently, courts prefer that disputes be resolved on the merits. See id. (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 [2d Cir. 1993]).

The US Court of Appeals for the Seventh Circuit recently examined the circumstances under which a district court can correct legal errors on an FRCP 60(b) motion, modifying its prior rulings suggesting that such relief is unavailable. In *Mendez v. Republic Bank*, the district court had initially ruled for the plaintiff, Nereida Mendez, and the defendant, Republic Bank, timely appealed that ruling (*No. 12-cv–2585, WL 3821532, at *4 (7th Cir. July 25, 2013)*). However, the district court later changed course after reading a magistrate judge's report and recommendation on the issues, which convinced the court that it should have ruled in favor of Republic Bank. To fix this error, the district court invited Republic Bank to file an FRCP 60(b) motion for relief from judgment. Republic Bank then moved to remand the appeal to the

district court and filed an FRCP 60(b) motion. The district court granted the motion and then issued a new order in favor of Republic Bank ( *WL 3821532, at \*4*).

On appeal, the Seventh Circuit discussed the applicability of FRCP 60(b)(1). The court found that prior reluctance to extend the rule to correct appealable errors stemmed from a concern that parties could use FRCP 60(b) to "circumvent the deadlines for filing appeals" and "revive cases in which a party failed to appeal within the standard deadline" (*, at \*7*). Where, however, the rule is "not a device to avoid expired appellate time limits," a party may use FRCP 60(b) as an alternate way to correct errors that could also be corrected on appeal (*, at \*7*).

The court concluded that where a district court judge is convinced of a legal or factual error, there is no purpose in prohibiting the court from remedying that error itself. This conclusion is consistent with the Federal Rules of Civil Procedure's goal of securing a "just, speedy and inexpensive" resolution of disputes and also spares parties of the effort and expense of "preparing an appeal and educating a new court on the particulars of their case" (*, at \*7* (citing *FRCP 1*)).

In reaching this result, the Seventh Circuit joined several other circuit courts that have permitted parties to use FRCP 60(b) to seek relief from judgment for legal errors that also may be corrected on appeal. Many of these decisions also emphasize that while this remedy is available, it cannot be used to circumvent appellate filing deadlines.

**The Second Circuit** has ruled that "…Rule 60(b)(1) [is] available for a district court to correct legal errors by the court.." and noting that such relief may not be requested after the time for appeal has elapsed (*In re 310 Assocs., 346 F.3d at 35*) (citations omitted); see also *Colucci v. Beth Israel Med. Ctr., No. 12–cv-3694, , at \*2 (2d Cir. Aug. 27, 2013)*).

Of note is the fact that the December 27, 2021 Decision & Order dismissing the Third

Party action in this case has not yet been entered and therefore the time in which to file a notice

of appeal has not yet elapsed.

As set forth above and in Chen's affidavit, Chen's failure to oppose the motion to dismiss

the Third-Party Complaint **was not** willful. As set forth in Points I and II above, Chen has a

timely good and meritorious claim against Eagle, Zhang and Jia.  Finally, as set forth here, the

motion to reargue the December 27, 2021 Decision and Order is timely.

By reason of all the foregoing, Chen's application to reargue the December 27, 2021

Decision & Order should be granted.

**POINT V.  EVEN IF THIS COURT IS NOT PERSUADED TO GRANT REARGUMENT, THE DISMISSSAL OF THE THIRD-PARTY COMPLAINT "WITHOUT OPPOSITION" WAS A DISMISSAL WITHOUT PREJUDICE, THEREFORE ORDERING A JOINT TRIAL WITH THE NEWLY FILED COMPLAINT PURSUANT TO FRCP RULE 42 IS APPROPRIATE**

FRCP RULE 42(a) provides:

**"…Rule 42— Consolidation; Separate Trials**

**(a) Consolidation.** When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay..."

"…[T]wo tests have developed in the Second Circuit for determining whether dismissal **without prejudice** would be inappropriate." GFE Glob. Fin. & Eng'g Ltd. v. ECI Ltd. (USA), Inc., 291 F.R.D. 31, 36 (E.D.N.Y. 2013); *accord* Camilli v. Grimes, 436 F.3d 120, 123 (2d Cir. 2006)…"

"…One test examines whether defendants would suffer some plain legal **prejudice** from

a **without-prejudice** dismissal, beyond the prospect of a second lawsuit…" *Camilli,* 436 F.3d at

123 (citing <u>Cone v. W. Va. Pulp & Paper Co</u>., 330 U.S. 212, 217, 67 S. Ct. 752, 91 L. Ed. 849

(1947)).

