```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                           Docket #19cv9407
 AMERIWAY CORPORATION,              :

                    Plaintiff,      :

   - against -                      :

 CHEN, et al.,                      : New York, New York
                                      May 23, 2022
                    Defendants.      :

----------------------------------- : TELEPHONE CONFERENCE

                      PROCEEDINGS BEFORE
                THE HONORABLE VALERIE FIGUEREDO,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          STRATUM LAW FIRM
                        BY:  PETER WOLFGRAM, ESQ.
                        S76-W19896 Prospect Drive
                        Muskego, Wisconsin 53150

                        STRATUM LAW FIRM
                        BY:  XIYAN ZHANG, ESQ.
                        150 Monument Road, Suite 207
                        Bala Cynwyd, Pennsylvania 19083

For Defendants:         SCHRIER, FISCELLA & SUSSMAN, LLC
                        BY:  RICHARD SCHRIER, ESQ.
                        825 East Gate Boulevard, Suite 320
                        Garden City, New York 11530

Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service.
```

For Defendants:           SHAYNE LAW GROUP P.C.
                          BY:  WILLIAM SHAYNE, ESQ.
                          64 Fulton Street, Suite 1000
                          New York, New York 10038

**<u>INDEX</u>**

**E X A M I N A T I O N S**

| **<u>Witness</u>** | **<u>Direct</u>** | **<u>Cross</u>** | **Re-<br><u>Direct</u>** | **Re-<br><u>Cross</u>** |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| **Exhibit<br><u>Number</u>** | **<u>Description</u>** | **<u>ID</u>** | **<u>In</u>** | **Voir<br><u>Dire</u>** |
|---|---|---|---|---|
| None | | | | |

THE CLERK: This is the matter of Ameriway Corporation v. Chen, et al., docket number 19cv09407. The Honorable Valerie Figueredo presiding. Counsel, please note your appearance for the record starting with plaintiff's counsel.

MR. PETER WOLFGRAM: Good afternoon, my name is Peter Wolfgram, counsel for Ameriway Corporation.

MR. XIYAN ZHANG: Good afternoon, my name is Xiyan Zhang, counsel for Ameriway Corporation.

MR. RICHARD SCHRIER: Richard Schrier for the defendant, Chen.

MR. WILLIAM SHAYNE: William Shayne for defendant, Chen.

HONORABLE VALERIE FIGUEREDO (THE COURT): Good afternoon, everyone, this is Judge Figueredo. I have all of your various letters beginning on May 7th and going through May 18th. And my first question is why you think it makes sense to go and try to resolve these discovery disputes now if there's a chance plaintiff's counsel may have to be replaced with a new attorney?

ATTORNEY: Are you addressing it to the plaintiff or the defendant, Judge?

THE COURT: Sorry, I'm addressing it to the party who wanted the, I don't recall who sent the letter but

there was someone who opposed putting this off until Judge

Broderick decided the other motion.

MR. WOLFGRAM: That would be the plaintiff, Judge.

And, no, Your Honor -- yes, Your Honor, we decided to,

we requested to move the conference up because we did

not believe that Judge Broderick might not rule on the

issue several months from now. Defendants just filed a

motion to request to file a motion for disqualification.

They have not even filed a motion. By the time (inaudible)

it could be several months down the line and we are facing

discovery deadlines right now.

THE COURT: Okay. Well I mean I'm happy to walk

through, I've heard the transcript of the last conference

you had before Judge Freeman and so I'm happy to go through

now the outstanding issues that still remain. I guess we can

start, we can do it one of two ways and I'm happy to proceed

whichever way you think is most efficient. We can go, we can

start with the document requests and go number by number.

Some of them, there's a group of them that pertain to the

terms and conditions so we can address all those at once

unless you've reached some resolution with regards to the

terms and conditions in the interim?

MR. SCHRIER: This is Richard Schrier on behalf of

the defendants. From our standpoints this was, just to give

you a little perspective, and I take the hit on this, Judge, when they first, there was terms and conditions that Mr. Shayne whose specialty is import/export, I do litigation, but Mr. Shayne in the regular course of his business, when he gets a client he looks at the, he knows that the terms and conditions have been evolving over the years because of different decisions in the Customs Court. And what he does whenever he gets a new client, he does, he presents them with the terms and conditions and they usually accept because it asks (inaudible) had before and updates things.  And he did that after he was retained by the defendant in this case, and they then proceeded to put it on the website. That was not the terms and conditions, that was done after this case was started. Those are not the terms and conditions that would apply in this case.

