**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**AMERIWAY CORPORATION**                          **19 -cv-09407 (VSB)**

                                    **Plaintiff,**

            **v.**

**MAY YAN CHEN,**

**ABILITY CUSTOMS, INC.**

                              **Defendants**

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY

## ATTORNEY XIYAN ZHANG AND ATTORNEY PETE WOLFGRAM

Respectfully submitted,
Shayne Law Group

By: William Shayne, Esq.
     Richard E. Schrier, Esq.
Attorneys for the Defendants
64 Fulton Street
New York, New York 10038
212-566-4949

To:     Stratum Law LLC (via ECF)
        2424 E. York Street, Ste 223
        Philadelphia, Pa. 19125
        215-621-8008
        Att: Xiyan Zhang, Esq.
             Pete Wolfgram, Esq.

# TABLE OF CONTENTS

Page

**TABLE OF CONTENTS**------------------------------------------------------------- i

**TABLE OF AUTHORITIES**--------------------------------------------------------- ii

**EXHIBITS IN SUPPORT OF MOTION TO DISQUALIFY**------------------iv

**PRELIMINARY STATEMENT AND** FACTS------------------------------------1


**POINT I: IT IS PREJUDICIAL TO THE DEFENDANT IF ZHANG AND
WOLFGRAM ARE PERMITTED TO BE BOTH ADVOCATE AND WITNESS**
--------------------------------------------------------------------------------------- 10

**Point II: EAGLE WAS THE IMPORTER OF RECORD OF ALL
CONTAINERS THAT CHEN CLEARED THROUGH CUSTOMS AND
AMERIWAY, AS THE LOGISTICS COMPANY, PAID DEFENDANT'S
INVOICES, THEREFORE THE TESTIMONY OF BOTH
WOLFGRAM AND ZHANG WILL BE REQIRED TO DETERMINE
WHICH COMPANY HAS STANDING TO BRING THIS ACTION
AGAINST DEFENDANT** -------------------------------------------------- 14


**POINT III: BOTH WOLFGRAM AND ZHANG'S TESTIMONY IS ESSENTIAL
ON THE ISSUE OF WHETHER CHEN HAD THE RIGHT TO LIEN THE
CONTAINERS & CARGO PURSUANT TO THE TERMS AND CONDITIONS OF
THE POWER OF ATTORNEY**-------------------------------------------------16

**POINT IV: ZHANG AND WOLFGRAMS TESTIMONY REGARDING THE
DISSOLUTION OF BOTH AMERIWAY AND EAGLE WILL BE NECESSARY**
-----------------------------------------------------------------------------------------18

**CONCLUSION**--------------------------------------------------------------------------19

# TABLE OF AUTHORITIES

**CASES CITED**                                                Page

*Bajohr v. Berg*, (39 N.Y.S.3d 241, 242-43 (N.Y. App. Div. 2016)------------------11-12

*Falk v. Gallo*, 901 N.Y.S.2d 99, 100 (N.Y. App. Div. 2010)------------------------12

Friia v. Palumbo, 932 N.Y.S.2d 542, 543 (N.Y. App. Div. 2011)------------------12

*Gen. Motors Corp. v. New York*, 501 F.2d 639, 641 (2d Cir. 1974)----------------11

*Goldberg & Connolly v. Upgrade Contr. Co.*, 24 N.Y.S.3d 124, 125
(N.Y. App. Div. 2016)----------------------------------------------------------------11

*Gould v. Decolator*, 15 N.Y.S.3d 145, 145 (N.Y. App. Div. 2015)-----------------11

*Ike & Sam's Grp., LLC v. Brach*, 29 N.Y.S.3d 53, 55
(N.Y. App. Div. 2016)----------------------------------------------------------------11

*Spielberg v. Twin Oaks Constr. Co*., 20 N.Y.S.3d 911, 912
(N.Y. App. Div. 2015)--------------------------------------------------------------11-12

*Taylor v. Wilderness Cap. Grp., Ltd.*, 40 N.Y.S.3d 650
(N.Y. App. Div. 2016)----------------------------------------------------------------12

*United States v. Hobson*, 672 F.2d 825, 828 (11th Cir. 1982)------------------------10-11

United States v. Trafficante, 328 F.2d 117, 120 (5th Cir. 1964)----------------------11

*Woods v. Covington Cnty. Bank*, 537 F.2d 804, 813 (5th Cir. 1976)-----------------11

**STATUTES AND REGULATIONS CITED**
                                                              Page

18 U.S.C.S. § 1962(c) (2022)--------------------------------------------------7

19 C.F.R. § 111.29 (2022)-----------------------------------------------------5

[19 C.F.R. § 141.1(b)(1) (2022)](#)------------------------------------------------------5

[19 C.F.R. 141.1 § (b)(3) (2022)](#)------------------------------------------------------5

[19 C.F.R. § 143.44(b) (2022)](#)------------------------------------------------------6

[19 U.S.C.S. § 1484 (2022)](#)------------------------------------------------------14

[19 U.S.C.S. § 1484 (a)(2)(B) (2022)](#)------------------------------------------------14

[N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.0 (2022)](#)------------------11-12


