# EXHIBIT "C"

AMERIWAY CORPORATION SHAREHOLDER AGREEMENT

This Shareholder Agreement (the "Agreement") is made and entered into effective as of this 28th day of September, 2016, by and amongst Ameriway Corporation, a Delaware corporation (the "Corporation"), and each of the undersigned shareholders of the Corporation (collectively, the "Shareholders" and individually, a "Shareholder").

Background Information

A. As of the date of this Agreement, the total number of shares that the Corporation is authorized to issue is 1,000,000 common shares, (with par value of $0.01 per share), of which eight hundred and seventy thousand (870,000 shares) are issued, outstanding, and owned in the following manner:

| Shareholder | Shares |
| --- | --- |
| Xiaohong Liu | 225,000 |
| Huan Yu | 200,000 |
| Xiyan Zhang | 245,000 |
| Kam Hung Lee | 200,000 |

B. The Corporation wholly owns the subsidiary 深圳联特国际物流有限公司.

C. The Shareholders and the Corporation desire to enter into this Agreement (i) to regulate certain aspects of the affairs of the Corporation, (ii) to obtain and preserve the Subchapter S status of the Corporation, (iii) to restrict the transferability of the shares of capital stock of the Corporation, and (iv) to provide for the purchase and sale of the shares of capital stock of the Corporation under certain circumstances.

Provisions

Now, therefore, in consideration of the foregoing and the mutual promises and covenants set forth herein, the parties hereto agree as follows:

Article I
General Provisions

A. Definitions   For the purposes of this Agreement, the following terms shall have the following meanings:

1. Affiliate. An "Affiliate" of a Shareholder shall mean a corporation, partnership, limited liability company, proprietorship, or other business entity of which the Shareholder or a Related Person is an officer, director, partner, member, or an owner of more than a five-percent (5%) equity interest.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY            AMERIWAY - 0077171

2. Bona Fide Offer. "Bona Fide Offer" shall mean a bona fide written offer to purchase Shares that meets each of the following criteria:

   a. The Offeror is named in the offer and is neither a Related Person nor an Affiliate;

   b. The price per Share for the Shares shall be separately set forth, which price shall be payable in cash either at the closing or on a deferred basis;

   c. The proposed purchase of Shares shall be independent of any other transaction and the offer shall not be subject to any contingencies other than (i) the ability of the Offeror to obtain financing, (ii) satisfactory documentation of the purchase, (iii) the ability of the Offeree Shareholder to transfer good, unencumbered title to its Shares, and (iv) the lack of material adverse to Liu, Yu, or X-Investors in the business or financial condition of the Corporation; and

   d. The Offer shall set forth all material terms and conditions of the proposed transaction.

3. Closing Date. "Closing Date" shall mean the date for consummation of purchases and sales of Shares on the death or Permanent Disability of Mr. Zhang or Liu, Yu, or Lee pursuant to Section IV(C)(3) or on the exercise of an option under Sections IV(E)(2) or IV(E)(3)(b).

4. Code. "Code" shall mean the Internal Revenue Code of 1986, as amended.

5. Corporation. "Corporation" shall mean Ameriway Corporation, a Delaware corporation organized pursuant to Del. Code tit. 8, § 100, *et. seq*.

6. Mr. Zhang. "Mr. Zhang" shall mean Xiyan Zhang, who is presently a resident of the State of Pennsylvania and the President and Secretary of the Corporation.

7. Zhang Family Members. "Mr. Zhang's Family Members" shall mean Mr. Zhang, his spouse, his lineal descendants, and the spouses of his lineal descendants. Mr. Zhang's Family Members shall also include any trust for the benefit of, or any partnership, limited liability company, or corporation wholly-owned by any of the foregoing individuals, provided that all decisions regarding voting and disposition of Shares held by such trust, partnership, limited liability company, or corporation are controlled by the foregoing individuals.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY        AMERIWAY - 0077172

8. Zhang Shareholders. Zhang Shareholders shall mean (A) Mr. Zhang, for so long as he continues to hold Shares, and (B) any Mr. Zhang Family Members who hereafter acquire Shares (and such Zhang Family Members shall continue to be Zhang Shareholders even if they are no longer Zhang Family Members because of, for example, the death or Permanent Disability of Mr. Zhang.)

9. Family Members. "Family Members" shall mean, with respect to any Zhang Shareholder, Zhang Family Members, and with respect to any Liu, Yu, or Lee Shareholder, Liu, Yu, or Lee Family Members.

10. Family Shareholders. "Family Shareholders" shall mean, with respect to any Zhang Shareholder, other Zhang Shareholders, and with respect to any Liu, Yu, or Lee Shareholder, other Liu, Yu, or Lee Shareholders.

