# Ex. J

## Chen's Counsel's Written Admission of Fabricating Terms and Conditions of Service

# Chen's Counsel's Letter (Excerpt) to Judge Figueredo Admitting the Terms and Conditions of Service was Created During Litigation
# (Dkt. No. 114)

From the Defendants standpoint, Plaintiff has not produced any documentation substantiating its claim that it has standing to bring this lawsuit. More particularly, Plaintiff has not produced any documentation that it owned the cargo that it claims Defendant overcharged expenses nor has Plaintiff provided any proof of the damages it claims it incurred. Further, Plaintiff has not produced any documentation that it has any right of possession of the cargo being held by Defendant in the New Jersey warehouse, nor has it provided any proof of damages.

From Plaintiff's standpoint, it contests that Defendant had any lien rights with respect to the cargo being held by Defendant. More particularly, The power of attorney entered into by Mr. Zhang (on behalf of Eagle) provides that:

"…Grantor acknowledges receipt of May Y Chen DBA Ability Customs Brokers' Terms and Condition of Service governing all transactions between the parties…" (see Exhibit "C").

However, Plaintiff claims that it never received a copy of the Terms and Conditions notwithstanding the foregoing acknowledgement.

The Terms and Conditions that Defendant Chen utilized in the regular course of her business that she began in 2011 were based upon a form produced in 1994 by customs brokers trade associations (a copy of which is attached as Exhibit "D"). In 2009 those the trade associations had updated the terms and conditions, but those updates were not included in the terms and conditions that Defendant utilized in her business.

After this lawsuit was instituted, Defendant retained William Shayne of this law firm who updated Defendant's "terms and conditions" and thereafter the updated format was placed on Defendant's website. Attached as Exhibit "E" is a copy of the updated Terms and Conditions.

The Court's attention is respectfully directed to paragraph 13 of Exhibit "D" and paragraph 14 of Exhibit "E", both of which address Defendant's lien rights.

Attached as Exhibit "F" is a series of emails in which Plaintiff objected to the objections asserted by Defendant for the most part based upon the limitations placed on licensed customs brokers by 19 CFR 111.24 which provides:

### § 111.24 Records confidential.

"…The records referred to in this part and pertaining to the business of the clients serviced by the broker are to be considered confidential, and the broker must not disclose their contents or any information connected with the records to any persons other than those clients, their surety on a particular entry, and the Field Director, Office of International Trade, Regulatory Audit, the special agent in charge, the port director, **or other duly accredited officers or agents of the United States**, except on subpoena by a court of competent jurisdiction…"

Based upon the past history with Plaintiff's counsel (who in reality are the principals of Eagle), I wrote a letter to counsel in response to the May 3, 2022 email in which I provided the

**Document Selection Menu**

# Multiple Documents

To view the main document and its attachments without incurring a PACER fee, click on the hyperlinks displayed on this menu. You may incur a PACER fee to view CM/ECF documents from hyperlinks within the documents.

Select the document you wish to view.

| | | | |
|---|---|---|---|
| [114](#) | Main Document | 5 pages | 101 kb |
| [1](#) | Exhibit EXHIBIT A- DEMAND FOR DOCUMENTS WITH RESPONSES | 8 pages | 165 kb |
| [2](#) | Exhibit EXHIBIT B- INTERROGATORIES WITH RESPONSES | 7 pages | 118 kb |
| [3](#) | Exhibit EXHIBIT C- SIGNED POWER OF ATTORNEY | 2 pages | 72 kb |
| [4](#) | Exhibit EXHIBIT D- TERMS & CONDITIONS USED BY DEFENDANT | 2 pages | 114 kb |
| [5](#) | Exhibit EXHIBIT E- TERMS & CONDITIONS REVISED POST INSTITUTION OF LAWSUIT | 4 pages | 169 kb |
| [6](#) | Exhibit EXHIBIT F- EMAILS BETWEEN COUNSELS RE DISCOVERY | 5 pages | 211 kb |
| [7](#) | Exhibit EXHIBIT G- LETTER FROM DEFENDANT RESPONDING TO PLAINTIFF'S EMAIL | 10 pages | 356 kb |
| [8](#) | Exhibit EXHIBIT H- CUSOMS RULINGS REGARDING 19 CFR 111.24 | 19 pages | 0.6 mb |

# Chen's Counsel 's Letter (Excerpt) Dated May 6, 2022 to Plaintiff's Counsel Admitting the Terms and Conditions of Service was Created During Litigation

In an effort to avoid unnecessary motion practice, I have attached three (3) rulings by Customs that clearly sets forth that licensed customs brokers (which we all acknowledge would include Defendant, Chen), are prohibited from disclosing the identity of its customers.

Further, although I believe Defendant has not been evasive as you state in your email, what I also believe is that you are under some misunderstanding as to what terms and conditions that were in effect and referred to in the Power of Attorney that was entered into between Defendant and Eagle. This is why I suggested that you take the Defendant's deposition and if there is still a disagreement as to what terms and conditions were in effect during the time Defendant was performing services for Eagle pursuant to the Power of Attorney, then you could always seek post depositions discovery demands.

However, as an "offer of proof", although Plaintiff did not request the information that you would likely have been provided at Defendant, Chen's deposition, the following testimony is likely to be elicited:

1. Chen had been employed by a customs broker before receiving her customs broker's license;
2. Upon obtaining her customs broker's license she started her own customs brokerage business under the name "May Y. Chen DBA Ability Customs Brokers", a copy of Defendants customs brokers license that was issued on March 3, 2012 is attached for your ready reference;
3. Although Defendant does not recall the exact event when and where she obtained the terms and conditions she first used when she began business operations, Defendant does recall that upon leaving the employ of the customs broker, she came into possession of a copy of the terms and conditions that that broker had been using.
4. Defendant is expected to testify that the copy of the terms and conditions that was utilizes by her former employer was given to a local printer who was directed to place Defendant's name on the document instead of the name of her prior employer and produce copies;
5. Defendant is expected to testify that she has no knowledge of the technology that the local printer used to produce the terms and conditions, and does not recall the identity of that local printer;
6. The copy of the Terms and Conditions that Defendant utilized was a version that was issued in 1994 and was based upon the terms and conditions issued by the National Customs Brokers & Forwarders Association of America, Inc. ("NCBFAA");
7. Chen has no information or knowledge as to when or under what circumstances her former employer formulated or came into possession of the power of attorney that she used when she started her own business;
8. Chen did not seek permission to utilize the terms and conditions form she utilized when she began business operations, nor, upon information and belief was it required at that time;
9. Chen's company routinely sent a copy of the terms and conditions to its customers;
10. After the instant lawsuit was filed and Defendant retained counsel, counsel updated the terms and conditions to take into account the recommended changes that were made by the NCBFAA in 2009;
11. The updated version was then placed on Defendant's website by Defendant's representative;