# Ex. Q

**Excerpt of Transcript for Conference with Judge Broderick on May 26, 2022 - Chen's Counsel Admits to Fabricating the TCS on Record**

M5QHAmeC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
3   AMERIWAY CORPORATION,
4                   Plaintiff,
5             v.                          19 Civ. 9407 (VSB)
6   MAY YAN CHEN, et al.,
7                   Defendants.
                                          Telephone Conference
8   ------------------------------x
                                          New York, N.Y.
9                                         May 26, 2022
                                          11:00 a.m.
10
    Before:
11
                    HON. VERNON S. BRODERICK,
12
                                          District Judge
13
14                        APPEARANCES
15  PETER SCOTT WOLFGRAM
         Attorney for Plaintiff
16       -and-
    STRATUM LAW LLC
17       Attorneys for Plaintiff
    BY:  XIYAN ZHANG
18
    SCHRIER, FISCELLA & SUSSMAN, LLC
19       Attorneys for Defendants
    BY:  RICHARD ERIC SCHRIER
20       -and-
    SHAYNE LAW GROUP, P.C.
21       Attorneys for Defendants
    BY:  WILLIAM C. SHAYNE
22
23
24
25

1          MR. SCHRIER:  This is really a red herring, and

2     it's -- Mr. Wolfgram has created this whole scenario and is

3     advancing it, but it's a simple situation.

4          Ms. Chen, before going into business herself in 2012,

5     worked for another customs broker.  In the normal course of

6     business, a customs broker needs to have a power of attorney

7     signed, as you probably know, to be able to represent someone

8     at the customs on their behalf.  And with that there are terms

9     and conditions.  Ms. Chen used the form that was used by her

10    employer when she opened up her own business after receiving

11    her license as a customs broker.  She'll be testifying, and

12    we've said as an offer of proof, that her -- that she got that,

13    gave it to a local printer, they printed up the forms for power

14    of attorney and the terms and conditions, and it was one-page

15    terms and conditions.

16         Mr. Shayne is -- his specialty is international

17    import/export law.  He's been working in this field for 30,

18    almost 40 years, I think, and whenever -- and we represent

19    quite a number of customs brokers.  In the normal course of

20    Mr. Shayne's business, he keeps abreast of the continuing

21    decisions related to customs brokers and the import of

22    products, and as a result what he's done over the years, in the

23    normal course of his business is he updates the terms and

24    conditions.  Whenever he gets a new client, he doesn't even

25    bother looking at the terms and conditions they use because it

1  doesn't matter.  He just says:  Here's the new one.  Start

2  using it.  And he's known in the field to be an expert in this

3  area.

4          When Mr. Shayne was first retained by Ms. Chen, which

5  was after the summons and complaint was filed in this case, he

6  did precisely what he did with all his other clients and said:

7  Here's the new terms and conditions.  Start using it.  And they

8  started using it, put it on their website.

9          The terms and conditions that Mr. Wolfgram is saying

10  were fabricated by Mr. Shayne, yes, they were fabricated by

11  Mr. Shayne, and they were given to the client after this case

12  started.  It has nothing whatsoever to do with the issues in

13  this case.  The issues in this case revolve around the initial

14  one.

15          Now, with regard to the specific question, at the last

16  conference that we had with the magistrate judge, which was

17  earlier this week, the magistrate judge asked us to go back and

18  ask our client to see if he could find -- backtrack for a

19  second.  I'm sorry.

20          They asked for the identity of all the clients who

21  we've previously given these terms and conditions, as we claim

22  that they were sent the terms and conditions, and they claim

23  they were not.  That's the key issue.  So with all the

24  discussion by Mr. Wolfgram, there is a sharp issue.  They say

25  they didn't get it; we say they did.  It's a sharp issue, and

M5QHAmeC

1    of the dismissal without opposition, that produced an order of

2    the court, and therefore this case is no longer viable because

3    of the prior decision.  That's why it's important for them to

4    be heard together.

5            THE COURT:  All right.  As I said, I don't -- I think

6    that that will be fine, and I don't know whether -- is the

7    briefing on the case that's currently -- that's here for

8    reargument, or however it's styled, is that fully briefed?

9            MR. SCHRIER:  The case -- in the Ameriway case, that

10   motion has been fully briefed and submitted.  The one that's --

11   I'm sorry?

12           THE COURT:  Waiting on mine in the 12(b)(6)?

13           MR. SCHRIER:  Correct.

14           THE COURT:  All right.  Thank you.

15           All right.  Anything else, Mr. Wolfgram?

16           MR. WOLFGRAM:  No, your Honor.  Appreciate it.

17           THE COURT:  All right.  Mr. Schrier, anything else?

18           MR. SCHRIER:  No.  We appreciate the Court's time.

19   Thank you so much.

20           THE COURT:  OK.  Thank you very much, everybody.

21   We'll stand adjourned.  Please, everyone, stay safe.

22           (Adjourned)

23

24

25