# EXHIBIT "L"

From: resincourtt@aol.com,
To: pwolfgram@stratumlaw.com,
Cc: xzhang@stratumlaw.com, wshayne@shaynelawgroup.com, jaimohaque@gmail.com, resincourt@aol.com,
Subject: Re: Ameriway v Chen
Date: Fri, May 6, 2022 9:53 am
Attachments: LETTER TO WOLFGRAM-5-6-2022.pdf (144K), POWER OF ATTY- SIGNED WITH EIN # REDACTED.pdf (1580K), 1994 version of terms and conditions.pdf (207K), REVISED UPDATED TERMS & CONDITIONS BY SHAYNE.pdf (3931K), MAY'S CUSTOMS BROKERS LICENSE.pdf (194K), 11-7-2000-RE EAGLE USA RULING).doc (31K), 9-29-03-UPS CASE.dot (51K), 11-21-12RULING RE 19 CFR 111.24).doc (36K)

PETER/XIYAN;

PLEASE SEE OUR ATTACHED LETTER IN RESPONSE AND ATTACHMENTS

SHAYNE LAW GROUP
RICHARD E. SCHRIER, ESQ
595 STEWART AVENUE
GARDEN CITY, NEW YORK 11530
516-739-8000
F: 516-739-8004
C: 516-578-8999
resincourt@aol.com
richardschrier@gmail.com


-----Original Message-----
From: Pete Wolfgram <pwolfgram@stratumlaw.com>
To: RICHARD E. SCHRIER <resincourtt@aol.com>
Cc: xzhang@stratumlaw.com <xzhang@stratumlaw.com>; wshayne@shaynelawgroup.com <wshayne@shaynelawgroup.com>; jaimohaque@gmail.com <jaimohaque@gmail.com>; RICHARD E. SCHRIER <resincourt@aol.com>
Sent: Tue, May 3, 2022 1:23 pm
Subject: Re: Ameriway v Chen

Richard,
Plaintiff's Document Demand Nos. 46-51 seeks all documents, emails, and attachments relating to the "Terms and Conditions of Service" document purportedly in force and effect when the parties executed the 2017 POA, identified in Exs. A, B, and C of our Third Document Request, dated February 4, sent between Chen and her customers and employees.  You claimed these documents are protected from disclosure by 19 CFR Sec. 111.24, which states the records shall not be shared with "persons other than those clients, their surety on a particular entry, and the Field Director, Office of International Trade, Regulatory Audit, the special agent in charge, the port director, or other duly accredited officers or agents of the United States, except on subpoena by a court of competent jurisdiction."
Plaintiff's counsel are licensed to practice in the Court of the Southern District of New York; they are thus theoretically and actually officers of that federal Court.  Our document requests operate as subpoenas "by a court of competent jurisdiction."  Further, the Court's April 8 written **ORDER** mandating the production of these documents operates as a "subpoena" of far greater authority.  That Chen's customer records would somehow be beyond the reach of a federal court is an unfounded argument, and we repeat that you are likely in contempt of the Court's Order by refusing to turn over the documents.
You also incorrectly asserted privilege based on 19 CFR Sec. 111.24 with respect to Interrogatory Nos. 17-18, in which we are seeking the names of any customers whom Chen allegedly sent the Terms and Conditions of Service document in the course of her business.  We are seeking underlying facts here, not records, in this interrogatory request.  Your objection is thus invalid.
It is a basic tenant of discovery that production logs must be provided for every document being withheld based on any type of privilege, even if the requested documents are part of a "statutorily prohibited class,"

which is certainly not the case here. I am not even sure what you mean by this term. In any event, the Court must assess the merits of your privilege claim on a document-by-document basis. Your blanket privilege objections indicate that you did not even search for the documents, and is tantamount to a non-answer.

With respect to Document Demands 42-45, you claimed that Chen does not know what "native files" refer to and "therefore objects to this demand." We expressly described what native files were in our Motion to Compel, and you should have instructed her on this point as her counsel pursuant to your obligations under the federal rules. Also, any practicing litigator would understand this commonly used term in discovery. You cannot simply state that Chen "doesn't know" what 'native files' are to avoid your discovery obligations.

Document Demand 44 sought "[a]ll native files of the "Terms and Conditions of Service" as shown in Exhibits A, B and C created between August 22, 2019 and present." You responded that "Defendant does not understand what the term "native files" refers to and therefore objects to this demand. Further, Defendant objects to this demand as it calls for the production of attorney's work product."

Again, you need to support your work-product objection with a sufficiently detailed production log, detailing on a document-by-document basis which materials are being withheld and the nature of the privilege. For each document withheld, the party asserting privilege must identify the nature of the privilege, the type of document, its subject matter, date, author, addressees, and any other recipients, and where not otherwise apparent, the relationship of the author, addressees, and other recipients to each other.

Your work product claim indicates that Chen's counsel, Attorney William Shayne, created native files related to the 'Terms and Conditions of Service' document as shown in Exhibits A, B, and C of our Document Requests during litigation, or in advance thereof -- specifically that he formatted the footers, inserted the California Jurisdictional Clause and Chen's company name into the preexisting Terms and Conditions of Service form. The work product privilege requires that you must disclose whether Attorney Shayne created this document in a privilege log. Further, Chen published the 'Terms and Conditions of Service' document on her website, which clearly constitutes a waiver for the underlying native files. We will raise this specific matter with the Court in the following days.

With respect to Interrogatory No. 15, we requested specific information about the Terms and Conditions of Service *document* purportedly attached to the 2017 POA and used by Chen during the course of her business; again, this *document* includes Chen's company name, a California Jurisdictional Clause, and unique footers. Our Motion to Compel, in which we expressly informed the Court that we had grave doubts about the Terms and Conditions of Service document's authenticity, clearly indicated that we wanted specific information about the document's creation date, among other things. Our questions clearly related to Chen's use of the document. We obviously did not request a general history about the "basic text" of the "industry-wide" terms adopted by NCBFAA. As if this wasn't clear enough, Interrogatory No. 15 (d-h) requests specific information about what software was used to create the Terms and Conditions of Service document, the email address from which it was first sent to Chen, and the serial number of the computer on which the document was first created, etc.. That is why we labeled your responses "evasive" in our earlier email. You are required to make a conscientious effort to understand the question, and provide full and complete answers in good-faith. We do not believe you have come close to this standard.

We will not table this issue until Chen's deposition, as you suggested. In fact, we won't be able to conduct Chen's deposition until the compelled discovery requests are resolved. (See Freeman's order on April 8.) Moreover, you failed to provide a privilege log for Document Demand 54, which seeks "[a]ll written communication relating to the 'Terms and Conditions of Service' shown in Exhibits A, B and C between Defendants and any third party," for which you asserted attorney-client privilege. You already waived privilege twice, and the Court ordered you to turn over all written communication between Chen and any third party, *including her counsel*, relating to the Terms and Conditions of Service document. You must therefore produce all written communication between Chen and her counsel related to the 'Terms and Conditions' of service document purportedly in force and effect when the 2017 POA was executed.

