# EXHIBIT "M"



RICHARD E. SCHRIER, Esq.

Via ECF:                                     May 7, 2022
Magistrate Judge Valerie Figueredo
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      **Re:   Ameriway Corp. v. May Yan Chen and Ability Customs Inc.**
            **Case # 19-cv-09407 (VSB) (DCF)**

Dear Magistrate Judge:

      This office represents the Defendant/Third-Party Plaintiff May Yan Chen d/b/a Ability Customs Brokers (Ability Customs, Inc. is no longer in existence) in the above referred action. This letter application is seeking a protective order pursuant to FRCP Rule 26(c) with respect to a demand for documents and to interrogatories served by Plaintiff, which Defendant responded to. Some of the demand for documents were overly broad but also sought documentation which is prohibited from disclosure pursuant to 19 CFR 111.24. Similarly, two (2) of the interrogatories sought information which likewise is prohibited from disclosure pursuant to 19 CFR 111.24.

      Attached as Exhibit "A" is a copy of DEFENDANT'S RESPONSE TO AMERIWAY CORPORATION'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANTS (NOS. 42-63) which sets forth both the demands and responses and includes the objections asserted by Defendant.

      Attached as Exhibit "B" is a copy of DEFENDANT'S RESPONSE TO AMERIWAY CORPORATION'S SECOND SET OF INTERROGATORIES (NOS. 15-20) which sets forth each interrogatory and each answer to each interrogatory and includes the objections asserted by Defendant.

      Plaintiff has "strongly" objected to many of the responses and based upon communications between counsel, Defendant has come to the conclusion that a protective order is necessary to get past this discovery dispute. By reason thereof, this will certify that I believe the parties have in good faith conferred in an effort to resolve the dispute without court action as required by FRCP Rule 26(c) without success.

      In that this case has recently been assigned to you, a short background of the facts and proceedings I believe would be appropriate.

      Defendant, who is a licensed customs broker, was retained by Eagle Trading USA, LLC ("Eagle") to clear the import of products from China and arrange for some supply chain services. In connection with that retention, Eagle executed a power of attorney with Chen. The power of attorney ("POA") was signed on April 11, 2017 by its Chief Operating Officer (COO), Xiyan

Zhang, who is also one of the named attorneys for Plaintiff. The Power of Attorney was certified by *Peter Wolfgram, Esq., who held himself out as "counsel"* for Eagle, who is the other attorney that has appeared on behalf of Plaintiff. Mr. Wolfgram certified that the POA was being issued in accord with Eagles' Articles of Incorporation and By-laws. Further, Mr. Wolfgram signed the Certification as the "Second Corporate Officer" (Annexed as Exhibit "C" is a copy of the front page of the Power of Attorney under which Defendant, Chen performed services).

Over the next two and a half (2½) year period, Defendant cleared over 486 containers of products in which Eagle was the Importer of Record ("IOR"). In doing so Defendant advanced customs duties and other out of pocket expenses on behalf of Eagle. By the summer of 2019 Chen claims that Eagle had failed to pay $29,966 in customs brokers fees, $92,413 in advanced payment of customs duties and $284,990 of advanced out-of-pocket expenses which include trucking expenses, terminal fees, storage fees, demurrage fees, chassis rental fees, agent fees, document fees and customs examination fees.

As a result of the failure of Eagle to pay the outstanding money owed to Chen, Chen exerted lien rights to five (5) containers of products which were still under her control and in which Eagle was identified as the Importer of Record and which Chen had cleared customs and advanced expenses and fees. The content of those containers are being held in a New Jersey warehouse. The parties have had an inspection of the contents of the five (5) containers which had over 4000 boxes of product, each with a label identifying the sender/seller of the products and the purchaser/recipient of the products on each box. Neither Plaintiff Ameriway nor Eagle was identified as either the sender or recipient of any box inspected.

Ameriway is a logistics company with a subsidiary company in China. Upon information and belief the China subsidiary is also no longer an operating business.

There is presently pending a "companion" lawsuit in which Chen is suing Eagle (which company is now out of business), Mr. Zhang (who is believed to be one of the principals of Eagle) and his partner in Eagle (See 22-cv-00658).

Ameriway admits that it **does not own any of the cargo** that was imported, including the cargo that Chen has exerted a lien, however claims that it is a freight forwarder, that, with respect to the invoices that were sent to Eagle and paid, all were paid by Ameriway (which Chen does not contest) and therefore Ameriway claims it has the right of possession of the cargo being held by Chen. By reason thereof, Ameriway is claiming damages by reason of Chen's refusal to release the cargo without payment, and it further claims that Chen overcharged fees and expenses with respect to all 486 containers she cleared through customs (which Chen denies).

Chen's position has been that Ameriway is apparently a "Freight forwarder", was clearly not the importer of record on any of the containers cleared and that Ameriway lacks standing to bring this lawsuit.

With that context, the parties have had extensive document discovery (over 90,000 pages of documents have been exchanged to date) however the parties have narrowed down the issues so that a few issues on each side remain contested.

