# EXHIBIT "N"



**SHAYNE**
LAW GROUP, P.C.

RICHARD E. SCHRIER, ESQ.

Via ECF:
Magistrate Judge Valerie Figueredo
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

May 18, 2022

Re:  Ameriway Corp. v. May Yan Chen and Ability
     Customs Inc.
     Case # 19-cv-09407 (VSB) (DCF)

Dear Judge Figueredo:

This office represents the Defendant/Third-Party Plaintiff May Yan Chen d/b/a Ability Customs Brokers. After receiving Plaintiff's letter motion of May 10, 2022 (ECF 115) and Plaintiff's letter of May 12, 2022 (ECF 118), it is necessary to respond to the claims and allegations made by Plaintiff in advance of the conference scheduled for May 19, 2022 and put a few facts in context.

I. **The version of the terms conditions that were prepared by William Shayne of this office:**

Mr. Shayne of this office specializes in customs and international import and export law. Over his career he has literally represented hundreds of customs brokers for all types of customs related and unrelated work. Over the years, routinely as part of his services to his clients, he reviews the contractual documentation that each client utilizes with their respective customers.

One of the documents he routinely reviews for all new clients is the "terms and conditions" and the other is the "power of attorney" that customs brokers must be given to allow them to perform their customs brokers duties on behalf of importers and exporters of products. More specifically, he routinely reviews the power of attorneys to make sure that the language coincides with the requirements of US customs and the laws that govern the import and export of products.

TEL: 212 566-4949  FAX: 212 202-5423  EMAIL:
WSHAYNE@SHAYNELAWGROUP.COM

PAGE 1 OF 3

As a result, Mr. Shayne has over the years developed Powers of Attorney and *user-friendly formatted* versions of industry-standard terms and conditions which comply with customs rules and regulations and take into consideration statutes and U.S. Customs' rulings that apply to the import and export of goods and the services provided by customs brokers. Routinely, Mr. Shayne has recommended to each of his new clients that they substitute the Power of Attorney he has developed, update their terms and conditions and to make reference to them in their various communications. As a result, countless customs brokers throughout the United States are now using Powers of Attorney and updated versions of Terms and Conditions either developed or provided by Mr. Shayne.

The Defendant in this case first became a client of Mr. Shayne after the service of the summons and complaint in this case was served. As was his standard procedure, he looked at their Power of Attorney, provided them with an updated Power of attorney and updated camera-ready terms and conditions artwork.

The camera-ready terms and conditions, contains at the bottom a revision date which indicates the version of the terms and condition form just as almost every government document does. The fact that specific pieces of information such as the client name, venue and jurisdiction are completed, does not result in an updated version of the terms. The revision number of "rev 20170601" is no more evidence of the date that the Broker put them into use or represents then as an effective date than the revision date "(Revised 02/13)" of the terms themselves found in the National Customs Brokers and Forwarders Association of America, Inc. approval statement which is also on those terms immediately preceding Mr Shayne's revision label.

As set forth in our letter to Plaintiff (ECF 114 at Exhibit "G") the defendant is expected to testify at her deposition that she took the recommended new terms and conditions and placed it on her website for future business. Further, Defendant is expected to testify that prior to the institution of the lawsuit, Defendant was utilizing a version of the terms and conditions a copy of which is attached at ECF 114 at Exhibit "D", which at paragraph 13 gives Defendant the right to exert a general lien on any cargo in its possession.

The problem that Plaintiff is having in this case is that they have not been asking or requesting the correct documentation or information in their various demands, and frankly have dreamt up a scenario that the Defendant is attempting to commit a fraud on the court in an attempt to make the claim that defendant does not

have the right to exert a general lien on the cargo that she is holding in the New Jersey warehouse.

In an attempt to get past this issue, the Court is respectfully referred to our letter motion for protective order (ECF 114 at Exhibit G), which is a letter responding to Plaintiffs email in which we specifically state that Chen, "as an offer proof", will likely testify as indicated above. The purpose of providing that information to Plaintiff is simply that it is Defendant's view that we are all wasting time on an issue that is irrelevant to the issues in this case.

Defendant is not claiming that the terms of conditions that are now posted on Defendants website are the terms and conditions that apply to this case. Rather Defendant is claiming that the terms and conditions provided as exhibit D at ECF 114 were the terms and conditions that apply.

