IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Ameriway Corporation**<br><br>         Plaintiff,<br>  v.<br><br>**May Yan Chen**,<br><br>**Ability Customs, Inc**.,<br><br>         Defendants. | 19-cv-09407 (VSB) (VF) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY ATTORNEY XIYAN ZHANG AND ATTORNEY PETE WOLFGRAM**

## TABLE OF CONTENT

I. INTRODUCTION AND FACTUAL BACKGROUND…………………………….…..1

II. LEGAL ARGUMENT: CHEN FAILS TO ESTABLISH A
FACTUAL OR LEGAL BASIS TO DISQUALIFY EITHER
WOLFGRAM OR ZHANG AS COUNSEL……………………………………………….3

    A. Waiver: Chen Waited Almost Three Years to File Her Motion Without Excuse………...4

    B. Wolfgram is Not a 'Necessary' Fact Witness Under Rule 3.7(a)………………………...6

        1. *Chen Knows that "Frank Tang" is Not a Pseudonym;*
           *He is a Real Person who was Employed by Ameriway*……………………………….7

    C. Chen's Further Arguments in Support of Wolfgram's and Zhang's
Disqualification are Without Merit………………………………………………………10

    D. Chen's Motion to Disqualify Both Wolfgram and Zhang is Premature…………………14

    CONCLUSION………………………………………………………………………………16

# TABLE OF AUTHORITIES

**Cases**

*Clark v. Bank of N.Y.*, 801 F. Supp. 1182, 1197 (S.D.N.Y. 1992)……………………………..…4

*Twin Laboratories, Inc. v. Weider Health & Fitness*, No. 89-CV-949,
1989 U.S. Dist. LEXIS 4693, 1989 WL 49368, at *4 (S.D.N.Y. May 4, 1989)……………....….4

*Jose Luis Pelaez*, 366 F. Supp. 3d at 571-72………………………………………….……..…4

*Pastor v. Trans World Airlines, Inc.*, 951 F. Supp. 27, 32 (E.D.N.Y. 1996)…………………….4

*Siverio v. Lavergne*, No. 86-CV-6584 (KMW),
1989 U.S. Dist. LEXIS 3090, 1989 WL 31531, at *2 (S.D.N.Y. Mar. 29, 1989)………………4-5

*Salomone v. Abramson*, 2015 NY Slip Op. 25097……………………………………...….…5

*Lewis v. Unigard Mut. Ins. Co.*, 83 A.D.2d 919, 919,
442 N.Y.S.2d 522, 523 (1st Dep't 1981)……………………………………...………5-6

*Young v. Oak Crest Park, Inc.*, 75 A.D.2d 956, 428 N.Y.S.2d 69 (3d Dep't 1980)…………….6

*World Youth Day, Inc. v. Famous Artists,* 866 F. Supp. 1297, 1302 (D.Colo. 1994)…………..6

*Ello v. Singh,* 2006 WL 2270871, at *6 (S.D.N.Y. Aug. 6, 2006)……………………………7, 10

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*,
687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010)………………………………………………….14

*Norman Norell, Inc. v. Federated Dep't Stores, Inc.*,
450 F. Supp. 127, 131 (S.D.N.Y. 1978)……………….…………………………...…………15

Plaintiff, Ameriway Corporation, by its undersigned attorneys, respectfully requests that this Court deny Defendants' Motion to Disqualify Attorneys Pete Wolfgram and Xiyan Zhang. In support, Plaintiff states as follows:

I. **INTRODUCTION AND FACTUAL BACKGROUND**

Plaintiff Ameriway is a corporation formed in Delaware in 2016. Ameriway's primary business is to provide logistics services for customers who ship goods from China to the U.S. Ameriway, through its partner company Shenzhen Liante International Logistics Co., Ltd. ("Liante"), intakes inventory in China from its clients, and coordinates the importation, storage and movement of the cargo to its final destination in the U.S.

