**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **AMERIWAY CORPORATION** | **19 -cv-09407 (VSB)** |
| **Plaintiff,** | |
| **v.** | |
| **MAY YAN CHEN,** | |
| **ABILITY CUSTOMS, INC.** | |
| **Defendants** | |

## <u>REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY</u>

## <u>ATTORNEY XIYAN ZHANG AND ATTORNEY PETE WOLFGRAM</u>

Respectfully submitted,
Shayne Law Group

By: William Shayne, Esq.
    Richard E. Schrier, Esq.
Attorneys for the Defendants
64 Fulton Street
New York, New York 10038
212-566-4949

To:    Stratum Law LLC (via ECF)
       2424 E. York Street, Ste 223
       Philadelphia, Pa. 19125
       215-621-8008
       Att: Xiyan Zhang, Esq.
          Pete Wolfgram, Esq.

**TABLE OF CONTENTS**

Page

**TABLE OF CONTENTS**……………………………………………………i

**TABLE OF AUTHORITIES**……………………………………………....ii

**EXHIBITS IN SUPPORT OF MOTION TO DISQUALIFY**…………...……iv

**PRELIMINARY STATEMENT AND FACTS**……………………………..1


**POINT I: MERE CONCLUSIARY STATEMENTS IN A MEMORANDUM OF LAW WITHOUT OBJECTIVE DOCUMENTARY PROOF OR A SUPPORTING AFFIDAVIT LACKS OBJECTIVE PROOF OF A FACT AND THE ALLEGED FACTS MUST BE DISREGARDED** ………………………………………….10

**POINT II: DEFENDANT'S MOTION TO DISQUALIFY IS NEITHER TOO LATE NOR PREMATURE AND NEITHER THE DOCTRINE OF LACHES NOR WAIVER APPLY IN THIS CASE** ………………………………………….11


**CONCLUSION**…………….…………………………………………………..16

# TABLE OF AUTHORITIES

**CASES CITED** Page

*Arkansas v. Dean Food Prods. Co.,* 605 F.2d 380 (8th Cir.1979)……….13

*British Airways, PLC v. Port Auth of New York & New Jersey.,*
862 F.Supp. 889, 901 (E.D.N.Y 1994)…………………………………13

*Caviezel v. Great Neck Pub. Schs.,* 814 F. Supp. 2d 209, 213
(E.D.N.Y. 2011)………………………………………………………..11

*Cintron v. 1020 Third Ave. Assocs.,* 86 N.Y.S.3d 375
(N.Y. Sup. Ct. 2018)…………………………………………………...11

*Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562, 574 (2d Cir.1973)……13

*Empire Linotype Sch., Inc. v. United States,* 143 F.Supp. 627
(S.D.N.Y.1956)………………………………………………………...13

Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)……………...11

*Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996)*………...11

*Gov't of India v. Cook Indus., Inc.,* 422 F.Supp. 1057 (S.D.N.Y.1976)…..13

*INA Underwriters Ins. Co. v. Nalibotsky,* 594 F. Supp. 1199, 1203-04
(E.D. Pa. 1984)………………………………………………………13

*Koehring Co. v. Manitowoc Co.,* 418 F.Supp. 1133 (E.D.Wis.1976)……..13

*Kramer v. Sci. Control Corp.,* 534 F.2d 1085 (3d Cir.1976)………………13

*Norman Norell, Inc. v Federated Dep't Stores, Inc.,*
450 F.Supp 127, 131 (S.D.N.Y 1978)………………………………...12

*Redd v. Shell Oil Co.,* 518 F.2d 311 (10th Cir.1975)………………………13

*United States v. Newman,* 534 F.Supp. 1113 (S.D.N.Y.1982)……………..14

**STATUTES AND REGULATIONS CITED**

Page

18 U.S.C. §§ 1001(a)(1)-(3) (2022)………………………………………3

19 C.F.R. § 152.105 (2022)………………………………………………9

19 U.S.C. § 1484(a)(2)(B) (2022)……………………………………3, 7

19 U.S.C. § 1592(a)(1) (2022)…………………………………………...3

**OTHER AUTHORITIES**

FED. R. CIV. P. 56……………………………………………………11

## EXHIBITS IN SUPPORT OF MOTION TO DISQUALIFY:

Exhibit A: Certificate of Formation of Limited Liability Company for Eagle Trading USA, LLC;

