IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Ameriway Corporation**<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br><br>**May Yan Chen**,<br><br>**Ability Customs, Inc.**,<br><br>　　　　　　　　　　Defendants. | 19-cv-09407 (VSB) (VF) |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISQUALIFY DEFENDANTS' COUNSEL RICHARD SCHRIER AND WILLIAM SHAYNE, AND FOR DEFAULT JUDGMENT, DISMISSAL, AND ATTORNEYS' FEES FOR FRAUD ON THE COURT**

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………...……1

    A. Shayne personally signed 5 of 6 filings that included the
       TCS and metadata shows that Shayne authored all 5 filings………………………..…1

    B. Chen's Counsel Actively Concealed Shayne's Authorship of the
       TCS from the Court……………………………………………………………………3

    C. Chen's Misconduct Necessitates Default Judgment, Dismissal,
       and Attorneys' Fees………………………………………………………………...……7

        1. *Prejudice to Ameriway and Impact on Integrity of Judicial System*……….………8

CONCLUSION……………………………………………………………………...……..14

# TABLE OF AUTHORITIES

*United States v. Kitchen*, 592 F. 2d 900, 903 (5th Cir. 1979)……………………………………..7

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 2015 U.S. Dist. LEXIS 189271………………......9

*Pope v. Federal Express Corp.*, 138 F.R.D. 675, 683 (W.D. Mo. 1990)………………………..10

**Rules of Professional Conduct**

N.Y. Rules of Prof. Con. 3.3(a)(3)…………………………………………………………….8

**INTRODUCTION**

In their responsive brief, Chen does not dispute that her counsel, William Shayne, manufactured the 3-page Terms and Conditions of Service (TCS) document after Plaintiff filed this case. Shayne's sworn affidavit states that he prepared and provided updated terms and conditions (the TCS) to Chen after the lawsuit was instituted as a general client service, as he "always" does for his new clients. Dkt. No. 148-1, p. 10. However, Shayne claims he never intended to file the TCS with the Court to establish Chen's lien defense. Id. Rather, the TCS document simply got mixed up within the "literally tens of thousands of pages of documents through" discovery and mistakenly filed by the office of his co-counsel, Richard Schrier. Dkt. No. 147, p. 18. Shayne claims he was unaware his TCS document was filed with the Court until Schrier informed him in late April 2022, almost **six months** after Chen relied on the TCS in her letter to the Court filed in November 2021. Had Shayne known the TCS document was filed, he would have presumably corrected the alleged error himself.

This excuse, which defies common sense, the record, and electronic evidence, is part of a continuing pattern of fraud on the Court that warrants terminating sanctions and disqualification of both Shayne and Schrier.

**A. Shayne Purposely Filed the TCS with the Court**

Shayne is now claiming he had nothing to do with filing the TCS with the Court because he knows there is no legitimate reason for asserting his own lien document in this case. So he is putting all the blame on Schrier's office for filing the TCS document **six** times over the course of **four** months in support of Chen's lien defense.

**However, metadata evidence shows that Shayne personally authored five out of the six docket entries that affirmatively relied on the TCS, including the November 2021 letter filed six months ago.** Ex. S. **Shayne signed most of these letters, motions, and pleadings as**

**Chen's lead counsel, representing to the Court that he reviewed the contents.** *See* Plaintiff's opening brief, Dkt. No. 146, Ex. D. "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper." Fed. R. Civ. P. 11(a).

For example, Chen's Motion to "Reargue" in the Third-Party Eagle action on March 7, 2022, <u>signed by Shayne</u>, cites specific language within his own TCS document (paragraphs 11, 13, and 14) to establish a basis for Chen's lien defense. Ex. S. Significantly, Shayne made no reference to the 1-page terms and conditions of service document (the "'94 Terms"), which Chen now claims to be the operative document. Instead he purposely used his own document. The motion's metadata conclusively proves that "William Shayne" is the author:



Ex. S.

Author metadata indicates the "person who created the document in the source application, such as Word…or by the person who created the PDF." Ex. T. Therefore, using his *own* computer, Shayne created the letters, motions, and pleadings which rely on his *own* TCS document for Chen's lien defense.

Chen's Third-Party complaint, filed on January 25, 2022, is also signed by Shayne and cites the same specific language from the TCS (paragraphs 687 and 688).

> Dated: New York, New York
> January 25, 2022
>
> /s/ William Shayne
> Shayne Law Group, P.C.
> Attorney for Defendants May Y Chen and Ability Customs Inc.
> 64 Fulton Street, Suite 1000
> New York, NY 10038
> Tel: 212 566-4949
> by William C. Shayne WS5672

Case 1:22-cv-00658, Dkt. No. 3

Accordingly, Shayne intentionally placed his TCS document on the record over <u>six</u> months ago. He drafted and signed the papers, knowing they would be filed with the Court. This was not a "simple" miscommunication between two legal offices discovered only recently.

