# STRATUM*LAW* LLC

| | | |
|---|---|---|
| 2424 E. York St. Ste. 223<br>Philadelphia, PA 19125 | | (215) 621-8008<br>www.stratumlaw.com |
| *Via ECF* | APPLICATION GRANTED<br>SO ORDERED /s/ *illegible*<br>VERNON S. BRODERICK<br>U.S.D.J.  09/12/22 | September 9, 2022 |
| Hon. Judge Broderick<br>United States District Court<br>Southern District of New York<br>500 Pearl St.<br>New York, NY 10007 | | |

Document discovery shall be stayed pending a resolution of Plaintiff's Motion for Default Judgment and Dismissal.

Re:   Case # 19-cv-09407 - Ameriway Corp. v. May Yan Chen and Ability Customs Inc. – Plaintiff's Motion to Stay Discovery Based on New Evidence

Dear Judge Broderick:

Plaintiff Ameriway Corporation requests a stay of document discovery until its dispositive motion for default judgment and dismissal is resolved.  *See* Dkt. No 145.  While the Court already postponed depositions, a complete discovery stay is warranted because Defendant Chen recently submitted to the Court as substantive evidence three fabricated emails in support of her purported lien over the five cargo containers at the center of this case.  This is now the <u>second</u> crucial piece of fabricated evidence Chen has knowingly presented to the Court, the first being a lien document manufactured by her counsel, William Shayne, by his own admission.  These proceedings will be wasteful to both Plaintiff and the Court if the motion is granted.  Rather than submit a second motion for default judgment and dismissal, Plaintiff incorporates the following into its pending motion.

*Brief Background*

Ameriway is a logistics company whose five cargo containers were seized by Chen, a customs broker, in August 2019 over money allegedly owed on prior shipments.  In October 2019, Ameriway filed an action for conversion, among other claims, asserting that Chen did not have a valid lien right in contract to detain the cargo.  Chen asserted a general lien defense, but failed to produce any supporting lien documentation for two years.  Then, in November 2021, Chen's counsel filed a lien document called "Terms and Conditions of Service" (the "TCS") with the Court.  Chen relied on the TCS five more times, including in her sworn affidavit.

Upon investigation, Plaintiff discovered that Chen's lead counsel, William Shayne, manufactured the TCS.  Shayne finally admitted this fact in May 2022, but only <u>after</u> Plaintiff repeatedly confronted him on the record.  On June 24, Plaintiff filed a motion for default judgment and dismissal for 'fraud on the Court' because Chen and her counsel knew the manufactured TCS would become evidence before the Court, and sought to have the Court rely upon the TCS.  Plaintiff also moved to disqualify Chen's counsel for inserting themselves into this case's underlying facts by creating the TCS for Chen's defense.

*The Second Lien Document:  The '94 Terms*

**Stratum**Law LLC

September 8, 2022
Page 2 of 8

After a monthslong effort to avoid Plaintiff's discovery requests, Chen's counsel finally admitted to manufacturing the TCS in May 2022. Chen then attempted to substitute the TCS with a **new** lien document (the "'94 Terms") that had never appeared in the record before. Chen claims the '94 Terms is the "real" version she regularly sent to her customers since 2011; and, she meant to rely on the '94 Terms all along, but her counsel "mistakenly" filed Shayne's TCS with the Court on six occasions. However, Plaintiff presented electronic evidence undermining this mistake defense. Dkt. No. 154. In any event, Chen has successively relied on two lien documents, and it is undisputed that her lead counsel manufactured one of them.

Plaintiff began investigating the '94 Terms in May, and requested emails in native file format to determine whether the document is another fabrication. Then, on August 16, Chen's counsel submitted a "Status Report" to Magistrate Judge Valerie Figueredo, which includes three "Exhibit email[s] to New Client[s]" "clear[ly] referenc[ing]…the transmission of a copy of the terms and conditions" (the '94 Terms) as early as 2013. Dkt. No. 157, p. 1. However, the email exhibits are not in native file format. They are scanned .PDF files of hardcopies that Chen claims to have recently found in storage "boxes." Id. Chen alleges she cannot find any emails containing the '94 Terms on her server. Id. This is because they were never on her server. Chen fabricated the three email exhibits, as the following electronic evidence proves.

