# STRATUM*LAW* LLC

2424 E. York St. Ste. 223                                    (215) 621-8008
Philadelphia, PA 19125                                       www.stratumlaw.com

*Via ECF*                                                    January 27, 2023

Hon. Judge Broderick
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007

> Re: Case # 19-cv-09407 - Ameriway Corp. v. May Yan Chen and Ability Customs Inc.
> – Plaintiff's Request for a Pre-motion Conference to File a Second Motion for Sanctions,
> and for the Court to take Judicial Notice of U.S. Customs and Border Protection CSMS#
> 13-000298.

Dear Judge Broderick:

Plaintiff Ameriway respectfully submits this letter to the Court to request a pre-motion conference on a proposed second motion for sanctions against Defendant May Yan Chen, d/b/a Ability Customs Brokers, and her counsel for their recent submission of two sets of fabricated email "printouts" to the Court on August 16, 2022 and January 4, 2023.  Chen claims the scanned PDF printouts represent original emails from early 2013 that purportedly referenced the transmission of a lien to her customers. Chen presented the printouts as evidence of use to Magistrate Judge Valerie Figueredo and Your Honor to authenticate the lien document, which is the sole basis of her defense.  Plaintiff claims the lien document and supporting email printouts are fabricated; Chen never used a lien document during her business.

Plaintiff recently obtained the electronic files corresponding to the exact email string, down to the minute, referenced in the printouts from one of Chen's former customers, a non-party logistics company named Pacific Coast Container Inc., d/b/a PCC Logistics ("PCC").  PCC's files reveal significant discrepancies between Chen's original emails and the printouts, conclusively establishing that Chen fabricated the printouts to advance her case.

## *Background and Basis of the Anticipated Motion*

Ameriway is a logistics company whose five cargo containers were seized by Chen, a customs broker, in August 2019 over money allegedly owed on prior shipments.  In October 2019, Ameriway filed an action for conversion, among other claims, asserting that Chen did not have a valid lien right in contract to detain the cargo.  Chen asserted a general lien defense, but did not produce any supporting lien documentation for two years.  On November 2, 2021, Chen's counsel submitted to the Court a three-page lien document called "Terms and Conditions of Service" (the "TCS") to establish Chen's defense.  Chen relied on the TCS five more times, including in her sworn affidavit.  Upon investigation, Plaintiff discovered that Chen's lead counsel, William Shayne, personally created the TCS.  Shayne was forced to finally admit his authorship of the TCS after being pressured by Plaintiff's counsel for three months (February-May 2022).

Chen formally withdrew the TCS in May 2022, but then introduced a *second* lien document (the "'94 Terms") that had never appeared in the record before. Chen claims the '94 Terms is the actual version she regularly sent to her customers since 2011; and, she meant to rely on the '94 Terms all along, but her counsel 'mistakenly' filed Shayne's TCS with the Court on six occasions. But Chen's counsel could not have filed the TCS by mistake because William Shayne's name also appears in the metadata of the court filings that quote directly from the TCS. *The metadata proves that Shayne drafted the letters, motions, and pleadings based on a lien document that he personally created.* Further, the TCS was the centerpiece of Chen's lien defense, and therefore the most critical document in this case at the time. That Chen accidentally filed her own lawyer's lien document with the Court six times, including once in her sworn affidavit, is completely implausible as a matter of common sense. Chen's creation of false evidence is the basis of Plaintiff's first motion for terminating sanctions, filed on June 24 and currently pending.

> Chen and Counsel Submitted the First Set of Fabricated Printouts to Magistrate Judge
> Valerie Figueredo in a 'Status Report'

Plaintiff began investigating the second lien document, the '94 Terms, after Chen withdrew the TCS in May 2022. Plaintiff repeatedly requested native versions of emails, or any evidence that Chen ever sent the '94 Terms to her customers during her business from 2011 to the present. On August 16, 2022, Chen's counsel submitted a "Status Report" to Judge Figueredo, including three email exhibits to her customers purportedly referencing the transmission of a copy of the second lien document (the '94 Terms) as early as 2013. Dkt. Nos. 157-1, 157-2, 157-3. The exhibits are scanned PDFs of email printouts—not native files—which Chen claims to have recently found in storage "boxes." Id. To date, Chen has not produced a single electronic file to support the '94 Terms. She claims she cannot find any files on her server.

