# Ex. EE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Ameriway Corporation**<br><br>                                        Plaintiff,<br>          v.<br><br>**May Yan Chen**,<br>**Ability Customs, Inc.**,<br><br>                                        Defendants. | 19-cv-09407 (VSB) (VF) |

**DECLARATION OF KRISTIAN LARS LARSEN**

I, Kristian Lars Larsen, hereby declare and certify:

1.      I am over 18 years of age. I am currently employed by Data Narro, LLC as E-Discovery Director. Data Narro, LLC specializes in digital forensic analysis along with the discovery, collection, investigation and production of electronic information for litigation matters. I am responsible for coordinating computer forensic investigations and providing electronic discovery and litigation support. I oversee document review and document review hosting services as well.

2.      I have been employed in at Data Narro, LLC for five years and have participated in dozens of forensic collections and analysis efforts. I am Certified E-Discovery Specialist (CEDS) and hold an eDiscovery Executive Certificate (eDEx) from the Association of Certified E-Discovery Specialists and sit on the board of the ACEDS Wisconsin Chapter. Additionally, I

am certified as a project manager for the DISCO and iCONECT E-Discovery document review platforms.

3.  I have extensive experience in the analysis and documentation of computer-related information and files in support of ongoing litigation matters. I regularly write articles intended for the legal community concerning digital forensics and e-discovery topics.

4.  I was retained by Attorney Peter Wolfgram of Stratum Law to provide examination and analysis of documents in the case of Ameriway Corporation v. May Yan Chen, Ability Customs, Inc. (19-cv-09407).

5.  Data Narro invoiced Plaintiff's counsel $300 per hour to conduct the examination and analysis.

6.  I have reviewed the following materials in preparation for this examination:

- Electronic email files produced by PCC Logistics ("PCCL") to Plaintiff's counsel in January 2023 of an email exchange between PCCL's employee, Cyntra Giboney, and May Chen of Ability Customs, Inc., dated January 3, 2013 at 11:49 AM and 1:43 PM. *See* Plaintiff's Motion, Declaration of Brian Howver.

- Court Transcript before Judge Vernon Broderick, dated May 24, 2023 ("Judge Broderick Conference"). Plaintiff's Motion, Ex. E.

- Defendants' Letter Motion to "Continue," dated January 2, 2023, which includes a report by forensic examiner Linda L. Mitchell relating to the authenticity of several hardcopy email "printouts" which formed the basis of Mitchell's report, and which purport to represent email exchanges

between Defendant Chen and several third parties. Dkt. 163. I have specifically reviewed an email printout purporting to represent an exchange between Defendants' employee, "Lily," and Cyntra Giboney of PCCL, dated January 3, 2013 at 11:49AM and 1:43PM. Dkt. No. 163-1, p. 20.

7. I have been asked to provide an expert opinion about the explanation provided by Attorney Mr. Schrier to the Court during a May 24 conference about the origins of a reply email from May Chen to Cyntra Giboney, dated January 3, 2013. Mr. Schrier states:

> **"The company e-mail is set up so they have the footer, her personal e-mail was not set up that way at the time. I don't think it is set up that way this way either. Why she did it? There's an e-mail that came in, if you notice, one is to May and one was to Lilly, which means that -- why -- I mean, it's two different people, obviously. But the one to May went to her personally, or she -- it went to info but it's addressed to May. So when it came -- we're guessing. This happened ten years ago, but it came to her, to her attention, and she replied from her personal e-mail. Well, it happened at the same time. I just question the answer also, that they both saw it, and they just happened to be done. It's that much of a coincidence. I don't know the answer, Judge. I can tell you it came from two different computers. One was addressed to Lilly and one was addressed to May."** Judge Broderick Conference, p. 7; *see also* Ex. E of Plaintiff's Motion.

8. Mr. Schrier asserts that two emails were sent to the company's info email (**info@abilitycb.com**) from Giboney, with one of the email's salutations addressed to May. He goes on to state that May then "replied from her personal e-mail."

