# Ex. FF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AMERIWAY CORP, | | 19-CV-09047 (VSB) |
| | Plaintiff | SHAYNE AFFIDAVIT IN OPPOSITION TO MOTION TO DISQUALIFY ATTORNEYS SHAYNE AND SCHRIER |
| v | | |
| MAY Y CHEN, ABILITY CUSTOMS BROKERS, INC. | | |
| | Defendants. | |

William C. Shayne, Esq. being duly sworn deposes and says:

I am an attorney licensed to practice in New York. I make this affidavit in opposition to

the motion by Plaintiff Ameriway Corp. ("Ameriway") to disqualify Defendants attorneys

Richard Schrier ("Schrier") and your affiant. I submit this affidavit under the penalties of

perjury. The basis of the statements made herein are my personal knowledge and the file

maintained in my office on behalf of the Defendant herein.

As this court may recall from the prior motions brought before it, Defendant May Yan

Chen D/B/A Ability Customs Brokers ("Chen,") is a licensed customs broker whose business

involves the clearance of customers' cargo through U.S. customs, advancing customs duties on

behalf of its customers based upon the declared value of the goods as represented by its

customers and the making of arrangements for various supply chain services such as trucking,

warehousing etc.

Plaintiff, Ameriway Corp ("Ameriway") is a logistics company in which its attorney

Xiyan Zhang ("Zhang") is the president, secretary and the major shareholder (Annexed as

Exhibit "C" is a copy of the Ameriway Shareholders Agreement. The Court's attention is

directed to Article 1 paragraph A(6)). In that capacity, Zhang was intimately involved in every

aspect of the underlying facts upon which this lawsuit is based. Attorney Pete Wolfgram

("Wolfgram"), while not a shareholder of Ameriway, upon information and belief is an officer of

Ameriway and was also intimately involved in key aspects of the underlying facts upon which

this lawsuit is based.

Zhang, formed Eagle Trading USA, LLC ("Eagle") on June 12, 2015 (see exhibit "A")

for the purposes of importing cargo from China into the United States for sale. Thereafter on

September 28, 2016 Zhang formed United E-Logistics Corp. and amended the name of the

corporation to Ameriway Corp. on February 11, 2017 (see Exhibit "C").

On or about April 11, 2017 Zhang, in his capacity as the COO of Eagle, executed a power

of attorney appointing "May Y Chen d/b/a Ability Customs Brokers'" as Eagle's representative

to import products into United States (a copy of the power of attorney is annexed as Exhibit "F").

Wolfgram, as Eagle's corporate counsel and as an "officer" of Eagle, verified Zhang's authority

to sign the Customs Power of Attorney (See Exhibit "F")

## A. CHEN'S SERVICES ON BEHALF OF EAGLE:

From the date of the issuance of the Power of Attorney (Exhibit "F") on April 11, 2017

until August, 2019 Chen cleared approximately 486 containers of cargo through customs in

which Eagle was identified as the Importer of Record ("IOR") of all the containers.

In all cases, both Zhang and Wolfgram, not as attorneys, but as businessmen were

intimately involved in the importation of the cargo that Defendant had cleared through customs.

Soon after the issuance of the Power of Attorney on April 11, 2017 Chen began

clearing containers on behalf of Eagle. Chen invoiced Eagle **and** Zhang for the customs broker

services rendered, disbursements related to supply chain services and the advance payment of

taxes in the form of customs duties.

Notwithstanding the fact that Eagle was the Importer of Record and responsible for providing all the information to Chen concerning the cargo being imported, which includes the value of the cargo that is reported to U.S. Customs for the purpose of calculating the proper import duty, Ameriway paid all of the invoices sent to Eagle and Zhang until payments stopped for containers that had cleared customs in March 2019 and thereafter. (In other words, payments continued through June 2019 for containers that had cleared customs through the beginning of March 2019, however no payments were made for any containers that cleared Customs from early March 2019 until Chen ceased performing services or advancing expenses and Customs duties in August 2019).

B. **CHEN EXERCISES HER LIEN RIGHTS:**

By August 2019 there were 131 unpaid invoices, each for a separate container in which Eagle was the Importer of Record ("IOR") and the outstanding balance owed to Chen was well over $300,000. (See Exhibit "G" for a summary of all unpaid invoices sent by Chen/Ability to Zhang and Eagle). In August 2019, Chen advised Zhang that she was going to cease clearing Eagle's containers through customs unless a substantial payment was made, which did not occur.

