UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AMERIWAY CORPORATION<br><br>                     Plaintiff,<br><br>    -against-<br><br>MAY YAN CHEN, and<br><br>ABILITY CUSTOMS, INC.<br><br>                  Defendants | : : : : : : : : : : : | 19 -cv-09407 (VSB)<br><br>**AFFIDAVIT OF MAY YAN CHEN IN OPPOSITION TO SECOND MOTION FOR DEFAULT JUDGMENT, DISMISSAL AND ATTORNEYS FEES FOR FRAUD ON THE COURT** |

May Yan Chen, being duly sworn deposes and says:

I am a Defendant in the above referred case and make this affidavit in opposition to the motion by Plaintiff, Ameriway Corporation ("Ameriway") seeking a default judgment, the dismissal of my counter claims and seeking attorney's fees for the alleged fraud on the court. This affidavit is based upon my personal knowledge as well as the filed record in this case and the exhibits submitted in support of this application.

Before getting into the specifics of Plaintiff's allegations, I categorically, and emphatically as possible deny ever fabricating or altering any document that has been presented to the court or to my attorneys, nor have I asked any other person to do so on my behalf nor do I have any knowledge that any fabricated document has been presented to this Court.

To substantively oppose Plaintiff's motion, this affidavit in opposition is being broken down into the following categories:

1. My background as a customs broker;

2. My business practices since I began my business in 2011;

1

3. My relationship with the Plaintiff, Ameriway, its affiliated company Eagle Trading USA, LLC ("Eagle") and Xiyan Zhang ("Zhang,") [Plaintiff's attorney, who is also an officer, director, and shareholder of Plaintiff and a witness to events in this case, and upon information and belief, a principal of Eagle as well]; and

4. The Terms and Conditions Issue;

5. Documentation contradicting, Plaintiffs fraud allegations; and

6. The substantive Issues in this case

## Professional Background of May Y Chen:

I became a licensed custom broker on June 15, 2011. I was issued license number 28573. A copy of my customs broker license is attached hereto as Exhibit "R".

Prior to becoming a licensed customs broker, I was employed by a licensed custom brokerage company, where I learned the business of being a custom broker. I began operating my business as a proprietorship in July 2011, with the trade name, Ability Customs Brokers, which is how I have continued to operate through the present time. At one time I formed the corporation, Ability Customs Brokers, Inc., however I have never operated my business in the corporate form.

## My business practices:

When I first started working in the customs broker field, and during the first few years after I started my business, I routinely attended various industry programs, seminars, and trade meetings. At those meetings, I had the opportunity to talk to Customs officials, and more importantly other brokers and freight forwarders to understand what they were doing to improve their services, what issues of concerns they had, and the type of notices that they were providing to their clients.

While working at my job before starting my own business, US Customs and Border Protection ("CBP" or "Customs") instituted a rule that we called "10 + 2" (which was formerly titled "Importer Security Filing and Additional Carrier Requirements"), which came into effect on January 26, 2009. The rule required a filing for certain type of cargo no later than 24 hours before arrival. The rule had monetary penalty provisions for non-compliance, the ability of customs to increase inspections and delay in the release of cargo. The filings themselves were called "Importer Security Filings" which we called "ISF". The purpose of the rule was to prevent smuggling and ensure cargo safety and security post 9-11.

Before the rule came into effect, there was so much opposition from the business community that customs instituted what known as the "flexible enforcement period", which was scheduled to end on January 26, 2010. However, because of opposition from the business community, the "flexible enforcement period" was "unofficially" delayed and as a practical matter was not enforced.

Attached hereto as Exhibit "S" is a copy of the August 2009 bulletin published by the U.S. Customs and Border Protection titled "Importer Security Filing and Additional Carrier Requirements" which confirms that the 10 + 2 rule went into effect on January 26, 2009, and that Customs announced in August 2009 that there was going to be a "flexible enforcement period" [which effectively meant that the rule was not going to be enforced].

When I first started my business in July 2011, I routinely contacted many freight forwarders, ocean carriers, customs brokers, and warehouses in the hope they could refer business to my office. It was during those many conversations with freight forwarders, ocean carriers, customs brokers, warehouses and even Customs Officers that I learned that there was "political pressure" to start enforcing the Import Security Filing (ISF) enforcement.