The second "…test for dismissal **without prejudice** involves consideration of various factors, known as the *Zagano* factors…" <u>Kwan v. Schlein</u>, 634 F.3d 224, 230 (2d Cir. 2011) (quoting *<u>Camilli</u>*, 436 F.3d at 123); *see* <u>Zagano v. Fordham Univ</u>., 900 F.2d 12 (2d Cir. 1990).

<u>Zagano</u> requires consideration of: (1) "the plaintiff's diligence in bringing the **motion**";

(2) "any 'undue vexatiousness' on plaintiff's part"; (3) "the extent to which the suit has

progressed, including the defendant's effort and expense in preparation for trial"; (4) "the

duplicative expense of relitigation"; and (5) "the adequacy of plaintiff's explanation for the need

to **dismiss**." <u>Zagano v Fordham Univ.</u> 900 F.2d at 14.

"These factors are not necessarily exhaustive and no one of them, singly or in combination with another, is dispositive." *Ctr. for Discovery, Inc. v. D.P.*, No. 16-CV-3936, 2018 U.S. Dist. LEXIS 55450, 2018 WL 1583971, at *5 (E.D.N.Y. Mar. 31, 2018) (quoting *Kwan*, 634 F.3d at 230).

For example, this Circuit has explained, "plain legal **prejudice**" exists "when the cause

has proceeded so far that the defendant is in a position to demand on the pleadings an

opportunity to seek affirmative relief and he would be **prejudiced** by being remitted to a

separate action.", <u>Rhoden v. Mittal</u>, No. 18-CV-6613-LDH-SJB, 2020 U.S. Dist. LEXIS 250486,

at *5-6 (E.D.N.Y. Oct. 26, 2020)

As more fully set forth above and in Chen's affidavit in support of these applications, in

the case at bar, Chen has a meritorious action against Eagle, Zhang and Jia.  Further, the

discovery is virtually identical to that in Ameriway's case against Chen. It is based upon the

same series of facts, with the same witnesses and most of the same documentary evidence

already exchanged is relevant to the action against Eagle, Zhang and Jia.  Further, the documents

still being sought in this case are applicable to the "22-cv-658 case". In addition, no depositions nor expert discovery has taken place in either case to date .

The Third-Party Complaint was timely served in August 2020 and the "22-cv- 658 case" was filed in less than 30 days after this Court issued its December 27, 2021 Decision and Order dismissing the Third-Party action based upon this Court's determination that Chen had not "opposed the motion". It is respectfully submitted that this motion has been made with due diligence. Zhang, as an officer and principal owner of both Eagle and Ameriway in addition to being both parties attorney, on behalf of himself and on behalf of Ameriway and Eagle has no basis whatsoever to claim prejudice.

By reason thereof, Chen's application to order that this case be jointly tried with the case of May Yan Chen d/b/a Ability Customs Brokers –v- Eagle Trading USA, LLC, Xiyan Zhang and Shiping Jia (22-cv-658), (which case has also been assigned to this court) should be granted pursuant to FRCP Rule 42(a).

## CONCLUSION

By reason of the foregoing, it is respectfully requested that Chen's application to reargue the dismissal of the Third-Party Complaint pursuant to FRCP 60 be granted and thereafter either issue an order directing that the case of **May Yan Chen d/b/a Ability Customs Brokers –v- Eagle Trading USA, LLC, Xiyan Zhang and Shiping Jia** [22-cv-658] be tried jointly with this action or in the alternative vacate this Court's December 27, 2021 Decision and Order and set a briefing schedule and return date to hear the Third-Party Defendants' application to dismiss the Third-Party Action on the merits and for such other and further relief as to this Court may seem just and proper.

Respectfully submitted,

Shayne Law Group

*/s/*

By: William Shayne
Attorneys for the Defendants
64 Fulton Street, Suite 1000
New York, New York 10038
212-566-4949