I, it's actually my staff, when plaintiff asked for copies of the, of the power of attorney which has terms and conditions, it refers to it in there, we were, we just inadvertently under the impression that it was the three-page version which is what was added by Mr. Shayne, and it was put in initially downloaded into our system, so whenever they asked for terms and conditions we spit it out and we

gave them, you know, the power of attorney terms and

conditions.  When plaintiff raises and issue and we

got into it, I realized our mistake and the

plaintiffs, I'm sorry, the defendant Chen was working

for another company before she got her license as a

customs broker. When she got her license and she

started her own company she took the terms and

conditions that they were using at her old job and

gave it to the printer and said, you know, put my name

in instead of the prior employer's names and those are

the terms and conditions that she was using and that's

a one page version.  Both of them, they happened to be

different numbered paragraphs, I think it's 13 and 14,

respectively, but they both referred to a general, a

general lien. I don't want to insult the Court's

intelligence with this but a specific lien will allow

you to assert a lien against property that you have in

possession. In this case when there is nonpayment by

the --

          THE COURT:  Sorry, can I just interrupt you

just so that we don't go on at length. So my

understanding of the dispute is that the plaintiffs

want these native documents of the terms and

conditions or at least documents that predated April,

2017, when the power of attorney and the terms and conditions would have been entered into --

MR. SCHRIER: It's a -- Judge, we're not claiming those terms and conditions are even relevant, they're not relevant to the case. They're asking for the native files from Mr. Shayne, who he's worked with dozens, probably more than dozens, over 100 different clients over the years where he's developed them over the years, but that's, but those were not the ones that were in effect at the time of the, at the time of the claims here. So it's a total red herring.

What they should want --

THE COURT: Let me just stop you just being a telephone conference it's hard to manage, am I, and, again, plaintiffs can chime in at any point, am I wrong that the power of attorney was entered into in 2017?

MR. WOLFGRAM: That's correct.

THE COURT: That's correct. And so your, the claim basically is that the power of attorney contains certain terms and conditions, one party says the terms and conditions allowed them to take a general lien or a specific lien and another party says we never got terms and conditions, they weren't attached to the

power of attorney.

MR. WOLFGRAM: That's correct.

THE COURT: Okay, and so, and my understanding of the request, which I'm looking at, for instance, the request for production number 47, for instance, looks at all email communications including attachments sent from defendants to its customers containing the terms and conditions shown in Exhibits A, B and C from April 11, 2017, to August 22, 2019. So my understanding of the reason for the request would be that if they were using these terms and conditions at the time that they entered into the power of attorney here, they presumably would have used it with another customer and the terms and conditions in effect then should be the ones that they would have sent in this case, is that correct?

MR. SCHRIER: That's correct. As the defendant, that's correct.

THE COURT: Okay, but I really am just trying to understand, to make sure I have all the basic facts down. And I know the requests seek the terms and conditions for a broader period, so I see requests that ask for 2017 to 2019 and I thought there was a request that maybe asked for before 2017.

MR. WOLFGRAM: That's correct, before, as well.

THE COURT: Okay, and so what, have there been any, anything produced for the terms and conditions going around that period of April, 2017, either slightly before or slightly after?

MR. SCHRIER: The problem with that, Judge, this is Richard Schrier for the defendant, there is a specific statutory prohibition that we cited, 19 CFR 111.24 which prohibits us from disclosing information with regard to any of the clients of a customs broker.

THE COURT: Okay, but I thought that was, in one of your letters I thought you indicated that you were seeking consent from some of these customers who had agreed to produce, who would have waived whatever privilege might have applied?

MR. SCHRIER: Right, and as of today, from my understanding from speaking to the client on Friday, she's gotten five of her customers who've agreed to do that. We have disclosed it. We have, we were drafting it this morning, we're just sending it out, but we have waivers that we're sending to those five clients, because I want it in writing to make sure that we don't disclose it without their consent. And

as soon as I get the consent I'm going to produce that

information to the plaintiff, that I have no problem

doing as long as they consent to it.

THE COURT: Okay, and this would be emails or

communications that would show the terms and

conditions in effect around that April, 2017, time

period?

MR. SCHRIER: I don't know whether it's going

to be that or an affidavit saying they got it, I don't

know exactly what they're going to, but they have,

they are going to, they told our client that they have

no objection to disclosing their name, you know, as

potential witnesses, whatever, for the plaintiff, or

for the defendant, for that matter.