**OTHER AUTHORITIES**

[A.B.A. Code of Professional Responsibility EC 9-2](#)--------------------10

[CSMS # 12-000482](#)   ------------------------------------------------------5-7

[Customs Directive #3530-002A](#)   --------------------------------------14-15

[MODEL CODE OF PRO. CONDUCT r. 1.8
(AM. BAR ASS'N 2020)](#)------------------------------------------------------13

[MODEL CODE OF PRO. CONDUCT r. 1.9(a)
(AM. BAR ASS'N 2020)](#)------------------------------------------------------13-14

[MODEL CODE OF PRO. CONDUCT r. 1.10
(AM. BAR ASS'N 2020)](#)------------------------------------------------------13-14

[MODEL CODE OF PRO. CONDUCT r. 3.7
(AM. BAR ASS'N 2020)](#)------------------------------------------------------13-14

[MODEL CODE OF PRO. CONDUCT r. 3.7(a)
(AM. BAR ASS'N 2020)](#)------------------------------------------------------12

[MODEL CODE OF PRO. CONDUCT r. 3.7(a)(1)
(AM. BAR ASS'N 2020)](#)------------------------------------------------------12

[MODEL CODE OF PRO. CONDUCT r. 3.7(a)(2)
(AM. BAR ASS'N 2020)](#)------------------------------------------------------13

[MODEL CODE OF PRO. CONDUCT r. 3.7(a)(3)
(AM. BAR ASS'N 2020)](#)------------------------------------------------------1

**EXHIBITS IN SUPPORT OF MOTION TO DISQUALIFY:**

Exhibit A: Certificate of Formation of Limited Liability Company for Eagle Trading USA, LLC;

Exhibit B: Certificate of Incorporation  for Ameriway Corporation;

Exhibit C: Shareholders Agreement for Ameriway Corporation;

Exhibit D: Power of Attorney signed by Wolfgram and Zhang on behalf of Eagle Trading USA LLC with Defendant Chen to perform customs broker services (Redacted);

Exhibit E:  Email proof that Wolfgram used the pseudonym "Frank Tang"
in connection with business operations on behalf of Ameriway;

Exhibit F: Sampling of emails confirming Wolfgram's operational involvement in Ameriway;

Exhibit G: Email proof that Wolfgram utilized his law firm email address for business operations on behalf of Ameriway;

Exhibit H: Ability (Defendant) invoices for five containers at issue in this case sent to Zhang, and Eagle;

Exhibit H-1: Import documentation with respect to container number APHU7253481- Eagle Trading USA LLC is the importer of record;

Exhibit H-2: Import documentation with respect a container number BMOU4738454 – Eagle Trading USA LLC is the importer of record;

Exhibit H-3:  Import documentation with respect to container number BMOU539053- Eagle Trading USA LLC is the importer of record;

Exhibit H-4:   Import documentation with respect to container number HLXU8057236-Eagle Trading USA LLC is the importer of record;

Exhibit H-5:  Import documentation with respect to container number 00CU6964350- Eagle Trading USA LLC is the importer of record;

Exhibit I:  Ameriway 2018 income tax return (Redacted);

Exhibit J: Ameriway's 2019 income tax return (redacted);

Exhibit K: Second Amended Complaint;

Exhibit L: Letter from Wolfgram to this court dated November 1, 2021;

Exhibit M: Letter from Zhang, to this court dated December 17, 2021;

Exhibit N: Notice to Admit from Defendant with notations of Plaintiff's responses (see exhibit "O" for Ameriway's formal response);

Exhibit O: Ameriway's Response to Notice to Admit served on January 13, 2022.

Exhibit P: Certificate of Dissolution of Ameriway

Exhibit Q: List of invoices sent by Defendant to Eagle/Zhang that are unpaid

Exhibit R: Copies of invoices sent by Defendant that are unpaid

Exhibit S: Certificate of dissolution of Eagle

Exhibit T: Notification of unpaid customs duties by Eagle

<u>**PRELIMINARY STATEMENT AND FACTS**</u>

This memorandum of law and the exhibits submitted herewith is being submitted by Defendant in support of Defendant's application for an order disqualifying both attorney Xiyan Zhang ("Zhang") and Pete Wolfgram ("Wolfgram") of the Stratum Law firm by reason of the fact that both are key witnesses in their "non-attorney" capacity in connection with the issues in this case. More particularly, Zhang is the major shareholder and president/secretary of Plaintiff, Ameriway (See Exhibit "C" at Article 1 paragraph A(6)) and was intimately involved in every aspect of the underlying facts upon which this lawsuit is based. Wolfgram, while not a shareholder of Ameriway, upon information and belief is an officer of Ameriway and was also intimately involved in key aspect of the underlying facts upon which this lawsuit is based.