11. Offered Shares. "Offered Shares" shall mean the Shares which the Offeree Shareholder (acting alone or in concert with other Family Shareholders) proposes to transfer to the Offeror.

12. Offeree Shareholder. "Offeree Shareholder" shall mean a Shareholder who receives, and desires to accept, a Bona Fide Offer with respect to its Shares.

13. Offeror. "Offeror" shall mean the person or entity making a Bona Fide Offer.

14. Other Shareholders. "Other Shareholders" shall mean, with respect to a Zhang Shareholder, the Liu, Yu, or Lee Shareholders, and with respect to a Liu, Yu, or Lee Shareholder, the Zhang Shareholders, and with respect to a Liu Shareholder, the Zhang, Yu, or X-Investor Shareholder, and with respect to a Yu Shareholder, the Zhang, Liu, or X-Investor Shareholder, and with respect to X-Investor Shareholder, the Zhang, Liu, or Yu Shareholder.

15. Permanent Disability. "Permanent Disability" shall mean either (i) if there are buy-sell disability insurance policies covering the permanent disability of Mr. Zhang or Liu, Yu, or Lee, the definition of permanent disability in such policies, or (ii) if there are not buy-sell disability insurance policies covering the permanent disability of Mr. Zhang and Liu, Yu, or Lee, the inability of Mr. Zhang or Liu, Yu, or Lee, as the case may be, to perform his (or her) material duties on behalf of the Corporation for one hundred eighty (180) days during any twelve (12) month period.

16. Policies. No buy-sell disability insurance policy is required of the Shareholders.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY         AMERIWAY - 0077173

17. Related Person. "Related Person" shall mean a spouse, sibling, lineal ancestor, or descendant, or any spouse of a sibling, lineal ancestor, or descendant, of a Shareholder.

18. Section. "Section" shall mean the same as "Article."

19. Shareholder. "Shareholder" shall mean any holder of Shares.

20. Shares. "Shares" shall mean any shares of capital stock of the Corporation or any beneficial interest in such shares.

21. Share Value. "Share Value" shall mean the value per Share agreed upon by Mr. Zhang, Liu, Yu, and Lee and reflected in a Certificate of Value signed and dated by Mr. Zhang, Liu, Yu, and Lee. The Share Value may be updated by Mr. Zhang, Liu, Yu, or Lee as often as they so desire but if the Certificate of Value is more than twelve months old, the Share Value shall then be determined by appraisal as follows. Selling Shareholders holding a majority of the Shares held by the selling Shareholders shall appoint a representative of the selling Shareholders. The Corporation and the representative of the selling Shareholders shall appoint an appraiser to determine the fair market value of each Share as of the date of death or Permanent Disability. If the representative of the selling Shareholders and the Corporation are unable to agree on an appraiser within twenty-eight (28) days after the date of death or Permanent Disability, then the representative of the selling Shareholders and the Corporation shall each appoint an appraiser. The two appraisers shall determine the fair market value of each Share as of the date of death or Permanent Disability. If the two appraisers cannot agree upon a value within thirty (30) days after their appointment, then the two appraisers shall select a third appraiser. The average value determined by the three appraisers shall be binding upon all Shareholders and the Corporation and in any court of competent jurisdiction. The costs of such appraisals shall be borne equally by the selling Shareholders (allocated among the selling Shareholders in accordance with the number of Shares sold) and the Corporation.

22. Liu, Yu, or Lee. Liu, Yu, or Lee shall mean Liu, Yu, or Lee. Liu is a resident of Shenzhen, China. Yu is a resident of Shenzhen, China. Lee is a resident of Georgia.

23. Liu, Yu, or Lee Family Members. Liu, Yu, or Lee Family Members shall mean Liu, Yu, or Lee, his spouse, his lineal descendants, and the spouses of his lineal descendants. Liu, Yu, or Lee Family Members shall also include any trust for the benefit of, or any partnership, limited liability company, or corporation wholly-owned by any of the foregoing individuals, provided that all decisions regarding voting and disposition of Shares held by such trust, partnership, limited liability company, or corporation are controlled by the foregoing individuals.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY          AMERIWAY - 0077174

24. Liu, Yu, or Lee Shareholders. Liu, Yu, or Lee Shareholders shall mean (A) Liu, Yu, or Lee, for so long as he continues to hold Shares, and (B) any Liu, Yu, or Lee Family Members who hereafter acquire Shares (and such Liu, Yu, or Lee Family Members shall continue to be Liu, Yu, or Lee Shareholders even if they are no longer Liu, Yu, or Lee Family Members because of, for example, the death or Permanent Disability of Liu, Yu, or Lee.)