Therefore, please provide **all** the requested documentation and complete interrogatory answers pursuant to the Court's April 8 Order by Friday, May 3, or we will be forced to file a Motion for Contempt early next week and seek related fees. To be clear, we do not recognize any of your asserted privileges. Again, we'd like to meet-and-confer over the phone on Wednesday or Thursday of this week, please let us know when.

**Pete Wolfgram | Stratum Law**
150 Monument Road Ste. 207
Bala Cynwyd, PA 19125

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The information contained in this communication is confidential and is intended only for the use of the intended addressee. It is the property of Stratum Law LLC, and may contain information subject to attorney-client privilege and/or may constitute inside information. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to correspondence@stratumlaw.com, and destroy this communication and all copies thereof, including all attachments.

---- On Mon, 02 May 2022 19:14:13 -0700 **RICHARD E. SCHRIER &lt;resincourtt@aol.com&gt;** wrote ----

XIYAN;

THE PRIVILEDGE THAT WAS ASSERTED WAS WITH REGARD TO YOUR IMPROPER DEMAND FOR INFORMATION REGARDING OTHER CLIENT'S OF DEFENDANT, WHICH AS IDENTIFIED IN THE RESPONSE, IS STATUTORILY PROHIBITED.

WHAT IS YOUR AUTHORITY THAT WE ARE REQUIRED TO PRODUCE A PRIVILEDGE LOG WHEN THE OBJECTION IS RELATED TO A STATUTORILY PROHIBITED CLASS OF DOCUMENTS.

I BELIEVE YOU ARE CONFUSING THE REQUIREMENT WHEN A SPECIFIC DOCUMENT IS OBJECTED TO, SUCH AS AN ATTORNEY-CLIENT PRIVILEDGE OBJECTION TO A SPECIFIC DEMAND.

WITH RESPECT TO THE INTERROGATORIES, PLEASE BE MORE SPECIFIC AS TO HOW THE PROVIDED ANSWERS WERE EVASIVE. I SUGGEST THAT WE DEAL WITH THAT ISSUE AT THE DEPOSITION.


SCHRIER SHAYNE KOENIG SAMBERG & RYNE P.C.
RICHARD E. SCHRIER, ESQ
595 STEWART AVENUE
GARDEN CITY, NEW YORK 11530
516-739-8000
F: 516-739-8004
C: 516-578-8999
resincourt@aol.com
richardschrier@gmail.com


-----Original Message-----
From: Xiyan Zhang &lt;xzhang@stratumlaw.com&gt;
To: RICHARD E. SCHRIER &lt;resincourtt@aol.com&gt;; pwolfgram@stratumlaw.com &lt;pwolfgram@stratumlaw.com&gt;
Cc: RICHARD E. SCHRIER &lt;resincourt@aol.com&gt;; wshayne@shaynelawgroup.com &lt;wshayne@shaynelawgroup.com&gt;; jaimohaque@gmail.com &lt;jaimohaque@gmail.com&gt;
Sent: Mon, May 2, 2022 10:24 am
Subject: Re: Ameriway v Chen

Richard:

We have several issues with your April 28 response to our discovery requests. You raised blanket privileges based on several grounds (AC/WP/19 CFR), but the Court already ordered you to produce these documents on April 8. Thus, You are likely now in contempt of the Courts order.

Also, you did not provide a privilege log of the documents you purportedly reviewed, which is a basic requirement for asserting privilege. This is another ground for waiver.

Your responses to our interrogatories were also evasive, specifically with respect to the Terms and Conditions of Service document, which Chen allegedly used in 2017.

We need to discuss these issues ASAP. What time works for you this week? Please give us your availability for Tuesday, Wednesday or Thursday. We will do our best to accommodate your schedule.

Thanks,

Xiyan Zhang | Stratum Law LLC

*************************************************************

The information contained in this communication is confidential and is intended only for the use of the intended addressee. It is the property of Stratum Law LLC, and may contain information subject to attorney-client privilege and/or may constitute inside information. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to correspondence@stratumlaw.com, and destroy this communication and all copies thereof, including all attachments.

---

**From:** "RICHARD E. SCHRIER" <resincourtt@aol.com>
**Reply-To:** "RICHARD E. SCHRIER" <resincourtt@aol.com>
**Date:** Thursday, April 28, 2022 at 10:11 AM
**To:** "xzhang@stratumlaw.com" <xzhang@stratumlaw.com>, "pwolfgram@stratumlaw.com" <pwolfgram@stratumlaw.com>
**Cc:** "RICHARD E. SCHRIER" <resincourt@aol.com>, "wshayne@shaynelawgroup.com" <wshayne@shaynelawgroup.com>, "jaimohaque@gmail.com" <jaimohaque@gmail.com>
**Subject:** Re: Ameriway v Chen

Per Judge Freeman's order, attached please find:
1. Defendant, Chen's Response to Plaintiff's Third Request for Production of Documents and

2. Defendant Chen's Response to Plaintiff's Second Set of Interrogatories.

Defendant would like to take Mr. Zhang's deposition on May 5, 2022. Please advise if you are available.

SCHRIER SHAYNE KOENIG SAMBERG & RYNE P.C.
RICHARD E. SCHRIER, ESQ
595 STEWART AVENUE
GARDEN CITY, NEW YORK 11530

516-739-8000
F: 516-739-8004
C: 516-578-8999
resincourt@aol.com
richardschrier@gmail.com


SHAYNE
LAW GROUP, P.C.

RICHARD E. SCHRIER, ESQ.

February 6, 2022

Via email:
Peter Wolfgram, Esq.
Xiyan Zhang, Esq.
Stratum Law LLC
150 Monument Road, Suite 207
Bala Cynwyd, PA  19004

    Re:    Ameriway Corp. v. May Yan Chen and Ability Customs Inc.
            Case # 19-cv-09407 (VSB) (DCF)

Dear Mr. Wolfgram/Mr. Zhang:

    This letter is being written in response to your email to me of May 3, 2022. I am attaching a copy of your email to this letter as I will be submitting this response as an exhibit to a motion for a protective order with regard to your demands for documentation, which we have advised you, is both subject to a statutory privilege (19 CFR Sec 111.24) and is so overbroad as to not be consistent with discovery permitted under FRCP Rule 26(b).