From the Defendants standpoint, Plaintiff has not produced any documentation substantiating its claim that it has standing to bring this lawsuit. More particularly, Plaintiff has not produced any documentation that it owned the cargo that it claims Defendant overcharged expenses nor has Plaintiff provided any proof of the damages it claims it incurred. Further, Plaintiff has not produced any documentation that it has any right of possession of the cargo being held by Defendant in the New Jersey warehouse, nor has it provided any proof of damages.

From Plaintiff's standpoint, it contests that Defendant had any lien rights with respect to the cargo being held by Defendant. More particularly, The power of attorney entered into by Mr. Zhang (on behalf of Eagle) provides that:

"…Grantor acknowledges receipt of May Y Chen DBA Ability Customs Brokers' Terms and Condition of Service governing all transactions between the parties…" (see Exhibit "C").

However, Plaintiff claims that it never received a copy of the Terms and Conditions notwithstanding the foregoing acknowledgement.

The Terms and Conditions that Defendant Chen utilized in the regular course of her business that she began in 2011 were based upon a form produced in 1994 by customs brokers trade associations (a copy of which is attached as Exhibit "D"). In 2009 those the trade associations had updated the terms and conditions, but those updates were not included in the terms and conditions that Defendant utilized in her business.

After this lawsuit was instituted, Defendant retained William Shayne of this law firm who updated Defendant's "terms and conditions" and thereafter the updated format was placed on Defendant's website. Attached as Exhibit "E" is a copy of the updated Terms and Conditions.

The Court's attention is respectfully directed to paragraph 13 of Exhibit "D" and paragraph 14 of Exhibit "E", both of which address Defendant's lien rights.

Attached as Exhibit "F" is a series of emails in which Plaintiff objected to the objections asserted by Defendant for the most part based upon the limitations placed on licensed customs brokers by 19 CFR 111.24 which provides:

### § 111.24 Records confidential.

"…The records referred to in this part and pertaining to the business of the clients serviced by the broker are to be considered confidential, and the broker must not disclose their contents or any information connected with the records to any persons other than those clients, their surety on a particular entry, and the Field Director, Office of International Trade, Regulatory Audit, the special agent in charge, the port director, **or other duly accredited officers or agents of the United States**, except on subpoena by a court of competent jurisdiction…"

Based upon the past history with Plaintiff's counsel (who in reality are the principals of Eagle), I wrote a letter to counsel in response to the May 3, 2022 email in which I provided the

law and Customs rulings as to the interpretation of 19 CFR 111.24, which clearly provide that the *identity of customers of defendant are not subject to disclosure.* I also pointed out that the document demands specifically were over broad, not proportional to the needs of the case (particularly in light of the discovery that had already been produced) and further that the expense and onerous time consumption to go through literally hundreds of thousands of emails over a period of 10+ years was a tremendous burden and expense which benefit was limited at best. I further pointed out that by reason thereof, Defendant was going to make this motion for a protective order pursuant to FRCP Rule 26(c). A copy of my letter to Plaintiff's counsel is attached hereto as Exhibit "G". A copy of the Customs rulings sent with the letter to Plaintiff's counsel is attached as Exhibit "H".

With regard to "Ameriway's Third Set of Requests For Production of Documents and Things" (Exhibit "A"), Defendant has objected to requests #'s 46, 47, 48, 49, 50, 51, and 54 disclosure pursuant to the confidentiality obligations as set forth in 19 CFR 111.24.

Further, the scope of the emails sought in requests #'s 46, 47, 48, 49, 50, 51, and 54 is not proportionate to the needs of obtaining information and certainly the burden and expense of identifying the literally thousands of emails that would be responsive to Plaintiff's demands from the literally hundreds of thousands of emails sent and received by Defendant and Defendant's employees over the past decade are neither proportional to the needs of the case, nor would the expense of the proposed discovery outweigh the likely benefit.

By reason of the foregoing, Defendant requests that this Court issue an order of protection as to those document demands pursuant to both 19 CFR 111.24 and FRCP Rule 26.

Further, with respect to paragraphs 17 and 18 of the Interrogatories (Exhibit "B"), Plaintiff also seeks information which is prohibited pursuant to the confidentiality obligations as set forth in 19 CFR 111.24. By reason of the foregoing, Defendant requests that this Court issue an order of protection as to those Interrogatories.

Lastly, request #44 in "Ameriway's Third Set of Requests For Production of Documents and Things" (Exhibit "A") seeks attorney's work product. More specifically, after William Shayne was retained by Defendant in this case, he revised/updated the Terms & Conditions utilized by Defendant in her business and the final copy was placed on Defendant's website and is attached as Exhibit "E". It is respectfully submitted that obtaining all Shayne's work product which resulted in the final revision which is published on Defendant's website is not relevant to the substance of this case when Plaintiff has the final published version. By reason thereof, Defendant requests that an order of protection be issued with that document demand as well.