As an aside, the Court however will note that in both versions of the Terms and Conditions, there is a provision that specifically states that Defendant shall have a General Lien against any cargo in her possession for any and all unpaid invoices by the customer (See ECF 114 at Exhibit D paragraph 13 [the version of the terms and conditions applicable to this case] and Exhibit E paragraph 14 [the post summons and complaint version])

The reason this is an issue is that Defendant is claiming that the importer of record, Eagle Trading USA LLC, has unpaid invoices of almost $400,000. Plaintiff has admitted that notwithstanding the fact that the Power of Attorney was signed by "Eagle", any money that was paid to Defendant was paid by Ameriway not Eagle.

However, the "game" Plaintiff is "playing" is that it is Eagle (a now defunct corporation, which is owned by Attorney Zhang) may owe Defendant the money, but Ameriway (a company that Attorney Zhang is the CEO and a shareholder), by reason of the payments of prior invoices to Defendant Chen and allegedly as the logistics company that is responsible for the movement of the cargo, is claiming it has the right of possession of the cargo which Defendant, Chen performed import services for, advanced expenses and has exerted a lien against notwithstanding the outstanding balance due  As a result, Defendant is claiming not just a specific lien against the cargo being held (which is the subject of this case) but also a general lien for the entire unpaid balance pursuant to the applicable terms and conditions.

It is respectfully submitted that there was nothing nefarious about the terms and conditions that were provided by Mr. Shayne that were placed on Defendant's website after the institution of this lawsuit, nor any representation made by the

inclusion of his revision date of 20170601 or the NCBFAA revision date of 02/13. However, Mr. Shayne does object to disclosing his customer list which is virtually *every customs broker that he has dealt* with over the past decade that have received from him Powers or Attorney or terms and conditions. It is Mr. Shayne's position that all such communications and revisions over the years constitute his attorney work product and are also subject to attorney-client privilege, and more importantly, has nothing whatsoever to do with the issues in this case. It has no bearing whatsoever on the claims or defenses raised in this case nor the claims or defenses asserted by Defendant. As set forth above, Defendant is not claiming that the terms and conditions that are on her website now are the terms and conditions that applied to the dispute with Plaintiff and with Eagle in the companion case that has been assigned to his court.

Defendant does however note that both the current and previous terms and conditions provide similar authority for a general lien which makes the issue of the effective date of the new terms immaterial as to the issues on which Plaintiff seeks discovery.

With respect Plaintiff's request for production of the "native files" to the 1994 version of the terms and conditions that are applicable to the issues in this case, as set forth in our letter responding to Plaintiffs email at ECF 114 exhibit G, "as an offer of proof" we advised Plaintiff that the Defendant is expected to testify that prior to the time she received her customs brokers license and began her own business, Defendant worked for a licensed customs broker and that her best recollection is that she took a copy of the Power of Attorney and the terms and conditions that were being utilized by her former boss and utilized that format to generate her own power of attorney when she started her own business (see: ECF 114 Exhibit G). Therefore, assuming that is the expected testimony, it is suggested that the Plaintiff's application for an order directing the "native files" for the terms and conditions that were in effect at the time Defendant performed custom broker's services should be denied with leave to reapply should the testimony be other than as represented.

By reason of the foregoing Defendant has made the application for a protective order as to all the underlying documentation that relates to the so called revised " terms and conditions".

II. **Plaintiffs demand for documentation with regard to other customers that entered into a power of attorney relationship with defendant**

The power of attorney signed on 4/11/2017 by Mr. Zhang, (The Plaintiff's attorney as well as an officer and principal of Plaintiff Ameriway and Eagle Trading USA, LLC) has a *specific provision that reads as follows:*

"… **Grantor (Eagle) acknowledges receipt of May Y Chen DBA Ability Customs Brokers' Terms and Conditions of Service governing all transactions between the parties.** If the grantor is a limited liability company, the signatory certifies that he/she has full authority to execute this power on behalf of the Grantor…"

That signed power of attorney is attached to Defendant's letter motion (ECF 114 exhibit C) as well as Plaintiff's letter at ECF 115 exhibit D. Defendant claims that the Terms and Conditions that apply to the Power of Attorney is the version that she first began to use when she opened her business a decade ago (See: ECF 114 at exhibit D).