Ameriway designated Eagle Trading USA, LLC ("Eagle") as the Importer of Record ("IOR") for every container processed by Ameriway, including the five containers at issue. Eagle is a company engaged in the import/export business, and agreed to be the designated IOR for Ameriway's shipments. This practice was recommended by Ameriway's initial customs broker and reaffirmed by Defendant Chen.

Xiyan Zhang, CEO of Ameriway, is also the COO of Eagle. Once the cargo cleared customs under Eagle as IOR, Eagle transferred ownership, possession, and control of the cargo to Ameriway. Ameriway then worked directly with several parties, including Chen, to move the cargo to its destination.

In April 2017, Ameriway retained Chen as a customs broker by executing a standard Power of Attorney ("2017 POA") form through Eagle. Ex. A. Zhang and Wolfgram signed the 2017 POA as COO and legal counsel of Eagle, respectively. The POA authorized "May Yan Chen, d/b/a Ability Customs Brokers," to conduct customs filings on its behalf with U.S. Customs and Border Protection ("CBP"). Id. Between April 2017 and August 2019, Chen

cleared over 400 containers with CBP for Ameriway. Chen also worked directly with Ameriway's employees, including Frank Tang, Xiyan Zhang, and Dustin Matos, to facilitate the transport of the cargo to its destination over this two-year period.

The 2017 POA is a single page document that contains no payment terms or lien provisions. The document does not even mention the word 'lien.' Id. The 2017 POA states that Grantor "acknowledges receipt" of the terms and conditions of service pursuant to the POA, but Chen never sent any terms and conditions to Plaintiff or Eagle; nor did her company website contain any terms in 2017. Id. Plaintiff has repeatedly asserted that the "terms and conditions" language in the 2017 POA is standard boilerplate unsupported by a separate service agreement.

It is undisputed that in August 2019, Chen directed a carrier, L&H Trucking Company (L&H), to detain five cargo containers at the Port of New York and deliver them to a storage facility in New Jersey without Plaintiff's authorization. *See* Plaintiff's Cross-Motion to Disqualify Chen's counsel, Dkt. No. 146-2, Ex. B. Chen seized the cargo because she believed Plaintiff owed her a past due balance related to separate and prior shipments. Id. However, Chen never notified Ameriway or Eagle of this fact, or issued a written lien notice before taking the cargo.

On August 7, Plaintiff requested the delivery status of the first detained container, Container No. OOCU6964350. Chen falsely claimed that she did not have the container. Instead, she stated that one of the "truck companies" she worked with detained the cargo because <u>she owed them service fees</u>, and Ameriway needed to immediately pay her $100,000 to "assist" in getting the containers released. Ex. C, at 3-4.

This was false. It is undisputed that the third-party "trucking companies" never "seized" the containers; Chen had them the entire time, by her own admission. Plaintiff eventually

2

learned this fact and filed the instant action for conversion, fraud, and other claims in October 2019.

Chen filed counterclaims for guaranty of contract and "implied" guaranty of contract, alleging that Ameriway guaranteed payment on 131 invoices and certain "out of pocket" fees allegedly owed by Eagle totaling almost $300,000 as of October 2019. Dkt. No. 37. Although Chen claims that Ameriway executed a guaranty contract with her for the invoices, she paradoxically argues that Ameriway lacks standing in this case because it acted only in the capacity as Eagle's guarantor, or "paying agent," but did not have a sufficient interest in the cargo to bring a claim. Dkt. No. 144, p. 14. Further, Chen's counterclaims for fraud in the inducement and misrepresentation mirror her contract claims; she essentially claims that Ameriway promised to pay Eagle's debt, but did not do so. Dkt. No. 37.