Exhibit B: Certificate of Incorporation  for Ameriway Corporation;

Exhibit C: Shareholders Agreement for Ameriway Corporation;

Exhibit D: Power of Attorney signed by Wolfgram and Zhang on behalf of Eagle Trading USA LLC with Defendant Chen to perform customs broker services (Redacted);

Exhibit E:  Email proof that Wolfgram used the pseudonym "Frank Tang"
in connection with business operations on behalf of Ameriway;

Exhibit F: Sampling of emails confirming Wolfgram's operational involvement in Ameriway;

Exhibit G: Email proof that Wolfgram utilized his law firm email address for business operations on behalf of Ameriway;

Exhibit H: Ability (Defendant) invoices for five containers at issue in this case sent to Zhang, and Eagle;

Exhibit H-1: Import documentation with respect to container number APHU7253481- Eagle Trading USA LLC is the importer of record;

Exhibit H-2: Import documentation with respect a container number BMOU4738454 – Eagle Trading USA LLC is the importer of record;

Exhibit H-3:  Import documentation with respect to container number BMOU539053- Eagle Trading USA LLC is the importer of record;

Exhibit H-4:   Import documentation with respect to container number HLXU8057236-Eagle Trading USA LLC is the importer of record;

Exhibit H-5:  Import documentation with respect to container number 00CU6964350- Eagle Trading USA LLC is the importer of record;

Exhibit I:  Ameriway 2018 income tax return (Redacted);

Exhibit J: Ameriway's 2019 income tax return (redacted);

Exhibit K: Second Amended Complaint;

Exhibit L: Letter from Wolfgram to this court dated November 1, 2021;

Exhibit M: Letter from Zhang, to this court dated December 17, 2021;

Exhibit N: Notice to Admit from Defendant with notations of Plaintiff's responses (see exhibit "O" for Ameriway's formal response);

Exhibit O: Ameriway's Response to Notice to Admit served on January 13, 2022.

Exhibit P: Certificate of Dissolution of Ameriway

Exhibit Q: List of invoices sent by Defendant to Eagle/Zhang that are unpaid

Exhibit R:  Copies of invoices sent by Defendant that are unpaid

Exhibit S: Certificate of dissolution of Eagle

Exhibit T: Notification of unpaid customs duties by Eagle

Exhibit U: Copies of demands for documents requesting ownership of the cargo

Exhibit V: Copies of five (5) packing lists with invoices provided by Plaintiff at March 2022 cargo inspection

Exhibit W: Backup documentation for the pricing of lamps ($1.23 declared price provided to Chen for the customs entry and packing list price of $2.45 provided at March 2022 inspection) and for the Sumerain Shower System (Amazon price of $164.99, $2.50 declared price provided to Chen for the customs entry and packing list price of $5.00 provided at March 2022 inspection)

<u>**PRELIMINARY STATEMENT AND FACTS**</u>

This Reply Memorandum of Law and exhibits is being submitted

by Defendant in reply to the Plaintiff's Brief in Opposition to Defendants' Motion to Disqualify

both attorney Xiyan Zhang ("Zhang")  and attorney Pete Wolfgram ("Wolfgram") of the Stratum

Law firm by reason of the fact that both are key witnesses in their "non-attorney" capacity in

connection with the issues in this case.

In Plaintiff's opposition papers:

- Plaintiff does not contest the fact that both Zhang and Wolfgram are fact witnesses in this case;

- Plaintiff does not contest the fact that Zhang is the major shareholder and president/secretary of Plaintiff, Ameriway (See Exhibit "C" at Article 1 paragraph A(6) to Defendant's motion – ECF # );

- Plaintiff does not contest the fact that both Zhang and Wolfgram were intimately involved in the every-day operations of Ameriway;

- Plaintiff does not contest the fact that Zhang, as the COO of Eagle Trading USA, LLC ("Eagle") executed a Power of Attorney ("POA") with May Yan Chen d/b/a Ability Customs Brokers ("Chen") which gave Chen the authority to act as Eagle's representative to clear cargo through U.S. Customs on behalf of Eagle (Exhibit "D");