**B. Chen's Counsel Actively Concealed Shayne's Authorship of the TCS from the Court**

In his affidavit, Schrier states that he "prepared" all the papers that relied on Shayne's TCS, and mistakenly "represented" that it was the operative lien document in this case. Dkt. No 148, p. 11. He realized "something was amiss" on Wednesday, April 28, 2022 when he "prepar[ed] answers to Plaintiff's document demand and interrogatories." Id., p. 12. After questioning Shayne and Chen about the document, he corrected the "error" in his May 6 letter to Plaintiff, which disclosed Shayne's authorship of the TCS and introduced the 1-page '94 Terms into the record. Dkt. No. 147, p. 30. Therefore, Schrier claims that, after almost three years of litigating Chen's purported lien rights over the cargo, he was still confused about which version of the lien document applied in this case. Nor did he realize for seven months that the TCS, the centerpiece of Chen's lien defense, was drafted by his own co-counsel.

3

However, **Shayne**—not Schrier—drafted most of the motions, letters, and pleadings that relied on the TCS, as evidenced by the metadata. Schrier's claim that *his* office mistakenly "represented" the TCS was the original version unbeknownst to Shayne cannot be true.

Further, Schrier's claim that he realized "something was amiss" with the TCS only in late April 2022 completely ignores the previous six months of the record (November 2021-April 2022), when Chen's counsel knew Plaintiff was aggressively investigating the TCS's authenticity. *See* Plaintiff's opening motion, Dkt. No. 146, Part II.

On February 4, 2022—almost three months before Schrier claims to have realized the "mistake"—Plaintiff issued discovery requests focused solely on the authenticity of the TCS. For example, Plaintiff's Interrogatory No. 15 requests the 'date on which the "Terms and Conditions' was first created," and the "**[n]ame(s) of the person(s)** who worked on the "Terms and Conditions." *See* Ex. F, Chen's Interrogatory Response. No. 15, emphasis added.

Chen's counsel certainly knew about the authenticity issue then. But they chose not to respond to Plaintiff's discovery requests, forcing Plaintiff to file a motion to compel on March 16, which expressly listed "several discrepancies in the record casting serious doubt on the authenticity of the terms and conditions." Dkt. No. 105, p. 3. Plaintiff's motion expressly accused Chen of fabricating the TCS: "*Either Defendants created the terms and conditions solely for litigation, which is improper*, or they are withholding native files related to the terms and conditions created at an earlier date for some unknown reason." Id.

Again, Schrier fully understood the authenticity issue at this point, but he elected not to file a written response to Plaintiff's motion. During the April 8 conference related to Plaintiff's motion to compel, Magistrate Judge Freeman specifically stated the issue before her was "*this document called Terms and Conditions of Services, which was filed by Mr. Schrier in*

4

*November 2021…*" and that Plaintiff had "given reasons why there is an authenticity issue with *that* document." Ex. N, p.23, emphasis added.

Once again, Plaintiff's counsel openly accused Chen's counsel of manufacturing the "specific" TCS document to the Court: "*We also believe that this terms and conditions of service form, this specific form was created by defendants' counsel sometime in 2018 in connection with another one of his clients and then asserted in this case after we filed the action*." Dkt. No. 137 pp. 31-32, emphasis added.

Meanwhile, Shayne was present on the teleconference and heard these serious accusations against himself and Schrier. He could have simply spoken up that he drafted the TCS, which would have helped clarify the issues. Instead, Shayne chose to remain silent and keep Plaintiff and the Court in the dark. Again, Chen's counsel do not even attempt to address this omission in their response.

On April 14, Plaintiff once again accused Shayne of manufacturing the TCS document by deposition notice based on his "role in creating, modifying, or altering any part of the referenced "Terms and Conditions of Service." Ex. U, Depo. Notice to Shayne. But Shayne still refused to admit manufacturing the TCS. Instead, he tried to hide behind attorney-client privilege. Schrier, in all caps, responded to Plaintiff's deposition request the same day: "ANY ADVICE <u>OR ACTION OR INACTION</u> FOR THAT MATTER ON HIS [SHAYNE'S] PART IN CONNECTION WITH HIS REPRESENTATION OF MS CHEN WOULD BE SUBJCT [sic] TO ATTORNEY CLIENT PRIVILEGE." Ex. I, p. 2, emphasis added. Schrier then renewed his work product and attorney-client objections to Shayne's testimony for the same reasons in an email to Plaintiff's counsel on April 19.