### *Chen's January 8, 2013 Email Contains Specific Information that was Not Publicly Available Until June 2013*

The first email at-issue is dated **January 8, 2013**, and references the 'Terms and Conditions' ('94 Terms) in the 'Subject' and 'Attachment' fields. Ex. A, p. 1; *see also* Dkt. No. 157-1. The email contains a footer stating "U.S. Customs & Border Protection (CBP) will commence full ISF enforcement on July 9, 2013." Id., emphasis in original. Under the full enforcement policy, CBP began to issue stiff penalties ($5000 per violation) against importers for the submission of inaccurate, incomplete, or untimely paperwork related to shipments. CBP adopted a more lenient policy before July 9. Chen's email is displayed below:

> Best Regards,
>
> May
>
> Ability Customs Brokers
> 13910 Doolittle Dr
> San Leandro, Ca 94577
> T:510-347-5555
> F:510-347-1555
> WWW.abilitycb.com
>
> **Based on the current challenges at all the West Coast Ports due to terminal constraints, kindly note Ability Customs Brokers will not be held liable for any demurrage, standby time, per diem/detention and/or dry runs.**
>
> **Important !!! **
> U.S. Customs & Border Protection will commence full ISF enforcement on July 9, 2013 and will issue liquidated damages against the importer for non-compliance. The Importer Security Filing must be electronically filed with CBP no later than 24 hours prior to the departure of the vessel and it is the importer's responsibility to ensure that it is done. Liquidated damages assessed will be $5,000 per violation so please contact broker to make sure that you supply the information in advance or make arrangements to have it filed.

Ex. A, p. 1, Chen email dated January 8, 2013, emphasis added.

2

Stratum*Law* LLC
September 8, 2022
Page 3 of 8

**However, CBP did not <u>announce</u> the July 9, 2013 start-date of the "full ISF enforcement" policy until <u>JUNE 7, 2013</u>.  This was a full <u>six months after</u> Chen referenced the specific start-date in her January 2013 email**.  On <u>June 7, 2013</u>, CBP issued an administrative bulletin, "<u>Initiation Date</u> for Liquidated Damages for ISF Non-Compliance," announcing the July 9 start-date:



Ex. B, p. 1, emphasis added; *see also* https://content.govdelivery.com/accounts/USDHSCBP/bulletins/7e5be4.

The same day (June 7), CBP also released the July 9 start-date on its main website. Id., p. 2. CBP expressly noted the article's "**Release Date** [of] Fri, 06/07/2013 – 12:00." Id., emphasis in original.

Moreover, Chen's email, allegedly sent <u>six</u> months earlier on January 8, contains nearly identical language and phrasing as CBP's June 2013 bulletin, which could not possibly happen.  Chen's January email reads, in relevant part:

> "U.S. Customs & Border Protection will commence full ISF enforcement on **<u>July 9, 2013</u>** and will issue liquidated damages against the importer for non-compliance." Ex. A, p. 1; *compare to* language in CBP's June bulletin underlined in red, above.

Accordingly, Chen's January 2013 email contains very specific information and language from CBP's bulletin, **which did not exist for another six months**.  Further, CBP's announcement was widely reported within the transportation industry in **June/July** 2013.  Exhibit B lists several articles relating to CBP's June press release from trade journals, ports, and companies who, like Chen, wanted their customers to be aware of the start-date to avoid the filing penalties.  Ex. B, pp. 3-12.  However, the exact July 9 start-date was <u>not</u> published <u>before</u> June, much less in January, for the obvious reason that CBP did not release the information yet.  Chen simply could not have known the precise date six months before CBP announced it to the public.  Nor could she have possibly copied the language from CBP's bulletin a half year before CBP even wrote the message.

**Stratum**Law LLC
September 8, 2022
Page 4 of 8

***Digital Forensic Evidence Proves the Three Emails Are Fabricated***

After thoroughly reviewing the email exhibits, Plaintiff's forensics experts, Mr. Kristian Larsen and Mr. Andrew Nicholas, have both found conclusive evidence of digital manipulation. Larsen is a forensic analyst from Data Narro, a digital evidence and e-discovery firm. He notes the email exhibits are standard "Memo Style" printouts from Microsoft Outlook containing a header field and distinctive title bar. Ex. C, Larsen Report, p. 3. The header includes information like the sender details, receiver details, subject, date, and attachments. Id. While there are multiple versions of Outlook (2010, 2013, 2016, 365, etc.), they all have nearly identical options for printing. Id.

However, there are "significant formatting inconsistencies…in the PDFs [that] should never occur with a legitimate email….***Even a casual observer can notice the fundamental formatting anomalies with these emails***," according to Larsen. Id., emphasis added. For instance, the "default header font [in Chen's emails] is often interspersed with condensed and stretched versions of Times New Roman, which should not be possible" in Outlook. Id. Larsen continues, "[y]ou can't define multiple fonts within the memo header fields….***It is not possible to have multiple fonts, different character tracking/kerning, or spacing variations within the memo header fields***." Id., emphasis added. Similarly, Nicholas concluded "the two printouts do not represent original, untouched, authentic emails. They could not have been generated by Outlook in their present form without being edited/manipulated." Ex. D, Nicholas Declaration, ¶ 18.