Chen's first email printout is dated **January 8, 2013**, and represents that Chen sent the '94 Terms to one of her customers on that date in an attachment. Ex. A. A footer at the bottom of the printout states "U.S. Customs & Border Protection (CBP) will commence full ISF enforcement on July 9, 2013…." Ex. A. For context, CBP implemented the "full" Importer Security Filing (ISF) enforcement regulations to ensure that importers filed complete customs documentation before the cargo left the port of origin. The previous policy was more lenient.

**However, CBP did not announce the exact July 9, 2013 start-date of the "full ISF enforcement" policy until __JUNE 7, 2013__, a full six months after Chen allegedly sent her email, when it issued administrative message CSMS# 13-000298 from its official website.**[1] CSMS# 13-000298 is a public record expressly titled "__Initiation Date for Liquidated Damages for ISF Non-Compliance__," and states "on July 9, CBP will begin full enforcement of ISF, and will start issuing liquidated damages for non-compliance." Ex. B, pp. 1-2, emphasis added. CBP's website—an accurate, authoritative source—also contains a "CSMS Archive" documenting exactly when each administrative message was released. CSMS# 13-000298 was

---

[1] *See* https://www.cbp.gov/newsroom/national-media-release/cbp-enters-next-phase-importer-security-filing.

issued on **June 7, 2013 at 13:05**,[2] according to the Archive.  Government website data—particularly data that may be confirmed by the court's accessing the site—are subject to judicial notice under Federal Rule of Evidence 201(b) and (d).  *See Denius v. Dunlap*, 330 F.3d 919 (7th Cir. 2003).  Further, numerous ports, logistics companies, customs brokers, law firms, and transportation companies published their own notices about CSMS# 13-000298 in June/July 2013.  The following is just one example:

- "The news this week revolves around the <u>announcement</u> from Customs and Border Protection (CBP) that full enforcement of Importer Security Filings (ISF) will go into effect on <u>July 9th</u>," Yusen Logistics (Americas) Inc., "10 + 2 - \$5000," **published July 2013**, emphasis added, https://www.rvcf.com/mpage/RVCF_LINK_13_07_07.

A simple Google search of "ISF enforcement CBP July 9, 2013" generates dozens of similar articles published in June/July 2013 discussing the Initiation Date.  On the other hand, Chen has not referenced a single source published <u>before</u> June 2013, much less in January, that references the exact date.  There are none.  On September 9, 2022, Plaintiff filed a letter motion requesting the Court to consider this new evidence of fraud on the Court by reference in its first motion for sanctions, and to stay the case until the Court resolved the dispositive motion.  Dkt. No. 158.  The Court granted this request on September 12, 2022.  Dkt. No. 162.

> <u>Chen and Counsel Submitted a Second Set of Fabricated Printouts to Your Honor in a Letter Motion dated January 4, 2023</u>

Responding to Plaintiff's letter motion four months later, Chen's counsel submitted a Letter Motion for Continuance to Your Honor, including an expert report from a forensic examiner, Linda L. Mitchell.  Dkt. No. 163.  Attached to Mitchell's report are ten (10) *additional* printouts of emails allegedly sent by Chen to various customers before CBP announced the Initiation Date in June 2013.  The footer at-issue referencing the Initiation Date appears once again at the bottom of Chen's emails.  Based solely on her review of these email "samples," Mitchell generally concluded that the Initiation Date reference is not evidence of digital manipulation, but "part of the predetermined signature affixed to certain outgoing emails in the regular course of [Chen's] business."  Dkt. No. 163-1, pp. 18-27.