9.      If Mr. Schrier is asserting that May used a personal email account, the evidence does not support this. For Mr. Schrier's assertion to be correct, the reply email from May would show May's personal email address in the FROM field, not the company's info email address. Additionally, the body of the email would contain forwarding information from the company's info email to May's personal email account. This forwarding information is not present. Finally, because Cyntra Giboney's employer PCCL provided electronic copies of the email exchange, we can look at each emails' header to confirm that all correspondences with May used the email address **info@abilitycb.com** and not May's personal email account.

10.     Mr. Schrier asserts that the explanation for the presence of nearly identical emails from May and Lily is that on June 3, 2013 at 11:49 pm, within a 60-second time span, Giboney composed and sent separate emails to both May and Lily using the **info@abilitycb.com** email**,** with each email using a different salutation. Mr. Schrier then asserts that May and Lily, working independently of each other, sent similar replies to Giboney exactly 1 hour 54 minutes later at 1:43 pm, again within a 60-second time span, from separate email accounts, one account being the company's info account and one account being May's personal email account. Not only is the explanation implausible, it is directly refutable. PCCL has found no correspondences that include Lily and Giboney from this time period.

11.     I have also been asked to provide an expert opinion on the nature of Microsoft Word metadata as it related to PDFs generated by Microsoft Word.

12.     Microsoft Word embeds some basic, yet important, application metadata in each document created with its software. Metadata is typically defined as data about data. In this case, application metadata pertains to information stored by an application about a particular

document. This data can be used to understand the origin and history of a particular document file.

13. The Microsoft Word **Created Date** is immutable; it serves as a record of when a document was first created. As the document undergoes updates and edits, the **Modified Date** adjusts to reflect the time and date of these changes.

14. The **Author** field is automatically populated when a new document is created. This field typically reflects the user account that created the document on a specific computer. When Microsoft Office is installed on a computer, the installer may prompt for the name and initials of the software license holder. In other scenarios, the **Author** field may be populated based on the user's information pulled from Microsoft's Active Directory or from account details of an Office 365 or SharePoint account.

15. When a PDF file is generated from a Microsoft Word document by Microsoft Word or Microsoft's SharePoint service, the resulting PDF will embed author information as it appeared in the original Microsoft Word file.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __9th__ day of __June__ in __2023__.

__Kristian Larsen__ [Name]

# KRISTIAN LARS LARSEN - CV

**CONTACT**
Data Narro, LLC
320 E. Buffalo Street, Suite 605
Milwaukee, WI 53207

**M:** (262) 393-1713
**E:** lars@datanarro.com

## EXPERIENCE

**Data Narro, LLC • Milwaukee, Wisconsin**

*E-Discovery Director,* 7/2020 to Present
Currently responsible for managing and building Data Narro's E-Discovery technology and consulting services. Help firms evaluate, implement, and manage E-Discovery technology with the goal of reducing litigation costs, while increasing the efficiency and effectiveness of discovery.

Responsible for coordinating computer forensic investigations and providing electronic discovery and litigation support. Oversee document review and document review hosting services. Serve as audio, visual, and multimedia specialist for matters involving photo, video, or audio analysis.

*E-Discovery Consultant,* 7/2018 to 7/2020
Helped bring e-discovery services to Data Narro as a founding employee. Worked hands-on in complex litigation cases, assisting with the collection, analysis, review, and production of various file types for the purpose of litigation.

**True Process, Inc • Milwaukee, Wisconsin**

*Communications Director,* 1/2015 to 7/2018
Responsible for managing the communications for a company that specializes in solutions for the medical device industry. Developed and managed all internal and external marketing and communication efforts, including print, digital, social media, PR, video, and trade shows. Responsible for lead generation for the sales organization. Assisted product/service managers in developing their products. Directed all technical documentation and customer facing product literature. Wrote extensively about medical device integration technology for company blog and trade publications.