At that time there were five (5) containers of goods in which Eagle was the IOR that had cleared customs, but had not yet been delivered and were still under Chen's "control". Chen exercised her lien rights resulting from the contractual relationship between Eagle and Chen through the execution of the power of attorney Eagle signed with Chen on April 11, 2017 on the following containers of cargo:

| Container # | Customs Entry # | |
|---|---|---|
| BMOU4739454 | 9NK-0010492-5 | |

| | Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |
|---|---|---|
| APHU7253481 | 9NK-0010528-6<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |
| BMOU5390536 | 9NK-0010461-0<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |
| HLXU8057236 | 9NK-0010498-2<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |
| OOCU6964350 | 9NK-0010377-8<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC | |

In response, Zhang, on behalf of Ameriway, as an attorney, instituted the instant lawsuit in the USDC for the Southern District of New York notwithstanding the fact that Defendant's offices are in California and Plaintiff's offices are in Pennsylvania based upon the fact that the five (5) containers seized by Defendant cleared customs through the "Port of New York/New Jersey". However, notwithstanding the fact that Eagle was the documented Importer of Record

for all five (5) containers (as well as with respect to all other containers Chen performed customs broker services pursuant to the April 11, 2017 power of attorney (Exhibit "F")), this lawsuit was brought by Ameriway, **not on behalf of Eagle**, the Importer of Record, (*see* ECF 16 and 21). In the Second Amended Complaint, Ameriway is claiming that:

1st Cause:  Chen had converted the above five (5) containers and the cargo and Ameriway (not Eagle) was damaged as a result;

2nd Cause:  Chen had "tortiously interfered" with Ameriway's business relationships by reason of withholding delivery of the above five (5) containers;

3rd Cause:  Chen had engaged in unfair business practices as to Ameriway;

4th Cause: Chen had defamed Ameriway (related to the notification to customs of Eagle's failure to pay the customs duties);

5th and 8th Cause:  Chen had defrauded Ameriway;

6th Cause:  Chen had breached the fiduciary duty Chen allegedly owed to Ameriway;

7th Cause:  Chen had engaged in a scheme to defraud Ameriway and was responsible to Ameriway for treble damages under 18 U.S.C.S. § 1962(c) (2022) (RICO);

Defendant Chen retained your affiant and my law firm, the Shayne Law Group, P.C, after she was served with a complaint in this action.  My law firm is nationally known in the import/export and customs broker/freight forwarder business. Our main office is in Manhattan. After it was clear that the dispute between the parties could not be resolved on a business basis, I retained Schrier, as trial counsel to assist me in defending Chen in this lawsuit. Schrier's primary focus has been corporate litigations and corporate transactional law and I have worked with Schrier on litigated cases in the past with success. Schrier's main office is in Garden City, Long Island.

Initially, I assumed the responsibility for the exchange of literally tens of thousands of pages of documents between the parties, and selectively  forwarded documents to Schrier's

office. As discovery disputes began, specifically with regard to the Plaintiff's "reticence" in

providing documentation as to the basis that it had standing to bring this lawsuit, I asked Schrier

to become more involved.

## C. **PLAINTIFF'S CLAIMED BASIS TO DISQUALIFY SHAYNE & SCHRIER:**

The basis for Plaintiff's application to disqualify Schrier and me relates to the Terms and

Conditions of Service which provides that Chen has the right to exert a general lien over any

cargo in her possession to pay Chen for any outstanding obligations of Eagle. It has been and

still is Chen's position that Ameriway has no legal rights with regard to the five (5)

containers Chen is holding pursuant to her exercise of general lien rights pursuant to the

Power of Attorney and the terms and conditions.  Further, it is undisputed that all of the

customs brokers services, advances paid by Chen for "supply chain services", and advances

for customs' duties and taxes were incurred in connection with and in  furtherance of the

authority given to Chen by Eagle not Ameriway, where Eagle was the Importer of Record.

Despite Ameriway's complaint and allegations to the contrary, at no time was any action

taken by Chen on behalf of Ameriway.  Ameriway was not Chen's customer and never

signed a power of attorney authorizing Chen to act on Ameriway's behalf, nor was

Ameriway ever identified as the Importer of Record on any container that Chen performed

customs broker services.  By reason thereof, Ameriway does not have standing to bring this

lawsuit and has not incurred any damages for which Chen would be responsible to pay.