In late 2012 I attended a few "trade" holiday season dinners in which guest speakers included Customs officers, ocean carriers' personnel and other import/trade related speakers who addressed the issue of the ISF penalty enforcement. It was at one of those meetings that we were told that the "unofficial flexible enforcement" period was going to end and it was my understanding that the expectation was that the "target date" for enforcement by Customs was going to start as of July 9, 2013, which enforcement included a $5,000 fine for each violation for failing to timely file the required documents and further that the formal announcement would be made soon after the new year.

Two (2) of the articles attached to Plaintiff's moving papers that were published in early January 2013 at ECF Document 169-2 at pages 7-9 of 20 and pages 17-18 of 20 (which are attached hereto as Exhibit "AA" and "BB") further support that understanding. In both articles it is reported that "…The final rule on the Importer Security Filing (ISF) is due to come into effect February, 2013…" (Ex "AA") and "…According to a Broker Power article on CBP's regulatory Agenda, the Final Rule on ISF is expected in February of 2013…" (Exhibit "BB").

I, as a customs broker, had the authority, under the ISF rule, to perform the filing on behalf of the importers, for which I could charge my clients a fee. I saw this as a way to both help my clients and generate income for my business. As a result, after hearing about the July 9, 2013 "target date" to enforce the ISF rule, I routinely placed a subscript on my company emails which included a warning of the ISF penalty enforcement.

Plaintiff has argued that the notice of the enforcement of the ISF filing was not even known until a June 7, 2013 when formal notice was issued by Customs. Plaintiff has argued that one of the documents I had submitted to substantiate the fact that I routinely provided a copy of the terms and conditions of the Power of Attorney was a January 2013 email that contained a

"subscript" of the notice that as of July 9, 2013 Customs was going to begin penalty enforcement of the ISF $5,000 per violation penalty and the since the formal notice of the enforcement was not until June 7, 2013, Plaintiff therefore Plaintiff has concluded that I fabricated the January 2013 email and has made this motion based upon that erroneous conclusion.

It is respectfully submitted that Plaintiff's allegations that we, in the import industry, did not know of the ISF filing requirement until June 2013 is absurd. The articles at Exhibits "AA" and "BB" (which are also produced by Plaintiff at ECF 192-2) is a further indication that the publication of the "target enforcement date" was delayed for reasons likely only known "internally" in Customs. As a practical matter, the government (and particularly Customs) does not act quickly on anything in my experience.

As will be substantiated hereinbelow, there is independent evidence that I arranged for the ISF enforcement notice on my company emails starting at the end of 2012 that would automatically appear as a "subscript" on each email (in the same manner as an automatic placement of a company logo), which was essentially a means of marketing my business.

## My relationship with Ameriway, Eagle and Zhang:

In the normal course of business as a custom broker, to perform work on behalf of a customer, Customs Rules require that I be retained via the execution of a Power of Attorney. With regard to the cargo, which is the subject matter of the pending action, Zhang, as COO of Eagle Trading LLC executed the Power of Attorney with me on April 11, 2017 that evidences my relationship with and authority to transact customs business on behalf of Eagle. Annexed as Exhibit "T" is a copy of the Power of Attorney (hereinafter the "POA") executed by Zhang and certified by Pete Wolfgram as counsel for Eagle. As noted above, Zhang is the Attorney for Plaintiff, herein along with his co-counsel Peter Wolfram, as well as an officer director and

5

major shareholder of Plaintiff, Ameriway. At the time, the POA was signed by Zhang/Eagle, in the normal course of our business we send a copy of the terms and conditions to new customers.

In the normal course of my business, my staff and I perform services including filing the proper paperwork with the U.S. Customs and Border Protection Agency (hereinafter "Customs"), for which we charge a fee. Additionally, we made arrangements on behalf of our clients for other "supply chain" services such as cartage services, terminal fees, storage fees, carrier detention fees, demurrage fees to the ship owner, chassis rental fees, and fees for cargo examinations demanded by Customs, for which we charge fees which include our out-of-pocket costs and fees for making the arrangement for the "supply chain" services. Additionally, we often advance the customs duties on our customers cargo and invoice them for reimbursement of those fees we advance as well.

Each of the entries at issue in this case were made by me under my individual license as a Customs Broker for Eagle Trading LLC, **NOT FOR AMERIWAY** pursuant to the POA **WITH EAGLE**. With respect to all of the entries which I made, Eagle Trading LLC was identified as the purchaser on the Commercial Invoices and Consignee on the Bills of Lading. On all paperwork connected to the services we provided, Eagle was identified as the Importer of Record ("IOR").