THE COURT: Let me, let me ask you, maybe this

is just my misunderstanding of how this area of the

law works, but what would be the problem with if you

redact the client information just producing the

emails that attach the terms of conditions in that

April, 2017, time period and redact whatever client

information is in there? So, presumably, and again

tell me if this is not what they want, but if what you

want is to see what the terms and conditions were in

effect around April, 2017, the client information

shouldn't really be necessary, you just want to see
that the document they claim gives them the right, the
lien rights?

MR. SCHRIER: I'd have to think about it but I
don't know that that's really an issue, I don't know
how it was done at that time, but I guess, and if we
did that we would have to, on the power of attorney
portion of it we would have to redact the identity of
the party, of the customer, as well. Bill?

MR. SHAYNE: Conceptually I don't have a
problem with it, I just don't know offhand, you know,
which ones went by paper and which ones went by email.
But, you know, we can definitely look into that.
Conceptually I don't have a problem with it.

THE COURT: When I mean email, again, if you
sent them via paper that's fine. Like to me I thought
that and, again, if this is not what you want you
should feel free to let me know, but I thought what
you wanted was the document in existence at that time
to see if at that time it contained the lien rights.
And so to me it wouldn't matter which client you're
sending it to, as long as it's a document that was
sent to a client showing the terms and conditions in
existence at that time.

MR. WOLFGRAM: Your Honor, this is Pete
Wolfgram for plaintiffs, I just want to step in here.
Defendants, they are claiming that they don't have any
electronic records of this prior version that they
just produced two weeks ago that is supposedly the
real operative document --

MR. SCHRIER: That's not what we're saying at
all. That's not what we're saying at all, sir.
That's a total misrepresentation, we're not saying
that at all.

MR. WOLFGRAM: I'm talking to the Judge, sir.

MR. SCHRIER: Go ahead.

MR. WOLFGRAM: We would, we would like to have
electronic copies in native file format of emails that
defendants sent their alleged terms and conditions
asserted to their customers prior to April, 2017.
Defendants are claiming that they only sent paper
copies of this, if my understanding is correct, that
they only sent paper copies of those terms and
conditions asserted sheet and if that's all they have,
then that's all they have. But they are trying to
restrict our access to the customers because they
don't want us to reach out to them and ask them if
they had sent the terms and conditions of service

sheet to them. And they're trying to use this 19 CFR 111.24 to restrict our access to their customer pool. So they will not likely come back with any emails showing that they sent any terms and conditions of service to their customers, they'll come back with affidavits saying that they received paper copies.

However, the issue with that is defendant Chen sent the 2017 power of attorney to plaintiff by email, she sent all of her correspondence by email, and defendant's story now that, only after I discovered that Mr. Shayne created this document, the terms of conditions of service sheet which Mr. Schrier claims there's a clerical error by his staff only after I discovered through metadata analysis and linked them to the documents (inaudible) with the depositions and called them out on the transcript which Your Honor said she had reviewed, for fabricating evidence. Only then, and even after I asked for the privilege log, did he come forward and say that he created this document. Now they're trying to basically switch the documents, they went back, in our belief they went back and found a prior version and are just trying to swap out the documents on the record when we believe the evidence clearly shows that Mr. Shayne made

explicit representations to the Court and cited

specific provisions within his documents asserting a

lien in this case. And had we not discovered that Mr.

Shayne created the documents, the Court would still be

under the false impression that Mr. Shayne's document

is the operative document. That is why we went

through all this is in our crime-fraud section and we

believe that we have comfortably established a prima

facie case for that.

So there is, we do not believe that there is a

prior version that defendants used prior to 2017, we think

they're making it up. That's why we wanted electronic native

files supporting that. But they're going to come back to us

most likely and say all we have are paper copies and Mr.

Shayne just indicated that. So that is the crux of the

dispute right now.

THE COURT: Does Mr. Shayne want to respond?

MR. SHAYNE: I am, the answer is yes, Your Honor,

okay. There is nothing on those documents that

indicated that there is anything nefarious going on,

it has a rev date on the bottom, okay, just as every

other government document has a revision date on it. And

the fact is that when you look at the older terms, and

understand these terms go back, there are different

versions of them that go back into the '70s, okay, but the
key to it is, and this is where I think that plaintiff is
trying to make something that just does not exist, okay,
is that both sets of earlier terms, these terms and my
recollection going back into the '70s is that they all
contain essentially similar language about the lien.