Zhang, formed Eagle Trading USA, LLC ("Eagle") on June 12, 2015 (see exhibit A) for the purposes of importing cargo from China into the United States for sale. Thereafter on September 28, 2016 Zhang formed United E-Logistics Corp. and amended the name of the corporation to Ameriway Corp. on February 11, 2017 (see Exhibit "B"). Initially, Zhang, was a 28% owner of Ameriway (see the Shareholders Agreement at Exhibit "C") but later became a 44.5% owner of Ameriway (see tax returns for 2018 and 2019 Exhibit "I" and Exhibit "J"). Pursuant to article I paragraph A(6) of the shareholders agreement (Exhibit "C"), Zhang, is the President and Secretary of Ameriway, and pursuant to the tax returns, Zhang, is the CEO of Ameriway (see exhibit I and J). Pursuant to its tax returns, Ameriway maintains offices at 2424 E. York Street, Ste 223, Philadelphia, Pennsylvania 19125 (See Exhibits "I" and "J"). Both Zhang and Wolfgram's law firm, Stratum Law, LLC also maintains offices at 2424 E. York Street, Ste 223, Philadelphia, Pennsylvania 19125 (See letterhead on letters to the Court from Wolfgram at Exhibit "L" and from Zhang at Exhibit "M").

1

Defendant, May Yan Chen (hereinafter "Chen") is a licensed customs broker with offices in California and operates under the trade name Ability Customs Brokers. Eagle by its COO and managing member, Xiyan Zhang represented to Chen that Eagle was an importer of an array of products from China. On or about April 11, 2017 Zhang, in his capacity as the COO of Eagle, executed a power of attorney appointing "May Y Chen d/b/a Ability Customs Brokers'" as Eagle's representative to import products into United States (see Exhibit "D"). Wolfgram, as Eagle's corporate counsel and as an "officer" of Eagle, verified Zhang's authority to sign the Customs Power of Attorney (See Exhibit "D")

Besides being the CEO of Plaintiff and COO of Eagle, Plaintiff's attorney, Xiyan Zhang, is admitted to practice in New York and is an attorney affiliated with a law firm of Stratum Law, LLC, also with offices located at 2424 E. York Street, Ste 223, Philadelphia, Pennsylvania, the Plaintiff's attorney in this action (See Exhibits "L" and "M").

From the date of the issuance of the Power of Attorney on April 11, 2017 until August, 2019 Chen cleared approximately 486 containers of cargo through customs in which Eagle was identified as the Importer of Record ("IOR") of all the containers.

In all cases, both Zhang and Wolfgram, not as attorneys, but as employees of Ameriway were intimately involved in the importation of the cargo that Defendant had cleared through customs. Besides using his own name, Wolfgram used the "pseudonym" "Frank Tang" in connection with his work on behalf of Ameriway in assisting in the importation of the cargo which is the subject of this lawsuit. (See email dated June 18, 2019 from Peter Wolfgram a/k/a Frank Tang at Exhibit "E").

Throughout the entire time Defendant was clearing cargo through customs, Defendant invoiced Zhang and Eagle, as the importer of record for work performed and services provided

(See five (5) sample invoices at Exhibit ""H").  However, in all cases, both Zhang and Wolfgram (either using his own name or his pseudonym "Frank Tang") either generated emails regarding the cargo being imported, were recipients of emails, or were copied on virtually every email sent or received regarding the cargo (see Exhibit ""F" for a "sampling" of emails regarding the importation and payment of fees and expenses of the cargo that was imported by Chen as the customs broker).

Soon after the issuance of the Power of Attorney on April 11, 2017 Chen began clearing containers on behalf of Eagle. Chen invoiced Eagle **and** Zhang for the customs broker services rendered, disbursements related to supply chain services and the advance payment of taxes in the form of customs duties. Ameriway paid all of the invoices sent to Eagle and Zhang until Ameriway stopped making any payments for containers that had cleared customs in March 2019 and thereafter. (In other words, payments continued through June 2019 for containers that had cleared customs through the beginning of March 2019, however no payments were made for any containers that cleared Customs from early March 2019 until Chen ceased performing services or advancing expenses and Customs duties in August 2019).

By August 2019 there were 131 unpaid invoices, each for a separate container in which Eagle was the Importer of Record ("IOR") and the outstanding balance owed to Chen was well over $300,000. (See Exhibit "Q" for a summary of all unpaid invoices sent by Chen/Ability to Zhang and Eagle. In August 2019, Chen advised Zhang that she was going to cease clearing Eagle's containers through customs unless a substantial payment was made, which did not occur.

At that time there were five (5) containers of goods in which Eagle was the IOR that had cleared customs, but had not yet been delivered and were still under Chen's "control".  Chen

exercised her lien rights pursuant to the power of attorney Eagle signed with Chen on April 11, 2017 on the following containers of cargo:

| Container # | Customs Entry # | |
|---|---|---|
| BMOU4739454 | 9NK-0010492-5<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |
| APHU7253481 | 9NK-0010528-6<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |
| BMOU5390536 | 9NK-0010461-0<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |
| HLXU8057236 | 9NK-0010498-2<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |
| OOCU6964350 | 9NK-0010377-8<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |

The back-up documentation for each of the foregoing containers is attached as

Exhibits "H-1", "H-2", "H-3", "H-4", and "H-5" which confirms that Eagle, not Ameriway, was the "Importer of Record" ("IOR"). When payment for customs duties was not forthcoming, Chen had the obligation and did put Customs on notice that she had not received payment from her customer for customs duties. IOR's are responsible for the payment of Customs duties. 19 C.F.R. § 141.1(b)(1) (2022). The IOR has the option of making payment directly to Customs (19 C.F.R. 141.1 § (b)(3) (2022)), however a Customs broker is often utilized as a conduit for payment of duties, in which event the imported cargo is designated as a "Remote Location Filing" or RLF. *See* 19 C.F.R. § 111.29 (2022). However, when an IOR refuses to pay the Customs duties, the Customs broker is obligated to notify Customs to remove the RLF designation from the import documentation pursuant to Customs regulation CSMS # 12-000482 which provides as follows:



CSMS# 12-000482 - Guidance Regarding Removal of Remote Location Filing (RLF) Entry from an ABI statement

*U.S. Customs and Border Protection sent this bulletin at 11/01/2012 04:23 PM EDT*

You are subscribed to ACE Portal Accounts for U.S. Customs and Border Protection. This information has recently been updated, and is now available.

**CSMS# 12-000482 - Guidance Regarding Removal of Remote Location Filing (RLF) Entry from an ABI statement**

*11/01/2012 05:06 PM EDT*

**ACE Portal Accounts**

The purpose of this message is to provide guidance on removing an RLF entry from an ABI statement. **RLF regulations require that the broker or importer direct the payment of RLF transactions using the Automated Clearinghouse (ACH) or other electronic payment authorized by CBP [***see*** 19 C.F.R. § 143.44(b) (2022)]. *However, there are circumstances under which the RLF entry must be removed from the ABI statement,* including cases of a duplicate entry or *when the importer refuses to pay the broker for the duties, taxes, and fees. In**

*<u>these cases, the following steps will be used:</u>*

• Please note: ABI filers have the ability to remove an entry summary from an ACH statement until the entry summary is scheduled for payment on a preliminary statement.

• If the entry summary has already been scheduled on a preliminary statement, the filer will advance the statement date to provide time for CBP to process the removal.

• The filer will submit the statement removal request in writing to the Entry Division. The request will include the entry number, statement number, and the reason for removal. It is critical that CBP process the request as soon as possible, to enable the importer or filer to make alternative payment arrangements.

• ***<u>In cases where the entry was removed from statement because the importer is refusing to pay the broker:</u>***

o **<u>CBP will remove the entry summary from the statement</u>**

o The filer will submit the entry summary package to CBP with a cover letter citing Treasury Decision 89-49. If the filer is not permitted at the specific port of entry, or if the entry summary is for a Center of Excellence and Expertise participant, the filer will mail, fax, or email (as directed by the port or Center) the paper entry summary package to the port or Center.

o CBP will then accept the entry summary and notify the filer that the entry summary has been removed from the statement.

o CBP will initiate a "No Pay" liquidated damage case against the entry summary; however, if the importer pays CBP prior to the case initiation, CBP will issue a "Money Late File" liquidated damage case.

o If the importer subsequently chooses to pay the duties on this entry summary, the port may accept payment on the entry via single pay.

In the case of the Five (5) containers in which the duties had not been advanced by Chen, and since Eagle never tendered the Customs duties to Chen, pursuant to CSMS# 12-000482, Chen notified Customs of the non-receipt of the Customs duties so that Customs would

remove the RLF designation and so that Customs would look to Eagle as the IOR, and not Chen for the duties.

In response, Zhang, on behalf of Ameriway, instituted the instant lawsuit on behalf of Ameriway, not on behalf of Eagle, the IOR, claiming that (*see* ECF 16 and 21):

1st Cause: Chen had converted the above five (5) containers and the cargo and Ameriway (not Eagle) was damaged as a result;

2nd Cause: Chen had "tortiously interfered" with Ameriway's business relationships by reason of withholding delivery of the above five (5) containers;

3rd Cause: Chen had engaged in unfair business practices as to Ameriway;

4th Cause: Chen had defamed Ameriway (related to the notification to customs of Eagle's failure to pay the customs duties);

5th and 8th Cause: Chen had defrauded Ameriway;

6th Cause: Chen had breached the fiduciary duty Chen allegedly owed to Ameriway;

7th Cause: Chen had engaged in a scheme to defraud Ameriway and was responsible to Ameriway for treble damages under 18 U.S.C.S. § 1962(c) (2022) (RICO);

Annexed as Exhibit "K" is a copy of the Second Amended Complaint which asserts the same causes of action.

Based upon the foregoing allegations by Plaintiff, Plaintiff is claiming that:

1. Defendant **overcharged Plaintiff, Ameriway for various out of pocket expenses invoiced to Eagle with respect to the 486 containers that Chen cleared customs on Eagle's behalf and is seeking damages for the excessive payments allegedly made;**

2. That Defendant did not provide a copy of the terms and conditions referred to in the Power of Attorney (*see* Exhibit "D") which provided that Defendant had the right to assert a general lien against any cargo in its possession (A copy of the terms and

conditions in effect at the time of the signing of the power of attorney is attached as Exhibit "D-1") and therefore Ameriway has been damaged as a result of the retention of the cargo in the above five (5) containers.

3. That because the five (5) containers of cargo are being held, the Eagle cargo could not be sold and as a result Ameriway is out of business and Ameriway is claiming damages by reason thereof.