25. Tendered Shares. "Tendered Shares" shall mean Shares tendered by a Shareholder pursuant to Section IV(E)(3)(c).

26. Transfer. "Transfer" shall mean (i) any sale, exchange, gift, bequest, hypothecation, pledge, or grant of a security interest or (ii) any other disposition of Shares, whether voluntarily, involuntarily, by operation of law, or otherwise, that would change the legal or beneficial ownership of the Shares. A "Transfer" includes, without limitation, any transaction that creates a form of joint ownership in the Shares between the transferor and one or more persons (whether or not that other person is the spouse of the transferor) or any transaction that creates or grants an option, warrant, or right to obtain an interest in the Shares.

B. Close Corporation Agreement. This Agreement is to be governed by the Code of Delaware and is a "close corporation agreement" as that term is defined in the Code of Delaware. This Agreement shall be entered in the record of minutes of the proceedings of shareholders of the Corporation.

C. Effect on Other Governing Instruments. This Agreement shall regulate certain aspects of the Corporation's internal affairs and the relations of the Shareholders among themselves to the extent set forth herein. If any provision of the Corporation's Articles of Incorporation or Code of Regulations or Delaware law is inconsistent with this agreement, the parties to this Agreement hereby waive such inconsistent provisions, to the extent such provisions may be waived, and to the maximum extent necessary to carry out the purposes of this Agreement. To the extent not inconsistent with the provisions of this Agreement, Delaware law shall regulate aspects of the internal affairs of the Corporation and the relations of the Shareholders among themselves.

Article II
Corporate Governance Provisions

A. Election of Directors. Throughout the term of this Agreement, the Board of Directors of the Corporation shall consist of four Directors –
    a. One of whom shall be appointed by Mr. Zhang
    b. One of whom shall be appointed by Liu.
    c. One of whom shall be appointed by Yu.
    d. One of whom shall be appointed by Lee.

Any vacancy in the Board of Directors shall be filled by the person who appointed the Director whose death, resignation, or removal caused such vacancy to exist.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY    AMERIWAY - 0077175

B. Distribution for Taxes. Subject to any limitations on distributions under applicable state or federal law, the Corporation and the Shareholders agree as follows:

1. Distributions. Subject to the terms of this Section II(B), the Corporation shall make pro rata distributions of money, based on ownership of Shares, sufficient to fully fund each Shareholder's payment of all federal, state, and local income taxes on the income (net of any tax benefits produced for the Shareholders by the Corporation's losses, deductions, and credits) that passes through from the Corporation to the Shareholders under the applicable provisions of the Code – which taxes shall be calculated, for this purpose, on the assumption that each Shareholder is subject to the highest marginal rate of taxation to which any Shareholder is subject. The Corporation shall make the distributions required by this Section II(B) in a timely manner to allow the tax (including, without limitation, estimated tax payments) attributable to the income passed through the Corporation to any Shareholder to be paid when due.

2. Discretion to Withhold or Delay Distributions. Notwithstanding any other provision of this Agreement, the Corporation may withhold or delay any distribution otherwise required to be made pursuant to Section II(B)(1), but only if the Board of Directors unanimously determines that the financial or business condition of the Corporation would be materially and adversely affected if such distribution were not withheld or delayed.

3. Pro Rata Distributions. Nothing in this Section shall cause the total distributions paid with respect to (as opposed to in exchange for) any outstanding Share to differ from the amounts paid with respect to any other outstanding Share.

4. Additional Distributions Not Precluded. Nothing in this Section II(B) shall be construed to limit the ability of the Corporation to declare and pay additional distributions to the Shareholders out of the assets of the Corporation legally available for such payment at such time or times as the Corporation's Board of Directors may determine.

Article III
Provisions Relating to the Policies

[Intentionally deleted]

Article IV
Restrictions on Transfers of Shares

A. Restrictions on Transfers to Preserve Subchapter S Status.
   1. General Restrictions. No Shareholder may Transfer, and no person may acquire, the legal or beneficial ownership of any Share if such Transfer or acquisition would cause the Subchapter S status of the Corporation to terminate. Specifically, no Transfer may be made to, and no acquisition may be made by, any person who would cause

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY          AMERIWAY - 0077176

the Corporation to have more than the maximum number of shareholders under the Code as then in effect (with such maximum presently equal to 100 shareholders) or to any person that is not eligible to be a shareholder of an S corporation under the provisions of the Code as in effect at the time of the purported Transfer (presently including nonresident aliens and any person other than an individual, an estate, certain trusts, and certain tax-exempt organizations).