    Before I address the issues you raised in your May 3, 2022, I would point out that:

1. The Plaintiff has been evasive in providing any documentation that it either has an ownership interest in any of the Cargo for which it is claiming damages for being over charged by defendant or that it has any standing to make such a claim;

2. The Plaintiff has not provided any evidence of a contractual relationship with the shippers or owners of the cargo giving them even a right of possession;

3. The Plaintiff has been evasive in providing any documentation that it either has an ownership interest or the right to possession of the Cargo contained in the five (5) containers that Defendant has taken possession of pursuant to its "specific lien rights" and its "general lien rights" that are set forth in the terms and conditions of the retention of Chen as a customs broker by Eagle Trading USA, LLC and that it has sustained any damages by the exercise of the lien rights or even that it has any standing to make such a claim;

4. Plaintiff still at this stage of discovery has failed and refused to provide Defendants with proof that it sustained any damages as a result of any of the claims asserted in the Second Amended Complaint.  CLARIFY DISTINCTION BETWEEN WHAT THEY ASSERT AS DAMAGES VS ACTUAL LOSSES ???

To start with, as you are aware, FRCP Rule 26(b) provides as follows:

"...(b) DISCOVERY SCOPE AND LIMITS.

(1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: **Parties may obtain discovery regarding any nonprivileged matter** that is **relevant** to any party's claim or defense and **proportional to the needs of the case**, considering the importance of the issues at stake in the action, **the amount in controversy**, the parties' relative access to relevant information, the parties' resources, the **importance of the discovery in resolving the issues**, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable...

(B) *Specific Limitations on Electronically Stored Information.* **A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.** On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery..."

19 CFR Sec 111.24 provides as follows:

### § 111.24 Records confidential.

...The records referred to in this part and pertaining to the business of the clients serviced by the broker are to be considered confidential, and the broker must not disclose their contents or any information connected with the records to any persons other than those clients, their surety on a particular entry, and the Field Director, Office of International Trade, Regulatory Audit, the special agent in charge, the port director, **or other duly accredited officers or agents of the United States**, except on subpoena by a court of competent jurisdiction...

With regard to your assertion that as an attorney, you would be considered an "... other duly accredited officers or agents of the United States...", and therefore entitled to the identity of Defendant's customers that received a copy of the terms and conditions of service by Defendant, I believe you know that is clearly not the case. Further your argument that the Notice to produce Documents "...operates as a subpoena..." is also clearly not the law.  I would request that you send me some law that would support either or both of those legal positions.

However, based upon your argument, we have no choice but to take your threat seriously and seek an order of protection from Magistrate Judge Valerie Figueredo.

In an effort to avoid unnecessary motion practice, I have attached three (3) rulings by Customs that clearly sets forth that licensed customs brokers (which we all acknowledge would include Defendant, Chen), are prohibited from disclosing the identity of its customers.

Further, although I believe Defendant has not been evasive as you state in your email, what I also believe is that you are under some misunderstanding as to what terms and conditions that were in effect and referred to in the Power of Attorney that was entered into between Defendant and Eagle. This is why I suggested that you take the Defendant's deposition and if there is still a disagreement as to what terms and conditions were in effect during the time Defendant was performing services for Eagle pursuant to the Power of Attorney, then you could always seek post depositions discovery demands.

However, as an "offer of proof", although Plaintiff did not request the information that you would likely have been provided at Defendant, Chen's deposition, the following testimony is likely to be elicited:

1. Chen had been employed by a customs broker before receiving her customs broker's license;
2. Upon obtaining her customs broker's license she started her own customs brokerage business under the name "May Y. Chen DBA Ability Customs Brokers", a copy of Defendants customs brokers license that was issued on March 3, 2012 is attached for your ready reference;
3. Although Defendant does not recall the exact event when and where she obtained the terms and conditions she first used when she began business operations, Defendant does recall that upon leaving the employ of the customs broker, she came into possession of a copy of the terms and conditions that that broker had been using.
4. Defendant is expected to testify that the copy of the terms and conditions that was utilizes by her former employer was given to a local printer who was directed to place Defendant's name on the document instead of the name of her prior employer and produce copies;
5. Defendant is expected to testify that she has no knowledge of the technology that the local printer used to produce the terms and conditions, and does not recall the identity of that local printer;
6. The copy of the Terms and Conditions that Defendant utilized was a version that was issued in 1994 and was based upon the terms and conditions issued by the National Customs Brokers & Forwarders Association of America, Inc. ("NCBFAA");
7. Chen has no information or knowledge as to when or under what circumstances her former employer formulated or came into possession of the power of attorney that she used when she started her own business;
8. Chen did not seek permission to utilize the terms and conditions form she utilized when she began business operations, nor, upon information and belief was it required at that time;
9. Chen's company routinely sent a copy of the terms and conditions to its customers;
10. After the instant lawsuit was filed and Defendant retained counsel, counsel updated the terms and conditions to take into account the recommended changes that were made by the NCBFAA in 2009;
11. The updated version was then placed on Defendant's website by Defendant's representative;

12. Defendant continues to assert that anything that counsel did on behalf of Defendant is subject to the Attorney Work Product exception to discovery and further that there is no relevance to the issues in this case as to the various versions and intermittent revisions that counsel made to the document; that the only issue that may be relevant is when the changes were made, which as indicated above occurred after the institution of the lawsuit;

13. That the terms with regard to the right to assert a general lien are the same in the 1994 version as in the version that was published on Defendant's website;

A copy of the 1994 version of the terms and conditions distributed to Defendant's customers and the 2019 version are attached for your ready reference.

Further, with regard to your claim that you are entitled to the identity of Defendant's customers, it is Defendant's understanding that if a customer consents to the disclosure of their identity, then in that event Defendant will gladly provide that information to Plaintiff. In that regard, Defendant has reached out to a number of its customers in an effort to produce witnesses that can provide independent evidence that in the regular course of Defendant's business it provides a copy of the terms and conditions that is referred to in the power of attorney that was signed by Mr. Zhang as the COO of Eagle (a copy of which is attached for your ready reference). Unfortunately, as expected most do not want to get involved in a lawsuit, and certainly not in a lawsuit in New York as most of Defendant's customers are based on the west coast. However, a few have indicated their willingness to waive their right to confidentiality and once we have obtained the proper waivers, Defendant will disclose the identity of those customers to Plaintiff.

With respect to the "voluminous shotgun" approach Plaintiff has taken with respect to "Ameriway's Third Set of Requests For Production of Documents and Things", as noted Defendant has objected to disclosure pursuant to the confidentiality obligations as set forth in 19 CFR 111.24. However, Defendant also objects to the scope of the demands set forth in "Request for Production" #'s 46, 47, 48, 49, 50, 51, and 54 as seeking documentation that will likely require the review of literally hundreds of thousands of emails over a period in excess of 10 years and the exercise will have no substantive probative value to the issues in the case. Further, the production of the emails demanded are not proportional to the needs in this case and since we still have no idea of the amount in controversy, the burden and expense of the demanded discovery far outweighs the likely benefit.