The Second Circuit has held that "compelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception, is contrary to well established precedent." *In re Dow Corning Corp.*, 261 F.3d 280, 284 (2d Cir. 2001). The rationale for this rule is that such an order, even if it included protections against disclosure to non-parties, is an "inadequate surrogate for the privilege." *Id.*; *see also Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 160-162, 166 (2d Cir. 1992) (issuing a *writ of mandamus* vacating a

district court order directing the producing party to disclose, on an attorneys'-eyes-only basis, privileged documents so that the opposing counsel could determine which documents it agreed were privileged and which would be subject to motion practice)." [In this case, the privilege of refusing to disclose Defendant's customers is clear based upon 19 CFR 111.24 and the attorney work product privilege asserted with respect to all the interim drafts of the final version of the terms and conditions that is published on the website is wholly unnecessary to the needs of Plaintiff to properly prosecute its claims in this lawsuit.]

"…The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive. See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery.") (citation omitted); Allison v. Clos-ette Too, L.L.C., No. 14-cv-1618 (LAK) (JCF), 2015 WL 136102, at *8 (S.D.N.Y. Jan. 9, 2015)." *Citizens Union of City of NY v. ATTY. GEN. OF NY*, 269 F. Supp. 3d 124 - Dist. Court, SD New York (2017).

It is respectfully submitted that Plaintiff has not and can not meet the burden of proving that the discovery is relevant (in the case of the attorney work product documents sought to be discovered) and Defendant has already more than established that the documents sought, and information sought in the Interrogatories are not discoverable based upon 19CFR 111.24 and the cases that have interpreted that provision.

[see also BAT LLC v. TD BANK, NA, Dist. Court, ED New York 2018 (granting protective order for Electronically Stored Information, "stored on outdated hardware with software that is not in current use, and thus, the records are inaccessible.") ("Having reviewed the parties' respective submissions, the Court finds that the defendants have responded reasonably to the requests and have produced the documents and information required under the Federal Rules of Civil Procedure. The Court also found that COPS has shown that the information BAT sought is not proportional to the needs of the case in light of the costs involved in accessing such information and, even if the requests were proportional, such information is not reasonably accessible because it is maintained offline as inactive data, access to which requires special technology and resources.")].

It is respectfully submitted that even if the document demands are deemed "relevant", Defendant has met her burden of establishing that the demanded documents and information is privileged pursuant to 19 CFR 111.24 and therefore a protective order should be issued.

Thanking you in advance for your consideration of this application.

Very truly yours,

SHAYNE LAW GROUP, P.C.

S/ Richard E. Schrier  (electronic signature)
Richard E. Schrier, Esq.

# POWER OF ATTORNEY

Department of the Treasury
U.S. Customs & Border Protection
C.F. 19   141.32

Check appropriate Box
Individual   Partnership
Corporation   Sole Proprietorship
Limited Liability Company

IRS or SSN NO: (1) ███████████

KNOW ALL MEN BY THESE PRESENTS: That, (2) Eagle Trading USA LLC doing business as a/an (3) LLC
_____ organized under the laws of the State or Province of (4) Delaware
_____ residing or having a principal place of business at (5) 2424 E. York Street Ste.
300, Philadelphia PA 19125, constitutes and appoints May Y Chen DBA Ability Customs Brokers., Its officers, employees, and/or specifically authorized agents, to act for and on its behalf as a true and lawful agent and attorney of the grantor for and in the name, place and stead of said grantor, from this date, in the United State (the "territory") either in writing, electronically, or by other authorized means, to: make, endorse, sign, declare, or swear to any Customs entry, withdrawal, declaration,, certificate, bill of lading, carnet or any other documents required by law or regulation in connection with the importation, exportation, transportation, of any merchandise in or through the Customs territory, shipped or consigned by or to said grantor;

Perform any act or condition which may be required by law or regulation in connection wit  such merchandise deliverable to said grantor; to receive any merchandise;

Make endorsements on bills of lading conferring authority to transfer title; make entry or collect drawback; and to make, sign, declare, or swear to any statement or certificate required by law or regulation for drawback purposes, regardless of whether such document is intended for filling with Customs;

To sign, seal, and deliver for and as the act of said grantor any bond required by law or regulation in connection with the entry or withdrawal of imported merchandise, or merchandise exported with or without benefit of drawback, or in conn  tion with the entry, clearance, lading, unlading, or navigation of any vessel or other means of conveyance owned or operated by said grantor, _nd any and all bonds which may be voluntarily given and accepted under applicable laws and regulations, consignee's and owner's declarations provided for in section 485, Tariff Act of 1930, as amended, or affidavits or statements in connection with the entry of merchandise;

Sign and swear to any document and to perform any act that may be necessary or required by law or regulation in connection with the entering, clearing, lading, unlading, or operation of any vessel or other means of conveyance owned or operated by said grantor;

Authorize other Customs Brokers duly licensed within the territory to act as grantor' agent; to receive, endorse and collect checks issued for Customs duty refunds in grantor's name drawn on the Treasurer of the United States; If the grantor is a nonresident of the United States, to accept service of process on behalf of the grantor;

And generally to transact Customs business, Including filing of claims or protests under section 514 of the Tariff Act of 1930, or pursuant to the other laws if the territories, in which said grantor is or may be concerned or interested and which may property be transacted or performed by an agent and attorney;

Giving to said agent and attorney full power and authority to do anything whatever requisite and necessary to be done in the premises as fully as said grantor could do if present and acting. herby ratifying and confirming all that the said age~t and attorney shall lawfully do by virtue of these presents;

This power of attorney to remain in full force and effect until revocation in writing is duly given to and received by grantee (if the donor of this power of attorney is a partnership, the said power shall in no case have any force or effect in the United States after the expiration 2 years from the date of its execution);

Grantor acknowledges receipt of May Y Chen DBA Ability Customs Brokers' Terms and Condition of Service governing all transactions between the parties. If the Grantor is a Limited Liability Company, the signatory certifies that he/she has full authority to execute this power on behalf of the Grantor.