Plaintiff, at page 2 of the May 12, 2022 letter to the Court (ECF 118), states:

"…Chen claims that Plaintiff 'acknowledged receipt' of the terms and conditions when it executed the 2017 POA, but Plaintiff never received any such terms prior to November 2021, and **Chen cannot prove otherwise**. Therefore, Plaintiff has a good faith basis for believing that Chen never used any terms giving her lien rights prior to this lawsuit, and that any document purporting as such is a fabrication…".

After three (3) years of litigation, Plaintiff has finally come out and openly revealed what Defendant suspected all along: That besides the hurdle of overcoming their right to possession of the cargo that Chen has taken possession of under her lien rights for the failure to pay the outstanding invoices, Plaintiff is trying to "shift the burden of proof" to Defendant to prove that she in fact provided a copy of the terms and conditions, when in the power of attorney signed by Attorney Zhang, he specifically stated that he acknowledged receipt of the terms and conditions. To make matters worse for Plaintiff, Attorney Pete Wolfgram, the other attorney appearing for Plaintiff, signed the same power of attorney as the second officer of Eagle.

Although we are still involved with "discovery", the issue of who has the obligation to "prove" receipt of the terms and conditions appears to be an issue that may be for the trial court and eventually be the trier of fact. I would suspect that this issue will be clarified at the depositions of the parties.

Based upon the Plaintiff's position that they were not served with a copy of the terms and conditions, they are apparently trying to identify other customers of the Defendant to identify witnesses who can support their position.

A Customs Brokers confidentiality obligation parallels that of any attorney and that obligation as been codified in Customs Regulations since 1960 (The regulation was first codified as 19 CFR 31.09(h) in 1960). Although Defendant understands the relevancy of that information, the problem is that Defendant, as a licensed customs broker is prohibited from providing that information pursuant to 19 CFR 111.24. Attached as exhibit "A" is a copy of Defendant's customs brokers license.

Pursuant to the statutory scheme, if Defendant were to produce even one piece of the documentation demanded by Plaintiff without the consent of any of Defendants clients, Defendant could literally be stripped of her customs brokers license, and she would literally be out of business. See the three (3) rulings on this issue at ECF 114 at Exhibit "H".

In addition, even if Defendant were permitted to produce the documentation requested by Plaintiff, the request is so broad and covers such an extended period of time that the defendant would literally have to review tens of thousands of pages of documentation and thousands of emails over the last decade to comply. As a practical matter the cost and time consumption of that request is unreasonable under the circumstances.

However, as indicated in the letter from defendant responding to plaintiffs email at ECF 114 exhibit G, Defendant has been reaching out to a number of her customers to see if they would consent to the disclosure of their identity and documentation showing that they had in fact been provided with a copy of the terms and conditions which apply in this case.

Since the communication at ECF 114 exhibit G, and I have been advised that a few of the Defendants customers have orally consented to the disclosure of their identity and we are in the process of obtaining written consents from those customers after which their identity will be revealed to the Plaintiff. Is respectfully submitted that the compromise as proposed of providing the identity of Defendant's customers that consent to the disclosure of their identity is a fair balance of the needs of the Plaintiff in this case and the limitations that Defendant is bound by pursuant to 19 CFR 111.24

Based upon the foregoing, it is respectfully submitted that:

1. A protective order should be issued with respect to William Shayne's so called "native files" with respect to the version of the Terms and Conditions which are not at issue in this case;
2. Even if the document demands that relate to the identity of Defendants customer are deemed "relevant", Defendant has met her burden of establishing that the demanded documents and information is privileged pursuant to 19 CFR 111.24 and therefore a protective order should be issued;
3. Plaintiff's application for the so called "native files" as to the 1994 terms and conditions be denied with leave to renew after the Defendant's deposition;
4. Plaintiff's application to depose Attorney William Shayne's be denied, or at the minimum denied with leave to renew after the parties' depositions have been held;
5. Plaintiff's application for an order directing Defendant to further supplement its responses to the interrogatories and document demands be denied; and
6. Plaintiff's application for legal fees be denied.

Very truly yours,

**SHAYNE LAW GROUP, P.C.**

S/ Richard E. Schrier  (electronic signature)
Richard E. Schrier, Esq.