On July 31, 2020, Chen filed a Third-Party Action against Eagle and Zhang based on the same underlying facts as her counterclaims in the Ameriway case. Specifically, Chen asserted claims for guaranty of contract, fraud in the inducement, and misrepresentation related to the 131 invoices at issue here. Dkt. No. 41. Eagle filed a 12(B)(6) motion, to which Chen never responded for fifteen months. After deeming Eagle's motion unopposed, this Court dismissed Chen's complaint on the merits in its entirety on December 27, 2021. Dkt. No. 81. Chen did not appeal this ruling, but instead decided to simply file another action against Eagle based on the same operative facts as the first, dismissed case. See 1:22-cv-00658. Eagle then filed another 12(B)(6) motion, based primarily on *res judicata* grounds, which is pending. See 1:22-cv-00658, Dkt. No. 15.

## II. LEGAL ARGUMENT: CHEN FAILS TO ESTABLISH A FACTUAL OR LEGAL BASIS TO DISQUALIFY EITHER WOLFGRAM OR ZHANG AS COUNSEL

Chen asserts that Wolfgram and Zhang should be disqualified based on Model Rules Code of Professional Conduct 3.7(a), 1.8, 1.9(a), 1.10, and Canon 9. However, disqualification motions can often be strategically motivated, create delay and additional expense, and interrupt attorney-client relationships, the movant must satisfy a high standard of proof to disqualify the non-movant's counsel. *Clark v. Bank of N.Y.*, 801 F. Supp. 1182, 1197 (S.D.N.Y. 1992) ("[A]lthough doubts should be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified." (citations omitted)).

"Mere speculation will not suffice" to meet this high standard, *Twin Laboratories, Inc. v. Weider Health & Fitness*, No. 89-CV-949, 1989 U.S. Dist. LEXIS 4693, 1989 WL 49368, at *4 (S.D.N.Y. May 4, 1989); *see also Jose Luis Pelaez*, 366 F. Supp. 3d at 571-72 ("When there is no claim that the trial will be tainted, appearance of impropriety [under Canon 9] is simply too slender a reed on which to rest a disqualification order except in the rarest cases.)

### A. Waiver: Chen Waited Almost Three Years to File Her Motion Without Excuse

Chen's lengthy and unexcused delay in bringing her motion to disqualify weighs against disqualification of Zhang and Wolfgram. A motion to disqualify should be denied where a delay in making the motion is inordinate and inadequately explained. *See Pastor v. Trans World Airlines, Inc.*, 951 F. Supp. 27, 32 (E.D.N.Y. 1996), stating that "[A] court may find an implied waiver if a party delays its disqualification motion unreasonably." "[C]ases in which an unreasonable delay ha[s] been found typically involve[ ] delays of 'at least several years between the time the moving party learned of the conflict and the time the disqualification motion was asserted.'" *Canfield*, 2020 U.S. Dist. LEXIS 122501, 2020 WL 3960929, at *4 (quoting *Siverio v.*

4

*Lavergne*, No. 86-CV-6584 (KMW), 1989 U.S. Dist. LEXIS 3090, 1989 WL 31531, at *2 (S.D.N.Y. Mar. 29, 1989)); *see also Salomone v. Abramson*, 2015 NY Slip Op. 25097, wherein the First Department held that the moving party's laches in making a disqualification motion pursuant to the lawyer-witness rule is a relevant consideration and that an inordinate delay in moving for such relief is an indication that the motion has been made to gain a tactical advantage in the litigation.

The factual basis of Chen's motion has existed since the outset of this case. Zhang filed this action on Ameriway's behalf in October 2019 as lead counsel. Chen always knew what his role was in this dispute as Ameriway's CEO—and as an attorney licensed to practice in New York. Specifically, she knew that Zhang was involved in the "day-to-day management of Ameriway…", was copied on all emails related to the importation of the subject cargo, and executed the single-page 2017 POA as COO of Eagle." *See* Chen's motion, Dkt. No. 144, pp. 2, 3. However, Chen has not explained why she waited almost three years to bring her motion.