- Plaintiff does not contest the fact that Wolfgram, as an officer of Eagle, certified in the POA that Zhang had the corporate authority to retain Chen and execute the POA with Chen (Exhibit "D");

- Plaintiff does not contest the fact that Eagle was the importer or record ("IOR") on all 486 containers that were cleared through U.S. Customs by Defendant, Chen;

- Plaintiff does not contest the fact that the POA specifically states that Zhang and Wolfgram as representatives of Eagle acknowledged receipt of Chen's "…Terms and Conditions of Service governing all transactions between the parties…" (that is between Chen, as the customs broker and Eagle, as the IOR) (Exhibit "D");

- Plaintiff does not contest the fact that Wolfgram's testimony regarding issues in this case will be relevant;

- Plaintiff no longer contests the fact that Plaintiff, Ameriway is/was neither the owner nor the contract vendee of any of the cargo in any of the 486 containers that Chen cleared through Customs, which includes the five (5) containers of cargo in which Chen has exercised her lien rights and which cargo is being maintained in a New Jersey warehouse subject to the rulings in this case;

Plaintiff contests the motion to disqualify Zhang and Wolfgram based upon three (3) theories of law:

1. Defendant has waited too long to make this motion and therefore Defendant has waived the right to seek disqualification and/or Defendant's application to disqualify should be denied based upon the doctrine of Laches;

2. However, Plaintiff also has argued that Defendant's motion to disqualify is "Premature" in that Zhang should be permitted to represent Plaintiff in pretrial proceedings and only be precluded from representing Plaintiff at the trial of this action; and

3. Defendant has argued that even if Zhang is disqualified as counsel for Plaintiff, Wolfgram's testimony is merely "duplicative" and therefore Wolfgram should not be disqualified.

With respect to the disqualification of Attorney, Wolfgram, in its opposition, Plaintiff has actually bolstered Defendant's argument that Wolfgram is intimately involved in Ameriway's business and should be disqualified. Plaintiff, in its opposition submitted an un-notarized "Declaration" from Frank Tang who claims that he was an employee of Ameriway until his:

"…resignation around May 2019, I gave Pete Wolfgram access to all my Ameriway accounts including my email account at frank.tang@ameriwaycorp.com..."
"…8. I gave Mr. Wolfgram access to my Ameriway accounts so that Mr. Wolfgram can handle unfinished matters that I was dealing with on behalf of Ameriway…". (See Exhibit "E" to Plaintiff's opposition to this motion [ECF 152-5])

Of further note, Plaintiff, in its memorandum in opposition to Defendant's motion to disqualify Zhang and Wolfgram made a number of disputed "factual" statements in support of its

opposition to disqualify. However, neither Zhang nor Wolfgram has submitted an affidavit supporting those statements nor presented objective proof of those "alleged facts".

Examples of those "alleged facts" which are disputed and which both Zhang and Wolfgram are essential witnesses include:

a. Ameriway "designated" Eagle as the Importer of Record [page 1 of Plaintiff's brief in opposition] (Defendant claims that a party cannot be designated an IOR- rather it is a status that exists and in this case goes to Plaintiff's standing to bring this lawsuit);

b. Eagle agreed to be the IOR (page 1 of Plaintiff's brief) (Was Defendant an unknowing "dupe" to an illegal scheme to defraud U.S. Customs by Zhang and Wolfgram by under-declaring the values of the cargo being imported in that we now know that Eagle is a "Shell company" with no assets and the reported value of many if not all the cargo imported was undervalued and did either or both Zhang and Wolfgram know that such action was contrary to U.S. Customs law 19 U.S.C. § 1484 (a)(2)(B) (2022), 19 U.S.C. § 1592(a)(1) (2022), 18 U.S.C. §§ 1001(a)(1)-(3) (2022);

c. Chen and a prior customs broker recommended/reaffirmed to Zhang and Wolfgram the procedure of nominating Eagle as the IOR (page 1 of Plaintiff's brief);