Schrier claims he realized the alleged filing error while preparing answers to Plaintiff's discovery requests on April 28. However, Plaintiff issued these discovery requests over two

5

months prior on February 4. Chen's counsel never gave an excuse for failing to submit a timely response. When Schrier finally did submit responses, he deliberately omitted Shayne's authorship of the TCS, as noted in Plaintiff's opening brief. Dkt. No. 146, p. 11. Specifically, Chen's counsel refused to "name the person[s] who worked on the Terms and Conditions," even though the answer was obviously "William Shayne."

Further, Plaintiff's February 4 discovery requests sought electronic native files of the TCS. Schrier raised work-product objections in his April 28 response. Accordingly, on May 3, Plaintiff's counsel demanded a privilege log to support the work-product objection, accused Shayne of manufacturing the TCS once again, and threatened to bring the "specific matter" to the Court's attention "in the following days:" "Your work product privilege requires that you must disclose whether Attorney Shayne created this document in a privilege log. **We will raise this specific matter with the Court in the following days**." Ex. W, pp. 1-2, emphasis added.

Knowing that it was a matter of time before the Court learned that Shayne created the TCS, Schrier finally admitted the truth in a May 6 letter to Plaintiff, and introduced the 1-page '94 Terms into the record.

Schrier claims he intended to tell Plaintiff that Shayne manufactured the TCS all along, but Plaintiff simply beat him to it: "[B]efore I could draft a suitable letter advising Plaintiff of the error and providing a copy of the 1-page terms and conditions" (the '94 Terms), Plaintiff's counsel already accused Shayne of fabricating the document in a May 3 email." Dkt. No. 148, p. 15. This is way too convenient. The record shows Schrier had months to correct the alleged mistake. Plaintiff openly accused Chen's counsel of fabricating the TCS **three** times in the previous months. But Chen's counsel had no intention of admitting Shayne's involvement until they were out of options. Schrier did not write the May 6 letter willingly; he was forced to only

when the handwriting was on the wall, and after months of obstructing Plaintiff's investigation of the TCS.

### C. The Misconduct Necessitates Default Judgment, Dismissal, Attorneys' Fees, and Disqualification of Chen's Counsel

Chen claims dismissal is not warranted because the production of the TCS was not the "product of intentional bad faith," "there is absolutely no basis to believe that there will be any representations made by Defendant or her counsel that are untrue in the future," and the "production of the 'wrong' version of the terms and conditions of service was an isolated incident." *See* Dkt. No. 147, p. 30. Chen's counsel also argues that "an attorney should only be disqualified only when there is a reasonable possibility that some 'specifically identifiable impropriety' actually occurred." Dkt. No. 147, p. 26.

However, Chen's counsel affirmatively relied on the fabricated TCS **six** times in their certified papers to the Court. Also, record evidence shows that Chen and her counsel actively and repeatedly concealed Shayne's authorship of the TCS from Plaintiff and the Court over a seven-month period, as discussed *supra* and in Plaintiff's opening brief. Dkt. No.146 at Part III.A. Chen does not refute or even address these specific allegations in her response.

Chen's counsel **continue** to make blatant misrepresentations to the Court to cover their misconduct, and there is no reason to believe things will be any different going forward. Shayne's most recent claim that he had nothing to do with filing the TCS document is directly contradicted by the record and the metadata evidence cited above. Shayne **drafted** and **signed** almost all the papers filed with the Court over six months ago that affirmatively rely on his **own** lien document to establish Chen's defense. He wrote these papers specifically for the Court. Shayne cannot simply put the blame on Schrier's office and disavow these filings now when his name is all over them. This is exactly the type of "specifically identifiable impropriety"

contemplated by the New York Rules of Professional Conduct that warrants disqualification: a lawyer must not "offer or use evidence that the lawyer knows to be false." N.Y. Rules of Prof. Con. 3.3(a)(3).

### 1. *Prejudice to Ameriway and Impact on the Integrity of Judicial System*

Chen maintains that she still has a meritorious claim based on the 1-page '94 Terms sheet despite her use of the fabricated TCS, and that her conduct cannot be sanctionable because the parties agree the TCS is not the operative document. Dkt. No. 147, p. 7. She characterizes the TCS document as "substantively irrelevant" because the '94 Terms sheet also contains a general lien clause. Id., pp. 7-8.

This argument misses the point. The real issue of concern is that in earlier letters, motions, and pleadings, Chen and her counsel had filed false, material misrepresentations with this Court related to the central issue of this case: the authenticity of Chen's lien documentation. Shayne knew the TCS was false and affirmatively relied on it anyways to advance Chen's lien defense. Chen's counsel clearly believed the TCS would enhance Chen's litigation position—there was no other purpose to serve by placing the fabricated lien document into the record.