1. *Microsoft Outlook does Not Allow Extra Spaces in the Sent (date) Field*

With respect to the January 2017 email, both Larsen and Nicholas identified extra spaces within the 'Sent' (date) field. However, "because this date is formatted by Outlook, there is absolutely no reason that it would insert spaces that vary in size. Each space should be uniform in width." Ex. C, Larsen Report, p. 7. However, there are clearly extra spaces in the 'Sent' field, shown below:



Larsen Report, Ex. C, p. 7.

StratumLaw LLC
September 8, 2022
Page 5 of 8



Nicholas Declaration, Ex. D, p. 6

*2. Indentation Problems in the From and Sent Fields*

Regarding the January 2013 email, both Larsen and Nicholas identified "noticeable inconsistencies in the indentation of the 'From' and 'Sent' fields." Ex. C, Larsen Report, p. 5. Outlook automatically formats these fields flush left (aligned on the left axis). Id. However, "May C" in the 'From' field is <u>not</u> flush with the other fields. "Because these fields are formatted by Outlook and cannot be altered by the user, there is no reason this should occur in a legitimate email printout." Id.



Nicholas Declaration, Ex. D, p. 3.

*3. Letter Tracking in the 'Sent' Field*

Larsen explained that letter spacing within the typography field is called "tracking." Id. In the January 2013 email, "the tracking between the word "Tuesday" and "January" is different, something that is not possible to control in Microsoft Outlook memo headers." Larsen Report, Ex. C., p. 5. Specifically, the word "January" clearly has more space between the letters than the word "Tuesday" in the 'Sent' field. Id. However, "Outlook controls the formatting of this

memo field, so this variation in tracking is not possible." Id.  Nicholas illustrates an obvious tracking discrepancy between the 'From' and 'Sent' lines:



Nicholas Declaration, Ex. C, p. 5; *see also* Larsen Report, Ex. C, p. 5.

4. *Different Version of Times New Roman in Header*

The January 2013 email contains multiple variations of Times New Roman, which should never occur in the header, according to Larsen and Nicholas.  Larsen notes "a striking example of this variation in the 'Subject' and 'Attachment' lines by looking at the capital letters "T" and "C" in the words "Terms" and "Conditions" – which specifically refers to the '94 Terms.  Id., p. 6.  The font in the 'Subject' line has condensed capital characters and is visibly different from the version in the 'Attachments' line, indicating image editing.  Id.



Larsen Report, Ex. C, p. 6.

**Stratum**Law LLC
September 8, 2022
Page 7 of 8

Nicholas also identified different versions of Times New Roman within *the same line* in Chen's 2017 email, which would never occur in Outlook, with some characters being artificially "condensed" or "stretched horizontally":



Nicholas Declaration, Ex. D, ¶ 16.

Because the formatting irregularities selectively impact a word or part of a line—relating specifically to the '94 Terms—they could not have been caused by poor scanning of an older, non-flat (curved) document.  Larsen states the following:

> "[T]hese anomalies are not the result of poor scanning, because the scanning of a non-flat piece of paper (resulting in a curved surface or plane) always manifests itself with a consistent transformation of page content, be it vertically, horizontally, or diagonally, often paired with slight discoloration of the background, as the paper's curve introduces a shadow gradient. *A visible symptom of a poor scan does not selectively impact only one word or part of a line, it imprints itself in a larger way, impacting more page conten*t."   Nicholas Declaration, para. 17, emphasis added.

These multiple formatting irregularities, combined with the anachronistic date reference within the January 2013 email, establish clearly and convincingly that the '94 Terms are fabricated, like the TCS.   Chen and her counsel have now knowingly submitted **two** falsified lien documents to the Court, one after the other.  This level of calculated misconduct involving attorneys is rarely encountered in the line of federal cases dealing with 'fraud upon the Court' and completely undermines the truth-seeking function of the legal process.  Use of fabricated evidence is an "abuse of the system [that] distorts the court's ability to ensure fair and just outcomes and threatens the legitimacy of the entire enterprise."  *For Life Prods. v. Virox Techs*., 1:20CV00016 (W.D. Va. Jul. 29, 2022).

The record shows that Chen, having dug herself deep in the lie, will only continue to falsify evidence that will demand the Court's attention, causing a further drain on public resources—this authenticity issue has been ongoing for ten months already.  Because a short stay will not

**Stratum***Law* LLC

September 8, 2022
Page 8 of 8

prejudice Chen, Plaintiff respectfully requests the Court to postpone document discovery until its motion for default judgment and dismissal is resolved. "[U]pon a showing of good cause a district court has considerable discretion to stay discovery pursuant to Fed. R. Civ. P. 26(c)." *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance* Ltd., 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (citation and quotation marks omitted).

By: _____
Pete Wolfgram
Attorney for Plaintiff
STRATUM LAW LLC