However, Mitchell does not even try to explain how Chen could have known the exact date six months before CBP announced it to the public in the first place.  **She makes no attempt to reconcile her findings with CSMS# 13-000298 or the referenced trade articles,** which flatly contradict her conclusion as a matter of <u>public record</u> and common sense.  Mitchell's report indicates that she did not even receive this contrary evidence.  Her analysis was exclusively based on "the sample documents [scanned email printouts] supplied to [her]" by Chen's counsel.  Id., p. 5.  CSMS# 13-000298 is not mentioned anywhere in her report.

---

[2] *See* https://www.cbp.gov/sites/default/files/assets/documents/2020 May/CSMS%20Archive_2011_2015.pdf.

<u>PCC Logistics's Electronic Files Prove that Chen Fabricated the Printouts</u>

Plaintiff set out to investigate the authenticity of the email printouts in Mitchell's report. A comparison between the printouts and the corresponding email files obtained directly from the email recipients, Chen's customers, would quickly reveal whether the printouts are authentic, i.e., whether the footer at-issue appears in the customer's email file. However, Chen's counsel redacted the customer information in the printouts, thereby preventing Plaintiff from contacting Chen's customers directly to request files. Dkt. No. 163, p. 3.

But Chen's counsel did not redact all the customer information in Mitchell's report. One printout includes an email exchange, dated <u>January 3, 2013 at 1:43 PM and 11:49 AM</u>, between Defendants and a "Cyntra Giboney," "CES/CET Supervisor." Ex. C. While Giboney's employer name is redacted, a Google search revealed that she was once employed by PCC Logistics based out of San Leandro, California. Chen is also based out of San Leandro.

Plaintiff discussed the authenticity issue with PCC's legal counsel, Mr. Andy Kaver of the Kaufman Dolowich Voluck law firm. Mr. Kaver agreed to assist Plaintiff's discovery efforts, and directed PCC to search its database for the specific January 3, 2013 email string between Defendant and Giboney represented in Chen's printout. PCC found the emails and produced files of the same to Plaintiff on January 17. Id. at 2.

**PCC's electronic files confirm that Chen's original email never contained the disputed footer. The July 9 Initiation Date reference does <u>not</u> appear anywhere in her email.** Id. There are several other obvious discrepancies between the original email and the printouts establishing fraud on the Court. Id.

The discrepancies make obvious sense because, *as a matter of public record*, CBP did not release CSMS# 13-000298 until June 2013, six months after Chen allegedly sent her January 3 email. Chen fabricated the second set of printouts to include the footer because she was forced to explain how the Initiation Date could have ever appeared in the first set of printouts, when CSMS# 13-000298 proved this to be impossible. Confronted with overwhelming objective evidence, Chen chose to dig in and fabricate more printouts dated before June 2013 to give the false impression that the footer regularly appeared in her emails at that time.

After fourteen months, this authenticity issue has now become very simple: if the printouts are authentic, they would match PCC's electronic files. They obviously do not match, and so are fake. Chen repeatedly relied on the false printouts to establish her purported lien, the central issue in this case. The calculated misconduct here goes far beyond anything the undersigned has found in the relevant case law—Plaintiff has now caught Chen using **two** false lien documents, one after the other. Chen's lies and misconduct will almost certainly continue in the future if this action is permitted to go forward, making terminating sanctions necessary to protect the integrity of the Court. Therefore, Plaintiff respectfully requests a pre-motion conference on a proposed second motion for terminating sanctions relating to the false printouts, and for the Court to take judicial notice of the fact that CBP first announced the Initiation Date on June 7, 2013, in accordance with CSMS# 13-000298.

By: s/Pete Wolfgram
Pete Wolfgram
Attorney for Plaintiff
STRATUM LAW LLC

APPLICATION GRANTED
SO ORDERED
VERNON S. BRODERICK
U.S.D.J.    05/22/2023

The parties shall appear on Wednesday, May 25, 2023 at 2:00 PM for a
conference via telephone using the dial in 888-363-4749 and access
code 2682448 to discuss Plaintiff's request to file a second motion for
sanctions and Defendant's motion for continuance.