*Product Manager - ViNES,* 9/2013 to 1/2015
Responsible for all facets of product management for ViNES, a medical device integration platform, including marketing, communications, and product development. Managed the process of defining detailed technical requirements and functional specifications while guiding the product development team through agile development cycles.

Helped define target market segments for ViNES and positioned the product accordingly. Responsible for creating all product documentation and case studies. Helped spearhead initiative to bring agile software processes to the company and integrated it into our newly established quality management system (ISO 9001/13845) using TIR45 as a guide. Named as co-inventor on patent for ViNES.

# KRISTIAN LARS LARSEN - CV

*Manager of Product Design,* 12/2009 to 9/2013
Led a team of business analysts, writers, and UI/UX specialists responsible for all business analysis for our medical software teams, including defining detailed technical requirements and functional specifications, as well as visual design all information architecture, UI/UX design, and human factors engineering. Produced documentation and communication items for all products.

**Hobbs/Herder Advertising – Newport Beach, CA**

*Director of Digital Strategy,* 2/2005 to 12/2009
Supervised a staff of nine web developers that developed innovative marketing websites for real estate brokers and agents. Helped define creative design and technical standards, while implementing SEO, email marketing, and early social media marketing programs for both the company and its clients.

Led internal software engineering team on the development of an email marketing platform tailored to real estate brokers and agents. Developed new digital products for our customers, including video/web integration, IDX-enabled web applications, and automated email campaigns using technology developed in-house.

## EDUCATION

**2001**
University of Wisconsin - Milwaukee
*B.A., Philosophy*
*B.A., Art History*

**2013**
University of California - Berkeley
*Certificate of Business Analysis*
*(with distinction)*

## CERTIFICATIONS & TRAINING

**4/2022 - Certified Specialist in E-Discovery (CEDS)**
Association of Certified E-Discovery Specialists (ACEDS)

**2/2022 - eDiscovery Executive Certificate (eDEx)**
Association of Certified E-Discovery Specialists (ACEDS)

**10/2021 - DISCO Ediscovery Project Management**
DISCO

**9/2021 - DISCO Ediscovery Data Management**
DISCO

# KRISTIAN LARS LARSEN - CV

## CERTIFICATIONS & TRAINING (continued)

7/2021- DISCO Ediscovery Review Management,
DISCO Search & Review Certification
DISCO

12/2020 - iCONECT Analytics Reviewer,
iCONECT Power Reviewer,
iCONECT Project Manager
iCONECT

## SPEAKING ENGAGEMENTS

3/2023 - The P.I.'s Guide to Preserving & Collecting Evidence from Digital Devices, Professional Association of Wisconsin Licensed Investigators, Green Bay, WI

3/2023 - Best Practices for ESI Collection, Digital Forensics & e-Discovery (CLE), Law Firm - Von Briesen & Roper, Milwaukee, WI

9/2022 - New Frontiers in E-Discovery: The Astonishing Amount of Discoverable Data in the Cloud (CLE), Law Firm - OBV Law, Milwaukee, WI

4/2022 - The Paralegals Guide to Collecting Evidence from Digital Devices and the Cloud (CLE), Paralegal Association of Wisconsin, Online Webinar

3/2022 - New Frontiers in EDIscovery: The Astonishing Amount of Discoverable Data in the Cloud (CLE), Milwaukee Bar Association, Milwaukee WI

11/2021 - Manipulating Electronic Evidence: Stories from the Frontlines of Digital Forensics
Milwaukee Bar Association's Law and Technology Conference, Milwaukee, WI

## RECENT WRITING (See datanarro.com/blog for a complete list of articles)

- Employee Separation Issues: Did My Employee Take Sensitive Company Documents?
- As Digital Forensics Investigators, Can We Recover Deleted Text Messages?
- The 2023 Attorneys Guide to Digital Forensics (E-Book)
- The Challenges of EMOJIs in E-Discovery
- An ESI Source Checklist for Cloud Accounts
- The Astonishing Amount of Discoverable Data in the Cloud
- The Impact of SSDs on Digital Forensics
- Understanding Forensic Copies & Hash Functions