However, notwithstanding the foregoing, in an effort to support the motion to disqualify

Schrier and your affiant, Plaintiff has "woven" and cherry picked individual facts to develop a

"storyline" in which it now argues that Schrier and I intentionally attempted to perpetrate a

"fraud on the court" by fabricating Terms and Conditions of Service that contain a provision

granting Defendant general lien rights over any cargo in her possession.

Plaintiff **has claimed** that I "fabricated" a three (3) page Terms and Conditions of Service

(the "3-page terms and conditions") which contained a provision giving Defendant, Chen the

right to assert a General Lien against the five (5) containers of cargo being held by Chen and

thereafter, in violation of various cannons of ethics, represented to the Court that the "fabricated"

3-page terms and conditions were in force and effect during the period Chen provided services to

"Ameriway".  Plaintiff argues that because I allegedly fabricated the 3-page terms and conditions

and Schrier made representations to the Court that the 3-page terms and conditions were in force

and effect during the period Chen provided services to "Ameriway", both Schrier and I should be

disqualified from continuing to represent Chen in this case.

However, while Defendant agrees that the 3-page terms and conditions do not apply to

the facts in this case, a one (1) page Terms and Conditions of Service (the "1-page terms and

conditions") does apply and as will be demonstrated, the 1-page terms and conditions also

contains a provision giving Defendant, Chen the right to assert a General Lien against the five

(5) containers of cargo being held by Chen. Of note is the fact that the lien terms contained in the

1-page terms and conditions yield the same substantive lien rights as the 3-page terms and

conditions.

**D. <u>NEITHER SHAYNE NOR SCHRIER INTENTIONALLY MISLED THE COURT
(WHICH HONEST MISTAKE WAS CORRECTED WITHIN DAYS AFTER
DISCOVERY) AND MORE IMPORTANTLY BOTH VERSIONS OF THE
TERMS AND CONDITIONS PROVIDED FOR THE ASSERTION OF A
GENERAL LIEN</u>**

The reality is that there was merely a misunderstanding between Schrier's office and my office, and that, when realized, the mistake was quickly corrected by Schrier. Both the Court and Plaintiff's counsel were notified of the error. Further, the error was substantively irrelevant in that both "versions" of the Terms and Conditions of Service provided General Lien rights to Chen in the event of non-payment by Eagle and Zhang as the importers of record.

**THE ACCURATE** underlying facts regarding the terms and conditions of service are as follows:

Prior to Chen obtaining her customs brokers license, she was employed by a customs broker in California. When Chen started her own business, she made copies of the various forms that her former employer used in connection with his customs broker business which included the verbiage for both the Power of Attorney and the Terms and Conditions of Service with the only change being that she inserted her name as the customs broker in lieu of her prior employer. A copy of the terms and conditions that Chen utilized when she began her business in 2012 is attached as Exhibit "H". This is the 1-page terms and conditions Chen utilized during the period that included April 2017 to August 2019 when she was performing customs brokers services for Eagle pursuant to the Power of Attorney signed by Zhang and Wolfgram (Exhibit "F") and the form of the terms and conditions she utilized until she retained my office as her attorney after she was sued in this lawsuit.

Paragraph 13 of the 1-page terms and conditions applicable in this case provides:

"…13. General lien on any property. The company shall have a general lien on any and all (and documents relating there too) of the customer, in his possession, custody or control or on route, for all claims for charges, expenses or advances incurred by the company in connection with any shipments of a customer and such claim remains unsatisfied for thirty (30) days after demand for its payment is made, the company may sell at public auction or private sale upon ten (10) days written notice registered mail (R. R. R.) to the customer, the goods, wares, and/or merchandise, or so much thereof as may be necessary to satisfy such lien, and apply the net proceeds of such sale to the payment

of the amount due to the company. Any surplus from such sale shall be transmitted to the customer, and the customer shall be liable for any deficiency in the sale…"

To understand the context of the publication of the 3-page terms and conditions, it is essential to  understand my family history in international trade. The Shayne Family has been a fixture in the customs brokers industry for over 80 years. My father, Leonard Shayne was the Director of the American Association of Exporters & Importers from 1949-1999, was the president of the National Customs Brokers  and Forwarders Association of America from 1987-1999, and was on the Board of Governors of the New York Forwarders & Brokers Association form 1987-1999.  He was a nationally known figure for a half of century and routinely was called upon to testify before Congress on issues involving international trade.