After the Power of Attorney was signed, I was advised by Zhang that not only was Zhang an officer and member (owner) of Eagle but also a shareholder and officer of Ameriway and that Ameriway, in its capacity as a "logistics" company would be paying all invoices submitted for services rendered on behalf of Eagle. Notwithstanding the foregoing, Eagle would be the party that was actually importing all the cargo I would be clearing through customs.

From April 2017 through February 2019 my company cleared literally hundreds of containers of cargo in which Eagle was the IOR and in each case invoices were sent to Eagle and Ameriway, that was owned and controlled by Zhang, issued payment, usually within 60 to 90 days after issuance of the invoice.

In June 2019 payments for services on invoices sent became more protracted. By July 2019, all payments ceased. Initially, we continued performing services and tried to "cajole" the payment of outstanding invoices to no avail. By August 2019 we realized that no payments had been made for any containers in which invoices had been sent out from March 2019.

As of mid-August, 2019 Eagle/Zhang owed me almost $500,000 which included unreimbursed customs duties I advanced, unreimbursed expenses I advanced (which included advanced warehouse fees, trucking fees, etc.) as well as fees for services I rendered on Eagle's behalf.

At that time there were five (5) containers that had cleared customs but had not yet been delivered per Eagle's instructions. It is my understanding that as a matter of law I had the right to exercise a "specific lien" on the goods in transit that were still under my control for monies that were owed relating to those specific goods.

However, more importantly, the terms and conditions to the POA specifically provided for a "general lien" on the goods in transit for all the monies I was/am owed.

The five (5) containers at issue that I exercised my lien rights are as follows:

| Container # | Customs Entry # |
|---|---|
| BMOU4739454 | 9NK-0010492-5<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC |

| | Bill of Lading Consignee: Eagle Trading LLC |
|---|---|
| APHU7253481 | 9NK-0010528-6<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC |
| BMOU5390536 | 9NK-0010461-0<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC |
| HLXU8057236 | 9NK-0010498-2<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC |
| OOCU6964350 | 9NK-0010377-8<br><br>Importer of Record: Eagle Trading LLC<br><br>Invoice Purchaser: Eagle Trading LLC<br><br>Bill of Lading Consignee: Eagle Trading LLC |

Notwithstanding the fact that Ameriway was never my client, nor did I ever have the authority to act on its behalf, nor was Ameriway ever invoiced for any services rendered, or disbursements or customs duties advanced, Ameriway brought this action claiming that it has the right of "possession" of the cargo in the five (5) containers. My position is that Ameriway has no right to possession of the cargo in that it was not the "importer or record" (in all cases

the IOR was Eagle) nor was Ameriway the "owner" or the "purchaser" of any of the cargo (which was verified upon a discovery and inspection of all the cargo during discovery).

Notwithstanding Ameriway's claim to possession of the cargo, Zhang does not deny that he signed the POA as the COO of Eagle but he claims that he never received a copy of the terms and conditions referenced in the POA and upon which I claim I have a right to the general lien on the cargo I am holding (the difference is whether I am entitled to receive approximately $60,000 based upon my "specific lien" rights or over $500,000 based upon my "general lien" rights as provided for under the written terms and conditions).

Zhang, in executing the POA as COO and on behalf of Eagle Trading USA, LLC, in 2017 acknowledge receipt of the terms and conditions, which was countersigned by Plaintiff's co-counsel, Pete Wolfgram, as attorney for Eagle (See: Exhibit "T").  It was not until this lawsuit when I exercised my lien rights over the five (5) containers of cargo did anyone on behalf of Eagle ever object to the terms and conditions nor did anyone ever notify me or my staff that Eagle/Zhang/Wolfgram had never received a copy of the terms and conditions.

There is no dispute that the POA contains the following language:

> **"Grantor acknowledges receipt of May Y Chen DBA Ability Customs Brokers' Terms and Conditions of Service between the parties.  If the Grantor is a Limited Liability Company, the signatory certifies that he/she has full authority to execute this power on behalf of the Grantor."**

See Exhibit "T" annexed hereto.

## The Terms and Conditions Issue:

Notwithstanding the foregoing admission in the POA, Zhang claims he never received a copy of the terms and conditions and during discovery asked for a copy.  Unfortunately, a

mistake was made by my counsel and me in responding to that discovery demand, which has led to a series of "collateral" arguments made by Plaintiff including the present motion.