So which form it is, whether it was, you know,
based upon the '94, '94 terms and conditions, or the 2013
terms and conditions of the, of the National Brokers
Association, the clause is all, is all the same. So Mr.
Schrier's office, Your Honor, error in putting one
versus the other doesn't get to the issue.

The issue that they want to address, okay,
which is which one of those was in effect at the time
that they started to do business with Chen. It doesn't
make any difference which one it was, because our
position is it actually doesn't make any difference
whether it existed or it didn't exist.

And with respect to the confidentiality rules,
that's been part of the law since 1960, okay. So, you
know, if that somehow now, you know, now I'm supposed
to have gone back and modified things back to 1960, I
wasn't practicing then. So I'm not sure, you know,
where he wants to, you know, to go with it. But the

fact is if we have people who, if we don't have

records, ourselves, and we have recipients and clients

of Chen who will acknowledge in an affidavit, you

know, under notary, okay, that these are the terms

that they had, that's not a typical way of doing it.

It may not be what they like, but it's still valid

evidence and if they want to then question those

particular parties who issue them for their validity,

go for it, I have no problem with it.

    THE COURT: Let me just, let me just take a

step back because I thought we were reaching some sort

of agreement. Can defense, can defendants search or have

they already searched and are, and can represent that they

have no electronic communications with clients that attach

the terms and conditions that were in effect in April, 2017,

or earlier?

    MR. SHAYNE: I can have them, this is Mr. Shayne,

I can have them recheck, but we do know that a lot of their

older electronic systems are no longer available and I will

have, but I can have them double check again.

    THE COURT: Yes, I mean 2017 wasn't that long ago,

so if you could recheck and then, because we'd want

confirmation that you don't have any electronic emails

that would have attached, emails, documents, however

they were transferring documents with clients that
would have attached the terms and conditions.

MR. SHAYNE: I have no difficulty, Your Honor,
making that request to the client.

THE COURT: Okay. And then my second question
is, again, are you able, with the terms and conditions
are you basically saying that the defendants do not have
whatever the, do not have the document as it existed, do not
have an electronic copy of the document as it existed in
April, 2017, or earlier?

MR. SCHRIER: That would be correct.

MR. SHAYNE: No, no, Rick, no, what they have is
the, is the replicated of what was their hard copy, okay,
but those are not, you know, original source documents I
think of the type that they're referring to.

THE COURT: When you say replicated of the hard
copy, what do you mean, like did someone take the hard copy
and retype it up?

MR. SHAYNE: No, no, no, it's still in the
original form, it's just that they don't have what was their
original artwork from when that, from when that form was
originally created years ago.

THE COURT: Well, no, so I'm just going to, maybe
I'm just not understanding but they don't have, they don't

have an electronic copy of the document as it existed in

2017, is that right?

MR. SCHRIER:  I don't, I don't know that one way

or the other, Judge.  Let me just jump in a little bit on

this.  They, from my understanding speaking to the client

recently, when she got the, she took a copy from her old

boss basically, brought it to the printer and had them print

it up.  They then kept copies.  Whether they faxed the

copies to the clients, from my understanding they didn't put

it in Word so they have an electronic version of it.

Whether they scanned it in as a PDF, I don't know, I'll have

to ask the question, but, and whether it was transmitted

that way, that's why I just don't know, I didn't ask the

question, I should have but I didn't and I certainly will.

THE COURT:  But that clarifies. So when she, when

the defendant first got the document you're saying that she

didn't even get it in electronic format, it sounds like she

got a physical copy and then created an electronic document?

MR. SCHRIER:  Yes, when she was at her old boss

she took some forms that they used in the regular course of

their business and used it in her own new business, that's

what she did.

THE COURT:  And was that before 2017?

MR. SCHRIER:  Oh, it was like in 2011 I think or

'12.

THE COURT: Okay. And she doesn't have, (inaudible) she doesn't have the original form she took and she --

MR. SCHRIER: Oh, the original form had a prior boss' name on it, I'll ask but I would be shocked if she had that. The form, itself -- well, no, actually I take that back, in terms of the, she took the form for both the power of attorney and terms and conditions. The terms and conditions don't have a name on it, it just has the power of attorney portion that has the name.

THE COURT: So I guess I'm a little confused, I know that the plaintiffs want the metadata but if she never created the document and it was a PDF, what would the metadata show then?