It has been and still is Chen's position that Ameriway has no legal rights with regard to the five (5) containers it is holding pursuant to its exercise of its lien rights pursuant to the terms and conditions of the power of attorney that Chen signed with Eagle.

Further, it has been and still is Chen's position that all of the customs brokers services, advances paid by Chen for "supply chain services", and advances for customs' duties and taxes were incurred in connection with and furtherance of the authority given to Chen by Eagle not Ameriway, where Eagle was the Importer of Record and that at no time was any action taken by Chen on behalf of Ameriway and that even if Chen did overcharge as alleged (which Chen denies), the damaged party would be Eagle, not Ameriway and therefore Ameriway does not have standing to bring this lawsuit and has not incurred any damages.

Defendant served a Notice to Admit in discovery (*see* Exhibit "N") and Plaintiff responded on January 13, 2022 (*See* Exhibit "O"). The Court is respectfully directed to Plaintiff's responses to the following numbered paragraphs in the Notice to Admit:

Para. 37 (Zhang is a director of Ameriway);

Pars. 39 (Zhang is an officer of Ameriway);

Para 49/50 (Zhang is the CEO of Ameriway);

Para 53 (Zhang wrote the Ameriway Checks);

Para 83/86/89/92/95 (Ameriway is the owner of the cargo in the five (5) containers that are being held by Defendant pursuant to the exercise of her lien rights);

Para 99-104 (Ameriway is not the importer of record of the cargo in the five (5) containers that are being held by Defendant pursuant to the exercise of her lien rights);

Para 151/154/157/160/163 (Admits Eagle is not the owner of the cargo in the five (5) containers that are being held by Defendant pursuant to the exercise of her lien rights);

The parties have held a discovery and inspection of the cargo in the five (5) containers that are being held by Defendant and each boxed item had the name of the seller and buyer of the products in each box, none of which was either Eagle or Ameriway.

Based upon all the foregoing uncontested facts and contested issues, it is respectfully submitted that both Zhang, as the defacto owner of Ameriway, who was clearly involved in every business transaction between the Plaintiff and Defendant and Wolfgram, who was clearly involved in the day-to-day business operations of Ameriway are vital witnesses to all the claims and defenses raised in this case. No depositions have been held in this case, but it appears that both Zhang and Wolfgram had and have a significant pecuniary interest in the millions of dollars of cargo imported over the period 2017 through 2019 (through which business entity is still unknown).

Further, the part each of Zhang and Wolfgram played in the execution of the Power of Attorney (Exhibit "D") and whether or not either read or received the terms and conditions referred to in the POA has now become a vital issue in the case given the fact that the right to exert general lien rights against the cargo being held will likely have an effect on Chen's ability to collect the approximate $400,000 that is owed by Zhang/Eagle for the unpaid invoices.

**POINT I: <u>IT IS PREJUDICIAL TO THE DEFENDANT IF ZHANG AND WOLFGRAM ARE PERMITTED TO BE BOTH ADVOCATE AND WITNESS</u>**

Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client.

In the case of *United States v. Hobson*, (a case involving disqualification of a defense attorney because of the likelihood of evidence severely impugning the character of the attorney coming before the trial judge) the court held that Canon 9 of the A.B.A. Code of Professional Responsibility provides that "…A lawyer should avoid even the appearance of professional impropriety..." 672 F.2d 825, 828 (11th Cir. 1982).

The purpose of Canon 9 is to preserve public confidence in the bar and in the legal process. This confidence "may be eroded by irresponsible or improper conduct of a lawyer." A.B.A. Code of Professional Responsibility EC 9-2. Because some conduct that is ethical in fact may be perceived by laypersons as unethical, members of the bar are held by Canon 9 to a standard that prohibits not only actual impropriety but conduct that may simply appear to be improper. Thus, attorneys have been disqualified under the appearance of impropriety doctrine even where there was no evidence of actual wrongdoing. *See Woods v. Covington Cnty. Bank*, 537 F.2d 804, 813 (5th Cir. 1976) (*citing Gen. Motors Corp. v. New York*, 501 F.2d 639, 641 (2d Cir. 1974); *United States v. Trafficante*, 328 F.2d 117, 120 (5th Cir. 1964)).

The Court in *Woods v. Covington Cnty. Bank*, *supra*, set forth a two-prong test for disqualification of an attorney under Canon 9.

**First**, although there need not be proof of actual wrongdoing, "…there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur…" 537 F.2d at 813.

**Second**, "…a court must also find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case…" *Id.* at 813 n. 12.

The court in Hobson applied the **two-prong test for disqualification under Canon 9**

found in an earlier Fifth Circuit case (*United States v Hobson*, 672 F.2d 825, 828).