2. Amendment to this Agreement. In addition to the requirements of Section IV(A)(1) and the other restrictions in this Agreement, no Transfer of Shares shall be permitted, and no purported Transfer shall be effective, until the transferee has executed a supplemental signature page to this Agreement. All parties agree that upon execution and acceptance of a supplemental signature page, this Agreement shall be amended and the transferee shall have the rights and obligations of a Shareholder under this Agreement. Each such amendment shall be annexed to this Agreement, and copies thereof shall be forwarded to each Shareholder by the Corporation.

B. General Prohibition of Transfers. Except as otherwise specifically authorized under Sections IV(C), IV(D), IV(E), and IV(F), and subject to Section IV(A), no Shareholder shall Transfer any of his Shares during his lifetime or as a result of his death.

C. Buy-Out on Death or Permanent Disability.

1. In General. Upon the death or Permanent Disability of Mr. Zhang, the Liu, Yu, and Lee Shareholders shall purchase in equal proportions and the Zhang Shareholders shall sell all of the Shares held by the Zhang Shareholders on the terms and conditions set forth in this Section IV(C); provided, however, that if there is no buy-sell disability insurance Policy covering the permanent disability of Mr. Zhang, the Zhang Shareholders shall not be required to sell any of the Shares held by the Zhang Shareholders on the terms and conditions set forth in this Section IV(C). Upon the death or Permanent Disability of Liu, the Zhang, Yu, or Lee Shareholders shall purchase in equal proportions and the Liu Shareholders shall sell all of the Shares held by the Liu Shareholders on the terms and conditions set forth in this Section IV(C); provided, however, that if there is no buy-sell disability insurance Policy covering the permanent disability of Liu, the Liu, Shareholders shall not be required to sell any of the Shares held by the Liu Shareholders on the terms and conditions set forth in this Section IV(C). Upon the death or Permanent Disability of Yu, the Zhang, Liu, or Lee Shareholders shall purchase in equal proportions and the Yu Shareholders shall sell all of the Shares held by the Yu Shareholders on the terms and conditions set forth in this Section IV(C); provided, however, that if there is no buy-sell disability insurance Policy covering the permanent disability of Yu, the Yu, Shareholders shall not be required to sell any of the Shares held by the Yu Shareholders on the terms and conditions set forth in this Section IV(C). Upon the death or Permanent Disability of Lee, the Zhang, Yu, or Liu Shareholders shall purchase in equal proportions and the Lee Shareholders shall sell all of the Shares held by the Lee Shareholders on the terms and conditions set forth in this Section IV(C); provided, however, that if there is no buy-sell disability insurance Policy

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY         AMERIWAY - 0077177

covering the permanent disability of Lee, the Lee Shareholders shall not be required to sell any of the Shares held by the Lee Shareholders on the terms and conditions set forth in this Section IV(C). If there is more than one purchasing Family Shareholder, the obligation of the purchasing Family Shareholders to purchase Shares shall be allocated between or among the purchasing Family Shareholders pursuant to Section IV(C)(4).

2. Terms of Sale. The purchase price per Share for a purchase and sale pursuant to Section IV(C)(1) shall be the Share Value. The selling Shareholders shall not be required to make any representation or warranty other than as to their ownership of the Shares to be sold and their power and authority to Transfer legal and beneficial ownership of the Shares. The purchase price shall be paid as follows:

   a. An amount equal to the proceeds from any Policy that the Family Shareholders were required to maintain on the life or disability of Mr. Zhang or Liu, Yu, or Lee, as the case may be, shall be paid in cash or other immediately available funds;
   b. The balance of the purchase price shall be evidenced by a five-year, non-negotiable promissory note, bearing interest at the prime rate established by the Corporation's primary bank on the day prior to the Closing Date (as defined in Section IV(C)(3)). The purchasing Family Shareholders shall be jointly and severally obligated on the promissory note. The promissory note will be payable in five (5) equal installments of principal with accrued interest. The first installment of principal, with interest, will be due and payable on the first anniversary of the Closing Date, and subsequent annual installments, with accrued interest, will be due and payable on each succeeding anniversary of the Closing Date until the entire amount of the obligation is paid. The purchasing Family Shareholders will have the right to prepay all or any part of the promissory note at any time without penalty and, in the case of a sale as a result of Permanent disability the purchasing Family Shareholders shall prepay the promissory note to the extent of life insurance proceeds received as a result of the death of the person whose Permanent Disability triggered the sale.