As you are aware FRCP Rule 26(b), in pertinent part provides as follows:

...FRCP 26(b)(1): SCOPE IN GENERAL –

(1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any **nonprivileged** matter that is **relevant** to any party's claim or defense **and proportional to the needs** of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, **the parties' resources**, the importance of the discovery in resolving the issues, and **whether the burden or expense of the proposed discovery outweighs its likely benefit**. Information within this scope of discovery need not be admissible in evidence to be discoverable... [Emphasis added]

...FRCP 26(b)(2)(B):

> (B) *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of <u>electronically stored information</u> from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery <u>or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost</u>. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery... [Emphasis added.]

In addition to Defendant's assertion that the documents demanded are privileged, as set forth above, the scope of the emails sought is not proportionate to the needs of obtaining information and certainly the burden and expense of identifying the literally thousands of emails that would be responsive to Plaintiff's demands from the literally hundreds of thousands of emails sent and received by Defendant and Defendant's employees over the past decade are neither proportional to the needs of the case, nor would the expense of the proposed discovery outweigh the likely benefit.

Upon information and belief, Plaintiff's goal in requesting the documentation in "Request for Production" #'s 46, 47, 48, 49, 50, 51, and 54 was to obtain the information as to what version of the terms and conditions Defendant utilized at different points in time, which I believe has been more than clarified. It is respectfully submitted that the continuation of the demand for the production of literally thousands of emails over a decade, even if not privileged, is not

> ... **proportional to the needs** of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, **the parties' resources**, the importance of the discovery in resolving the issues, and **whether the burden or expense of the proposed discovery outweighs its likely benefit.** Information within this scope of discovery need not be admissible in evidence to be discoverable..." (FRCP 26(b)(1)). [Emphasis added.]

In considering whether to pursue your "threat" of seeking an order directing production of the burdensome quantity of emails and a "production log" that would require the review of literally tens of thousands of files and emails and seeking sanctions for the failure to so comply, it is suggested that you review the following cases:

1. The Second Circuit has held that "compelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception, is contrary to well established precedent." *In re Dow Corning Corp.*, 261 F.3d 280, 284 (2d Cir. 2001). The rationale for this rule is that such an order, even if it included protections against disclosure to non-parties, is an "inadequate surrogate for the privilege." *Id.*; see also *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 160-162, 166 (2d Cir. 1992) (issuing a *writ of mandamus* vacating a district court order directing the producing party to disclose, on an attorneys'-eyes-only basis, privileged documents so that the opposing counsel could determine which documents it agreed were privileged and which would be subject to motion practice)." [In this case, the privilege of refusing to disclose Defendant's customers is clear based upon 19 CFR 111.24]

2. "The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive. See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery.") (citation omitted); Allison v. Clos-ette Too, L.L.C., No. 14-cv-1618 (LAK) (JCF), 2015 WL 136102, at *8 (S.D.N.Y. Jan. 9, 2015)." *Citizens Union of City of NY v. ATTY. GEN. OF NY*, 269 F. Supp. 3d 124 - Dist. Court, SD New York (2017)

   [As a practical matter, based upon the above, the discovery of literally tens of thousands of files and emails is clearly burdensome, expensive and not likely to result in the discovery of any information not already disclosed to Plaintiff, with the exception of the identity of Defendant's customers.]

3. See also *Winfield v. City of New York*, Dist. Court, SD New York 2018 – where there is a discussion on scope of discovery with assertion of privilege, denying even a "peek" at privileged items.

4. See also:

   a. SHIRA A. SCHEINDLIN & DANIEL J. CAPA, ELECTRONIC DISCOVERY AND DIGITAL EVIDENCE 314 (2009) ("Cost shifting is available even for accessible data based on the proportionality factors set forth in Rule 26(b)(2)(C).") (noting that cost-shift balancing is proper *even as to accessible data* so long as the factors set forth in Rule 26(b)(2)(C) evidence cost-shifting's suitability)

   b. *BAT LLC v. TD BANK, NA*, Dist. Court, ED New York 2018 (granting protective order for Electronically Stored Information, "stored on outdated hardware with software that is not in current use, and thus, the records are inaccessible.") ("Having reviewed the parties' respective submissions, the Court finds that the defendants have responded reasonably to the requests and have produced the documents and information required under the Federal Rules of Civil Procedure. The Court also finds that COPS has shown that the information BAT seeks is not proportional to the needs of the case in light of the costs involved in accessing such information and, even if the requests were proportional, such information is not reasonably accessible because it is maintained offline as inactive data, access to which requires special technology and resources.")

Very truly yours,

SHAYNE LAW GROUP, P.C.

S/ Richard E. Schrier  (electronic signature)
Richard E. Schrier, Esq.

# POWER OF ATTORNEY

Department of the Treasury
U.S. Customs & Border Protection
C.F. 19   141.32

**Check appropriate Box**
Individual     Partnership
Corporation   Sole Proprietorship
Limited Liability Company

IRS or SSN NO: (1) ~~[redacted]~~

KNOW ALL MEN BY THESE PRESENTS: That, (2) Eagle Trading USA LLC doing business as a/an (3) LLC _____ organized under the laws of the State or Province of (4) Delaware _____ residing or having a principal place of business at (5) 2424 E. York Street Ste. 300, Philadelphia PA 19125, constitutes and appoints **May Y Chen DBA Ability Customs Brokers.**, Its officers, employees, and/or specifically authorized agents, to act for and on its behalf as a true and lawful agent and attorney of the grantor for and in the name, place and stead of said grantor, from this date, in the United State (the "territory") either in writing, electronically, or by other authorized means, to: make, endorse, sign, declare, or swear to any Customs entry, withdrawal, declaration,, certificate, bill of lading, carnet or any other documents required by law or regulation in connection with the importation, exportation, transportation, of any merchandise in or through the Customs territory, shipped or consigned by or to said grantor;

Perform any act or condition which may be required by law or regulation in connection wit such merchandise deliverable to said grantor; to receive any merchandise;

Make endorsements on bills of lading conferring authority to transfer title; make entry or collect drawback; and to make, sign, declare, or swear to any statement or certificate required by law or regulation for drawback purposes, regardless of whether such document is intended for filling with Customs;