IN WITNESS WHEREOF, the said (6) Xiyan Zhang ___ Caused these presents to be sealed and  gned: (7) _____
_____ (8) COO  (9) 4/11/2017 _____

If you are the importer of record, payment to the broker will not relieve you of liability for U.S. Customs charges (duties, taxes or other debts owed Customs) in the event the charges are not paid by the broker. Therefore, if you pay by check, Customs charges may be paid with a separate check payable to the "U.S. Customs and Border protection" which shall be delivered to Customs by the broker. Importers who wish to utilize this procedure must contact our office in advance to arrange timely receipt of duty checks.

---

**CORPORATE CERTIFICATION**
(to be made by an officer other than the one who executes the power of attorney)

I, (10) Pete Wolfgram, certify that I am the (11) Counsel of (12) Eagle Trading USA LLC, organized under the laws of the State or Province of (13) Delaware that (14) Xiyan Zhang, who signed this power of attorney on behalf of the donor, is the (15) COO of said corporation; and that said power of attorney was duly signed, and attest~d for and in behalf of said corporation by authority of its governing body as the same appears in a resolution of the Board of   irectors passed at a regular meeting held on the (16) 10th day of April, 2017 now in my possession or custody. I further certify that the resolution is in accordance with the articles of incorporation and bylaws of said corporation and was executed in accordance with the laws of the State or Country of Incorporation. Second corporate officer's

Signature:     effective date 4/11/2017

**TERMS AND CONDITIONS OF SERVICE**
(Please Read Carefully)

All shipments to or from the Customer which term shall include the exporter, import, sender, receiver, owner, consignor, consignee transferor, or transferee of the shipments, will be handled by the customs broker, "May Y Chen dba Ability Customs Brokers" (hereinafter called the "Company") on the following terms and conditions;

1. **Services by Third Parties.** Unless the Company carries, stores or otherwise physically handles the shipment, and loss, damage, expense or delay occurs during such activity, the Company assume no liability as a carrier and is not to be held responsible for any loss, damage, expense or delay to the goods to be forwards or imported except as provided in paragraph 8 and subject to limitations of paragraph 9 below but undertakes only to use reasonable care in the selection of carriers, truckmen, lightermen, forwarders, customs brokers, agents, warehousemen and other to whom it may entrust the goods for transportation cartage, handling and/or delivery and/or storage or otherwise. When the Company carries, stores or otherwise physically handles the shipment, it does so subject to the limitation of liability set forth in paragraph 8 below unless a separate bill of lading, air waybill or other contract of carriage is issued by the Company, in which event the terms thereof shall govern.

2. **Liability Limitations of Third Parties.** The Company is authorized to select and engage carriers, truckmen, lightermen, forwards, customs brokers, agents, warehousemen and others, as required, to transport store, deal with and deliver the goods, all of whom shall be considered as the agents of the Customer, and the goods may be entrusted to such agencies subject to all conditions as to limitation of liability for loss, damage, expense or delay and to all rules, regulations, requirements and conditions, whether printed, written or stamped, appearing in bills of lading, receipts or tariffs issued by such carriers, truckmen, lightermen, forwarders, customs brokers, agents, warehousemen and others. The Company shall under no circumstances be liable for any loss, damage, expense or delay to the goods for any reason whatsoever when said goods are in custody possession or control of third parties selected by the Company to forward, enter and clear, transport or render other services with respect to such goods.

3. **Choosing Routes or Agents.** Unless express instructions in writing are received from the Customer, the Company has complete freedom in choosing the means, route and procedure to be followed in the handling, transportation and delivery of the goods. Advice by the Company to the Customer that a particular person or firm has been selected to render services with respect to the goods shall not be construed to mean that the Company warrants or represents that such person or firm will render such services.

4. **Quotations Not Binding.** Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by the Company to the Customer are for informational purposes only and are subject to change without notice and shall not under any circumstances be binding upon the Company unless the Company in writing specifically undertakes the handling or transportation of the shipment at specific rate.