In fact, in December, 2019 and February, 2020, Chen filed <u>two</u> letters with the Court seeking leave to file a motion to disqualify Zhang. Ex. D, *See* Dkt. Nos. 17, 23. **The Court repeatedly stated that she didn't need permission, but, time and again, Chen inexplicably decided not to move the Court.** *See* Dkt. Nos. 18, 25.

> APPLICATION DENIED
> SO ORDERED [signature]
> VERNON S. BRODERICK
> U.S.D.J. 12/30/2019
>
> Pursuant to Rule 3A of my Individual Rules and Practices in Civil Cases, pre-motion conferences are not required. Defendant is free to file its proposed motions, subject to any applicable time limits.

Dkt. No. 18, Judge Broderick's Order.

Accordingly, Chen repeatedly failed to back up her threats to get Zhang disqualified with an actual motion. Because Chen did not offer an excuse for waiting almost three years to make

5

her motion for disqualification, she waived her right to that relief. *See Lewis v. Unigard Mut. Ins. Co.*, 83 A.D.2d 919, 919, 442 N.Y.S.2d 522, 523 (1st Dep't 1981) (where party seeking disqualification had knowledge of conflict for six years and waited two years after filing of complaint to bring disqualification motion, motion is denied because of the "inordinate and <u>inadequately explained</u> delay")(emphasis added); *see also Young v. Oak Crest Park, Inc.*, 75 A.D.2d 956, 428 N.Y.S.2d 69 (3d Dep't 1980) (four year delay between filing action and seeking disqualification, <u>without any explanation for delay</u>, <u>requires</u> that disqualification motion be denied)(emphasis added).

Chen's motion to disqualify Wolfgram fails for the same reasons. She knew he signed the 2017 POA as legal counsel for Eagle since this case started in 2019. Chen always had the 2017 POA in her possession; she attached it to her pleadings. And her only other basis for disqualification – that Wolfgram allegedly used a false email account under the pseudonym "Frank Tang" relating to over 400+ shipments—is utterly false for the reasons stated *infra*, Part B.1.

**B. Wolfgram is Not a 'Necessary' Fact Witness Under Rule 3.7(a)**

Chen fails to state how Wolfgram, as legal counsel for Ameriway and Eagle, has personal and noncumulative knowledge related to any of the asserted claims in this case. A party seeking to disqualify a lawyer under Rule 3.7(a) bears the burden of proving that the lawyer's proposed testimony "is relevant, material, not merely cumulative, and unobtainable elsewhere." *World Youth Day, Inc. v. Famous Artists,* 866 F. Supp. 1297, 1302 (D.Colo. 1994).

Chen has provided no basis for this Court to believe that whatever testimony Wolfgram can provide would be anything other than cumulative of Zhang's testimony, the CEO of Ameriway. Zhang was copied on all the emails and documentation pertaining to the

"approximately 486 containers of cargo" that Chen cleared for Plaintiff from April 2017 to August 2019. Chen even states that, in *all* cases, *both* Zhang and Wolfgram…either generated emails regarding the cargo being imported, were recipients of emails, or were copied on virtually every email sent or received regarding the cargo." Dkt. No. 144, p. 3. However, Chen's assertion that <u>Wolfgram</u> was copied on "virtually every email" is false for the reasons noted below.

But even under Chen's version of the facts, she has not established with sufficient specificity that Wolfgram has any *unique* knowledge regarding significant facts that will be presented at trial. *See Ello v. Singh,* 2006 WL 2270871, at *6 (S.D.N.Y. Aug. 6, 2006) (denying disqualification motion where moving party "utterly failed to demonstrate with sufficient specificity what non-cumulative testimony from [the attorneys in question] is necessary").