d. Once Cargo cleared customs under Eagle as IOR, Eagle transferred ownership, possession and control of the cargo to Ameriway (Page 1 of Plaintiff's brief) (To Chen's knowledge, this never occurred on any of the 486 containers of cargo cleared by Chen- this again goes to Plaintiff's standing to bring this lawsuit);

e. Ameriway then worked directly with several parties including Chen to move the cargo to its destination (page 1 of Plaintiff's brief) (again this goes to the standing issue);

f. In April 2017, Ameriway retained Chen as a customs broker (Page 1 of Plaintiff's brief) (Ameriway never retained Chen nor was there ever a written or oral contract between Chen and Ameriway);

g. Ameriway executed a standard power of attorney (page 1 of brief) (Ameriway never executed a power of attorney with Chen);

h. The POA authorized Chen to conduct customs filings on "its" behalf with U.S. Customs (page 1 of brief)—the "its" presumably is Ameriway-

i. Between 2017 to August 2019 Chen cleared over 400 containers with customs for Ameriway (page 1-2 of brief) (Chen never cleared any containers for Ameriway nor did Ameriway's name appear on any import document for any container cleared by Chen);

j. Chen never sent any terms and conditions to Plaintiff or Eagle (Page 2 of brief) (this goes to the issue of whether and what Lien rights Chen has with respect to the five (5) containers of cargo being held by Chen to pay the now close to $500,000 owed to Chen by Eagle);

k. Chen never notified Ameriway or Eagle that she was owed money before Chen exercised her lien rights and seized the five (5) containers of cargo (page 2 of brief);

Ameriway is also claiming that Chen overcharged it for other supply chain services and is seeking damages. The basis for this claim is that allegedly Chen agreed to provide such services without any costs to "Ameriway" or Eagle other than the direct costs of those services, such as trucking costs, storage costs, drayage costs, etc. Chen denies this as well. Both Zhang and Wolfgram are essential witnesses to this issue involving 486 containers upon which Ameriway is claiming damages.

By reason of the foregoing, Plaintiff's argument that Wolfgram's testimony will merely be duplicative of Zhang's testimony lacks merit.

With regard to the issue of Wolfgram using Frank Tang's email address. apparently Plaintiff misunderstands the argument Defendant was making in this motion. It is not that Defendant claims that Frank Tang did not exist, but rather that there came a time that in the regular course of business, Wolfgram, using Frank Tang's email address, performed "non-attorney" activities in connection with many of the containers that Chen claims money is due on and thereby is a fact witness and therefore must be disqualified as an attorney in this case.

In fact, the declaration by Frank Tang submitted with Plaintiff's opposition to this motion to disqualify (Exhibit "E" to Plaintiff's opposition- ECF 152-5) is the first time Plaintiff has admitted that Wolfgram performed non-attorney services in connection with the containers and the money owed to Chen, beginning from at least May 2, 2019 when Tang reports in his declaration that he left the employ of Ameriway.

Defendant served a Notice to Admit in discovery (*see* Exhibit "N" to Defendant's moving papers [ECF 144-20]) and Plaintiff responded on January 13, 2022 (*See* Exhibit "O" to Defendant's moving papers [ECF 144-21]).  The Court is respectfully directed to Plaintiff's responses to the following numbered paragraphs in the Notice to Admit:

Para. 37 (Zhang is a director of Ameriway);

Pars. 39 (Zhang is an officer of Ameriway);

Para 49/50 (Zhang is the CEO of Ameriway);

Para 53 (Zhang wrote the Ameriway Checks);

Para 73 (Denied Ameriway paid Eagle for services rendered by Eagle);

Para 83-97 (Ameriway is the owner of the cargo in the five (5) containers that are being held by Defendant pursuant to the exercise of her lien rights and has documentation showing that ownership);

Para 99-104 (Ameriway is not the importer of record of the cargo in the five (5) containers that are being held by Defendant pursuant to the exercise of her lien rights);

Para 151/154/157/160/163 (Admits Eagle is not the owner of the cargo in the five (5) containers that are being held by Defendant pursuant to the exercise of her lien rights);

Para 265-284 (Ameriway did not pay any party for the Cargo).