Chen's argument that there can be no prejudice because she has withdrawn the TCS is also not persuasive. After two years of litigation, Chen finally produced a lien document, the TCS, to support her affirmative defense in November 2021. The TCS was the **only** lien document on record at the time, and constituted her entire defense. Plaintiff was thus forced to devote significant time and energy investigating the document's provenance—and it turned out to be manufactured by Chen's *own counsel*, of all people.

Federal courts reject Chen's 'no harm no foul' defense when imposing so-called terminating sanctions for fraud on the Court. The Ninth Circuit, in *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, found dismissal appropriate where the defendant agreed to withdraw false

declarations: "Defendants' 'no harm, no foul' argument is disingenuous and not well-taken. Clearly, in filing the fraudulent evidence with this court and the Ninth Circuit, defendants intended the courts to rely on such evidence in adjudicating the issues before them." *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 2015 U.S. Dist. LEXIS 189271.

The misconduct here is significantly more prejudicial to the Court because Chen's **own lawyers** fabricated the TCS document, which could have determined the outcome of this case. In calling the TCS 'substantively irrelevant,' her counsel conveniently ignores that if this Court had accepted the TCS as valid Chen might have established lien rights as a matter of law over the five cargo containers at issue. The record shows that Chen's counsel would **not** have withdrawn the TCS had Plaintiff not been fortunate enough to discover the truth. For instance, Chen's counsel knew Plaintiff was investigating the TCS in its February 4 discovery requests. **Undeterred, Shayne affirmatively asserted his TCS document over one month later in the Motion to Reargue** dated March 7. See Dkt. No. 100 & 101.

Chen undoubtedly would have used Shayne's TCS document in her summary judgment motion, which is due in only two months. There is no document which could be more firmly connected to the merits of this case than the TCS; if accepted as genuine it could have disposed of Plaintiff's conversion claim all at once. In the face of this misconduct, the mere exclusion of the TCS amounts to no sanction at all. *See Pope v. Federal Express Corp.*, 138 F.R.D. 675, 683 (W.D. Mo. 1990), aff'd in part, vacated on other grounds, 974 F.2d 982 (8th Cir. 1992) ("Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues.")

And given Chen's efforts to conceal Shayne's authorship of the TCS, Plaintiff has every reason to distrust the authenticity of the '94 Terms, and moving forward, it will incur the added cost and burden of verifying the authenticity of every document. For example, Chen does not

9

refute the metadata evidence indicating her counsel created the '94 Terms sheet on April 7, 2022. *See* Plaintiff's opening brief, Dkt. No. 146, p. 13.

Chen produces affidavits from customers who, "based on their recollection" **over ten years ago**, believe Chen sent them the '94 Term sheet. She also submits certain fax "Transmission Verification Reports" and coversheets from 2011-2012 purportedly to show she sent the '94 Terms to her customers, but there is no way to confirm the content of these faxes. In addition, Chen sent thousands of emails to Plaintiff during their two-year relationship. She emailed Plaintiff the 2017 POA for signature when the parties started working together. But she has not produced any electronic evidence in native file format (e.g., emails, hard drive files) proving that she used the '94 Terms throughout her ten years of business (2011 to the present) upon repeated requests from Plaintiff.

Moreover, it is axiomatic that Chen would have asserted the 1-page '94 Terms at the outset of this case if it really existed to support her lien defense. But she did not produce the document until almost <u>three</u> years into this litigation, and only <u>after</u> Plaintiff confronted her about the false TCS. **Chen's August 2019 emails show that she repeatedly <u>denied</u> seizing the containers to Ameriway, falsely claiming that a third-party trucking company detained them over her own debt.** Ex. C. This alone indicates Chen did not have a lien document in place, and was motivated to manufacture one for this case with the help of her counsel. If she had valid lien rights in 2019, she would not falsely deny taking the cargo. Again, Chen does not address any of these facts in her response.

But even assuming *arguendo* the '94 Terms are authentic, this is hardly an excuse for repeatedly lying to the Court about the TCS; it does not undermine the significance that Chen and her counsel knowingly gave false evidence related to the central issue in this case.

## CONCLUSION

For these reasons, it is respectfully submitted that the Court issue its Order for default judgment, dismissal, and attorneys' fees against both Chen and her counsel; and, for disqualification of Shayne and Schrier from participating any further in this case.

Respectfully submitted,

STRATUM LAW LLC.


By: _____
Peter S. Wolfgram
Xiyan Zhang
STRATUM LAW LLC
*Attorneys for Plaintiff,*
*Ameriway Corporation*