Prior to law school I worked in my father's customs brokers/freight forwarders business and since graduating law school I have continued in my father's footsteps and have been specializing in Import/Export law for over 40 years.

I have taught Customs and International Trade Law around the country to import/export professionals as well as attorneys for Continuing Legal Credit, to trade associations and to brokers and freight forwarder associations. I  am the author and contributing author of several books on international trade and most recently I authored "Managing Import & Export Opportunities and Risks: An Insider's Guide for the Busy Executive" which is used by both Customs Brokers and Importers around the country. Over the years I have represented several customs brokers associations and I continue to represent customs brokers and freight forwarders throughout the United States and abroad.

As an attorney whose focus is on customs law, I keeps abreast of all rulings and changes that affect the import and export of products to and from the United States. As a service to my clients as well as to brokers generally (and as a marketing "tool"), I periodically update a Power

of Attorney and a version of Terms and Conditions of Service, and I recommend that all my broker/forwarder client use and replace from the versions that they had been using. In the regular course of my business, whenever I am retained by a new broker/forwarder client for any purpose, I provide the client with a copy of the most recently updated Terms and Conditions of Service and counsel them to publish the updated version on their website so as to put prospective clients of the broker/forwarder on advance notice. Since customs rulings and statutes are not confined to any one state but apply nationally, I represents clients at many ports of entry. In this case, Chen's business is based in California.

When Chen retained my office in connection with this lawsuit after she was served with the Summons and Complaint, I did what I always do with new clients, that is I provided Chen with a copy of the newest version of the Terms and Conditions of Service and advised her to publish it on her company website, which she did. A copy of the Terms and Conditions of Service provided to Chen after my office was retained in this lawsuit is attached as Exhibit "I".

Paragraph 14 of the 3-page terms and conditions given to Chen provides:

"...14. General Lien And Right To Sell Customer's Property
(a). Company shall have a general and continuing lien on any and all property of customer coming into companies actual or constructive possession or control for monies owed to company with regard to the shipment on which the lien is claimed, a prior shipment(s) and/or both;
(b) Company shall provide written notice to customer of it's intent to exercise such lien, the exact amount of monies due and owing, as well as any on-going storage or other charges; customer shall notify all parties having an interest in shipment(s) of Company's rights and/or the exercise of such lien.
(c). Unless, within 30 days of receiving notice of lien, customer posts cash or letter of credit at site, or, if the amount due is in dispute, an acceptable bond equal to 110% of the value of the total amount due, in favor of Company, guaranteeing payment of the monies owed, plus all storage charges accrued or to be accrued, Company shall have the right to sell such shipment(s) at public or private sale or auction and any net proceeds remaining thereafter shall be refunded to customer..."

Schrier, who specializes in corporate litigation, was retained by my office as trial counsel to defend Chen in this litigation with my assistance. Although the issue of Chen's right to exert a

general lien over the five (5) containers was contemplated by both of Schrier and I, I now know that Schrier was initially unaware of my practice of supplying new clients with Terms and Conditions of Service that I periodically updated.

During the course of obtaining literally tens of thousands of pages of documents in this case, I would send selective documents to Schrier's office. One of the documents that was sent, among the thousands sent to Schrier was the 3-page terms and conditions that I had provided to Chen after I was retained. When disputes arose between the parties regarding the production of documents, Schrier took the lead to respond to those disputes.

We now know that Schrier, mistakenly produced the 3-page terms and conditions in a letter to Magistrate Judge Freeman on November 1, 2021 (See ECF 74) believing it to be the terms and conditions referred to in the April 11, 2017 power of attorney (Exhibit "F") (which it was not). Thereafter, in the Notice to Admit served by Defendant on December 14, 2021 again Schrier attached the 3-page terms and conditions rather than the 1-page terms and conditions.

In Defendant's Motion to Reargue the dismissal of the Third-Party action on February 1, 2022 (ECF 83-9) and in the Chen Affidavit dated March 7, 2022, Schrier again mistakenly produced the 3-page terms and conditions instead of the applicable 1-page terms and conditions.

Apparently Plaintiff's counsel "picked up" on this mistake, knowing that the 3-page terms and conditions was not provided to Eagle and Zhang when Chen was first retained pursuant to the power of attorney in April 2017 (Exhibit "F"), Plaintiff began demanding "native files" for a litany of documents in its discovery demands. In retrospect and based upon this motion, Plaintiff was specifically seeking the "native files" for the 3-page terms and conditions to prove that the 3-page terms and conditions was a "fabrication" and thereby give credence to its position that

Plaintiff never received a copy of either terms and conditions of service, which in turn would

support its position that the five (5) containers of cargo are not subject to a general lien by

Defendant, Chen.