The mistake started with the copy of the terms and conditions initially produced in discovery.

By way of background, my business is located in California however I clear cargo that arrives in ports throughout the United States, in this instance, the five (5) containers cleared through the port of New York. When this action was instituted in New York I sought an attorney who practiced import/export law in New York. I was referred to William Shayne, who is a nationally known attorney in the import/export field for over 40 years.

After being served in this case, I retained Mr. Shayne who informed me that Richard Schrier, is the litigator who would be assigned to my case, but that he would work hand in hand with Mr. Schrier. Mr. Shayne also told me that as a matter of course, every time he is retained by a new customs broker client, he reviews our practices and he updates our terms and conditions to comply with the latest customs rulings. I had been using the same terms and conditions since I started in business in 2011 (which were the same terms and conditions that was used by my employer before I was a licensed customs broker).

Mr. Shayne provided the updated Power of Attorney and terms and conditions and recommended that I publish our terms and conditions on our website. As a result, I updated the terms and conditions and published the "newer" version of the terms and conditions on my website. Of note is that the terms and conditions that I used since 2011 (which is a one (1) page version) and the revised terms and conditions (which is a three (3) page version) both specifically provide for the right to exercise a "general lien" over cargo that would allow me to be paid all monies owed. Annexed as Exhibit " U" is a copy of the terms and

conditions that I had been using since 2011 and Exhibit "V" is a copy of the revised terms and conditions that Mr. Shayne prepared and provided to me in 2019 when he was retained and which has since been published on my website since 2019.

When Plaintiff requested a copy of the terms and conditions in discovery, not realizing that I had updated the terms and conditions, Mr. Schrier mistakenly produced the revised copy that Mr. Shayne had forwarded to me (See ECF docket # 74 and 83-9).

Apparently, realizing that the "version" that was produced was not the one (1) page version that was provided to Eagle when we were retained, Plaintiff charged me and my counsel with perpetrating a fraud on the Court for producing a copy of the Terms and Conditions that was not being used in 2017 when the POA was signed by Zhang on behalf of Eagle. When the mistake was realized, Mr. Schrier immediately notified both Plaintiff's attorney and the magistrate judge of the error and provided a copy of the terms and conditions that I utilized in 2017 when Eagle/Zhang signed the power of attorney ( see: ECF 114, 114-4 and 114-5). The error was also brought to the attention of this Court (see ECF 119-4).

Notwithstanding the honest mistake made by my counsel, Ameriway has continued to argue that I had a "nefarious" plan to defraud and mislead this Court. Based thereon, Plaintiff made a motion for sanctions and has again argued in this motion that there is a pattern of efforts to produce doctored documents in this case. NOTHING CAN BE FURTHER THAN THE TRUTH.

With regard to the applicable Terms and Conditions, In response, Mr. Schrier fully spelled out the honest error and the fact that as soon as the mistake was realized the error was corrected. Furthermore, and more importantly, it was pointed out that the "error" in

producing the updated Terms and Conditions was of no substantive consequence since both the original version and the updated version of the Terms and Conditions specifically provided for my right to assert a "general lien" over the cargo that was being held. (ECF 148). That being the case, notwithstanding Plaintiff's "outrage" that the incorrect version of the Terms and Conditions was originally produced, Plaintiff has not disclosed in what way would the Plaintiff's rights have been prejudiced in that the right to a "General Lien" is provided for in both the original version of the Terms and Conditions and in the updated version. Simply stated, there was no prejudice to the Plaintiff. The mistake was corrected immediately when we discovered the error during document discovery. Upon discovery of the error in producing the incorrect version of the Terms and Conditions, the error was immediately disclosed to the Court and to Plaintiff and before depositions were held.

## Documentation contradicting, Plaintiffs fraud allegations;

When Plaintiff realized that, as a practical matter, there was nothing to "gain" by attacking the "incorrect" version of the terms and conditions, Plaintiff continued to argue that they had never received a copy of any terms and conditions (notwithstanding the clear acknowledgement in the POA signed by both Zhang and Wolfgram acknowledging receipt of the terms and conditions (see Exhibit "T" ). My counsel advised the Magistrate Judge that in the regular course of our business prior to placing the terms and conditions on my website, depending upon the circumstances with the client, we would email or fax a copy of the terms and conditions to the new client.