MR. WOLFGRAM: Your Honor, the metadata of Mr. Shayne's document, the document that he created, it would indicate when he created his document relative to when defendant's counsel received the older version from his client. I don't know when his client sent him the allegedly real terms that they cannot produce any electronic evidence for, but if we could see different versions of the document that Mr. Shayne created, we believe he created this document sometime in July of 2020, and we

could compare that timeline against when defendant's

counsel received the older version from his client,

that would indicate, that would have relevance to the

authenticity of the older version which they are now

supporting. Because Mr. Shayne is claiming that he

just reviewed and updated the older version but we

don't believe that he had possession of this older

version until quite recently until we discovered that

he created this other version that he presented to the

Court as being the operative terms and conditions of

service.

THE COURT:  Okay, so it sounds, it sounds like

if we can get you, if we can get -- first, there's a

few ways I think it sounds like we can get the

document.  One is they seem to be willing, they've

asked some customers who've agreed to search to see if

they have an electronic version of this document from

2017 or earlier, and the customers were going to, were

going to either agree to turn that over or were going

to look for it, is that right?

MR. SCHRIER:  That's correct, and if they

don't they supposedly will give us an affidavit to

whatever extent occurred in their circumstances.

THE COURT:  But I just want to make sure that

you're going to actually ask them to look for either

the emails or the electronic saved documents on the

computer system, not just a paper, a paper version of

the document?

MR. SCHRIER: Absolutely, Judge. Absolutely.

THE COURT: Okay, so that's one way of getting

at the older or the 2017 as they may have existed

terms and conditions. The other way is to ask

defendant to search its files to see if it has older

the original, the terms and conditions as it existed

in 2017 or earlier. And I gather that that was

something that maybe they hadn't asked defendant to do

--

MR. SCHRIER: Yes, we did not ask --

THE COURT: Okay, but you would be willing to

ask now?

MR. SCHRIER: Absolutely.

THE COURT: Okay, so it seems like we should

wait to see on the outcome of those searches to see if

we can get the original terms, I'm sorry I keep

calling it the original, but the terms and conditions

as they may have existed in 2017.

MR. WOLFGRAM: Your Honor, can Mr. Shayne look

in his files and see when he received the document

from his client, the old document, so we can compare

the timelines here?

     MR. SHAYNE: Your Honor, I have no problem

with taking a look, however, what I actually said was

when I get, when I take on a client, I don't, I review

their power of attorney, I do not review their terms

and conditions, I just give them their updated terms

and conditions, that's all I do. So the date of, of

receipt or review, there is no review of earlier terms

and conditions, it's just not done.

     MR. WOLFGRAM: You said you updated and

revised them, how would you know what you're updating

then, sir?

     MR. SHAYNE: Well if you want to testify for

me, that's okay.

     MR. WOLFGRAM: You're going to --

     MR. SHAYNE: I'm telling you that the way that

I do it is I review and revise the power of attorney,

okay, but the terms and conditions I do not review and

revise, the terms and conditions I simply provide them

with what I consider to be the updated version in the

industry, that's it, okay. So the fact of the matter

is I will be more than happy to look, Your Honor, in

terms of when I got that, but I will tell you I did

not review them.

THE COURT: Well, Mr. Shayne --

MR. WOLFGRAM: Your Honor, he said he was --
pardon. Sorry.

THE COURT: No, I was just going to say would
it be fine for, would it be okay for Mr. Shayne to
provide an affidavit to that effect or a declaration,
something under oath?

MR. SCHRIER: Absolutely.

THE COURT: Okay, so would that satisfy
plaintiffs?

MR. WOLFGRAM: Your Honor --

THE COURT: In addition to those searches that
we've discussed, obviously.

MR. WOLFGRAM: It would be a starting point,
Your Honor, I just think it is very, number one,
defendants cannot produce any electronic versions of the
prior terms and conditions and, number two, Mr. Shayne said
he never received the document from his client. He received
the power of attorney but he never received this new terms
and conditions of service sheet. And he just took it upon
himself to create evidence in a federal case and probably
made himself, he most certainly made himself a fact witness,
him and Mr. Shayne, because this is essential evidence --

pardon?

THE COURT: I guess I --

MR. SCHRIER: I'm sorry, Judge.

THE COURT: I just want to correct one thing. They've going to search so we're not entirely sure they don't have the electronic documents because it sounds like they hadn't previously asked the defendant to do that. So there is a possibility that you might be able to get an electronic copy from 2017 or earlier.

MR. WOLFGRAM: I won't jump the gun, Your Honor, then, and we can wait to see what they come back with. If they have electronic, any electronic records of the terms and conditions of service we would ask for it in native file form and not a PDF, please, with metadata attached.