In the New York case of *Bajohr v. Berg*, (39 N.Y.S.3d 241, 242-43 (N.Y. App. Div. 2016)), the court held that the disqualification of an attorney is a matter that rests

within the sound discretion of the trial court (*see Ike & Sam's Grp., LLC v. Brach*, 29 N.Y.S.3d 53, 55 (N.Y. App. Div. 2016); *Goldberg & Connolly v. Upgrade Contr. Co.*, 24 N.Y.S.3d 124, 125 (N.Y. App. Div. 2016); *Spielberg v. Twin Oaks Constr. Co.*, 20 N.Y.S.3d 911, 912 (N.Y. App. Div. 2015)). The *Bajohr*, *supra* court held that:

> "…The advocate-witness rules contained in the Rules of Professional Conduct (N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.0 (2022)) rule 3.7 provide guidance, but not binding authority, for courts in determining whether to disqualify an attorney' " (*Spielberg v. Twin Oaks Constr. Co.*, 20 N.Y.S.3d at 911, quoting *Gould v. Decolator*, 15 N.Y.S.3d 145, 145 (N.Y. App. Div. 2015). " '[P]ursuant to rule 3.7 of the Rules of Professional Conduct (N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.0 (2022)), unless certain exceptions apply, [a] lawyer shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact' " (*Spielberg v. Twin Oaks Constr. Co.*, 20 N.Y.S.3d at 912, *quoting Friia v. Palumbo*, 932 N.Y.S.2d 542, 543 (N.Y. App. Div. 2011)).

The court in *Falk v. Gallo*, (901 N.Y.S.2d 99, 100 (N.Y. App. Div. 2010))  held that the

Supreme Court properly granted the defendants' motion to disqualify the plaintiffs' attorney; the

plaintiffs' attorney was "likely to be a witness on a significant issue of fact," as he was the only

person, other than the parties, who was privy to the conversations regarding the terms of the oral

agreement underlying this litigation. Citing Rule 3.7 of the Rules of Professional Conduct the

*Falk*, *supra* court held that "…[a] lawyer shall not act as an advocate before a tribunal in a matter

in which the lawyer is likely to be a witness on a significant issue of fact" (Rules of Professional Conduct [N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0 (2022)] rule 3.7). *See Taylor v. Wilderness Cap. Grp., Ltd.*, 40 N.Y.S.3d 650 (N.Y. App. Div. 2016).

A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

To protect the tribunal, paragraph (a) of the "Advocate/witness rule" prohibits a lawyer from simultaneously serving as advocate and necessary witness except in those circumstances specified in paragraphs (a)(l) through (a)(3). Model Code of Pro. Conduct r. 3.7(a) (Am. Bar Ass'n 2020). Paragraph (a)(l) recognizes that if the testimony will be uncontested, the ambiguities in the dual role are purely theoretical. Model Code of Pro. Conduct r. 3.7(a)(1) (Am. Bar Ass'n 2020). Paragraph (a)(2) recognizes that where the testimony concerns the extent and value of legal services rendered in the action in which the testimony is offered, permitting the lawyers to testify avoids the need for a second trial with new counsel to resolve that issue. Model Code of Pro. Conduct r. 3.7(a)(2) (Am. Bar Ass'n 2020). Moreover, in such a situation the judge has firsthand knowledge of the matter in issue; hence, there is less dependence on the adversary process to test the credibility of the testimony.

Apart from these two exceptions, paragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party. Model Code of Pro. Conduct r. 3.7 (a)(3) (Am. Bar Ass'n 2020). Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the

case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses.

The following issues will require the testimony of both Wolfgram and Chen, any one of which would be sufficient to disqualify each as attorney for Plaintiff:

1. Eagle and Ameriway are companies related by the common management of Xiyan Zhang and Pete Wolfgram (MODEL CODE OF PRO. CONDUCT r. 1.8 (AM. BAR ASS'N 2020));

2. Eagle and Ameriway have conflicting interests with respect to the issue of liability to Chen with respect to the importation of goods for fees, customs duties and other charges, since Eagle, as the Importer of Record and the party that signed the Power of Attorney is clearly liable to Defendant for unpaid fees and unreimbursed expenses, and Ameriway, the logistics company, owned by Zhang, that was paying all the bills to Defendant, Chen ((MODEL CODE OF PRO. CONDUCT r. 1.9(a) (AM. BAR ASS'N 2020); MODEL CODE OF PRO. CONDUCT r. 1.10 (AM. BAR ASS'N 2020));

3. Zhang is more than an attorney witness, as the CEO and President of Ameriway and COO of Eagle he is directly involved in establishing and managing the operations and relationships between Eagle and Ameriway and creation of the documents submitted to U.S. Customs and therefore an essential witness (MODEL CODE OF PRO. CONDUCT r. 3.7 (AM. BAR ASS'N 2020));

4. Zhang is more than an attorney witness, he is directly involved in the day-to-day management of Ameriway and its related companies, including Eaglet and therefore a primary witness (*Id.*);

5. Stratum Law has represented both Eagle and Ameriway ((MODEL CODE OF PRO. CONDUCT r. 1.9(a) (AM. BAR ASS'N 2020); MODEL CODE OF PRO. CONDUCT r. 1.10 (AM. BAR ASS'N 2020));

6. Zhang is a principal, and Wolfgram is an associate at Stratum Law which maintains/shares offices with Ameriway (See Exhibits "I", "J", "L", and "M") (MODEL CODE OF PRO. CONDUCT r. 1.10 (AM. BAR ASS'N 2020)).

By reason thereof, both Wolfgram and Zhang will be essential witnesses in this case, and both should be disqualified as counsel for Plaintiff.