   The Corporation shall use reasonable efforts to obtain releases in favor of the selling Shareholders and their family members from those creditors of the Corporation and other affected parties to which they have any personal financial responsibility with respect to the debts and obligations of the Corporation. If the Corporation is unable to obtain all applicable releases, the Corporation and the remaining Shareholders, jointly and severally, shall indemnify and hold the selling Shareholders and their family members harmless from any loss, liability, damage, cost, or expense (including attorney fees and related expenses) arising out of the debts and obligations of the Corporation after the Closing Date.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY         AMERIWAY - 0077178

3. Closing. Purchases and sales of Shares pursuant to Section IV(C)(1) shall be consummated on a normal business day (the "Closing Date") within one hundred eighty (180) days following the death or Permanent Disability, and at a time, during normal business hours, specified in a written notice by the Corporation to the selling Shareholders. Such notice shall also specify the place, within Philadelphia, Pennsylvania, where the closing shall occur. At the closing, the certificate(s) representing the Shares to be purchased shall be delivered by the selling Shareholder appropriately endorsed or with an executed stock power attached. Each of the Shareholders hereby appoints the Corporation his agent and attorney-in-fact, with full power of substitution, for the purpose of endorsing and delivering certificate(s) or executing and delivering stock powers pursuant to the preceding sentence in the name, place, and stead of such Shareholder. The foregoing grant of authority is a special power of attorney coupled with an interest, is irrevocable, and shall survive the death or disability of the principal.

4. Allocation of Shares. The obligation to purchase Shares pursuant to Section IV(C)(1) shall be allocated between or among the purchasing Family Shareholders in proportion to their relative share of proceeds from the Policies on the event that triggers the purchase obligation; provided, however, that the purchasing Family Shareholders may agree to allocate the obligation to purchase Shares in any other manner that they may agree.

D. Intra-Family Transfers Permitted. Subject to Section IV(A), any Zhang Shareholder may Transfer all or any portion of his Shares to any Zhang Family Member, and any Liu, Yu, or Lee Shareholder may Transfer all or any portion of his Shares to any Liu, Yu, or Lee Family Member.

E. Exception For Certain Third-Party Sales.

1. Exception Generally. Subject to Section IV(A) and this Section IV(E), upon receipt of a Bona Fide Offer, any Shareholder may Transfer all or any portion of his Shares to the Offeror.

2. Intra-Family Right of First Refusal. Upon receipt of a Bona Fide Offer, if the Offeree Shareholder desires to Transfer any Shares to the Offeror pursuant to the terms of such Bona Fide Offer, such Offeree Shareholder shall give written notice to such effect to the Corporation and each Family Shareholder, which notice shall specify the number of Offered Shares which such Offeree Shareholder proposes to Transfer to the Offeror and shall include a true, complete, and legible copy of the Bona Fide Offer. For a period of thirty (30) days after such notice, each Family Shareholder (acting alone or in concert with one or more Family Members) shall have the option

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY         AMERIWAY - 0077179

to purchase all, but not less than all, of the Offered Shares on the terms and conditions set forth in Section IV(E)(6). If more than one Family Shareholder exercises such option, the Offered Shares shall be allocated between or among the exercising Family Shareholders pursuant to Section IV(E)(5).

3. Inter-Family Rights.

   a. Notice to Other Shareholders. Upon expiration unexercised of the option granted pursuant to Section IV(E)(2) (or upon written waiver of such option by all Family Shareholders), the Offeree Shareholder shall give written notice to such effect to the Corporation and each Other Shareholder, which notice to Other Shareholders shall include a true, complete, and legible copy of the notice theretofore given pursuant to Section IV(E)(2).

   b. Right of First Refusal. For a period of thirty (30) days after the notice required to be given pursuant to Section IV(E)(3)(a), each Other Shareholder (acting alone or in concert with one or more Family Members) shall have the option to purchase all, but not less than all, of the Offered Shares on the terms and conditions set forth in Section IV(E)(6). If more than one Other Shareholder exercises such option, the Offered Shares shall be allocated between or among the exercising Other Shareholders pursuant to Section IV(E)(5).

   c. Right to Tender Shares. During the same period of thirty (30) days after the notice required to be given pursuant to Section IV(E)(3)(a), each Other Shareholder shall have the right to tender all or any portion of his Shares ("Tendered Shares") for purchase by the Offeror at the per Share price and on the other terms and conditions set forth in the Bona Fide Offer. A tender of Shares pursuant to this Section IV(E)(3)(c) shall not necessarily result in an actual purchase of the Tendered Shares. If the option granted pursuant to Section IV(E)(3)(b) is exercised by any Other Shareholder, all tenders pursuant to this Section IV(E)(3)(c) shall be null and void. Even if such option is not exercised by any Other Shareholder, purchase of all Tendered Shares shall merely be a condition precedent to Transfer of the Offered Shares pursuant to Section IV(E)(4). Moreover, unless Offered Shares are Transferred pursuant to Section IV(E)(4), any sale of Tendered Shares to the Offeror shall itself be subject to all restrictions on transferability of Shares created by this Agreement.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY                    AMERIWAY - 0077180