To sign, seal, and deliver for and as the act of said grantor any bond required by law or regulation in connection with the entry or withdrawal of imported merchandise, or merchandise exported with or without benefit of drawback, or in conn :tion with the entry, clearance, lading, unlading, or navigation of any vessel or other means of conveyance owned or operated by said grantor, ...d any and all bonds which may be voluntarily given and accepted under applicable laws and regulations, consignee's and owner's declarations provided for in section 485, Tariff Act of 1930, as amended, or affidavits or statements in connection with the entry of merchandise;

Sign and swear to any document and to perform any act that may be necessary or required by law or regulation in connection with the entering, clearing, lading, unlading, or operation of any vessel or other means of conveyance owned or operated by said grantor:

Authorize other Customs Brokers duly licensed within the territory to act as grantor' agent; to receive, endorse and collect checks issued for Customs duty refunds in grantor's name drawn on the Treasurer of the United States; If the grantor is a nonresident of the United States, to accept service of process on behalf of the grantor;

And generally to transact Customs business, Including filing of claims or protests under section 514 of the Tariff Act of 1930, or pursuant to the other laws if the territories, in which said grantor is or may be concerned or interested and which may property be transacted or performed by an agent and attorney;

Giving to said agent and attorney full power and authority to do anything whatever requisite and necessary to be done in the premises as fully as said grantor could do if present and acting, herby ratifying and confirming all that the said age~t and attorney shall lawfully do by virtue of these presents;

This power of attorney to remain in full force and effect until revocation in writing is duly given to and received by grantee (if the donor of this power of attorney is a partnership, the said power shall in no case have any force or effect in the United States after the expiration 2 years from the date of its execution);

Grantor acknowledges receipt of May Y Chen DBA Ability Customs Brokers' Terms and Condition of Service governing all transactions between the parties. If the Grantor is a Limited Liability Company, the signatory certifies that he/she has full authority to execute this power on behalf of the Grantor.

IN WITNESS WHEREOF, the said (6) Xiyan Zhang ___ Caused these presents to be sealed and  gned: (7) _____
_____ (8) COO  (9) 4/11/2017_____

If you are the importer of record, payment to the broker will not relieve you of liability for U.S. Customs charges (duties, taxes or other debts owed Customs) in the event the charges are not paid by the broker. Therefore, if you pay by check, Customs charges may be paid with a separate check payable to the "U.S. Customs and Border protection" which shall be delivered to Customs by the broker. Importers who wish to utilize this procedure must contact our office in advance to arrange timely receipt of duty checks.

---

## CORPORATE CERTIFICATION
(to be made by an officer other than the one who executes the power of attorney)

I, (10) Pete Wolfgram, certify that I am the (11) Counsel of (12) Eagle Trading USA LLC, organized under the laws of the State or Province of (13) Delaware that (14) Xiyan Zhang, who signed this power of attorney on behalf of the donor, is the (15) COO of said corporation; and that said power of attorney was duly signed, and attest~d for and in behalf of said corporation by authority of its governing body as the same appears in a resolution of the Board of irectors passed at a regular meeting held on the (16) 10th day of April, 2017 now in my possession or custody. I further certify that the resolution is in accordance with the articles of incorporation and bylaws of said corporation and was executed in accordance with the laws of the State or Country of Incorporation. Second corporate officer's

Signature:  _[signature]_   effective date 4/11/2017

**TERMS AND CONDITIONS OF SERVICE**
(Please Read Carefully)

All shipments to or from the Customer which term shall include the exporter, import, sender, receiver, owner, consignor, consignee transferor, or transferee of the shipments, will be handled by the customs broker, "May Y Chen dba Ability Customs Brokers" (hereinafter called the "Company") on the following terms and conditions:

1. **Services by Third Parties.** Unless the Company carries, stores or otherwise physically handles the shipment, and loss, damage, expense or delay occurs during such activity, the Company assume no liability as a carrier and is not to be held responsible for any loss, damage, expense or delay to the goods to be forwards or imported except as provided in paragraph 8 and subject to limitations of paragraph 9 below but undertakes only to use reasonable care in the selection of carriers, truckmen, lightermen, forwarders, customs brokers, agents, warehousemen and other to whom it may entrust the goods for transportation cartage, handling and/or delivery and/or storage or otherwise. When the Company carries, stores or otherwise physically handles the shipment, it does so subject to the limitation of liability set forth in paragraph 8 below unless a reasonable bill of lading, receipt or contract of carriage is issued by the Company, in which event the terms thereof shall govern.

2. **Liability Limitations of Third Parties.** The Company is authorized to select and engage carriers, truckmen, lightermen, forwards, customs brokers, agents, warehousemen and others, as required, to transport store, deal with and deliver the goods, all of whom shall be considered as the agents of the Customer, and the goods may be entrusted to such agencies subject to all conditions as to limitation of liability for loss, damage, expense or delay and to all rules, regulations, requirements and conditions, whether printed, written or stamped, appearing in bills of lading, receipts or tariffs issued by such carriers, truckmen, lightermen, forwarders, customs brokers, agents, warehousemen and others. The Company shall under no circumstances be liable for any loss, damage, expense or delay to the goods for any reason whatsoever when said goods are in custody possession or control of third parties selected by the Company to forward, enter and clear, transport or render other services with respect to such goods.

3. **Choosing Routes or Agents.** Unless express instructions in writing are received from the Customer, the Company has complete freedom in choosing the means, route and procedure to be followed in the handling, transportation and delivery of the goods. Advice by the Company to the Customer that a particular person or firm has been selected to render services with respect to the goods shall not be construed to mean that the Company warrants or represents that suck person or firm will render such services.

4. **Quotations Not Binding.** Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by the Company to the Customer are for informational purposes only and are subject to change without notice and shall not under any circumstances be binding upon the Company unless the Company in writing specifically undertakes the handling or transportation of the shipment at specific rate.

5. **Duty to furnish Information.** (a) On an import at a reasonable time prior to entering of the goods for U.S. Customs, the Customer shall furnish to the Company invoices in proper form and other documents necessary or useful in the preparation of the U.S. Customs entry and also such further information as may be sufficient to establish, inter alia, the dutiable value, the classification, the county of origin, the genuineness of the merchandise and any mark or symbol associated with it, the Customer's right to import and/or distribute the merchandise, and the merchandise's admissibility, pursuant to U.S. law or regulation. If the Customer fails in a timely manner to furnish such information or documents, in whole or in part, as may be required to complete U.S Customs entry or comply with U.S. laws or regulations, or if the information or documents furnished are inaccurate or incomplete, the Company shall be obligated only to use its best judgment in connection with the shipment and in no instance shall be charged with knowledge by the Customer of the true circumstances to which such inaccurate, incomplete, or omitted information or document pertains. Where a bond is required by U.S. Customs to be given for the production of any document or the performance of any act, the Customer shall be deemed bound by the terms of the bond notwithstanding the fact that the bond has been executed by the Company as principal, it being understood that the Company entered into such undertaking at the instance and on behalf of the Customer, and the Customer shall indemnify and hold the Company harmless for the consequences of any beach of the terms of the bond. (b) On an export at a reasonable time prior to the exportation of the shipment the Customer shall furnish to the Company the commercial invoice in proper form and number, a proper consular declaration weights, measures, values and other information in the language of and as mas be required by the laws and regulations of the U.S. and the country of destination of the goods. (c) On an export or import the Company shall not in any way be responsible or liable for increased duty, penalty, fine or expense unless caused by the negligence or other fault of the Company, in which event its liability to be Customer shall be governed by the provisions of paragraph 8-9 below. The Customer shall be bound by and warrant the accuracy of all invoices, documents and information furnished to the Company by the Customer or its agent for export, entry or other purposes and the Customer agrees to indemnity and hold harmless the Company against any increased duty, penalty, fine or expense including attorneys' fees, resulting from any inaccuracy incomplete statement, omission or any failure to make timely presentation, even if not due to any negligence of the Customer.