5. **Duty to furnish Information.** (a) On an import at a reasonable time prior to entering of the goods for U.S. Customs, the Customer shall furnish to the Company invoices in proper form and other documents necessary or useful in the preparation of the U.S. Customs entry and also such further information as may be sufficient to establish, inter alia, the dutiable value, the classification, the county of origin, the genuineness of the merchandise and any mark or symbol associated with it, the Customer's right to import and/or distribute the merchandise, and the merchandise's admissibility, pursuant to U.S. law or regulation. If the Customer fails in a timely manner to furnish such information or documents, in whole or in part, as may be required to complete U.S Customs entry or comply with U.S. laws or regulations, or if the information or documents furnished are inaccurate or incomplete, the Company shall be obligated only to use its best judgment in connection with the shipment and in no instance shall be charged with knowledge by the Customer of the true circumstances to which such inaccurate, incomplete, or omitted information or document pertains. Where a bond is required by U.S. Customs to be given for the production of any document or the performance of any act, the Customer shall be deemed bound by the terms of the bond notwithstanding the fact that the bond has been executed by the Company as principal, it being understood that the Company entered into such undertaking at the instance and on behalf of the Customer, and the Customer shall indemnify and hold the Company harmless for the consequences of any beach of the terms of the bond. (b) On an export at a reasonable time prior to the exportation of the shipment the Customer shall furnish to the Company the commercial invoice in proper form and number, a proper consular declaration weights, measures, values and other information in the language of and as mas be required by the laws and regulations of the U.S. and the country of destination of the goods. (c) On an export or import the Company shall not in any way be responsible or liable for increased duty, penalty, fine or expense unless caused by the negligence or other fault of the Company, in which event its liability to be Customer shall be governed by the provisions of paragraph 8-9 below. The Customer shall be bound by and warrent the accuracy of all invoices, documents and information furnished to the Company by the Customer or its agent for export,

entry or other purposes and the Customer agrees to indemnify and hold harmless the Company against any increased duty, penalty, fine or expense including attorneys' fees, resulting from any inaccuracy incomplete statement, omission or any failure to make timely presentation, even if not due to any negligence of the Customer.

6. **Declaring Higher Valuation.** In as much as truckers, carriers, warehousemen and others to whom the goods are entrusted usually limit their liability for loss or damage unless a higher value is declared and a change based on such higher value is agreed to by said truckers, etc., the Company must receive specific written instructions from the Customer to pay such higher charge based on valuation and the truckers, etc., must accept such higher declared value otherwise the valuation placed by Customer on the goods shall be considered solely for export or customs purposes and the goods will be delivered to the trucker, etc., subject to the limitation of liability set forth herein in paragraphs 8-9 below with respect to any claim against the Company and subject to the provisions of paragraph 2 above.

7. **Insurance.** The Company will make reasonable efforts to effect marine, fire, theft, and other insurance upon the goods only after specific written instructions has been received by the Company in sufficient time prior to shipment from point of origin, and the Customer at the same time states specifically the kind and amount of insurance to be placed. The Company does not undertake or warrent that such insurance can or will be placed. Unless the Customer has its own open marine policy and instructs the Company to effect insurance under such policy, insurance is to be effected with one or more insurance companies or other underwriters to be selected by the Company. Any insurance placed shall be governed by the certificate or policy issued and will only be effective when accepted by such insurance companies or underwriters. Should an insurer dispute its liability for any reason, the insured shall have recourse against the insurer only and the Company shall not be under any responsibility of liability in relation thereto, notwithstanding that the premium upon the policy may not be at the same rates as that charged or paid to the Company by the Customer, or that the shipment was insured under a policy in the name of the Company. Insurance premiums and the charge of the Company for arranging the same shall be at the Customer's expense. If for any reason the goods are held in warehouse or elsewhere, the same will not be covered by any insurance unless the Company received written instructions from the Customer. Unless specifically agreed in writing, the Company assumes no responsibility to effect insurance on any export or import shipment which it does not handle.

8. **Limitation of Liability for Loss, etc.** (a) The Customer agrees that the Company shall only be liable for any loss, damage, expense or delay to the goods resulting from the negligence or other fault of the Company; such liability shall be limited to an amount equal to the lesser of fifty dollars ($50.00) per entry or shipment or the fee(s) charged for the services, provided that, in the case of partial loss, such amount will be adjusted pro rata;
(b) Where the Company issues its own bill of lading and receivers' freight charges as its compensation, Customer has the option of paying a special compensation and increasing the limit of Company's liability up to shipment's actual value; however, such option must be exercised by written agreement, entered into prior to any covered transaction(s), setting forth the limit of the Company's liability and the compensation received;
(c) In instances other than in (b) above, unless the Customer makes specific written arrangement with the Company to pay special compensation and declare a higher value and Company agrees in writing, liability is limited to the amount set forth in (a) above;
(d) Customer agrees that the Company shall, in no event, be liable for consequential, punitive, statutory or special damages in excess of the monetary limit provided for above.

9. **Presenting Claims.** Company shall be liable under paragraph 8 for any claims not presented to it in writing within 90 days of either the date of loss or incident giving rise to be claim; no suit to recover for any claim or demand hereunder shall be maintained against the Company unless instituted with six (6) months after the presentation of the said claim or such longer period provided for under statue(s) of the State having jurisdiction of the matter.

10. **Advancing Money.** The Company shall not be obliged to incur any expense, guarantee payment or advance any money in connection with the importing, forwarding, transporting, insuring, storing or coopering of the goods, unless the same is previously provided to the Company by the Customer on demand. The Company shall be under no obligation to advance freight charges, customs duties or taxes on any shipment nor shall any advance by the Company be construed as a waiver of the provisions hereof.