1. ***<u>Chen Knows that "Frank Tang" is Not a Pseudonym; He is a Real Person who was Employed by Ameriway</u>***

To make Wolfgram appear "intimately involved in the importation of the cargo that Defendant cleared through customs," Chen bizarrely claims that Wolfgram used both his own name and a pseudonym, "Frank Tang," in connection with his work on behalf of Ameriway:

> **"In all cases**, **both** Zhang and **Wolfgram**, not as attorneys, but as employees of Ameriway were intimately involved in the importation of the cargo that Defendant had cleared through customs. **Besides using his own name, Wolfgram used the "pseudonym" "Frank Tang" in connection with his work on behalf of Ameriway in assisting in the importation of the cargo which is the subject of this lawsuit.** Citing email dated June 18, 2019 from Peter Wolfgram a/k/a Frank Tang as Exhibit "E")." Dkt. No. 144, pp. 2, 3, emphasis added.

> "See five (5) sample invoices at Exhibit "H". However, **in all cases**, **both** Zhang and **Wolfgram (either using his own name or his pseudonym "Frank Tang")** either generated emails regarding the cargo being imported, were recipients of emails, or were copied on **virtually every email** sent or received regarding the cargo…" Dkt. No. 144, p. 3.

7

In other words, Chen claims that Wolfgram, "in all cases," used a fake email account under "Frank Tang" to correspond with Chen about the importation of cargo, which in turn makes him "intimately involved" with the underlying facts of this case and therefore a necessary witness.

**<u>However, "Frank Tang" is not a "pseudonym." He is a real person who was employed by Ameriway from August 2018 to May 2019</u>**. *See* Ex. E, Tang Decl., ¶¶ 1-3. He lives and breathes in the Philadelphia area, and has a valid driver's license and social security number. Id., ¶¶1-2. His primary responsibilities at Ameriway included coordinating customs clearance and freight movement with its vendors, suppliers, and contractors. Id. ¶ 4. Tang "routinely sent emails to Chen and Ability Customs Brokers on issues relating to custom clearance and freight movement of Ameriway's containers during [his] employment with Ameriway," and had regular phone conversations with Chen on these issues. Id., ¶¶ 5, 6. Chen deliberately omits this basic fact—*that she personally spoke with the real Frank Tang numerous times*—to mislead the Court into believing that Wolfgram is some kind of impersonator involved in every shipment cleared by Chen with CBP.

Before leaving Ameriway for a different job in May 2019, Tang provided a password/login list for all his work-related accounts (email, social media sites, Fedex, etc.) to Wolfgram and Zhang. Id. ¶ 7. Because Ameriway did not have a replacement for Tang at the time, Ameriway asked Wolfgram to temporarily step in to deal with a few unfinished matters until one could be found. Id., ¶ 8. Wolfgram used his own computer to send the two emails cited by Chen, which is why his name appears in the "From" field alongside Tang's. Wolfgram did not have access to Tang's email account while Tang worked for Ameriway. This explains

8

why Chen only produced two instances of Wolfgram using Tang's email account, which occurred *after* he left the company in May 2019.

**Importantly, Chen clearly understood Wolfgram was using Tang's email to fill in for Tang.** On August 2, 2019, Chen sent an email to Tang's account (frank.tang@ameriwaycorp.com) - **but not to Wolfgram's email address**—relating to a delivery issue. Chen spoke directly to Wolfgram, using his first name, "Pete:"

> From: info@abilitycb.com
> Subject: Re: 28 cartons delivery ref#10330
> Date: August 2, 2019 at 7:57 PM
> To: dustin.matos dustin.matos@ameriwaycorp.com, frank tang frank.tang@ameriwaycorp.com, Xiyan Zhang xiyan.zhang@ameriwaycorp.com, Yang.Huang OP@ameriwaycorp.com
>
> Dear Dustin & Pete,
>
> Please provide the delivery instruction to us for the 28 cartons shipment that help by U.S. Customs by mistake. This shipment was from the Master Bill of lading EGLV149902168231, container #TGHU6937520. The container was delivered to your warehouse after Customs inspection completed, but Customs detained 36 cartons because of keyboard trade mark issue. Your overseas office informed us that the keyboard is less than 36 cartons, and we informed this information to U.S. Customs immediately.
> Yesterday, we finally received Customs decision and release the extra 28 cartons. So, please provide the delivery instruction to us ASAP. We will arrange it and delivery these boxes to your facility to avoid additional warehouse storage fee. Thank you and have a nice weekend.