With respect to all the containers Defendant cleared Customs on Eagle's behalf as the IOR, Chen was provided with documentation regarding the description of the goods contained in the containers and the value of those goods. Customs Brokers file declarations (import tax returns) based solely on documentation presented by the owner or purchaser of goods who represents themselves as Importers of Record for Customs purposes. Customs Brokers do not have access to the goods themselves or the importer's underlying documentation.

With respect to the five (5) containers which Defendant is holding pursuant to her lien rights, the contents were kept intact with the seal in place until an inspection of the contents was held in March 2022. Prior to that time, although Chen knew that she and her staff had dealings with both Zhang and Wolfgram, Chen was advised that Eagle, as the IOR had ownership/possessory rights to the cargo being imported and based upon representations by Zhang and Wolfgram, Ameriway (or its China affiliate) was the owner of the cargo being imported.

Based upon Ameriway's contention that it was the owner of the cargo being imported, Defendant had been requesting in discovery documentation confirming the ownership of the contents of the containers, which information Plaintiff repeatedly failed to provide. (Attached as Exhibit "U" are copies of demands for documents requesting ownership of the Cargo as well as

copies of correspondence with the Court and Magistrate Judge addressing the issue of Ameriway's ownership of the cargo [the documents in Exhibit "U" also appear at ECF 66, 72, 74, 78, 84, 90, 96, 104, 114, ).

To confirm the integrity of the cargo, Plaintiff sought authorization from the court to break the seals on the containers and inspect their contents. The court granted that authorization, and the inspection was performed over several days in March 2022.

In preparation for the inspection, to avoid any claims by Plaintiff as to deviation between the contents of the containers and the documentation, Chen requested and received at the inspection true copies of the commercial invoices and packing lists (See Exhibit "V" annexed hereto).

The invoices provided by Plaintiff's counsel at the March 2022 inspection, while clearly for the same goods identified in the Customs entry documents, reported substantially higher values than the values provided to Chen that was used to declare the value to CBP. In Customs parlance this is known as *double invoicing*. Annexed hereto as Exhibit "V" is a copy of the five (5) packing lists given to Defendant at the inspection of the containers in March 2022.

Each boxed item was inspected, and photographs were taken. The name of the seller and buyer of the products in each box was identified with a sticker affixed to each box. **Not one single box of the over 3900 boxes inspected identified either Ameriway or Eagle as the purchaser or seller/owner of the contents of the box**.

It was not until the inspection of the cargo in the five (5) containers in March 2022 that it was clear that Eagle did not have the authority to hold itself out to U.S. Customs as the importer when contrary to the shipping documents and commercial invoices provided to Chen, it was not

an owner or purchaser of the goods or did Eagle have such other interests as provided for under 19 U.S.C. § 1484(a)(2)(B) (2022).

In that context, Defendant's counsel began analyzing the paperwork regarding the importation of the cargo looking for the key to why Zhang and Wolfgram devised such an elaborate manner of importing cargo into the United States. Upon analyzing the declarations of value of the cargo provided to Chen and other paperwork provided by Ameriway in discovery, a pattern started to appear that led Defendant to believe that Zhang and Wolfgram were part of a scheme (or the architects of a scheme) to defraud U.S. Customs as to the proper duties that were required to be paid. As it turns out, every item that was listed on the Five (5) packing list provided to Defendant also appeared on the entry documents, except that the pricing was different.

By way of example, the invoice presented to Chen for the purposes of making entry to CBP declares 5496 pieces of a Lamp, at $1.23 each for a total of $6734.75 while the invoice provided by Ameriway counsel declared those lamps as $2.45 each for a total of $13,469.52. (See Exhibit "W" annexed hereto).

Unbeknownst to Chen until the containers were inspected:

a.    Neither the shipper or consignee on the Commercial Invoices and Bill of Lading was identified on any of the cargo as either the seller or buyer of the cargo which prima facie negates evidence of a bona fide sale;

b.    All of the cartons which were destined for delivery to an Amazon warehouse were marked with the sale term "FBA" meaning that the goods had not been sold at the time of entry into the U.S. but were expected to be sold in the future (Fulfilled by Amazon). Under

"Fulfilled by Amazon" designation, title to the goods remains with the seller until sold on a piece-by-piece basis. This further confirms the fact that Ameriway did not have the right of possession of the cargo in the five (5) containers.