For further context, the Power of Attorney signed by Attorneys Zhang and Wolfgram

(Exhibit "F") specifically stated that Zhang "…acknowledges receipt of May Y Chen DBA

Ability Customs Brokers' Terms and Conditions of Service governing all transactions between

the parties…".  Therefore, even if Plaintiff can establish that it (or Eagle) never received a copy

of terms and conditions of service that contains a general lien provision, while Chen might have

"specific lien" rights to the cargo being held, that amount owed is but a fraction of the full

outstanding balance of now over $400,000 owed to Chen, which she could recover if she also

had general lien rights.  However, except when there is an ongoing course of conduct, general

lien rights are generally obtained via contractual agreement between the parties. *See In re CFLC,*

*Inc.,* 209 B.R. 508, 515–16 (B.A.P. 9th Cir. 1997), aff'd, 166 F.3d 1012 (9th Cir. 1999); 14 Am.

Jur. 2d, *Carriers* § 498, at 962 (2d ed.1964)).

Proving that the 3-page terms and conditions was a recent fabrication would give credence

to Plaintiff's argument that Plaintiff never received any terms and conditions of service.

However, in answering Ameriway's Third set of Requests for the Production of

Documents and Second Set of Interrogatories on Wednesday, April 28, 2022 in which Plaintiff

sought "native files" specifically for the 3-page terms and conditions of service, Schrier

questioned me about the "native files" for the terms and conditions. When I reviewed the

documents that Plaintiff was inquiring about, I realized that we had been using the wrong version

of the terms and conditions.

On April 28, 2022, in preparing Defendants responses to Plaintiff's 2nd set of Interrogatories and 3rd Request of Documents the original answers as prepared were changed to reflect that the 3-page terms and conditions were not the operative terms and conditions. Annexed as Exhibit "J" is a copy of the Wednesday, April 28, 2022 email from Schrier to Zhang and Wolfgram attaching copies of Defendants responses to Plaintiff's 2nd set of Interrogatories and 3rd Request of Documents.

Thereafter, it was agreed that Schrier would draft a formal notice to Plaintiff advising Plaintiff of the error, and provide a copy of the 1-page terms and condition, However on Tuesday, May 3, 2022 Wolfgram sent Schrier an email in which he charged that "...Attorney William Shayne, created native files related to the 'Terms and Conditions of Service' document...during litigation, or in advance thereof—specifically that he formatted the footers, inserted the California Jurisdictional Clause and Chen's company name into the preexisting Terms and Conditions of Service Form..." . Attached as Exhibit "K" is a series of emails between counsel for Defendant and Plaintiff concerning Defendant's objections to some of Plaintiff's demands leading to the May 3, 2022 email described above.

This, of course was a serious charge and on Friday, May 6, 2022, Schrier sent a letter via email to Wolfgram (which letter was misdated February 6, 2022), in which Schrier clarified that the terms and conditions the defendant utilized at the time she performed customs broker services for Eagle during the period 2017 through 2019 was a version that was issued in 1994 based upon terms and conditions issued by the National Customs Brokers and Forwarders Association of America Inc. and which was a version of the terms and conditions that have been utilized by Defendant's prior employer. Attached as exhibit "L" is a copy of the May 6, 2020 email from Schrier to Wolfgram and Zhang, with a copy of the power of attorney and both the 1-

page terms and conditions of that was utilized by defendant prior to the institution of the lawsuit and applicable to the issues in this case and a copy of the 3-page terms and conditions prepared by me and provided to defendant after I was retained in connection with this lawsuit.

Thereafter, on May 9, 2022 Schrier sent a letter to Magistrate Judge Valerie Figueredo in which he disclosed to the Court that I had prepared and provided updated terms and conditions to the Defendant after the lawsuit was instituted and therefore that version was not relevant to the issues in this case (see ECF 114, 114–4 and 114-5 which is also annexed as exhibit "M"). That same letter to Judge Figueredo was copied to Judge Broderick on May 17, 2022 at ECF 119–4.

Notwithstanding all the foregoing, Plaintiff continued to argue that it never received a copy of the terms and conditions and persisted on arguing that Defendant had a "nefarious" plan to defraud and mislead the Plaintiff and this Court regarding the very existence of the terms and conditions that were in effect when the Defendant was performing customs broker services on behalf of Eagle (See ECF 115 and 118).