In an attempt to work out the issue, the Magistrate Judge directed Defendant to produce some proof that other clients were sent copies of the terms and conditions in the regular course of our business. In response, I obtained affidavits from a number of my clients

confirming that they had received a copy of the terms and conditions when they first signed the power of attorney with me. However, with the goal of obtaining the "clearest" evidence of our practice of sending copies of the terms and conditions to our clients, it was decided to see if we could locate copies of any electronic transmissions to other clients of the terms and conditions. However, in my case that was not as easy as it sounds.

As a Customs Broker I am required by sections 111.23(b) and part 163 of the Customs Regulations to maintain certain records for a period of five years (19 CFR 111.23(b), and 19 CFR part 163).

Pursuant to 19 CFR § 111.23 (b) the period of retention is "[t]he records described in this section, other than powers of attorney, must be retained for at least 5 years after the date of entry."

Pursuant to 19 CFR Part 163(1)(a)

The term "records" means any information made or normally kept in the ordinary course of business that pertains to any activity listed in paragraph (a)(2) of this section. The term includes any information required for the entry of merchandise (the (a)(1)(A) list) and other information pertaining to, or from which is derived, any information element set forth in a collection of information required by the Tariff Act of 1930, as amended, in connection with any activity listed in paragraph (a)(2) of this section….

Consistent with 19 CFR § 111.23 (b), the retention period identified in 19 CFR 163.4(a) limits the period of retention to five years.

19 CFR 163.4(a) Record Retention Period

"Except as otherwise provided in paragraph (b) of this section, any record required to be made, kept, and rendered for examination and inspection by Customs under § 163.2 or any other provision of this chapter shall be kept for 5 years from the date of entry, if the record relates to an entry, or 5 years from the date of the activity which required creation of the record."

As required, I maintain all entry-related documents set forth in the "(a)(1)(A) list". However, when the transaction in a file is complete, we reduce the size of the file which we maintain in storage for the required 5 years by removing documents that are not required to be maintained by Customs. That would include virtually all email correspondence. The remaining documents I maintain in physical files in a storage facility in accordance with the Customs Regulations in the ordinary course of business. As a practical matter, even though I am not required to maintain files for more than 5 years, I do have files still in storage that go back 10 years or more.

After going through dozens and dozens of boxes of old files, we were able to locate a handful of emails in which copies of our Terms and Conditions were sent to various clients. One of those emails was dated in January 2013. In all those emails there was a "postscript" that read as follows:

"…**Important!!!**

U.S Customs and Boarder Protection will commence full ISF enforcement on <u>July 9, 2013</u> and will issue liquidated damages against the importer for non-compliance. The importer Security Filing must be electronically filed with CBP no later than 24 hours prior to the departure of the vessel and it is the importer's responsibility to ensure that it is done. Liquidated damages assessed will be <u>$5,000</u> per violation so please contact broker to make sure that you supply the information in advance or make arrangements to have it filed…"

In this second round of charging me with fabricating documents (which is the subject of this latest motion), Plaintiff located the CBP announcement of June 7, 2013 that was the "formal notice" that starting July 9, 2013 the ISF penalty was going to be enforced. Based thereon Plaintiff has interpreted that to mean that the emails transmitting a copy of the terms and conditions of service that predated the June 7, 2013 notice that contained the subscript notice of the July 9, 2013 must have been "fabricated" and by producing those emails I must "logically" have fabricated the document and therefore must be committing a fraud on the Court.

I have explained hereinabove the circumstances in which I added the ISF penalty notice and the circumstances as to the timing of the placement of the post-script warning. However, to counter Plaintiff's "strained logic", I have taken exhaustive steps to locate other emails between December 2012 through June 2013 unrelated to the issues of the terms and conditions which contain the subscript notice of the impending enforcement of the ISF penalty beginning on July 9, 2013.

Unfortunately, I did not maintain my own email server and therefore did not retain my own emails internally. Instead I used NameCheap, a third-party email provider. In preparation of this affidavit my office contacted NameCheap to determine their ability to retrieve emails from 2013. Unfortunately, NameCheap did not retain my emails from 10 years ago (see emails from NameCheap that follow)

**From:** philchn@aol.com,
   **To:** pesupport@namecheap.com,
**Subject:** Re: [#LRM-543-59883]: Retrieve old email
   **Date:** Wed, May 24, 2023 3:03 pm

The email is info@abilitycb.com.