THE COURT: Since there were some objections relating to what exactly native file meant, can you just be clear on the record so that everyone understands what you mean by native file?

MR. WOLFGRAM: Native file is the underlying original format, whether it's Word, and Excel sheet, it should be a Word document here or an email native file. I forget the technical name that it's called, but all you do is go in your, a PDF is an image file,

it's an image of the underlying native file, and all
you have to do in your email is just download, I think
it, I forget what it's called, I can send Mr. Shayne
directions after on how to download native email files
and they can instruct their client's clients to
produce that information in that format, but that
gives us an idea of when the documents were sent, when
they were created, as opposed to a PDF file which can
be easily manipulated.

THE COURT:  Well let me ask you because it
sounds like from defendant's counsel that even the
original document she got was a paper document that she then
scanned or somehow made a PDF.  Does the PDF not come with
metadata that would show when that document was created?

MR. WOLFGRAM:  Your Honor, I believe they're,
defendant's counsel is saying that they scanned it in
recently for this lawsuit, I don't they believe they
said they scanned it in going back to 2012, if I'm not
mistaken.

THE COURT:  I mean I understood them to be
saying that when, in sometime in 2000 or before she
started her business she got some terms and
conditions, hard copy, that she then created an
electronic copy of. What I'm wondering is if they were

to, let's say they were to produce to you some, a

document, a PDF, they don't have the Word or native

file, they have a PDF where the metadata shows that it

was created in 2016, why is that not sufficient?

MR. WOLFGRAM:  That would be fine, Your Honor,

but the way I understand their story is that defendant

Chen received a hardcopy from a former boss and then

she took that hardcopy to a local printer and had the

printer input her name and then the printer made out

copies and she sent out physical copies to her

customers instead of an electronic version.

THE COURT:  But maybe in 2016, or 2015, or

2017 she would have sent electronic copies because by

then people were exchanging electronic documents all

the time.

MR. WOLFGRAM:  Exactly, Your Honor, and if

they can do that, but I'm just gauging now from the

defendant's response and I've, you know, I won't jump

the gun on this but I think they're just going to come

back and say that all we have are affidavits that she

sent the physical copy to the select group of

customers while restricting our access to a broader

group of her customers so we can verify that she did

not actually send any terms and conditions of service.

But I will --

THE COURT:  There was something I wanted to add on, would it, if, let's say hypothetically because they're going to ask and look, but let's say hypothetically the five or so customers that have agreed to give them this data come back and say we don't have electronic versions of this document, and I guess this question goes to defendants, what would be the problem with going broader, searching other customers for which this document may have been sent around that operative period, 2017 or earlier, and if you find electronic communications with the document redacting the client information?

MR. SCHRIER:  We already indicated that we would endeavor to do that, Judge.

THE COURT:  Okay, so then, so it sounds like we have a few options for trying to ascertain whether this document exists and I think we should wait to see what they're able to find.

MR. WOLFGRAM:  Okay, Your Honor, we would ask that they do it in short order because they've had three months to comply and they've, we also have other production requests here but I am willing to wait and see what they, what they give us on this one.

THE COURT:  For defense counsel, how much time do you need to conduct these searches (inaudible) that it has been a while?

MR. SCHRIER:  But it's also a lot to look for. Bill, what do you think is a reasonable time to do that kind of search?

MR. SHAYNE:  It depends upon, you know, which servers that they can find things on, but it should take less than two weeks.

THE COURT:  Okay, I mean two weeks to me sounds reasonable, plaintiffs, do you have a strong objection to two weeks?

MR. WOLFGRAM:  No, Your Honor, that's fine, but we would repeat our request that the native files be produced if they exist.

THE COURT:  Okay.  You had said there were other requests for production?

MR. WOLFGRAM:  Yes, request number 52 and 53.

THE COURT:  Would this not be --

MR. WOLFGRAM:  All documents --

THE COURT:  Yes, no, I'm looking at the request now but would this not be solved with their current searches looking for the terms and conditions as they existed around 2017 or earlier?

MR. WOLFGRAM: This specifically relates to a
webpage that they created during this lawsuit, Your
Honor. If they, if they, and these are emails going to
the website developer when he created the document,
when he created the website. They said they don't
have any documents, we don't believe that's possible.

MR. SCHRIER: Judge, can I, can I respond to
that?

THE COURT: Yes, please.