**Point II:** **EAGLE WAS THE IMPORTER OF RECORD OF ALL CONTAINERS THAT CHEN CLEARED THROUGH CUSTOMS AND AMERIWAY, AS THE LOGISTICS COMPANY, PAID DEFENDANT'S INVOICES, THEREFORE THE TESTIMONY OF BOTH WOLFGRAM AND ZHANG WILL BE REQIRED TO DETERMINE WHICH COMPANY HAS STANDING TO BRING THIS ACTION AGAINST DEFENDANT**

19 U.S.C.S. § 1484(a)(2)(B) (2022) defines an Importer of Record as follows:

"…(B) When an entry of merchandise is made under this section, the **required documentation or information shall be filed or electronically transmitted either by the owner or purchaser of the merchandise or, when appropriately designated by the owner, purchaser, or consignee of the merchandise, a person holding a valid license under section 1641 of this title.** When a consignee declares on entry that he is the owner or purchaser of merchandise the Customs Service may, without liability, accept the declaration. **For the purposes of this chapter, the importer of record must be one of the parties who is eligible to file the documentation or information required by this section…"**

1.      Pursuant to Customs Directive #3530-002A, which was issued in furtherance of

19 U.S.C.S. § 1484 (2022), only certain parties to a transaction may act as the Importer of

Record when making a declaration and entry of goods imported into the United States.

2.      Customs Directive 3530-002A provides in part that:

"…5.1.2 Section 1484 provides that only the "importer of record" has the right to make entry.  "Importer of Record" is defined as the owner or purchaser of the goods, or when designated by the owner, purchaser, or consignee, a licensed Customs broker…"

3.      Customs Directive 3530-002A further provides in part that:

"…5.3    **OWNER OR PURCHASER DEFINED**

**5.3.1   The terms "owner" and "purchaser" include any party with a financial interest in a transaction, including, but not limited to, the actual owner of the goods, the actual purchaser of the goods, a buying or selling agent, a person or firm who imports on consignment,** a person or firm who imports under loan or lease, a person or firm who imports for exhibition at a trade fair, a person or firm who imports goods for repair or alteration or further fabrication, etc.  Any such owner or purchaser may make entry on his own behalf or may designate a licensed Customs broker to make entry on his behalf and may be shown as the importer of record on

the CF 7501. **The terms "owner" or "purchaser" would not include a "nominal consignee" who effectively possesses no other right, title, or interest in the goods except as he possessed under a bill of lading, air waybill, or other shipping document…"** [Emphasis added.]

"…5.3.2 E x a m p l e s of nominal consignees not authorized to file Customs entries are **express consignment operators (ECO), freight consolidators who oversee consolidated shipments as described in 5.10 below, and Customs brokers** who are not permitted to transact business in Customs ports where a shipment is being entered…"

Despite Ameriway's claims that it owns the containers and the cargo to the contrary, the paperwork is clear that for all the containers of cargo at issue in this case, Eagle was the sole Party in Interest as the Importer of Record (see copies of the unpaid invoices and customs entry documents at Exhibit "H" and "H-1 through H-5" submitted in support of this motion, all of which identify Eagle as the Importer of Record). Further, as the customs broker, Defendant has to answer to U.S. Customs as to why Customs Duties on cargo she imported and cleared through Customs was unpaid. (See Notice to Defendant of unpaid Customs duties cleared through Customs on behalf of Zhang/Eagle at Exhibit "T").

These are significant issues in this case and both Zhang and Wolfgram, as the active parties on behalf of Ameriway and the parties that signed the Power of Attorney on behalf of Eagle, are critical and essential witnesses to these fundamental issues that are before this Court.

By reason of the foregoing, both are key witnesses as to who is the proper party to enforce any claims with regard to the containers/cargo Chen cleared through customs pursuant to the Power of Attorney (Exhibit "D").

**POINT III: BOTH WOLFGRAM AND ZHANG'S TESTIMONY IS ESSENTIAL ON THE ISSUE OF WHETHER CHEN HAD THE RIGHT TO LIEN THE CONTAINERS & CARGO PURSUANT TO THE TERMS AND CONDITIONS OF THE POWER OF ATTORNEY**

Zhang, executed the Power of Attorney ("POA") as COO on behalf of Eagle Trading USA, LLC and Wolfgram countersigned the POA as counsel **AND AN OFFICER OF** Eagle and further Wolfgram verified that Zhang had the authority to do so by reason of a corporate meeting authorizing Zhang to retain Chen as its customs broker (see Exhibit "D"). The Power of Attorney Zhang signed with Chen (Exhibit "D") provides as follows:

> "…Grantor acknowledges receipt of May Y Chen DBA Ability Customs Brokers' Terms and Conditions of Service between the parties. If the Grantor is a Limited Liability Company, the signatory certifies that he/she has full authority to execute this power on behalf of the Grantor…"

Under the "Corporate Certification" of the POA, Wolfgram as the "officer other than the one who executes the power of attorney…" attests to the fact that:

> "…Xiyan Zhang, who signed this power of attorney on behalf of the donor, is the COO of said corporation, and that said power of attorney was duly signed, and attested for and on behalf of said corporation by authority of its governing body as the same appears in a resolution of the Board of Directors passed at a regular meeting held on the 10th day of April, 2017 now in my possession or custody…"

Plaintiff, Ameriway is taking the position in this case that the "terms and conditions" referred to in the POA was never provided to Eagle or to Zhang or Wolfgram and therefore the General Lien asserted over the five (5) containers of cargo is invalid.