4.  Transfer of Offered Shares. For a period of sixty (60) days after expiration unexercised of the option granted pursuant to Section IV(E)(3)(b) (or upon written waiver of such option by all Other Shareholders), the Offeree Shareholder shall be entitled to Transfer, in a single transaction, all or any portion of the Offered Shares to the Offeror, free and clear of all restrictions on the transferability of the Offered Shares imposed by this Agreement, at a per Share price equal to the per Share price specified in the Bona Fide Offer, and on other terms and conditions no more favorable to the Offeree Shareholder than those specified in the Bona Fide Offer, provided, however, that a condition precedent to such Transfer shall be the simultaneous purchase by the Offeror of all Tendered Shares pursuant to Section IV(E)(3)(c).

5.  Allocation of Option Shares. If more than one Family Shareholder exercises the option granted pursuant to Section IV(E)(2), or more than one Other Shareholder exercises the option granted pursuant to Section IV(E)(3)(b), the Offered Shares shall be allocated between or among, and purchased by, the exercising Shareholders in proportion to their relative holdings of Shares. For this purpose, if an exercising Shareholder is acting in concert with other Shareholders whose identity is specified in the notice of exercise, the aggregate holdings of all such Shareholders shall be attributed to the exercising Shareholder.

6.  Mechanics.

    a.  Exercise of Rights of First Refusal. The options granted pursuant to Section IV(E)(2) and Section IV(E)(3)(b) shall be exercisable by written notice to such effect to the Offeree Shareholder, with contemporaneous notices to the Corporation and all other Shareholders eligible to exercise the same option. If the exercising Shareholder is acting in concert with any other Shareholder or Family Member, the identity of such other person(s) and their allocation of interest in the Shares to be purchased shall be specified in the notice. The notice shall be signed by the exercising Shareholder and each person acting in concert with him. No person shall participate in more than one notice of exercise. Once given, such notice shall be irrevocable.

    b.  Exercise of Tender Right. The tender right exercisable pursuant to Section IV(E)(3)(c) shall be exercisable by written notice to such effect to the Offeree Shareholder, with contemporaneous notices to the Corporation and all other

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY        AMERIWAY - 0077181

       Shareholders eligible to exercise such right. The notice shall specify the number of Shares being tendered and shall be signed by the tendering Shareholder. Once given, such notice shall be irrevocable and shall terminate the tendering Shareholder's right to exercise (directly or indirectly by acting in concert with another Shareholder) the option granted pursuant to Section IV(E)(3)(b).

   c. Terms of Sale. Upon exercise of any option granted pursuant to Section IV(E)(2) or Section IV(E)(3)(b), the purchase price of the Offered Shares shall be the price specified in the Bona Fide Offer. All other terms and conditions of the Transfer of the Offered Shares shall be the same as those specified in the Bona Fide Offer and the Offeree Shareholder shall not be required to make any representation or warranty other than as to his or her ownership of the Offered Shares, his or her power and authority to Transfer legal and beneficial ownership of the Offered Shares, free and clear of all liens or encumbrances, and the absence of any actual or threatened litigation, administrative proceeding, investigation, or inquiry relating to or affecting any of the foregoing matters, and after the Transfer the Offered Shares in the hands of the exercising Shareholder(s) shall be subject to the restrictions on transferability contained in this Agreement.

   d. Closing. Purchases and sales of Shares pursuant to exercise of an option under Section IV(E)(2) or Section IV(E)(3)(b) shall be consummated on a normal business day (the "Closing Date") within sixty (60) days following expiration of the applicable option period, and at a time, during normal business hours, specified in a written notice by the Corporation to the selling Shareholders. Such notice shall also specify the place, within Philadelphia, Pennsylvania, where the closing shall occur. At the closing, the certificate(s) representing the Shares to be purchased shall be delivered by the selling Shareholder appropriately endorsed or with an executed stock power attached. Each of the Shareholders hereby appoints the Corporation his agent and attorney-in-fact, with full power of substitution, for the purpose of endorsing and delivering certificate(s) or executing and delivering stock powers pursuant to the preceding sentence in the name, place, and stead of such Shareholder. The foregoing grant of authority is a special power of attorney coupled with an interest, is irrevocable, and shall survive the death or disability of the principal.