6. **Declaring Higher Valuation.** In as much as truckers, carriers, warehousemen and others to whom the goods are entrusted usually limit their liability for loss or damage unless a higher value is declared and a change based on such higher value is agreed to by said truckers, etc., the Company must receive specific written instructions from the Customer to pay such higher charge based on valuation and the truckers, etc., must accept such higher declared value otherwise the valuation placed by Customer on the goods shall be considered solely for export or customs purposes and the goods will be delivered to the trucker, etc., subject to the limitation of liability set forth herein in paragraphs 8-9 below with respect to any claim against the Company and subject to the provisions of paragraph 2 above.

7. **Insurance.** The Company will make reasonable efforts to effect marine, fire, theft, and other insurance upon the goods only after specific written instructions has been received by the Company in sufficient time prior to shipment from point of origin, and the Customer at the same time states specifically the kind and amount of insurance to be placed. The Company does not undertake or warrant that such insurance can or will be placed. Unless the Company has its own open marine policy and instructs the Company to effect insurance under such policy, insurance is to be effected with one or more insurance companies or other underwriters to be selected by the Company. Any insurance placed shall be governed by the certificate or policy issued and will only be effective when accepted by such insurance companies or underwriters. Should an insurer dispute its liability for any reason, the insured shall have recourse against the insurer only and the Company shall not be under any responsibility of liability in relation thereto, notwithstanding that the premium upon the policy may not be at the same rates as that charged or paid to the Company by the Customer, or that the shipment was insured under a policy in the name of the Company. Insurance premiums and the charge of the Company for arranging the same shall be at the Customer's expense. If for any reason the goods are held in warehouse or elsewhere, the same will not be covered by any insurance unless the Company received written instructions from the Customer. Unless specifically agreed in writing, the Company assumes no responsibility to effect insurance on any export or import shipment which it does not handle.

8. **Limitation of Liability for Loss, etc.** (a) The Customer agrees that the Company shall only be liable for any loss, damage, expense or delay to the goods resulting from the negligence or other fault of the Company; such liability shall be limited to an amount equal to the lesser of fifty dollars ($50.00) per entry or shipment or the fee(s) charged for the services, provided that, in the case of partial loss, such amount will be adjusted *pro rata*;
(b) Where the Company issues its own bill of lading and receivers' freight charges as its compensation, Customer has the option of paying a special compensation and increasing the limit of Company's liability up to shipment's actual value; however, such option must be exercised by written agreement, entered into prior to any covered transaction(s), setting forth the limit of the Company's liability and the compensation received;
(c) In instances other than in (b) above, unless the Customer makes specific written arrangement with the Company to pay special compensation and declare a higher value and Company agrees in writing, liability is limited to the amount set forth in (a) above;
(d) Customer agrees that the Company shall, in no event, be liable for consequential, punitive, statutory or special damages in excess of the monetary limit provided for above.

9. **Presenting Claims.** Company shall not be liable under paragraph 8 for any claims not presented to it in writing within 90 days of either the date of loss or incident giving rise to be claim; no suit to recover for any claim or demand hereunder shall be maintained against the Company unless instituted with six (6) months after the presentation of the said claim or such longer period provided for under statue(s) of the State having jurisdiction of the matter.

10. **Advancing Money.** The Company shall not be obliged to incur any expense, guarantee payment or advance any money in connection with the importing, forwarding, transporting, insuring, storing or coopering of the goods, unless the same is previously provided to the Company by the Customer on demand. The Company shall be under no obligation to advance freight charges, customs duties or taxes on any shipment nor shall any advance by the Company be construed as a waiver of the provisions hereof.

11. **Indemnification for Freight, Duties.** In the event that a carrier, other person or any government agency makes a claim or institutes legal action against the Company for ocean or other freight duties, fine, penalties, liquidated damages or other money due arising from a shipment of goods or the Customer, the Customer agrees to indemnify and hold harmless the Company for any amount the Company may be required to pay such carrier, other person or governmental agency together with reasonable expenses, including attorney fee, incurred by the Company in connection with defending such claim or legal action and obtaining reimbursement from the Customer. The confiscation or detention of the goods by ty any governmental authority shall not affect or diminish the liability of the Customer to the Company to pay all charges or other money due prompt on demand.

12. **C.O.D. Shipments.** Goods received with Customer's or other person's instructions to "Collect on Delivery" (C.O.D) by drafts or otherwise, or to collect on any specified terms by time drafts or otherwise are accepted by the Company only upon the express understanding that it will exercise reasonable care in the selection of a bank, correspondent, carrier or agent to whom it will send such item for collection, and the Company will not be responsible to any act, omission, default, suspension, insolvency or want of care, negligence, fault of such bank, correspondent, carrier or agent, nor for any delay in remittance lost in exchange, or loss during transmission, or while in the course of collection.

13. **General Lien on Any Property.** The Company shall have a general lien on any and all (and documents relating thereto) of the Customer, in its possession, custody or control or enroute, for all claims for charges, expenses or advances incurred by the Company in connection with any shipments of the Customer and if such claim remains unsatisfied for thirty (30) days after demand for its payment is made, the Company may sell at public auction or private sale upon ten (10) days written notice registered mail (R.R.R.) to the Customer, the goods, wares and/or merchandise, or so much thereof as may be necessary to satisfy such lien, and apply the net proceeds of such sale to the payment of the amount due to the Company. Any surplus from such sale shall be transmitted to the Customer, and the Customer shall be liable for any deficiency in the amount.