11. **Indemnification for Freight, Duties.** In the event that a carrier, other person or any government agency makes a claim or institutes legal action against the Company for ocean or other freight duties, fine, penalties, liquidated damages or other money due arising from a shipment of goods or the Customer, the Customer agrees to indemnify and hold harmless the Company for any amount the Company may be required to pay such carrier, other person or governmental agency together with reasonable expenses, including attorney fee, incurred by the Company in connection with defending such claim or legal action and obtaining reimbursement from the Customer. The confiscation or detention of the goods by ty any governmental authority shall not affect or diminish the liability of the Customer to the Company to pay all charges or other money due prompt on demand.

12. **C.O.D. Shipments.** Goods received with Customer's or other person's instructions to "Collect on Delivery" (C.O.D) by drafts or otherwise, or to collect on any specified terms by time drafts or otherwise are accepted by the Company only upon the express understanding that it will exercise reasonable care in the selection of a bank, correspondent, carrier or agent to whom it will send such item for collection, and the Company will not be responsible for any act, omission, default, suspension, insolvency or want of care, negligence, fault of such bank, correspondent, carrier or agent, nor for any delay in remittance lost in exchange, or loss during transmission, or while in the course of collection.

13. **General Lien on Any Property.** The Company shall have a general lien on any and all (and documents relating thereto) of the Customer, in its possession, custody or control or enroute, for all claims for charges, expenses or advances incurred by the Company in connection with any shipments of the Customer and if such claim remains unsatisfied for thirty (30) days after demand for its payment is made, the Company may sell at public auction or private sale upon ten (10) days written notice registered mail (R.R.R.) to the Customer, the goods, wares and/or merchandise, or so much thereof as may be necessary to satisfy such lien, and apply the net proceeds of such sale to the payment of the amount due to the Company. Any surplus from such sale shall be transmitted to the Customer, and the Customer shall be liable for any deficiency in the sale.

14. **Compensation of Company.** The compensation of the Company for its services shall be included with and is in addition to the rates and charges of all carriers and other agencies selected by the Company to transport and deal with the goods and such compensation shall be exclusive of any brokerage, commissions, dividends or other revenue received by the Company from carriers, insurers and others in connection with the shipment. On ocean exports, upon request, the Company shall provide a detailed breakout of the components of all charges assessed and a true copy of each pertinent document relating to these charges. In any referral for collection or action against the Customer for monies due to the Company, upon recovery by the Company, the Customer shall pay the expenses of collection and/or litigation, including a reasonable attorney fee.

15. **No Responsibility For Governmental Requirements.** It is the responsibility of the Customer to know and comply with the marking requirements of the U.S. Customs Service, the regulations of the U.S. Food and Drug Administration and all other requirements, including regulations of federal, state and/or local agencies pertaining to the merchandise. The Company shall not be responsible for action taken or fines, or penalties assessed by any government agency against the shipment because of the failure of the Customer to comply with the law of the requirements or regulations of any government agency or with a notification issued to the Customer by any such agency.

16. **Indemnity Against Liability Arising From The Importation of Merchandise.** The Customer agrees to indemnify and hold the Company harmless from any claims and/or liability arising from the importation of merchandise which violates any federal, state and/or other laws or regulations and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to attorney's fee, which the Company may hereafter incur, suffer or be required to pay by reason of claims by any government agency or private party. In the event that any action, suit or proceeding is brough against the C company by any government agency or any private party, the Company shall give notice in writing to the Customer by mail at its address on file with the Company. Upon receipt of such notice, the Customer at its own expense shall defend against such action and take all steps as may necessary or proper to prevent the obtaining of a judgment and/or order against the Company.

17. **Loss, Damage or Expense Due To Delay.** Unless the services to be performed by the Company on behalf of the Customer are delayed by reason of the negligence or other fault of the Company, the Company shall not be responsible for any loss, damage or expense incurred by the Customer because of such delay. In the event the Company is at fault, as aforesaid, its liability is limited in accordance with the provisions of paragraphs 8-9 above.

Based on National Customs Brokers & Forwarders Association of America, Inc (Revised 6/94)

## TERMS AND CONDITIONS OF SERVICE

These terms and conditions of service constitute a legally binding contract between the "Company" and the "Customer". In the event the Company renders services and issues a document containing Terms and Conditions governing such services, the Terms and Conditions set forth in such other document(s) shall govern those services.

### 1. Definitions.

(a) "Company" shall mean May Y Chen DBA Ability Customs Brokers, as is appropriate to the services provided, its/their subsidiaries, related companies, agents and/or representatives.

(b) "Customer" shall mean the person for which the Company is rendering service, as well as its principals, agents and/or representatives, including, but not limited to, shippers, importers, exporters, carriers, secured parties, warehousemen, buyers and/or sellers, shipper's agents, insurers and underwriters, break-bulk agents, consignees, etc. It is the responsibility of the Customer to provide notice and copy(s) of these terms and conditions of service to all such agents or representatives;

(c) "Documentation" shall mean all information received directly or indirectly from Customer, whether in paper or electronic form;

(d) Ocean Transportation Intermediaries" ("OTI") shall include an "ocean freight forwarder" and a "non-vessel operating common carrier;"

(e) "Third parties" shall include, but not be limited to, the following: "carriers, truckmen, cartmen, lightermen, forwarders, OTI's, customs brokers, agents, warehousemen and others to which the goods are entrusted for transportation, cartage, handling and/or delivery and/or storage or otherwise."