*See* Ex. F.

There can thus be no question that Chen knew that Tang was leaving Ameriway, and that Wolfgram was temporarily using his account—yet now she falsely denies even knowing the real Frank Tang.

Notably, Chen does not state *why* Wolfgram would ever mask his identity behind "Frank Tang," or how this alleged deceit relates to any of the claims here. But assuming *arguendo* Wolfgram did routinely email Chen under the "Frank Tang" pseudonym related to "all" the 486 cargo containers, his testimony would still not be unique because Zhang was copied on these emails, by Chen's admission. However, this is beside the point because, again, *Chen routinely*

*spoke with Tang. She knows he exists and worked for Ameriway*. Asserting that Tang is a fictitious entity is a blatant misrepresentation of fact simply to get Wolfgram disqualified.

### C. Chen's Further Arguments in Support of Wolfgram's and Zhang's Disqualification are Without Merit

Chen generally argues that both Wolfgram and Zhang are vital fact witnesses because, although no depositions have been taken, "it appears that both Zhang and Wolfgram had and have a significant pecuniary interest in the millions of dollars of cargo imported over the period 2017 through 2019 (through which business entity is still unknown.)" Dkt. No. 144, p. 15. But Chen does not explain how this vague, speculative, and unsupported assertion relates to the invoices at issue which form the basis of her claims, or to any of Plaintiff's claims for that matter. As noted, Rule 3.7(a) requires the movant to state with sufficient "specificity what non-cumulative testimony from the purported attorney-witness will be necessary." *See Ello,* 2006 WL 2270871, at *6.

In any event, Wolfgram never invested money in Eagle, Ameriway, or any of the cargo at issue. He served primarily as counsel to these companies. And as the CEO and owner of a logistics company, Zhang obviously had a significant interest in ensuring that his customer's cargo was delivered promptly without interruption. He invested in Ameriway's logistics business as an owner. Ameriway could not accept new orders from its overseas clients while Chen was detaining its containers at the port, which ultimately ground Ameriway's operations to a halt, from which it never recovered.

Chen then summarily lists "issues [that] will require the testimony of both Wolfgram and [Zhang], any one of which would be sufficient to disqualify each as attorney for Plaintiff." Dkt. No. 144, p. 19. First, Chen states that disqualification is warranted under Model Code of

Professional Conduct R. 1.8 because Eagle and Ameriway are companies "related by the common management of [Zhang and Wolfgram]."

Rule 1.8 generally concerns conflicts of interest, but Chen fails to identify any conflict between Ameriway and Eagle that would warrant disqualification of either Zhang or Wolfgram. Nor does she explain how Wolfgram has any unique knowledge about the alleged "common management" of Eagle and Ameriway that would necessitate his disqualification, or how this specifically relates to any of the claims at issue. Zhang's testimony about the management of Ameriway is sufficient, even though it is unclear what specific testimony Chen hopes to elicit from either Wolfgram or Zhang on this matter.

Chen also cites Model Code of Professional Conduct R. 1.9 as another basis for disqualification:

> "Eagle and Ameriway have conflicting interests with respect to the issue of liability to Chen with respect to the importation of goods for fees, customs duties and other charges, since Eagle, as the Importer of Record and the party that signed the Power of Attorney is *clearly liable to Defendant for unpaid fees and unreimbursed expenses*, and Ameriway, the logistics company, owned by Zhang, that was paying all the bills to Defendant, Chen." Dkt. No. 144, p. 19, emphasis added.