In the absence of a bona fide sale, Customs will not rely upon the commercial invoice as evidence of transaction value but will instead utilize one of 6 alternative statutorily approved methods to determine the appropriate dutiable value.

One of those valuation methods is a deductive method, 19 C.F.R. § 152.105 (2022), by which dutiable value is determined by starting with the retail price at which the goods are sold to an ultimate purchaser in the United States and then backing out various cost and profit margins to determine what was the price of the goods at the time entry.

In March 2022, when Defendant discovered that almost all of the goods were being sold through Amazon, we could confirm the Amazon retail value by finding the items on the Amazon Website. Once the retail price at which the goods were being sold domestically to the ultimate consumer, application of the deductive method of valuation can be used to value the cargo for duty purposes.

By way of example, one of the items contained in the inspected containers was a "Sumerain shower system" which sold on Amazon for $169.99. The declared invoice value for customs duties purposes provided to Chen by Eagle/Zhang/Wolfgram was $2.50. (See Exhibit "W" annexed hereto).   The invoice value that appeared on the packing list provided to Defendant at the March 2022 inspection was $5.00.  To say the least, a 3400% markup  from "wholesale" (that is the declared dutiable price) to the retail price, on a product is more than just unusual.

There are serious questions as to the value of the goods that were imported by Eagle as the IOR and both Zhang and Wolfgram's testimony are critical to this issue. It is not now known who the architect of the intentional undervaluation of the cargo was, however, there is no doubt that Zhang as the CEO/President of Ameriway and COO and member of Eagle and Wolfgram, as an active employee of Ameriway performing "non-attorney" duties should have first-hand knowledge of Ameriway and Eagle's business practices. Regardless of who decided to report the undervalued amounts to Chen who recorded those values in the Customs entry documents, both Zhang's testimony and Wolfgram's testimony on this issue will likely not be duplicative.

Further, it is anticipated in the depositions of Zhang and Wolfgram, that proof will be adduced that Eagle, the Importer of Record that was responsible for the payment of customs duties, was in effect a shell company without any assets.

For all these reasons, both Zhang and Wolfgram should be disqualified as counsel for Plaintiffs.

**POINT I: MERE CONCLUSIARY STATEMENTS IN A MEMORANDUM OF LAW WITHOUT OBJECTIVE DOCUMENTARY PROOF OR A SUPPORTING AFFIDAVIT LACKS OBJECTIVE PROOF OF A FACT AND THE ALLEGED FACTS MUST BE DISREGARDED**

In Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Disqualify Zhang and Wolfgram, a number of contested statements were made, many of which were identified hereinabove. However, neither Wolfgram nor Zhang has submitted an affidavit verifying those contested statements nor has Plaintiff submitted any objective proof that the contested statements have merit. In fact, Defendant has submitted objective proof that some of the contested statements are in fact untrue. (such as Ameriway's contention that it retained Chen

as its customs broker and signed a power of attorney with Chen when in fact it was Eagle that signed the power of attorney- See Exhibit "D")

The court in *Caviezel v. Great Neck Pub. Schs.*, 814 F. Supp. 2d 209, 213 (E.D.N.Y. 2011) held that:

> "…Further, the district court appropriately concluded that conclusory discovery produced after the preliminary injunction hearing did not equate to admissible evidence raising triable issues of fact. *See Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996)* (requiring party resisting summary judgment "to come forward with materials envisioned by [FED. R. CIV. P. 56], setting forth specific facts showing that there is a genuine issue of material fact to be tried," rather than "conclusory statements" and "mere assertions")…"
> '

The court in Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) held that:

> "…mere conclusory allegations or denials in legal memoranda . . . are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." (internal quotation marks and citations omitted))…"

*Cintron v. 1020 Third Ave. Assocs.*, 86 N.Y.S.3d 375 (N.Y. Sup. Ct. 2018) was a personal injury action in which the defendants moved for an extension of time to make a summary judgment motion. In support of the extension, the defendants' lawyer stated in his "affirmation in support" that the defendants' expert could not prepare his affidavit on time, however the defendants' expert never submitted an affidavit. The court held that the statement in their lawyer's "affirmation in support" constituted a conclusory statement. Since there was no affidavit from their expert, the defendants' motion seeking an extension was denied.