As a result, in advance of the scheduled conference on May 19, 2022, Schrier filed a letter on May 18, 2022 (ECF 121) in which he provided a detailed explanation as to the circumstances in which Shayne provided the 3-page Terms and Conditions of Service to Defendant **AFTER THE LAWSUIT WAS STARTED** and that the 3-page version of the terms and conditions produced and provided to Defendant by me post filing of this action was not being claimed to apply to the issues in this case. However, it was also pointed out that the critical provision of both versions of the terms and conditions of service was the provision that gave Defendant the right to assert a "General Lien" on any cargo in her possession to satisfy all outstanding money that was due her. Annexed as Exhibit "N" is a copy of Schrier's May 18, 2022 letter to Judge Figueredo (ECF 121).

At the ensuing conference with Judge Figueredo, although Defendant, relying on the privilege provided for in 19 C.F.R. § 111.24 (2022), objected to disclosing the identity of her clients that received copies of the terms and conditions, the Court was advised that Defendant had been seeking permission from her clients to waive the privilege so she could disclose their identity and additionally was seeking to locate documentation that would further prove that copies of the terms and conditions were provided to defendants clients in the regular course of her business. Defendant was directed to provide the identity of any client that would agree to waive the 19 C.F.R. § 111.24 (2022) confidentiality privilege.

On June 10, 2022, I sent a letter to the Magistrate Judge (ECF 138) in which copies of a Supplemental Response to Ameriway's Third Set of Request for Documents was produced which included copies of fax cover sheets and confirmations that copies of the terms and conditions were sent to various clients (whose names were redacted pursuant to 19 C.F.R. § 111.24 (2022)). Additionally affidavits from four (4) of Defendants clients were produced verifying receipt of copies of the terms and conditions applicable in this case. A copy of The June 10, 2022 letter, and attachments are annexed as Exhibit "O").

Thereafter on June 16, 2022 a Supplemental Response to Ameriway's Third Set of Request for Production of Documents was served with an additional affidavit of a client of Defendant further verifying receipt of a copy of the Terms and Conditions of Service by Defendant. A copy of said Supplemental Response is attached as Exhibit "P".

It is respectfully submitted that nothing "nefarious" has been perpetrated by either the Defendant or Defendant's counsel. Yes, Defendant's counsel, attorney Schrier produced the 3-page Terms and Conditions in November 2021 wrongfully believing those were the Terms and Conditions that applied in this case. However, as demonstrated hereinabove, when the mistake

was identified via the Tuesday, May 3, 2022 email from Plaintiff's attorney, Wolfgram (Exhibit "J"), that Friday (3 days later) Plaintiff's counsel was made aware of the existence of the two different versions of the terms and conditions and that the three page terms and conditions prepared by me (Exhibit "L"). The Court was also notified the following Monday, May 9, 2022 (ECF 114 and Exhibit "M"). In both instances it was made clear that the 3-page terms and conditions provided to Defendant after the lawsuit was instituted did not apply to the issues in this case and was provided to Defendant in the normal course of my business with customs brokers clients as described above.

I categorically and in no uncertain terms deny that I was part of any scheme to defraud this Court or that there was any intent to deceive the Plaintiff. Clearly mistakes were made in connection with the production of the 3-page terms and condition as the effective terms and condition applicable in this case. However, once the mistake was identified, it was corrected both with the Plaintiff and the Court.

Further, not by way of excuse but as an observation, both the 3-page terms and conditions and the 1-page terms and conditions which was in place and applicable in 2017-2019 had clear provisions that gave Defendant, Chen the right to assert a general lien against the cargo in the five (5) containers. It is respectfully submitted that that fact alone give credence to the fact that the production of the 3-page terms and conditions was nothing more than an mere mistake by trial counsel and that there has been no prejudice to the plaintiff and further that the innocent mistake in producing the 3-page terms and conditions were substantively the same with respect to the imposition of a general lien, which is the key issue in this case.

Wherefore, it is respectfully requested that this Court deny Plaintiff's application to disqualify both Schrier and me and for such other and further relief as to this Court may seem just and proper.

William C, Shayne

Sworn to before me this

7th day of July, 2022

Notary Public
Notary Public, State of New York
No.30-2145065
Qualified in Nassau County
Commission Expires July 30, 2023