Best Regards,

Philc
philchn@aol.com


-----Original Message-----
From: Namecheap Private Email Team <pesupport@namecheap.com>
To: philchn@aol.com
Cc: bobo8262003@yahoo.com
Sent: Wed, May 24, 2023 2:57 pm
Subject: [#LRM-543-59883]: Retrieve old email

Hello,

Thank you for contacting our Namecheap Support Team!

Your account ownership was verified successfully.

Please specify the email address from which you deleted the emails.

We are looking forward to hearing from you.

------------------------
Regards,
Karina Tkachenko
Private Email Customer Support
Namecheap, Inc.

Ticket Details

Ticket ID: LRM-543-59883
Department: Private Email
Type: Issue
Status: Awaiting Client Response
Priority: High

From: pesupport@namecheap.com,
   To: philchn@aol.com,
   Cc: bobo8262003@yahoo.com,
Subject: [#LRM-543-59883]: Retrieve old email
   Date: Thu, May 25, 2023 5:49 am

Hello,

Thank you for your reply.

Unfortunately, there is no back-up for deleted emails in 2013.

Please let us know if we can be of any further assistance.

We are looking forward to hearing from you.

Best Regards,
Mariia Sinchura
Private Email Customer Support.
Namecheap, Inc.

Ticket Details

Ticket ID: LRM-543-59883
Department: Private Email
Type: Issue
Status: Awaiting Client Response
Priority: High

As a result, I directed my staff to look through my archived boxes of files for any emails that predated the June 7, 2013 notice of the enforcement of the ISF penalty. Attached hereto as Exhibits "A" through "Q" are copies of emails between customers and me and my office with the subscript notice of the July 9, 2013 ISF penalty enforcement. The names of the clients and their contact information are redacted in compliance with 19 CFR 111.24 however, an unredacted copy of exhibits "A" through "Q" is being delivered to the Court. In most cases the emails are

actually a "string" of emails in which my email with the subscript notice is followed by an email from the corresponding client (which means that the subscript existed prior to the response).

In addition to the hard copies of Exhibits "A" through "Q" that we located in my archived files, I contacted a trucking company I have been doing business with since prior to 2013 and asked them if they had access to emails from me during the period December 2012 through May 2013. I received the following responses:

Annexed as Exhibit "W" is a letter from Larry Trucking Corp. with copies of emails from my office which were located from their files dated January 8, 2013, January 9, 2013, and January 24, 2013, all of which had the postscript notice of the July 9,2013 enforcement of the ISF penalty;

Annexed as Exhibit "X" is a letter from Warren Kuang who does business under the name of Shoe House affirming that he received the attached email dated 1/3/2013 10:10am and that he acknowledged receipt by replying to it on 1/3/2013 2:23pm. Additionally, he located from his own files an email dated 12/24/13 from my office which contains the subscript.

Annexed as Exhibit "Y" is a letter from Eric Liang, the owner of Crown Furniture affirming, that he received the attached email dated referenced as 636 on 1/10/13 12:41pm and also acknowledge receipt by his reply to it on 1/11/13 at 3:33pm.

In all cases, the emails from and to the above businesses contained my "subscript notice" of the ISF penalty enforcement and all were sent and or received in January 2013. Further, **I would point out that the emails from Larry Trucking Corp. and from Warren Kuang d/b/a Shoe**

House that they located emails from their own files that contained the ISF warning and did not come from my files but rather came from their own files, which, it is respectfully submitted is very strong documentary proof that I in fact utilized the "subscript notice" on my emails in January 2013.

I would like to comment on two emails dated January 3, 2013 that are both times stamped 1:43 P.M. from my personal email and from my company info@abilitycb.com email to Cyntra Giboney at Pacific Coast Container, Inc. . Plaintiff has submitted a Declaration from Brian However, the COO of Pacific Coast Container Inc.("PCC") (ECF 169-6) in which he confirms receipt of the email and has produced a version of the email that PCC maintained in their database in MIME format.  Plaintiff then produced copies of two emails side-by-side with the allegation that the email that was submitted to show that we use the subscript in the regular course of business was allegedly "doctored"(See ECF 164-3). (Of note is that the email had nothing to do with sending a copy of the Terms and Conditions but was only one of seven emails produced by Defendant to show that we used the ISF warning subscript as early as January 2013).