MR. SCHRIER: What counsel is asking for is
totally irrelevant to this case. He's talking about
the, the terms and conditions and the power of
attorney, which those are the terms and conditions
that's on the website. We've told him time and again
and put it in writing, he's talking about the terms
and conditions that Mr. Shayne gave to the client
after he was retained, after this lawsuit was started,
and the terms and conditions have nothing, whatsoever,
to do with the terms and conditions that were we claim
were in force and effect at the time that our client
was performing services, not for Ameriway, as it works
out, but for the related company, Eagle. But the
point is these terms and conditions he's referring to
in these demands have nothing, whatsoever, to do with

this case, it's a total red herring. I don't know why he's doing it except, I don't even understand why he's doing it, it's just an exercise in, you know, to get information that has no bearing on the case.

MR. WOLFGRAM: Your Honor, that's not true, in our section detailing the crime-fraud, we believe that defendants instructed their client to put these terms and conditions of service on their website in advance of a summary judgment motion which would indicate that defendants are basically defrauding the Court. We sent, we sent defendants a settlement letter and we told them on August 18th, and we told defendants that we were preparing a summary judgment motion with respect to our conversion claim and their affirmative lien defense. Five days later we believe their client put Mr. Shayne's terms and conditions of service sheet on their website which, to give, to, you know, allegedly give Ameriway or the plaintiff notice of the terms. Prior to that point, Your Honor, the website's been online for 10 years, she never had any terms and conditions of service on that website. It's no coincidence that they put the terms of five days after we told them that we were going to file a summary judgment motion.

So it does bear on the authenticity of the

terms that they are asserting now and it bears on

their intent to basically fabricate a lien for this

litigation.

THE COURT:  So let me, I think on this one I'm

inclined to say, I'm going to wait to see what they

produce with regards to the native documents that we

talked about for the terms and conditions for 2017 or

earlier, because if they're able to produce that then

it strikes me as completely irrelevant what they

uploaded their terms and conditions now since no one

argues that those terms and conditions on their

website now are the ones in effect in 2017.

MR. WOLFGRAM:  Well that's, on their website

they were not in effect in 2017, Your Honor, we

absolutely deny that.

THE COURT:  Well that's what I mean, if what

you want is to find out which terms and conditions

were in effect in 2017 and they're currently going to

engage in these searches that may produce those

documents from that period, I'm not sure why you need

the communications relating to the website since

everyone seems to say that these website terms and

conditions weren't put up until the middle of this

litigation so they wouldn't have been relevant to the

period of time when the power of attorney was entered

into.

        MR. WOLFGRAM:  But, Your Honor, we think it is

relevant to defendant's decision to fabricate terms.

        THE COURT:  But we haven't, I guess I'm a

little, I know you say there is evidence of the

fabrication, but I guess I'm willing to give them

another opportunity to see if they can find the native

documents or the documents from that time period

before we go down and look at whether, you know, we're

going to look at the crime-fraud exception.

        MR. WOLFGRAM:  Okay.

        THE COURT:  I would say we can hold off on

request for production number 52 and 53 and I'll, we

can decide on whether that information is relevant

depending on what they find for the searches we

already discussed. Because I think depending on that,

I'm not inclined to find that what they've put up or

communicated with regards to the website is relevant

now.

        MR. WOLFGRAM:  Okay, Your Honor.

        THE COURT:  Are there other ones you want to

talk about?

        MR. WOLFGRAM:  Just, I'm just going to look

at, I think that covers it for the request for

documentation, if I could just get one second to look

at the interrogatories. So interrogatory number 15,

so we know, we know that Mr. Shayne, interrogatory

number 15 describes how the terms and conditions of

service form was created, maybe we want to hold off on

this one, too.

THE COURT: Right, because this will depend on

whether they can find documents from pre-2017 and

produce the metadata.

MR. WOLFGRAM: Okay. Well then I have nothing

further.

THE COURT: Does defense counsel have anything

further?

MR. SCHRIER: Well, we're, I just want to make

the Court aware because I don't know the timing on the

issue of the qualification. I mean it's, in our mind

it's very clear that both counsel, particularly Mr.

Zhang, should be disqualified as counsel. The judge

just received some papers on Friday from counsel for

plaintiff in response to our request and we're

actually, I was about to file a response letter which

will be done in the next hour or so.

But in any event, we, we had served Mr. Zhang

with a notice of deposition two and a half years ago

at this point, and we've been trying literally for the

past two, three months to try to get his deposition

and each time we get delayed. Right now we've noticed

it, renoticed it for the, I believe it's the 3rd of

June and hopefully it's going to be held then. We've

got certain time limitations that the Court has

ordered in terms of discovery and we may be, I hope we

don't have to go forward with any further (inaudible)

from the Court but if it's not held on the 3rd we may

be asking for the Court's assistance on getting some

Court ordered specific dates.