Defendant, Chen, on the other hand, has asserted that Zhang and Wolfgram provided Defendant with inaccurate information with regard to the values of the cargo that was declared in

numerous customs entries, which potentially could subject Chen to liability in connection with

her duties as the customs broker

Paragraphs 11, 13 and 16 of the Terms and Conditions of the Power of Attorney entered

into by Defendant, Eagle with Plaintiff (Exhibit D-1") provides as follows:

"…11.  Indemnification for Freight, duties. In the event that a carrier, other person or any government agency makes a claim or institutes legal action against the company for ocean or other freight duties, fines, penalties, liquidated damages or other money due arising from a shipment of goods or the customer, the customer agrees to indemnify and hold harmless the company for any amount the company may be required to pay such carrier, or other person or governmental agency together with reasonable expenses including attorney fees , incurred by the company in connection with defending such claim or legal action and obtaining reimbursement from the customer. The confiscation or detention of the goods by any governmental authority should not affect or diminish the liability of the customer to the company to pay all charges or other money promptly on demand…"


"…13.  General lien on any property. The company shall have a general lien on any and all (and documents relating there too) of the customer, in his possession, custody or control or on route, for all claims for charges, expenses or advances incurred by the company in connection with any shipments of a customer and such claim remains unsatisfied for thirty (30) days after demand for its payment is made, the company may sell at public auction or private sale upon ten (10) days written notice registered mail (R. R. R.) to the customer, the goods, wares, and/or merchandise, or so much thereof as may be necessary to satisfy such lien, and apply the net proceeds of such sale to the payment of the amount due to the company. Any surplus from such sale shall be transmitted to the customer, and the customer shall be liable for any deficiency in the sale…"

"…16.  Indemnity against liability arising from the importation of merchandise. The customer agrees to indemnify and hold the company harmless from any claims and/or liability arising from the importation of merchandise which violates any federal, state and/or other laws or regulations and further agrees to indemnify and hold the company harmless against any and all liability, loss, damages, cost, claims and or expenses, including but not limited to attorney's fee, which the company may hereinafter incur, suffer or be required to pay by reason of claims by any government agency or private party. In the event that any action, suit or proceeding is brought against the company by any government agency or any private party, the company shall give notice in writing to the customer by mail at its address on file with the company. Upon receipt of such notice, the customer at its own expense shall defend against such action and take all steps as may be necessary or proper to prevent the obtaining of a judgment and/or order against the company…"

By reason of the issues raised by both parties in this case, both Wolfgram and Zhang are critical witnesses (as is the Defendant) to the issues surrounding the execution of the Power of Attorney and the receipt or alleged "non-receipt" of the terms and conditions.

Whether Defendant has the right to assert a general lien against the cargo being liened, which, upon information and belief has a liquidation value that will cover most if not all the money owed by Eagle and Zhang to Defendant, is an issue that will be decided by the jury at trial. Whether Defendant has the right of contractual indemnification against Zhang and Eagle with regard to unpaid duty and expenses incurred yet unpaid on Eagle/Zhang's behalf is also an issue that will be resolved at trial.

Based upon the foregoing, it is respectfully submitted that both Wolfgram and Zhang will be key witnesses and therefore should be disqualified as counsel for Plaintiff.

### POINT IV: ZHANG AND WOLFGRAM'S TESTIMONY REGARDING THE DISSOLUTION OF BOTH AMERIWAY AND EAGLE WILL BE NECESSARY

Through independent investigation, we have learned that Ameriway was dissolved on March 1, 2020, which would lead to the "strong probability" that it was having serious financial problems in August 2019 (The Certificate of Dissolution of Ameriway is attached as Exhibit "P"). More importantly Eagle was dissolved on June 1, 2019 while Chen was still clearing containers on behalf of Eagle, as the IOR at the request and behest of Zhang and Wolfgram. In fact, 71 of the 131 containers that Chen cleared Customs and which Chen advanced out-of-pocket expenses and Customs duties on Eagle's behalf, were cleared after June 1, 2019 (See Exhibits "Q" [list of invoices and dates], "R" [copies of all the invoices], and "S" [Certificate of Dissolution of Eagle] submitted in support of this motion).

It is respectfully submitted that now, knowing the foregoing information, Zhang and

Wolfgram's testimony as to the financial condition of Ameriway and Eagle and the rights Ameriway may or may not have now with respect to the Five (5) containers that Defendant has exerted a lien against will be necessary.

## CONCLUSION

By reason of the foregoing, it is respectfully requested that Chen's application to disqualify both Zhang and Wolfgram as counsel for Plaintiff, Ameriway Corp. be granted and for such other and further relief as to this Court may seem just and proper.

Respectfully submitted,
Shayne Law Group

*/s/ William Shayne*____
By: William Shayne, Esq.
Attorneys for the Defendants
64 Fulton Street, Suite 1000
New York, New York 10038
212-566-4949