F. Transfers With Consent Permitted. Notwithstanding any other provisions of this Agreement, a Shareholder may Transfer Shares without complying with any of the terms and provisions of this Agreement if (a) he gives written notice to all of the Shareholders of the intended Transfer, which notice shall specify the number of Shares to be Transferred, the person to whom the Shares are to be Transferred, the consideration to be

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY       AMERIWAY - 0077182

paid, if any, and the other terms and conditions of the proposed Transfer, (b) he receives express written consent of each Shareholder to such proposed Transfer, and (c) the proposed Transfer is consummated in accordance with the terms described in such notice within sixty (60) days after receipt of the first consent receipt (or within such longer period of time as may be specified in the notice seeking such consent). Shares Transferred in accordance with this Section IV(F) shall, in the hands of any person other than a Zhang Family Member, Liu, Yu, or Lee Family Member, be free and clear of all restrictions on transferability imposed by this Agreement (other than those contained in Section IV(A)).

G. Effect of Purported Transfer. Any purported Transfer or acquisition of Shares in violation of this Agreement shall be null and void and of no force or effect. The purported transferee shall have no interest in any of the Shares purported to be Transferred. Each Shareholder agrees that any such Transfer or acquisition may and should be enjoined.

H. Beneficial Ownership. Any purported Transfer in violation of this Agreement will not affect the beneficial ownership of Shares. Thus, the Shareholder making the purported Transfer will retain the right to vote and the right to receive distributions and liquidation proceeds. Additionally, a Shareholder making the purported Transfer shall continue to report the portion of income or loss allocated by the Corporation in accordance with the provisions of the Code as then in effect.

I. Adequate Assurance. No Shareholder may Transfer the legal or beneficial ownership of any Share to any trust unless (a) the Corporation has received in advance copies of all relevant trust documents and (b) the Corporation has obtained adequate assurance that the Transfer to the trust will not adversely affect the Corporation or any of its Shareholders under Subchapter S of the Code.

J. Yu Purchase Option 1. Notwithstanding any other provisions of this Agreement, the Corporation agrees to sell, and all other Shareholders agree not to object, to Yu up to 40,000 shares of capital stock held by the Corporation at a price of one cents ($0.01) per Share once Lee receives $200,000 in dividend distribution. Yu may only exercise this option in one transaction within 90 days of Lee's receipt of $200,000 in dividend distribution. Shares Transferred in accordance with this Section IV(J) shall, be subject to all restrictions on transferability imposed by this Agreement.

K. Yu Purchase Option 2. Notwithstanding any other provisions of this Agreement, the Corporation agrees to sell, and all other Shareholders agree not to object, to Yu up to 40,000 shares of capital stock held by the Corporation at a price of one cents ($0.01) per Share once Lee receives $600,000 in investment, which incorporates and includes the $200,000 in dividend distribution referenced in Section IV(J). Yu may only exercise this option in one transaction within 90 days of Lee's receipt of $600,000 in investment.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY          AMERIWAY - 0077183

Shares Transferred in accordance with this Section IV(K) shall, be subject to all restrictions on transferability imposed by this Agreement.

Article V
Miscellaneous Provisions

A. Stock Legend. All Share certificates issued by the Corporation shall bear the following legend:

"The rights of a holder of this certificate are governed by the Corporation's Articles of Incorporation, Code of Regulations, and a certain Close Corporation Agreement dated _____. Copies of such documents are on file at the Corporation's office, and the Corporation will mail to the holder of this certificate copies of such documents upon request therefor. The holder of this certificate, by acceptance hereof, agrees to the terms of the Articles of Incorporation, Code of Regulations, and Close Corporation Agreement. The securities represented by this certificate have not been registered under the Securities Act of 1933, as amended (the "Act"), nor the securities laws of any state. Accordingly, these securities may not be offered, sold, transferred, pledged, or hypothecated in the absence of registration, or the availability, in the opinion of counsel for the Corporation, of an exemption from registration, under the Act, and any applicable securities laws. Therefore, the stock transfer agent will effect transfer of this certificate only in accordance with the above instructions."

Any person to whom Shares are Transferred (or attempted to be Transferred) shall be conclusively deemed to have constructive notice of this Agreement and to have agreed to be bound by its provisions (to the extent applicable to such Shares).

B. Specific Performance. Each party to this Agreement hereby acknowledges that (i) the relationships created by this Agreement, and the obligations to be performed under this Agreement, are personal and unique to the Corporation and the Shareholders and (ii) no party to this Agreement will have an adequate remedy at law if another party should fail to perform any of its obligations under this Agreement. In the event of any such failure of performance by any party to this Agreement, each of the other parties to this Agreement shall be entitled to the remedy of specific performance of this Agreement (in addition to any other rights or remedies which such other parties may have at law or in equity).