14. **Compensation of Company.** The compensation of the Company for its services shall be included with and is in addition to the rates and charges of all carriers and other agencies selected by the Company to transport and deal with the goods and such compensation shall be exclusive of any brokerage, commissions, dividends or other revenue received by the Company from carriers, insurers and others in connection with the shipment. On ocean exports, upon request, the Company shall provide a detailed breakout of the components of all charges assessed and a true copy of each pertinent document relating to these charges. In any referral for collection or action against the Customer for monies due to the Company, upon recovery by the Company, the Customer shall pay the expenses of collection and/or litigation, including a reasonable attorney fee.

15. **No Responsibility For Governmental Requirements.** It is the responsibility of the Customer to know and comply with the marking requirements of the U.S. Customs Service, the regulations of the U.S. Food and Drug Administration and all other requirements, including regulations of federal, state and/or local agencies pertaining to the merchandise. The Company shall not be responsible for action taken or fines, or penalties assessed by any government agency against the shipment because of the failure of the Customer to comply with the law of the requirements or regulations of any government agency or with a notification issued to the Customer by any such agency.

16. **Indemnity Against Liability Arising From The Importation of Merchandise.** The Customer agrees to indemnity and hold the Company harmless from any claims and/or liability arising from the importation of merchandise which violates any federal, state and/or other laws or regulations and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to attorney's fee, which the Company may hereafter incur, suffer or be required to pay by reason of claims by any government agency or private party. In the event that any action, suit or proceeding is brough against the C company by any government agency or any private party, the Company shall give notice in writing to the Customer by mail at its address on file with the Company. Upon receipt of such notice, the Customer at its own expense shall defend against such action and take all steps as may necessary or proper to prevent the obtaining of a judgment and/or order against the Company.

17. **Loss, Damage or Expense Due To Delay.** Unless the services to be performed by the Company on behalf of the Customer are delayed by reason of the negligence or other fault of the Company, the Company shall not be responsible for any loss, damage or expense incurred by the Customer because of such delay. In the event the Company is at fault, as aforesaid, its liability is limited in accordance with the provisions of paragraphs 8-9 above.

Based on National Customs Brokers & Forwarders Association of America, Inc (Revised 6/94)

## TERMS AND CONDITIONS OF SERVICE

These terms and conditions of service constitute a legally binding contract between the "Company" and the "Customer". In the event the Company renders services and issues a document containing Terms and Conditions governing such services, the Terms and Conditions set forth in such other document(s) shall govern those services.

### 1. Definitions.
(a) "Company" shall mean May Y Chen DBA Ability Customs Brokers. as is appropriate to the services provided, its/their subsidiaries, related companies, agents and/or representatives.

(b) "Customer" shall mean the person for which the Company is rendering service, as well as its principals, agents and/or representatives, including, but not limited to, shippers, importers, exporters, carriers, secured parties, warehousemen, buyers and/or sellers, shipper's agents, insurers and underwriters, break-bulk agents, consignees, etc. It is the responsibility of the Customer to provide notice and copy(s) of these terms and conditions of service to all such agents or representatives;

(c) "Documentation" shall mean all information received directly or indirectly from Customer, whether in paper or electronic form;

(d) Ocean Transportation Intermediaries" ("OTI") shall include an "ocean freight forwarder" and a "non-vessel operating common carrier;"

(e) "Third parties" shall include, but not be limited to, the following: "carriers, truckmen, cartmen, lightermen, forwarders, OTI's, customs brokers, agents, warehousemen and others to which the goods are entrusted for transportation, cartage, handling and/or delivery and/or storage or otherwise."

### 2. Company As Agent.
The Company acts as the "agent" of the Customer for the purpose of performing duties in connection with the entry and release of goods, post entry services, the securing of export licenses, the filing of export and security documentation on behalf of the Customer and other dealings with Government Agencies. As to all other services, Company acts as an independent contractor.

### 3. Limitation of Actions.
(a) Unless subject to a specific statute or international convention, all claims against the Company for a potential or actual loss, must be made in writing and received by the Company, within ninety (90) days of the event giving rise to claim; the failure to give the Company timely notice shall be a complete defense to any suit or action commenced by Customer.

(b) All suits against Company must be filed and properly served on Company as follows:

(i) For claims arising out of ocean transportation, within one (1) year from the date of the loss;

(ii) For claims arising out of air transportation, within two (2) years from the date of the loss;

(iii) For claims arising out of the preparation and/or submission of an import entry(s), within seventy five (75) days from the date of liquidation of the entry(s);

(iv) For any and all other claims of any other type, within two (2) years from the date of the loss or damage.

### 4. No Liability For The Selection or Services of Third Parties and/or Routes.
Unless services are performed by persons or firms engaged pursuant to express written instructions from the Customer, Company shall use reasonable care in its selection of third parties, or in selecting the means, route and procedure to be followed in the handling, transportation, clearance and delivery of the shipment; advice by the Company that a particular person or firm has been selected to render services with respect to the goods, shall not be construed to mean that the Company warrants or represents that such person or firm will render such services nor does Company assume responsibility or liability for any action(s) and/or inaction(s) of such third parties and/or its agents, and shall not be liable for any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party; all claims in connection with the Act of a third party shall be brought solely against such party and/or its agents; in connection with any such claim, the Company shall reasonably cooperate with the Customer, which shall be liable for any charges or costs incurred by the Company.

### 5. Quotations Not Binding.
Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by the Company to the Customer are for informational purposes only and are subject to change without notice; no quotation shall be binding upon the Company unless the Company in writing agrees to undertake the handling or transportation of the shipment at a specific rate or amount set forth in the quotation and payment arrangements are agreed to between the Company and the Customer.

### 6. Reliance On Information Furnished.
(a) Customer acknowledges that it is required to review all documents and declarations prepared and/or filed with the Customs and Border Protection, other Government Agency and/or third parties, and will immediately advise the Company of any errors, discrepancies, incorrect statements, or omissions on any declaration or other submission filed on Customer's behalf;

(b) In preparing and submitting Customs entries, export declarations, applications, documentation and or other required data, the Company relies on the correctness of all documentation, whether in written or electronic format, and all information furnished by Customer; Customer shall use reasonable care to ensure the correctness of all such information and shall indemnify and hold the Company harmless from any and all claims asserted and/or liability or losses suffered by reason the Customer's failure to disclose information or of any incorrect or false statement by the Customer or its agent, representative or contractor upon which the Company reasonably relied. The Customer agrees that the Customer has an affirmative non-delegable duty to disclose any and all information required to import, export or enter the goods.

### 7. Declaring Higher Value To Third Parties.
Third parties to whom the goods are entrusted may limit liability for loss or damage; the Company will request excess valuation coverage only upon specific written instructions from the Customer, which must agree to pay any charges therefore; in the absence of written instructions or the refusal of the third party to agree to a higher declared value, at Company's discretion, the goods may be tendered to the third party, subject to the terms of the third party's limitations of liability and/or terms and conditions of service.