### 2. Company As Agent.

The Company acts as the "agent" of the Customer for the purpose of performing duties in connection with the entry and release of goods, post entry services, the securing of export licenses, the filing of export and security documentation on behalf of the Customer and other dealings with Government Agencies. As to all other services, Company acts as an independent contractor.

### 3. Limitation of Actions.

(a) Unless subject to a specific statute or international convention, all claims against the Company for a potential or actual loss, must be made in writing and received by the Company, within ninety (90) days of the event giving rise to claim; the failure to give the Company timely notice shall be a complete defense to any suit or action commenced by Customer.

(b) All suits against Company must be filed and properly served on Company as follows:

(i) For claims arising out of ocean transportation, within one (1) year from the date of the loss;

(ii) For claims arising out of air transportation, within two (2) years from the date of the loss;

(iii) For claims arising out of the preparation and/or submission of an import entry(s), within seventy five (75) days from the date of liquidation of the entry(s);

(iv) For any and all other claims of any other type, within two (2) years from the date of the loss or damage.

### 4. No Liability For The Selection or Services of Third Parties and/or Routes.

Unless services are performed by persons or firms engaged pursuant to express written instructions from the Customer, Company shall use reasonable care in its selection of third parties, or in selecting the means, route and procedure to be followed in the handling, transportation, clearance and delivery of the shipment; advice by the Company that a particular person or firm has been selected to render services with respect to the goods, shall not be construed to mean that the Company warrants or represents that such person or firm will render such services nor does Company assume responsibility or liability for any action(s) and/or inaction(s) of such third parties and/or its agents, and shall not be liable for any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party; all claims in connection with the Act of a third party shall be brought solely against such party and/or its agents; in connection with any such claim, the Company shall reasonably cooperate with the Customer, which shall be liable for any charges or costs incurred by the Company.

### 5. Quotations Not Binding.

Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by the Company to the Customer are for informational purposes only and are subject to change without notice; no quotation shall be binding upon the Company unless the Company in writing agrees to undertake the handling or transportation of the shipment at a specific rate or amount set forth in the quotation and payment arrangements are agreed to between the Company and the Customer.

### 6. Reliance On Information Furnished.

(a) Customer acknowledges that it is required to review all documents and declarations prepared and/or filed with the Customs and Border Protection, other Government Agency and/or third parties, and will immediately advise the Company of any errors, discrepancies, incorrect statements, or omissions on any declaration or other submission filed on Customer's behalf;

(b) In preparing and submitting Customs entries, export declarations, applications, documentation and or other required data, the Company relies on the correctness of all documentation, whether in written or electronic format, and all information furnishe by Customer; Customer shall use reasonable care to ensure the correctness of all such information and shall indemnify and hold the Company harmless from any and all claims asserted and/or liability or losses suffered by reason the Customer's failure to disclose information or of any incorrect or false statement by the Customer or its agent, representative or contractor upon which the Company reasonably relied. The Customer agrees that the Customer has an affirmative non-delegable duty to disclose any and all information required to import, export or enter the goods.

### 7. Declaring Higher Value To Third Parties.

Third parties to whom the goods are entrusted may limit liability for loss or damage; the Company will request excess valuation coverage only upon specific written instructions from the Customer, which must agree to pay any charges therefore; in the absence of written instructions or the refusal of the third party to agree to a higher declared value, at Company's discretion, the goods may be tendered to the third party, subject to the terms of the third party's limitations of liability and/or terms and conditions of service.

### 8. Insurance.

Unless requested to do so in writing and confirmed to Customer in writing, Company is under no obligation to procure insurance on Customer's behalf; in all cases, customer shall pay all premiums and costs in connection with procuring requested insurance.

### 9. Disclaimers; Limitation of Liability.

(a) Except as specifically set forth herein, Company makes no express or implied warranties in connection with its services;

Trade Power of Attorney & Terms and Conditions                                                                                         page 1 of 3

(b) Subject to (d) below, Customer agrees that in connection with any and all services performed by the Company, the Company shall only be liable for its negligent acts, which are the direct and proximate cause of any injury to Customer, including loss or damage to Customer's goods, and the Company shall in no event be liable for the acts of third parties;

(c) In connection with all services performed by the Company, Customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefore, which request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).

(d) In the absence of additional coverage under (c) above, the Company's liability shall be limited to the following:

(i) where the claim arises from activities other than those relating to customs brokerage, $50.00 per shipment or transaction, or

(ii) where the claim arises from activities relating to "Customs business," $50.00 per entry or the amount of brokerage fees paid to Company for the entry, whichever is less;

(e) In no event shall Company be liable or responsible for consequential, indirect, incidental, statutory or punitive damages even if it has been put on notice of the possibility of such damages.

### 10. Advancing Money.

All charges must be paid by Customer in advance unless the Company agrees in writing to extend credit to customer; the granting of credit to a Customer in connection with a particular transaction shall not be considered a waiver of this provision by the Company.