Rule 1.9 concerns "duties owed to <u>former</u> clients," which is inapplicable to both Zhang and Wolfgram, who're both <u>currently</u> representing Ameriway and Eagle in this litigation and the Third-Party action, respectively. Chen also fails to state how a conflict arises between Ameriway and Eagle from the fact that the latter allegedly owes Chen fees for unpaid invoices—or how this would somehow warrant both Zhang's and Wolfgram's disqualification.[1]

---

[1] Chen also apparently cites Rule 1.9 as a basis for disqualification because "Stratum Law has represented both Eagle and Ameriway," but again does not explain why this fact alone is relevant to the issues.

11

In any event, this Court already determined on the merits that Eagle is <u>not</u> liable to Chen for "unpaid fees and unreimbursed expenses" in the Third-Party action. *See* Dkt. No. 81, wherein this Court granted Eagle's 12(b)(6) motion and dismissed Chen's entire complaint, which included claims for breach of contract and guaranty of payment over the allegedly unpaid invoices. Therefore, Chen's assertion that a conflict exists between Ameriway and Eagle because the latter is "clearly liable to Defendant for unpaid fees and unreimbursed expenses" conflicts with this Court's own ruling.

Chen also cites Rule 1.10, which concerns imputed conflicts of interest, because "Zhang is a principal, and Wolfgram is an associate at Stratum Law which maintains/shares offices with Ameriway." Dkt. No. 144, p. 19. But Chen has failed once again to specify where the conflict arises. She has not established, or even alleged, that Zhang used Eagle/Ameriway's confidential information against either company in this litigation. She does not state what the damaging confidential information is or might be, or why it would raise a Rule 1.10 issue. Accordingly, no conflict can be imputed on Wolfgram as an associate of Stratum Law because Chen has not established that one even exists.

Chen also argues under Rule 3.7(a) that Wolfgram's and Zhang's testimony is necessary to the issue of whether Ameriway has standing in this case as a logistics company:

> "Despite Ameriway's claims that it owns the containers and the cargo to the contrary…Eagle was the sole Party in interest as the Importer of Record…Further, as the custom broker, Defendant has to answer to U.S. customs as to why Customs Duties on cargo she imported and cleared through Customs was unpaid…these are significant issues in this case and both Zhang and Wolfgram, as the active parties on behalf of Ameriway and the parties that signed the Power of Attorney are critical and essential witnesses to these fundamental issues that are before the Court." Dkt. No. 144, p. 15.

Again, Chen fails to state how Wolfgram has any noncumulative knowledge of Zhang's testimony relating to the standing issue. *Both* Wolfgram and Zhang signed the 2017 POA; and,

Chen alleges that "both" parties were copied on "virtually every email" relating to the importation of the cargo, even though this is false with respect to Wolfgram, as discussed above. *Supra* at Part B.

Chen further claims that Wolfgram and Zhang's "testimony regarding the dissolution of both Ameriway and Eagle will be necessary," citing two purported "Certificates of Dissolution[s]." Dkt. No. 144, p. 19. Chen then generally claims to need both Zhang's and Wolfgram's testimony as to the financial condition of Ameriway, but fails to state why this testimony would be necessary to her fraud or guaranty of contract claims, or why Zhang's testimony on Ameriway's finances is not sufficient. Zhang had control over Ameriway's finances as CEO, and is prepared to testify on this matter.

**Regardless, neither Eagle or Ameriway were ever dissolved with the State of Delaware.** They were temporarily listed as <u>**inactive**</u> due to a late franchise tax payment. Plaintiff has corrected Chen on this point on two prior occasions, but she persistently makes the unsupported claim that Eagle and Ameriway were dissolved to advance her claims.

Further, Chen alleges that Zhang and Wolfgram "provided Defendant with inaccurate information with regard to the value of the cargo that was declared on numerous customs entries, which could *potentially* subject Chen to liability in connection with her duties as the customs broker." Dkt. No. 144, p. 17, emphasis added.