By reason of the foregoing, it is respectfully submitted that the factual basis that Plaintiff claims should be the basis for denial of Defendant's motion to disqualify be ignored and rejected for failure to substantiate any facts via an affidavit or other objective proof and Defendant's application for disqualification should be granted.

## POINT II: DEFENDANT'S MOTION TO DISQUALIFY IS NEITHER TOO LATE NOR PREMATURE AND NEITHER THE DOCTRINE OF LACHES NOR WAIVER APPLY IN THIS CASE

Plaintiff has argued that Defendant has known from the time this case was instituted that:

a. both Zhang and Wolfgram signed the Power of Attorney with Eagle;

b. both Zhang and Wolfgram worked for Ameriway and had business dealings with Chen and her staff throughout the time Chen was clearing the containers of cargo through customs on behalf of Eagle as the Importer of Record;

c. both Zhang and Wolfgram were involved with the payment of Chen's invoices for customs services rendered and expenses and duties advanced; and therefore

d. Defendant should have known and expected that both would be witnesses in the case particularly due to the fact that Plaintiff, in its complaint denied receiving copies of the terms and conditions of the service provided by Chen, notwithstanding the uncontested fact that Zhang and Wolfgram acknowledged receipt of those terms and conditions of service in the signed power of attorney.

That is all true, except for the fact that the cases generally hold that an attorney/witness, in most instances will be permitted to participate as the attorney for a corporate client during the discovery stage of the case but precluded to represent the client at trial. *See* ABA LEO 1529 (10/20/89) and *Norman Norell, Inc. v Federated Dep't Stores, Inc.*, 450 F.Supp 127, 131 (S.D.N.Y 1978), which were cited by Plaintiff at page 15 of Plaintiff's brief in opposition to this motion to disqualify.

Plaintiff therefore argues on one hand that the "delay" in filing the motion should be denied because the case was filed in 2019 and this motion is being made over two (2) years after the institution of the lawsuit, based upon the doctrine of Laches and/or waiver, but that the

motion is premature because Plaintiff's counsel should be permitted to represent Ameriway in the discovery stage of the case, if not the trial.

In the case of *INA Underwriters Ins. Co. v. Nalibotsky*, 594 F. Supp. 1199, 1203-04 (E.D. Pa. 1984) the court held:

"…It is the responsibility of this court to supervise the conduct of members of its bar. In furtherance of this responsibility, this court has adopted standards for professional conduct in its local rules of civil procedure and enforces those standards through appropriate proceedings. It is generally established that laches is not a bar to a motion to disqualify since a court's supervision of the ethical conduct of attorneys practicing before it is designed to protect the public interest and not merely the interest of the particular moving party. *E.g., Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562, 574 (2d Cir.1973); *Gov't of India v. Cook Indus., Inc.,* 422 F.Supp. 1057 (S.D.N.Y.1976); *Koehring Co. v. Manitowoc Co.,* 418 F.Supp. 1133 (E.D.Wis.1976); *Empire Linotype Sch., Inc. v. United States,* 143 F.Supp. 627 (S.D.N.Y.1956). However, some courts have found delay in the filing of a motion to disqualify to be relevant to the resolution of such a motion. In particular, delay may bar the presentation of a motion to disqualify if that delay reflects an attempt by the moving party to use the disqualification issue merely to gain a tactical advantage. *E.g., Arkansas v. Dean Food Prods. Co.,* 605 F.2d 380 (8th Cir.1979); *Redd v. Shell Oil Co.,* 518 F.2d 311 (10th Cir.1975); *United States v. Newman,* 534 F.Supp. 1113 (S.D.N.Y.1982). In addition, it has been suggested that potential prejudice to other parties to the litigation, particularly the party whose counsel may be disqualified, may be considered in the disqualification analysis. *E.g., Arkansas v. Dean Foods Prods. Co.,* 605 F.2d 380 (8th Cir.1979); *Kramer v. Sci. Control Corp.,* 534 F.2d 1085 (3d Cir.1976)…"

In the case of *British Airways, PLC v. Port Auth of New York & New Jersey.*, 862 F.Supp. 889, 901 (E.D.N.Y 1994) the court held that there was no waiver or implied consent because the defendant did not wait until the eve of trial to move to disqualify and had a valid excuse for delaying making the application. Similarly, laches did not apply since the plaintiff failed to show that the defendant's motion to disqualify was a dilatory tactic. "…In this case, the public interest in avoiding the appearance of impropriety in such situations ... is sufficient to preclude the application of laches to bar defendants' motion." *Id.* (citations omitted).