However, the two emails sent were in response to two emails from Cyntra Giboney of PCC which appear on the lower part of the page (ECF 164-3). Both of Cyntra's emails are time stamped 11:49 A.M. on January 3, 2013. One of the emails is sent to me and I responded at 1:43 P.M. and one was sent to Lily from my office at my office email address: info@abilitycb.com also sent at 11:49 A.M. and Lily responded to Cyntra also at !:43 P.M.  (See Exhibit "CC")

Although we have not been able to clarify how the above could occur, the question that I have is if I had six (6) other sample emails, why would I need to "doctor" one when the emails had nothing whatsoever with the issue of sending a copy of the Terms and Conditions. Further,

why would I change the recipient of the emails from PCC, to Lily from my office instead of to me, and why would I change the email address that PCC was sending the email to and why would I change the email address to whom the email was sent from PCC.

I am sure if we spend the time to figure out these various "collateral issues" (that have no real substantive connection to the issues in this case), a suitable answer will be arrived at.

However, based upon all of the foregoing evidence, I submit that it is clear that the email that Plaintiff claims was fabricated based upon the postscript notice of the ISF enforcement was not a fabrication and no fraud was attempted to be perpetrated upon this Court.

## The Substantive Issues in this case:

Plaintiff has raised a number of collateral issues in this case which I respectfully submit are red herrings:

1. Plaintiff alleged that I attempted to commit a fraud on the Court when the version of the terms and conditions of the power of attorney that my attorney mistakenly produced was the updated version rather than the version I had been using for over 10 years. However, there is no dispute that when the error was realized, the terms and conditions that were given to Eagle when the Power of Attorney was executed was produced. Notwithstanding the foregoing, Plaintiff continues to press the issue however, Plaintiff has never addressed the fact that the issue is a "red herring" in that both versions of the terms and conditions have a provision giving me the right to exert a "general lien" on the cargo that I am holding which would allow me to recover the full amount owed to me by Eagle (who is really my client, not Plaintiff, Ameriway) …This is the real issue to be resolved at trial;

2. In an attempt to bolster the argument that the terms and conditions were never provided to Plaintiff and therefore I should not be entitled to exert a "general lien", Plaintiff has woven a series of circumstantial facts to substantiate an argument that I must have fabricated a January 2013 email which had a subscript giving notice of the July 9, 2013 date in which Customs was going to start enforcing the ISF penalty for non-compliance.

I believe this affidavit and the submitted exhibits "debunk" that argument;

The "Real" issues in this case are simple and straightforward:

1.  Does Ameriway:

    a.  who was not the party that signed the power of attorney and retained me to perform customs agents ;

    b.  who was not the party that was identified as the Importer of Record on any of the almost 500 containers cleared by me as the customs broker pursuant to the power of attorney;

    c.  who was not the owner, contract vendee, or named on any of the cargo or cartons in the 5 containers that I have liened;

    have standing to bring this action?.

2.  As the party that paid Eagle's bills to me up to the time my bills were no longer being paid, is Ameriway responsible for the outstanding balance of over $500,000 owed to me for the disbursements and customs duties I advanced and the fees I earned;

3.  Do I have the right to sell the cargo and use the proceeds to pay the outstanding amount owed to me.

4.  What is the correct amount that is owed to me?

**WHEREFORE,** it is respectfully requested that this Court deny Plaintiff's motion for default judgment, dismissal of Defendants' counterclaims and attorney's fees for my alleged "fraud" on the Court and for such other and further relief as to this Court may seem just and proper.

May Yen Chen

Sworn to me this

# CALIFORNIA ALL- PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California _____ }

County of ___ALAMEDA_____ }

On __07/14/2023__ before me, __KHAN ZAMAN NOTARY PUBLIC__
_(Here insert name and title of the officer)_

personally appeared _____MAY YAN CHEN_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature          (Notary Public Seal)

KHAN ZAMAN
Notary Public - California
Alameda County
Commission # 2333743
My Comm. Expires Sep 18, 2024

◆━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━◆

## ADDITIONAL OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

## CAPACITY CLAIMED BY THE SIGNER

- ☐ Individual (s)
- ☐ Corporate Officer

_____
(Title)

- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other_____

## INSTRUCTIONS FOR COMPLETING THIS FORM

_This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law._

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
    - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
    - ❖ Indicate title or type of attached document, number of pages and date.
    - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.