MR. WOLFGRAM: Your Honor, defendants have

served defective deposition notices three times, we asked

them to serve a list of deposition topics, they had refused

to until we sent a protective order to the Court. The

request was granted and we get 30 days to review the

documentation that they are requesting and state our

objections from, I think the 30 days is up June 2nd or 3rd.

So under the rule we get time to review the request for the

deposition topics and the requests for production and we

will state our objections within the 30 days and we will

schedule Mr. Zhang's deposition shortly thereafter once we

get some resolution on that. But defendants can't just say

that they've been trying to depose Mr. Zhang for two years,

they haven't served us a proper deposition notice, a,

he's a corporate witness so there are requirements

there.

And, further, regarding the disqualification,

I would like to put the Court on notice that Mr.

Shayne and Mr. Schrier have admitted to creating this

document, it is a contested issue, which terms and

conditions are, they created evidence in the case and

they've made themselves fact witnesses, so they are

also subject to a disqualification. And we will file a

motion on that as well.

MR. SHAYNE:  Your Honor, this is William

Shayne, just for the clarity of the record since this

is recorded, okay, there has never been an admission,

okay, while they would like to say so, there's no

admission that that document was, you know, was a

fabrication, that it was false, that it was mistimed

or anything. The letter that I sent, we sent to the

Court about a week and a half ago sets it out very

clearly and it's exactly what we are saying now, the

date on the bottom is a, is the date of the template,

okay, and the date, and we clearly said I could not

have given it to them until after I was doing business

with them. There is no admission of fabrication or anything like that.

MR. WOLFGRAM: The record shows that you specifically cited to those provisions and Mr. Schrier just said that he made a mistake, a clerical error. So you have put this, you have made this a live issue.

THE COURT: Let's just focus in on, I've, it sounds like the deposition of Mr. Zhang on June 3rd is not going to go forward?

MR. WOLFGRAM: We are going to serve our objections to their discovery, to their deposition topics and we are shooting for mid to late June.

THE COURT: Okay, but it sounds like there is nothing, again, it's a 30(b)(6) witness and so you do have the right to review and serve the objection, so I'm just, it sounds like there is nothing you need from me at the moment because they still haven't, the time to respond hasn't expired.

MR. WOLFGRAM: Yeah, I think Mr. Schrier just wants to put you on notice that we are, Mr. Zhang's deposition is upcoming.

THE COURT: Okay, no, I understand that and I just don't have a sense of the timing of when Judge Broderick is going to rule on the motion. But for our

purposes, just to set a deadline for the searches and

the production of potential documents that we said we

would look for, two weeks from today would be June 6th,

does that work for everyone?

MR. WOLFGRAM: Yes, Your Honor.

MR. SCHRIER: That's fine.

THE COURT: So would it be possible for the

parties to send like a joint status letter updating on

the status of this pending, of this dispute by the end

of the week, so by June 10th just to let me know if we

still have ongoing issues with this, with this

discovery?

MR. SCHRIER: That's fine.

MR. WOLFGRAM: Yes.

MR. SCHRIER: Just so I'm clear, you're asking

us to send a letter on June 10th as to what the status

of things are at that point in time?

THE COURT: Well I figured, I figured if you

respond to plaintiffs on June 6th, it gives plaintiffs

some time to look through whatever you may have

produced and then you can meet and confer, come up

with some joint brief letter just updating me on

whether there is any, whether that resolved the

disputes or whether you still have issues you want to

discuss.

MR. SCHRIER:  Okay, and you want that by June 10th?

THE COURT:  Yes, unless you think you need more time.

MR. SCHRIER:  No, no, I just want to be able to document it, I want to make sure what we're drafting so I can title it properly, but that's fine.

THE COURT:  Okay, so I'll wait to hear from you all on June 10th.

MR. SCHRIER:  Sounds great.  Sounds great.

THE COURT:  Okay, thank so much, everyone, unless there is anything else I think we're adjourned.

MR. WOLFGRAM:  Thank you, Judge.

MR. ZHANG:  Nothing further, thank you, Your Honor.

(Whereupon, the matter is adjourned.

# C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Ameriway Corporation versus Chen, et al., Docket #19cv9407, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature_____*Carole Ludwig*_____

Carole Ludwig

Date:    June 2, 2022