C. Clearinghouse Function. In order to facilitate the implementation and operation of this Agreement, all notices required and authorized to be given pursuant to this Agreement shall be channeled through the Corporation. The Corporation shall then redeliver such notices to the applicable persons in accordance with the terms of this Agreement. It shall be the responsibility of each person entitled to receive any notice under this Agreement to provide the Corporation with a current mailing address at which such person shall receive all notices given pursuant to this Agreement. All notices so given shall be in writing and shall be mailed by certified United States mail, postage prepaid, return receipt requested, or its equivalence in a foreign country, to the last known address of the person entitled to receive any notice. All such notices shall be deemed given upon receipt or upon refusal

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY     AMERIWAY - 0077184

of the addressee to receive the same as evidence on the return receipt. The Corporation shall maintain records of all actions taken, and information received or transmitted by it, pursuant to this Agreement.

D. Construction. Wherever the context so permits, the use of words in this Agreement in the masculine, feminine, or neuter gender shall be construed to include all of said genders. All references to Articles and Sections are to provisions of this Agreement unless the context dictates otherwise.

E. Attorneys Fees. Each of the parties hereby agrees that if any party violates any of the covenants set forth herein, such party shall indemnify all other parties from and against any loss or liability (including without limitation reasonable attorney fees and expenses) which such other parties may incur or suffer, directly or indirectly, by reason of the enforcement of the covenants set forth herein.

F. Entire Agreement. This Agreement sets forth the entire agreement and understanding among the parties as to the subject matter hereof and merges and supersedes all prior discussions, agreements, and undertakings of every kind and nature between them with respect to the subject matter hereof.

G. Counterparts. This Agreement may be executed in one or more counterparts, which shall together constitute a single agreement. In the event of execution of more than one counterpart of this Agreement, the Corporation is expressly authorized to remove the signature pages from each such counterpart and attach all such signature pages to a single counterpart of this Agreement; provided, however, that the Corporation shall promptly thereafter provide a complete and accurate copy of such single counterpart to each party.

H. Further Assurances. Each of the parties agrees, at any time from time to time, upon the reasonable request of any other party, to do, execute, acknowledge, and deliver, or cause to be done, executed, acknowledged, and delivered, all such further acts, documents, and instruments as may be required to effect any of the transactions contemplated by this Agreement.

I. Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, and permitted assigns.

J. Governing Law; Venue. This Agreement shall be governed by and construed in accordance with laws of the State of Delaware (regardless of the laws that might be applicable under principles of conflicts of laws) as to all matters, including but not limited to matters of validity, construction, effect, and performance. The forum and venue of all actions regarding this Agreement shall be in a court of competent jurisdiction in Delaware and the parties hereby consent to the exclusive jurisdiction of such court.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY        AMERIWAY - 0077185

K. Severance. In the event any sentence or paragraph of this Agreement is declared by a court to be void, that sentence or paragraph shall be deemed severed from the remainder of this Agreement, and the balance of the Agreement shall remain in effect.

L. Headings. The headings used in this Agreement are for convenience only and shall be ignored in interpreting this Agreement.

M. Waiver. No failure by any party to insist upon the strict performance of any covenant, duty, agreement, or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute waiver of any breach or any other covenant, duty, agreement, or condition.

N. Third Party Beneficiaries. Nothing herein expressed or implied is intended or shall be construed to confer upon or give any person other than the parties, and their permitted successors and assigns, any rights or remedies under or by reason of this Agreement.

O. Amendment; Termination. Except as provided in Section IV(A)(2), this Agreement shall be changed, modified, terminated, cancelled, or amended only by a writing signed by each of the then parties to this Agreement.

P. Weekends and Holidays. Where this Agreement authorizes or requires the payment of money or the performance of an obligation on a Saturday or Sunday or a public holiday, or authorizes or requires the payment of money or the performance of an obligation within or before or after a period of time computed from a certain day, and such period of time ends on a Saturday or Sunday or a public holiday, such payment may be made or obligations performed on the next succeeding business day, with the same force and effect as if made or performed in accordance with the terms of this Agreement.

Q. Joint Preparation. This Agreement is to be deemed to have been prepared jointly by the parties hereto, and any uncertainty or ambiguity existing herein shall not be interpreted against any party, but shall be interpreted according to the rules of the interpretation of arm's length agreements.

In witness whereof, the parties hereto have executed this Close Corporation Agreement on the day and year first above written.

Ameriway Corporation, A Delaware corporation

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY          AMERIWAY - 0077186

By:



Xiyan Zhang

Xiaohong Liu

Huan Yu

Kam Hung Lee

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY       AMERIWAY - 0077187