### 8. Insurance.
Unless requested to do so in writing and confirmed to Customer in writing, Company is under no obligation to procure insurance on Customer's behalf; in all cases, customer shall pay all premiums and costs in connection with procuring requested insurance.

### 9. Disclaimers; Limitation of Liability.
(a) Except as specifically set forth herein, Company makes no express or implied warranties in connection with its services;

(b) *Subject to (d) below,* Customer agrees that in connection with any and all services performed by the Company, the Company shall only be liable for its negligent acts, which are the direct and proximate cause of any injury to Customer, including loss or damage to Customer's goods, and the Company shall in no event be liable for the acts of third parties;

(c) In connection with all services performed by the Company, Customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefore, which request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).

(d) In the absence of additional coverage under (c) above, the Company's liability shall be limited to the following:
   (i) where the claim arises from activities other than those relating to customs brokerage, $50.00 per shipment or transaction, or
   (ii) where the claim arises from activities relating to "Customs business," $50.00 per entry or the amount of brokerage fees paid to Company for the entry, whichever is less;

(e) In no event shall Company be liable or responsible for consequential, indirect, incidental, statutory or punitive damages even if it has been put on notice of the possibility of such damages.

### 10. Advancing Money.
All charges must be paid by Customer in advance unless the Company agrees in writing to extend credit to customer; the granting of credit to a Customer in connection with a particular transaction shall not be considered a waiver of this provision by the Company.

### 11. Indemnification/Hold Harmless.
The Customer agrees to indemnify, defend, and hold the Company harmless from any claims and/or liability arising from the importation or exportation of Customer's merchandise and/or any conduct of the Customer, including but not limited to the inaccuracy of entry, export or security data supplied by Customer or its agent or representative which violates any Federal, State and/or other laws, and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which the Company may hereafter incur, suffer or be required to pay by reason of such claims; in the event that any claim, suit or proceeding is brought against the Company, it shall give notice in writing to the Customer by mail at its address on file with the Company.

### 12. C.O.D. or Cash Collect Shipments.
Company shall use reasonable care regarding written instructions relating to "Cash/Collect" on "Deliver (C.O.D.)" shipments, bank drafts, cashier's and/or certified checks, letter(s) of credit and other similar payment documents and/or instructions regarding collection of monies but shall have no liability if the bank or consignee refuses to pay for the shipment.

### 13. Costs of Collection.
In any dispute involving monies owed to Company, the Company shall be entitled to all costs of collection, including reasonable attorney's fees and interest at 15% per annum or the highest rate allowed by law, whichever is less, unless a lower amount is agreed to by Company.

### 14. General Lien And Right To Sell Customer's Property.
(a) Company shall have a general and continuing lien on any and all property of Customer coming into Company's actual or constructive possession or control for monies owed to Company with regard to the shipment on which the lien is claimed, a prior shipment(s) and/or both;

(b) Company shall provide written notice to Customer of its intent to exercise such lien, the exact amount of monies due and owing, as well as any on-going storage or other charges; Customer shall notify all parties having an interest in its shipment(s) of Company's rights and/or the exercise of such lien.

(c) Unless, within thirty days of receiving notice of lien, Customer posts cash or letter of credit at sight, or, if the amount due is in dispute, an acceptable bond equal to 110% of the value of the total amount due, in favor of Company, guaranteeing payment of the monies owed, plus all storage charges accrued or to be accrued, Company shall have the right to sell such shipment(s) at public or private sale or auction and any net proceeds remaining thereafter shall be refunded to Customer'

### 15. No Duty To Maintain Records For Customer.
Customer acknowledges that pursuant to Sections 508 and 509 of the Tariff Act, as amended, (19 USC §1508 and §1509) it has the duty and is solely liable for maintaining all records required under the Customs and/or other Laws and Regulations of the United States; unless otherwise agreed to in writing, the Company shall only keep such records that it is required to maintain by Statute(s) and/or Regulation(s), but not act as a "recordkeeper" or "recordkeeping agent" for Customer.

### 16. Obtaining Binding Rulings, Filing Protests, etc.
Unless requested by Customer in writing and agreed to by Company in writing, Company shall be under no obligation to undertake any pre- or post- Customs release action, including, but not limited to, obtaining binding rulings, advising of liquidations, filing of petition(s) and/or protests, etc.

### 17. Preparation and Issuance of Bills of Lading.
Where Company prepares and/or issues a bill of lading, Company shall be under no obligation to specify thereon the number of pieces, packages and/or cartons, etc.; unless specifically requested to do so in writing by Customer or its agent and Customer agrees to pay for same, Company shall rely upon and use the cargo weight supplied by Customer.

### 18. No Modification or Amendment Unless Written.
These terms and conditions of service may only be modified, altered or amended in writing signed by both Customer and Company; any attempt to unilaterally modify, alter or amend same shall be null and void.

### 19. Compensation of Company.
The compensation of the Company for its services shall be included with and is in addition to the rates and charges of all carriers and other agencies selected by the Company to transport and deal with the goods and such compensation shall be exclusive of any brokerage, commissions, dividends, or other revenue received by the Company from carriers, insurers and others in connection with the shipment. On ocean exports, upon request, where Company acts as a forwarder, upon request, the Company shall provide a detailed breakout of the components of all charges assessed and a true copy of each pertinent document relating to these charges. In any referral for collection or action against the Customer for monies due the Company, upon recovery by the Company, the Customer shall pay the expenses of collection and/or litigation, including reasonable attorneys' fees.

### 20. Severability.
In the event any Paragraph(s) and/or portion(s) hereof is found to be invalid and/or unenforceable, then in such event the remainder hereof shall remain in full force and effect. Company's decision to waive any provision herein, either by conduct or otherwise, shall not be deemed to be a further or continuing waiver of such provision

**21. Governing Law; Consent to Jurisdiction and Venue.**

These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of California, without giving consideration to principles of conflict of law. Customer and Company

(a) irrevocably consent to the jurisdiction of the United States District Court;
(b) agree that any action relating to the services performed by Company, shall only be brought in said court;
(c) consent to the exercise of in personam jurisdiction by said courts over it, and
(d) further agree that any action to enforce a judgment may be instituted in any jurisdiction.

Approved by: NATIONAL CUSTOMS BROKERS AND FORWARDERS ASSOCIATION OF AMERICA, INC. (REVISED 7/2009)

**22. Per Diem.**

The Customer will be liable for trucker's wait time, demurrage and per diem or per day charges and/or detention charges.

**23. Free Time.**

The free time of the cargo will be as per underlying carrier's policy.

**24. Telex Release.**

Shipments will be released unless a written hold request is received. The Company cannot warranty that a telex or express release will be held.