### 11. Indemnification/Hold Harmless.

The Customer agrees to indemnify, defend, and hold the Company harmless from any claims and/or liability arising from the importation or exportation of Customer's merchandise and/or any conduct of the Customer, including but not limited to the inaccuracy of entry, export or security data supplied by Customer or its agent or representative which violates any Federal, State and/or other laws, and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which the Company may hereafter incur, suffer or be required to pay by reason of such claims; in the event that any claim, suit or proceeding is brought against the Company, it shall give notice in writing to the Customer by mail at its address on file with the Company.

### 12. C.O.D. or Cash Collect Shipments.

Company shall use reasonable care regarding written instructions relating to "Cash/Collect" on "Deliver (C.O.D.)" shipments, bank drafts, cashier's and/or certified checks, letter(s) of credit and other similar payment documents and/or instructions regarding collection of monies but shall have no liability if the bank or consignee refuses to pay for the shipment.

### 13. Costs of Collection.

In any dispute involving monies owed to Company, the Company shall be entitled to all costs of collection, including reasonable attorney's fees and interest at 15% per annum or the highest rate allowed by law, whichever is less, unless a lower amount is agreed to by Company.

### 14. General Lien And Right To Sell Customer's Property.

(a) Company shall have a general and continuing lien on any and all property of Customer coming into Company's actual or constructive possession or control for monies owed to Company with regard to the shipment on which the lien is claimed, a prior shipment(s) and/or both;

(b) Company shall provide written notice to Customer of its intent to exercise such lien, the exact amount of monies due and owing, as well as any on-going storage or other charges; Customer shall notify all parties having an interest in its shipment(s) of Company's rights and/or the exercise of such lien.

(c) Unless, within thirty days of receiving notice of lien, Customer posts cash or letter of credit at sight, or, if the amount due is in dispute, an acceptable bond equal to 110% of the value of the total amount due, in favor of Company, guaranteeing payment of the monies owed, plus all storage charges accrued or to be accrued, Company shall have the right to sell such shipment(s) at public or private sale or auction and any net proceeds remaining thereafter shall be refunded to Customer.

### 15. No Duty To Maintain Records For Customer.

Customer acknowledges that pursuant to Sections 508 and 509 of the Tariff Act, as amended, (19 USC §1508 and §1509) it has the duty and is solely liable for maintaining all records required under the Customs and/or other Laws and Regulations of the United States; unless otherwise agreed to in writing, the Company shall only keep such records that it is required to maintain by Statute(s) and/or Regulation(s), but not act as a "recordkeeper" or "recordkeeping agent" for Customer.

### 16. Obtaining Binding Rulings, Filing Protests, etc.

Unless requested by Customer in writing and agreed to by Company in writing, Company shall be under no obligation to undertake any pre- or post- Customs release action, including, but not limited to, obtaining binding rulings, advising of liquidations, filing of petition(s) and/or protests, etc.

### 17. Preparation and Issuance of Bills of Lading.

Where Company prepares and/or issues a bill of lading, Company shall be under no obligation to specify thereon the number of pieces, packages and/or cartons, etc.; unless specifically requested to do so in writing by Customer or its agent and Customer agrees to pay for same, Company shall rely upon and use the cargo weight supplied by Customer.

### 18. No Modification or Amendment Unless Written.

These terms and conditions of service may only be modified, altered or amended in writing signed by both Customer and Company; any attempt to unilaterally modify, alter or amend same shall be null and void.

### 19. Compensation of Company.

The compensation of the Company for its services shall be included with and is in addition to the rates and charges of all carriers and other agencies selected by the Company to transport and deal with the goods and such compensation shall be exclusive of any brokerage, commissions, dividends, or other revenue received by the Company from carriers, insurers and others in connection with the shipment. On ocean exports, upon request, where Company acts as a forwarder, upon request, the Company shall provide a detailed breakout of the components of all charges assessed and a true copy of each pertinent document relating to these charges. In any referral for collection or action against the Customer for monies due the Company, upon recovery by the Company, the Customer shall pay the expenses of collection and/or litigation, including reasonable attorneys' fees.

### 20. Severability.

In the event any Paragraph(s) and/or portion(s) hereof is found to be invalid and/or unenforceable, then in such event the remainder hereof shall remain in full force and effect. Company's decision to waive any provision herein, either by conduct or otherwise, shall not be deemed to be a further or continuing waiver of such provision.

### 21. Governing Law; Consent to Jurisdiction and Venue.

These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of California, without giving consideration to principles of conflict of law. Customer and Company

(a) irrevocably consent to the jurisdiction of the United States District Court;
(b) agree that any action relating to the services performed by Company, shall only be brought in said court;
(c) consent to the exercise of in personam jurisdiction by said courts over it, and
(d) further agree that any action to enforce a judgment may be instituted in any jurisdiction.

Approved by: NATIONAL CUSTOMS BROKERS AND FORWARDERS ASSOCIATION OF AMERICA, INC. (REVISED 7/2009)

### 22. Per Diem.

The Customer will be liable for trucker's wait time, demurrage and per diem or per day charges and/or detention charges.

### 23. Free Time.

The free time of the cargo will be as per underlying carrier's policy.

### 24. Telex Release.

Shipments will be released unless a written hold request is received. The Company cannot warranty that a telex or express release will be held.