Setting aside the fact that Chen provides no evidence to support this false allegation, she fails to explain how misrepresenting the cargo values relates to the asserted claims here. Essentially, she speculates that Wolfgram and Zhang's testimony might be necessary to address her *potential* liability with CBP, who has not filed any actions against her for unpaid customs

duties to date. This fails the 'sufficient specificity' requirement under the 'necessary' witness analysis.

Chen argues that both Zhang's and Wolfgram's testimony is "essential on the issue of whether Chen had the right to lien the containers pursuant to the terms and conditions of the 2017 POA." Dkt. No. 144, 16. Specifically, their testimony is necessary on the issue of "receipt or alleged non-receipt" of the terms and conditions of service because they both signed the 2017 POA, according to Chen. Id., p. 18.

Again, Ameriway contends that Chen never had an operative terms and conditions of service document containing lien rights in 2017 for the reasons described in its cross-motion for disqualification and default judgment—Ameriway could not "receive" a document that did not exist in 2017. This has always been Plaintiff's position on this issue, and Zhang's testimony will be the same. But in any event, Chen fails to state why Zhang's testimony alone cannot address the basic question whether Plaintiff received a terms and conditions document in April 2017 from Chen, whether by email, fax, or otherwise. As Ameriway's CEO, Zhang has a complete understanding of Ameriway's operations, and is more than qualified to answer this question without Wolfgram.

Finally, Chen's argument that Wolfgram and Zhang should be disqualified based on Canon 9 alone fails because she has not identified any 'specifically identifiable' misconduct described in the other rules of professional conduct for the reasons noted above. The "[m]ere appearance of impropriety [under Canon 9] will not alone serve as a sufficient basis for granting a disqualification motion." *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010) (citation omitted).

### D. Chen's Motion to Disqualify Both Wolfgram and Zhang is Premature

Zhang will not be serving as trial counsel in this matter. Plaintiff will retain another lawyer, who will serve as Wolfgram's co-counsel if the case reaches the trial stage. But in the unlikely event that the Court deems either Zhang or Wolfgram disqualified under the lawyer-witness rule, as early as 1989, the ABA stated that an individually disqualified lawyer may undertake essentially any pretrial activity. *See* ABA LEO 1529 (10/20/89), providing a "number of reasons" permitting the lawyer-witness to serve as an advocate during the pre-trial stage:

> the "lawyer who is the potential witness may have more knowledge about the facts of the case than any lawyer in the firm, and it would be unfair to the client not to permit that lawyer to participate in pre-trial proceedings. Accordingly, a lawyer may serve as an advocate in taking depositions of witnesses and engaging in other pre-trial discovery as well as in arguing pre-trial motions and appeals from decisions on those motions." ABA LEO 1529 (10/20/89)

The concerns of the lawyer-witness rule are for the public perception of justice done and probity preserved and for neutralization of any possible unfair advantage *at trial*. The Southern District has followed the ABA's approach. *See Norman Norell, Inc. v. Federated Dep't Stores, Inc*., 450 F. Supp. 127, 131 (S.D.N.Y. 1978), ordering the law firm be disqualified from acting as trial counsel for plaintiffs but be "permitted to pursue pretrial activities." Therefore, Chen's proposed motion to disqualify Zhang and Wolfgram during the pre-trial stage is at best premature. Notably, this rationale does not apply to Chen's counsel, whose ongoing, documented misconduct has tainted these proceedings.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests the Court to deny Chen's motion to disqualify Wolfgram and Zhang.

Dated: July 8, 2022

                                                    Respectfully submitted,

                                                    STRATUM LAW LLC.

By: _____
      Peter S. Wolfgram
      Xiyan Zhang
      STRATUM LAW LLC
      *Attorneys for Plaintiff*
      *Ameriway Corporation*