The court also noted that the application of the laches doctrine might be appropriate in an

extraordinary case where it is clear that the disqualification was inspired by dilatory tactics. *Id.* (citing *United States v. Newman*, 534 F.Supp. 1113, 1127 (S.D.N.Y.1982)).

In this case the reason for the delay in making the motion to disqualify is simple and clear: until the inspection of the contents of the five (5) containers in March, 2022, in good faith, there would be no prejudice to Defendant for Plaintiff's counsel to participate in document discovery, and in fact it would and was more productive, since Zhang and Wolfgram were intimately involved in the receipt/production/supervision of most, if not all the documents that are relevant to the claims being made by both parties.

However, the March 2022 inspection of the cargo in the five (5) containers changed the dynamics considerably. It was then and the subsequent research that Plaintiff did with respect to the proper value of the cargo imported that led to the reasonable conclusion that the 486 containers of cargo imported by Eagle, as the Importer of Record, were consistently, intentionally, and significantly undervalued. If true, Defendant has every reason to believe it is true, it is respectfully submitted that both Zhang and Wolfgram have knowledge that could potentially place personal liability on either or both attorneys.

Even if Zhang, as the president and largest shareholder of Ameriway and the managing member of Eagle, is solely responsible for the intentional undervaluation of the cargo, it is reasonable to expect that Wolfgram, who was actively involved in Ameriway's business, has independent knowledge that is relevant. Further, the argument that Plaintiff has made that Wolfgram's testimony will be duplicative of Zhang's testimony is quite unlikely, particularly with respect to the issue of the undervaluation of the cargo.

With regard to the delay in filing this motion for disqualification. The inspection of the cargo in March 2022 was when Defendant first learned that Eagle was not the owner or

purchaser of any of the goods and that Eagle/Zhang/Wolfgram had intentionally undervalued the cargo. On May 17, 2022 Defendant requested permission from this Court to file the motion for disqualification (see ECF 119), just two (2) months after the inspection of the cargo. It is respectfully submitted that Defendant acted with due haste in making this motion and further that this motion is not being made with any intent to delay the case nor to gain any tactical advantage over Plaintiff.

By reason of the foregoing, Plaintiff's argument that this motion should be denied based upon the Doctrine of Laches or Waiver lacks merit.

Further, based upon all the foregoing uncontested facts and contested issues, it is respectfully submitted that both Zhang, as the defacto owner of Ameriway, who was clearly involved in every business transaction between the Plaintiff and Defendant and Wolfgram, who was clearly involved in the day-to-day business operations of Ameriway are vital witnesses to all the claims and defenses raised in this case. No depositions have been held in this case, however there is no dispute that both Zhang and Wolfgram had and have a significant pecuniary interest in the millions of dollars of cargo imported over the period 2017 through 2019.

Further, based upon the part each of Zhang and Wolfgram played in the execution of the Power of Attorney (Exhibit "D") and whether or not either read or received the terms and conditions referred to in the POA has now become a vital issue in the case given the fact that the right to exert general lien rights against the cargo being held will likely have an effect on Chen's ability to collect the approximate $500,000 that is owed by Zhang/Eagle for the unpaid invoices.

## <u>CONCLUSION</u>

By reason of the foregoing, it is respectfully requested that Chen's application to disqualify both Zhang and Wolfgram as counsel for Plaintiff, Ameriway Corp. be granted and for such other and further relief as to this Court may seem just and proper.

Respectfully submitted,
Shayne Law Group

*/s/ William Shayne____*
By: William Shayne, Esq.
Attorneys for the Defendants
64 Fulton Street, Suite 1000
New York, New York 10038
212-566-4949