UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
:
AMERIWAY CORPORATION, :
:
                          Plaintiff, :
:               19-CV-9407 (VSB)
           - against - :
:               **OPINION & ORDER**
:
MAY YAN CHEN and ABILITY CUSTOMS, :
INC., :
:
                         Defendants. :
:
-----------------------------------------------------------X
:
MAY YAN CHEN, d/b/a/ ABILITY :
CUSTOMS BROKERS, :
:
                       Third-Party :
                       Plaintiff, :
:
           - against - :
:
:
EAGLE TRADING USA, LLC, XIYAN :
ZHANG, and SHIPING JIA, :
:
                     Third-Party :
                     Defendants. :
:
-----------------------------------------------------------X

Appearances:

Peter Scott Wolfgram
Xiyan Zhang
Stratum Law LLC
Muskego, WI and Philadelphia, PA
*Counsel for Plaintiff*

William Shayne
Shayne Law Group, P.C.
New York, NY

Quynh Chen
Q. Chen Law
Newark, CA

Richard Eric Schrier
Schrier, Fiscella & Sussman, LLC
Garden City, NY

Grace Pyun
GBP Law PLLC
Brooklyn, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Before me are Defendants' motion to disqualify Plaintiff's counsel Xiyan Zhang ("Zhang") and Pete Wolfgram ("Wolfgram"), (Doc. 144); Plaintiff's motion to disqualify Defendants' counsel Richard Schrier ("Schrier") and William Shayne ("Shayne"), and for default judgment, dismissal, and attorneys' fees for fraud on the court, (Doc. 145); Plaintiff's second motion for default judgment, dismissal, and attorneys' fees for fraud on the court, (Doc. 168);[1] and Defendants' motion for, among other things, a disbursement of funds, (Doc. 183).

For the reasons that follow, Defendants' motion to disqualify Plaintiff's counsel is DENIED; Plaintiff's motion to disqualify Defendants' counsel is DENIED; Plaintiff's motion for default judgment, dismissal, and attorneys' fees for fraud on the court is DENIED; Plaintiff's second motion for default judgment, dismissal, and attorneys' fees for fraud on the court is DENIED; and Defendants' motion for, among other things, a disbursement of funds, is DENIED.

## I.    Factual and Procedural History

On June 24, 2022, Defendants filed their motion and supporting memorandum of law to

---

[1] This is styled as "Plaintiff's Second Sanction Motion for Default Judgment, Dismissal, and Attorneys' Fees for Fraud on the Court." (*See* Doc. 168 at 1.)

disqualify Plaintiff's counsel, (Doc. 144). Defendants allege:

> both [Zhang and Wolfgram] are key witnesses in their "non-attorney" capacity in connection with the issues in this case. More particularly, Zhang is the major shareholder and president/secretary of Plaintiff[] Ameriway and was intimately involved in every aspect of the underlying facts upon which this lawsuit is based. Wolfgram, while not a shareholder of Ameriway, upon information and belief is an officer of Ameriway and was also intimately involved in key aspect[s] of the underlying facts upon which this lawsuit is based.

(Def. Mem. 1. (record citation omitted).)[2] Defendants essentially make four arguments in support of disqualification: (1) it is prejudicial to Defendants if Zhang and Wolfgram are permitted to be both advocate and witness, (*id*. at 10–13); (2) given that Eagle was the importer of record of all containers that Defendant Chen cleared through customs, and Ameriway, as the logistics company, paid Defendant's invoices, the testimony of both Zhang and Wolfgram will be required to determine which company has standing to bring this action against Defendant, (*id.* at 14–15); (3) both Zhang and Wolfgram's testimony is essential to the issue of whether Chen had the right to lien the containers and cargo pursuant to the terms and conditions of the power of attorney, (*id.* at 16–18); and (4) Zhang and Wolfgram's testimony regarding the dissolution of both Ameriway and Eagle will be necessary, (*id.* at 18–19).

On June 24, 2022, Plaintiff also filed its motion and supporting memorandum of law to disqualify Defendants' counsel and for default judgment, dismissal, and attorneys' fees for fraud on the court, (Docs. 145, 146). Plaintiff alleges:

> 1) Shayne manufactured a [three-page Terms and Conditions of Service ("TCS")] document that formed the sole basis of [Defendant] Chen's general lien claim over the five cargo containers at issue;
>
> 2) Chen's counsel relied on the fabricated lien document in their signed letters to the Court on six occasions between November 2021 and March 2022;

---

[2] Def. Mem. refers to the Memorandum of Law in Support of Defendants' Motion to Disqualify Plaintiff's Counsel Xiyan Zhang and Pete Wolfgram. (Doc. 144.)

3

> 3) Chen relied on the lien document in her sworn affidavit, even though she knew her lead counsel drafted it after Plaintiff filed this case;
>
> 4) Shayne attempted to conceal his authorship of the lien document to the Court and Plaintiff over the course of six months (November 2021-May 2022).

(Pl. Mem. at 1.)[3]

On July 8, 2022, Plaintiff filed its opposition to Defendants' motion to disqualify Plaintiff's counsel. (Doc. 152.) On the one hand, Plaintiff argues that Chen inexcusably waited nearly three years to file the motion, even though "[t]he factual basis of Chen's motion has existed since the outset of this case." (Doc. 152 at 4–5.) On the other hand, Plaintiff also argues that Chen's motion is "premature," stating that "Zhang will not be serving as trial counsel in this matter[, and that] Plaintiff will retain another lawyer, who will serve as Wolfgram's co-counsel if the case reaches the trial stage." (*Id*. at 15.) Plaintiff further argues that Wolfgram is not a "necessary" fact witness under Rule 3.7(a). (*Id*. at 6–9.)

On July 8, 2022, Defendants also filed their opposition to Plaintiff's motion to disqualify Defendants' counsel. (Docs. 147–148, 151.[4]) They argue that the "[three]-page terms and conditions do not apply to the facts in this case," (Doc. 151 at 7), and assert that a one-page Terms and Conditions of Service that contains a provision giving Chen the right to assert a General Lien against the five containers of cargo does apply, (*id*.). Defendants further state that "there was merely a misunderstanding between Shayne's office and Schrier's office [concerning the correct version of the Terms and Conditions of Service that was filed in this case], and that,

---

[3] "Pl. Mem." refers to the Memorandum of Law in Support of Plaintiff's Motion to Disqualify Defendants' Counsel Richard Schrier and William Shayne, and for Default Judgment, Dismissal, and Attorneys' Fees for Fraud on the Court. (Doc. 146.)

[4] Defendants appear to have filed two memoranda of law in Opposition to Plaintiff's Motion to Disqualify Defendants' Counsel William Shayne and Richard Schrier. (*See* Doc. 147 and 151.) However, the memoranda appear identical, while the latter document contains multiple exhibits. For the purposes of this order, I will consider the more recently filed document, *i.e.*, Doc. 151.

when realized, the mistake was quickly corrected, and both the Court and Plaintiff's counsel were notified of the error." (*Id*. at 7.) Defendants also state that the error was "substantively irrelevant in that both 'versions' of the Terms and Conditions of Service provided General Lien rights to Chen in the event of non-payment by Eagle and Zhang as the importers of record." (*Id*. at 7–8.)

On July 15, 2022, Defendants filed their reply, arguing, among other things, that Plaintiff's opposition largely included conclusory statements that were unsubstantiated by documentary proof or a supporting affidavit. (*See generally* Doc. 153.) Defendants further dispute that their motion to disqualify was neither too late nor too premature, and argue that neither the doctrine of laches nor waiver apply in this case. (*Id*. at 12–15.)

Plaintiff also filed its reply on July 15, 2022, in which it contests Defendants' claim that there was simply a miscommunication between Shayne and Schrier regarding the correct version of the Terms and Conditions of Service that applied in this case. (*See generally* Doc. 154.) Specifically, Plaintiff argues that Shayne purposely filed the three-page Terms and Conditions of Service six times in this action in support of Chen's lien defense. (*Id*. at 1.) In support of its claim, Plaintiff points to the metadata of several filings Defendants made in this action and in *Chen v. Eagle Trading USA, LLC et al.*, No. 22-cv-658-VSB (S.D.N.Y.), arguing that the metadata "shows that Shayne personally authored five out of the six docket entries that affirmatively relied on the TCS . . . Shayne signed most of these letters, motions, and pleadings as Chen's lead counsel, representing to the Court that he reviewed the contents." (*Id*. at 1–2; *see also* Doc. 154-1, Ex. S.) Plaintiff further argues that the metadata shows that Shayne—not Schrier—drafted most of the motions, letters, and pleadings that relied on the three-page Terms and Conditions of Service, and therefore "Schrier's claim that *his* office mistakenly 'represented'

5

the [three-page Terms and Conditions of Service] was the original version unbeknownst to Shayne cannot be true." (Doc. 154 at 3–4) (emphasis in original). Plaintiff also casts doubt on Defendants' counsel's claim that he "realized 'something was amiss' with the TCS only in late April 2022 [given that] Chen's counsel knew Plaintiff was aggressively investigating the [authenticity of the Terms and Conditions of Service as early as February 4, 2022]." (*Id*. at 4.)

On August 16, 2022, Defendants filed a status report to Magistrate Judge Valerie Figueredo concerning certain outstanding discovery issues. (Doc. 157). With that letter, Defendants filed three email exhibits that (1) Chen purportedly sent to her clients, (2) contained the one-page Terms and Conditions of Service, and (3) included a footer stating "U.S. Customs & Border Protection (CBP) will commence full ISF enforcement on July 9, 2013." (*See* Doc. 157-1; Doc. 157-2; Doc. 157-3 (emphasis omitted).)

On September 9, 2022, Plaintiff filed a letter motion to stay document discovery "based on new evidence" and until its pending motion to disqualify counsel and for default judgment and dismissal is resolved. (Doc. 158.[5]) In its letter, Plaintiff accused Defendant Chen of "recently [submitting] to the Court as substantive evidence three fabricated emails in support of her purported lien over the five cargo containers[.]" (*Id*. at 1.) Plaintiff claimed that this was "now the second crucial piece of fabricated evidence Chen has knowingly presented to the Court," and through its letter sought to incorporate the findings of its investigation into its pending motion. (*Id*.) Specifically, Plaintiff argues that Chen's January 8, 2013 email contained information that was not publicly available until June 2013. (*Id*. at 2.) According to Plaintiff, "CBP did not announce the July 9, 2013 start-date of the 'full ISF enforcement' policy until June 7, 2013. This was a full six months after Chen referenced the specific start-date in her January

---

[5] I had previously ordered that depositions be stayed until the motions were resolved. (*See* Doc. 135.)

6

2013 email." (*Id*. at 2–3.)  Plaintiff also states that its "forensics experts, Mr. Kristian Larsen and Mr. Andrew Nicholas, have both found conclusive evidence of digital manipulation." (*Id*. at 4.) Mr. Larsen is a forensic analyst from Data Narro, a digital evidence and e-discovery firm, provided a report that examined two of Defendants' emails.  (Doc. 157-1; Doc. 157-3; 158-3, Ex. C.)  Meanwhile, Mr. Nicholas is a graphic designer who provided a declaration in which he details his review of Defendants' emails.  (*See* Doc. 158-4, Ex. D ¶ 10.)

On September 12, 2022, I granted the motion to stay document discovery, but did not issue a ruling concerning Plaintiff's pending motion for default judgment and dismissal.  (Doc. 162.)

On January 4, 2023, Defendants filed a letter in opposition to Plaintiff's September 9, 2022 letter.  (Doc. 163.)  In the letter, Defendants present two sets of email printouts that Defendant Chen sent to various customers as well as the findings of their expert Linda L. Mitchell, a Certified Forensic Document Examiner, "to refute [Plaintiff's graphic designer's] opinion as to the typographical anomalies [in the emails]." (Doc. 163 at 3; *see also* Doc. 163-1, Ex. A.)

On January 27, 2023, Plaintiff requested that I hold a pre-motion conference on its proposed second motion for sanctions against Defendants and their counsel "for their recent submission of two sets of fabricated email 'printouts' to the Court on August 16, 2022 and January 4, 2023." (Doc. 164 at 1.)

On May 24, 2023, I held a conference with the parties regarding the proposed motion, (Doc. 167), and set a briefing schedule which, among other things, directed Defendants to include in their response "an affidavit from Defendant Chen that she was aware of the July 9, 2013 enforcement date in December 2012, along with any public information referencing the

7

July 9, 2013 enforcement date that pre-dates the June 7, 2013 announcement." (*Id*.) With regard to Defendants' motion to disqualify counsel, Plaintiff's counsel confirmed during the conference that Zhang will not be trial counsel, and that he had agreed to be deposed. (*See* Doc. 170 at 21:1–20.)

On June 11, 2023, two days after its deadline, Plaintiff filed its second motion and supporting memorandum of law for default judgment, dismissal, and attorneys' fees for fraud on the court. (Docs. 168, 169.[6]) Plaintiff alleges that the two sets of email printouts that Chen and her counsel submitted to the Court in August 2022 and January 2023 were fabricated. (Doc. 169 at 1.) In support of its allegation, Plaintiff states that "[E]vidence from the official U.S. Customs Border and Protection ('CBP') agency website and independent, third-party sources" established that the email printouts were not authentic. (*Id*.) Among other things, Plaintiff contacted one of Chen's customers, PCC Logistics ("PCCL"), which "agreed to assist Plaintiff's discovery efforts, and produced the specific January 3 email string between Defendant and [a PCCL employee] as represented in Chen's printout, down to the precise minutes." (*Id*. at 13.) Plaintiff states, "PCCL's files confirm that Defendants' original email to [the PCCL employee] never contained the disputed footer." (*Id*.)

On July 14, 2023, Defendants filed their opposition to Plaintiff's second motion for sanctions, including Defendant Chen's affidavit that she was aware of the July 9, 2013 enforcement date in December 2012. (Doc. 173.) Specifically, Chen denies "ever fabricating or altering any document that has been presented to the court or to my attorneys," (Doc. 173 at 1), and describes how when she first started working in the customs broker field and started her

---

[6] This is styled as "Plaintiff's Second Sanction Motion for Default Judgment, Dismissal, and Attorneys' Fees for Fraud on the Court." (*See* Doc. 168 at 1.)

business, she "routinely attended various industry programs, seminars, and trade meetings," (*id.* at 2). According to Chen, "At those meetings, I had the opportunity to talk to Customs officials, and . . . other brokers and freight forwarders to understand [among other things] the types of notices that they were providing to their clients." (Doc. 173 at 2.) Chen further states:

> In late 2012, I attended a few 'trade' holiday season dinners in which guest speakers included Customs officers, ocean carriers' personnel and other import/trade related speakers who addressed the issue of the [Import Security Filing] penalty enforcement. It was at one of those meetings that we were told that the 'unofficial flexible enforcement' period was going to end and it was my understanding that the expectation was that the 'target date' for enforcement by Customs was going to start as of July 9, 2013, which enforcement included a $5,000 fine for each violation for failing to timely file the required documents and further that the formal announcement would be made soon after the new year.

(Doc. 173 at 4.) Chen's affidavit does not include any public information referencing the July 9, 2013 enforcement date that pre dates the June 7, 2013 announcement.

On July 21, 2023, Plaintiff filed its reply. (Doc. 175). In that reply, Plaintiff alleges that the text in Defendants' footer "is virtually identical to a Facebook Post published on June 12, 2013 by a non-party named Panda Logistics Inc. ('Panda') based in Taiwan." (Doc. 175 at 1.) Given the similarity of the text, Plaintiff concludes that it is "immediately obvious that Chen copied Panda's June 12, 2013 post word-for-word, which was not possible seven months earlier in December 2012." (Doc. 175 at 1.) Therefore, Plaintiff contends, "The Panda Facebook Post conclusively establishes that the footer did not exist before June 2013." (Doc. 175 at 7–8.)

On December 7, 2023, Defendants filed a letter motion requesting that I issue a temporary restraining order "prohibiting U.S. Eastern Systems, Inc. ('USES') from destroying and/or abandoning certain cargo that is being held in its warehouse," and that I permit Defendant to submit a motion "seeking an order to either permit the liquidation of the cargo and depositing the net proceeds into court pending the resolution of this action or in the alternative an order for a

9

preliminary injunction preventing USES from destroying or abandoning the cargo pending the resolution of this action." (Doc. 177 at 1.) On December 11, 2023, I held a telephonic conference with the parties and ordered Defendants' counsel to submit an affidavit and memorandum of law in support of their motion for a temporary restraining order. (Doc. 182.) Instead, Defendants' counsel subsequently filed a so-called motion for disbursement of funds, in which it apparently withdrew its request for a temporary restraining order and preliminary injunction. (Doc. 183.) Specifically, Defendants' counsel states, "It is now our opinion that USES must be a party to a litigation in order to obtain a temporary restraining order and preliminary injunction. We are therefore taking steps necessary to obtain a temporary restraining order and preliminary injunction in a different jurisdiction[.]" (Doc. 183-2 at 14.) Defendants also requested:

1. An order permitting either the liquidation of the cargo being held in USES's warehouse located at 380 Bergen Avenue, Kearny, New Jersey 07031 and directing that the funds be utilized to pay USES for the present unpaid storage and related expenses, which, upon information and belief is presently $30,746 and ongoing at a monthly rate of approximately $7,200;
2. [A]n order depositing the net proceeds of sales of the cargo into court pending the resolution of this action;
3. [A]n order vacating the order dated June 6, 2022 staying depositions in this case (*see* ECF 135);
4. [A]n order directing the deposition of Xiyan Zhang on or before February 28, 2024;
5. [A]n order directing the deposition of Pete Wolfgram . . . on or before February 28, 2024; [and]
6. [A]n order directing that a "framed issue" hearing be held to determine whether or not Plaintiff has standing to assert the claims in this action before any further discovery shall proceed[.]

(Doc. 183 at 1–2.)

On January 3, 2024, Plaintiff filed its opposition to Defendants' motion. (Doc. 187.)

### II. Motions to Disqualify

#### A. *Legal Standard*

Federal courts possess the authority to disqualify counsel, which "derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc., v. Inc. Village of Valley Stream,* 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir. 1979)). In ruling on a motion to disqualify counsel, the Court must "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." *Merck Eprova AG v. ProThera, Inc.,* 670 F. Supp. 2d 201, 207 (S.D.N.Y. 2009) (quoting *Hempstead,* 409 F.3d at 132). The party seeking disqualification "bears a heavy burden of demonstrating that disqualification is necessary," and requests for disqualification should be reviewed with "fairly strict scrutiny." *Decker v. Nagel Rice LLC,* 716 F. Supp. 2d 228, 231–32 (S.D.N.Y. 2010) (internal quotation marks omitted); *see also Amusement Indus. v. Stern,* 657 F.Supp.2d 458, 460 (S.D.N.Y. 2009) (same). "A federal court's decision of whether to disqualify counsel must ultimately be guided by the goal of a trial process that lacks any hint of a taint." *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.,* 440 F. Supp. 2d 303, 308–09 (S.D.N.Y. 2006) (internal quotation marks omitted). "Disqualification is only warranted in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'" *Decker,* 716 F. Supp. 2d at 231 (quoting *Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746, 748 (2d Cir. 1981)). However, "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir. 1975); *accord CQS ABS Master Fund Ltd. v. MBIA Inc.,* 2013 WL 3270322, at *8 (S.D.N.Y. June 24, 2013); *see also United States v. Oberoi,* 331 F.3d 44, 51 (2d Cir. 2003) (quoting *Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562, 571 (2d Cir. 1973)) ("[T]he public's interest in the outcome [of litigation] is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case.").

Attorneys appearing before a federal court in New York must abide by the New York State Rules of Professional Conduct ("New York Rules"). Although federal courts look to state disciplinary rules when considering motions for disqualification, "such rules need not be rigidly applied, as they merely provide general guidance." *Mori v. Saito*, 785 F. Supp. 2d 427, 432 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). Even a violation of disciplinary rules "may not warrant disqualification." *GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010). Rather, "[t]he disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72–73 (2d Cir. 1990). The New York Rules provide, in part, that

> (a) A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
>
>> (1) the testimony relates solely to an uncontested issue;
>> (2) the testimony relates solely to the nature and value of legal services rendered in the matter;
>> (3) disqualification of the lawyer would work substantial hardship on the client;
>> (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
>> (5) the testimony is authorized by the tribunal.
>
> (b) A lawyer may not act as advocate before a tribunal in a matter if:
>
>> (1) another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client; or
>> (2) the lawyer is precluded from doing so by Rule 1.7 or Rule 1.9.

*See* N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0.[7]

---

[7] Previously, New York adhered to the Model Code of Professional Responsibility, which similarly provided that "A lawyer shall not act . . . as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client." See N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.21 (repealed 2009).

"'Because the courts must guard against tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions' based on the witness-advocate rule." *Dolenec v. Pressler & Pressler L.L.P.*, No. 12-cv-5500, 2014 WL 6632942, at *3 (S.D.N.Y. Nov. 24, 2014) (quoting *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989)). "Disqualification under subsection (a) applies only when the attorney-witness actually serves as trial counsel." *Corrado v. N.Y. State Unified Court Sys.*, No. CV 2012-1748, 2014 WL 119407, at *2 (E.D.N.Y. Jan. 10, 2014) (citing *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 179 (2d Cir. 2009); *Finkel v. Frattarelli Bros., Inc.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y.2010)). Further, "[d]isqualification may be required only when it is likely that the testimony to be given by the witness is necessary." *See S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437, 445–46 (1987). In addition, where only the moving party intends to call the adversary's attorney as a witness, "the movant must demonstrate both that the lawyer's testimony is 'necessary' and that there exists a 'substantial likelihood that the testimony would be prejudicial to the witness-advocate's client.'" *Acker v. Wilger*, No. 12-cv-3620, 2013 WL 1285435, at *1 (S.D.N.Y. Mar. 29, 2013) (quoting *Finkel*, 740 F. Supp. 2d at 373).

### B. *Application — Defendants' Motion to Disqualify Plaintiff's Counsel*

I find Defendants' arguments in support of its motion to disqualify Plaintiff's counsel unavailing. Although Defendants claim that Zhang and Wolfgram are "vital witnesses to all the claims and defenses raised in this case," (Doc. 144 at 9), Plaintiff affirmed that "Zhang will not be serving as trial counsel in this matter," (Doc. 152 at 15). Therefore, disqualification is not called for under the New York Rules. *See Corrado*, 2014 WL 119407, at *2. In addition, Zhang agreed to be deposed, (*see* Doc. 170, Transcript, 21:1–20), thereby providing Defendants with the testimony they seek.

With regard to Wolfgram, Defendants have not met their "heavy burden" to show that Wolfgram's testimony is necessary to their case. *Decker*, 716 F. Supp. 2d at 232. Specifically, and in light of Zhang's available testimony, Defendants fail to demonstrate how Wolfgram, as legal counsel for Ameriway and Eagle, has personal and noncumulative knowledge related to the claims at issue in this case. *See Finkel*, 740 F. Supp. 2d at 375 (collecting cases and explaining that "disqualification is not appropriate" when "counsel's testimony would be merely cumulative of testimony provided by others").

Even if Wolfgram's testimony was necessary, Defendants have not shown that it would be "prejudicial" and therefore warrant disqualification. *Id.* at 373; *see* N.Y. Rule 3.7(b)(1). "[T]estimony is deemed prejudicial where it is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'" *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, No. 06-cv-1202, 2014 WL 6491281, at *4 (S.D.N.Y. Nov. 20, 2014) (quoting *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009)). The party seeking disqualification "bears the burden of demonstrating how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring to the witness-advocate's client is substantial." *Murray*, 583 F.3d at 178 (alteration adopted and citation omitted). "Speculation as to the testimony that counsel would give is not sufficient to support a motion to disqualify." *Finkel*, 740 F. Supp. 2d at 376. Here, Defendants do not specify how Wolfgram's testimony would be prejudicial. Defendants instead rest their argument on the assertion that Wolfgram would be an "essential witness[] in this case," (Doc. 144 at 13), but I have already explained that he would not.

Accordingly, Defendants' motion to disqualify Plaintiff's counsel is DENIED.

14

C. *Application — Plaintiff's Motions to Disqualify Plaintiff's Counsel*

Similarly, I find Plaintiff's argument that Defendants' counsel repeatedly committed fraud upon the court unpersuasive. Plaintiff appears to rely principally on the American Bar Association's 1969 Model Code of Professional Responsibility (the "Model Code"), as well as caselaw from various jurisdictions outside of New York, (*See* Doc. 146 at 6–7), to argue that Shayne and Schrier committed several acts of misconduct in violation of Canons 1 and 9 of the Model Code. However the American Bar Association's Model Code is a predecessor to the current Model Rules of Professional Conduct. *See* Am. Bar Ass'n, *About the Model Rules*, https://perma.cc/6H6E-CNYV. The Model Rules would therefore be more appropriate to cite under the circumstances presented here.

In any event, as noted *supra*, attorneys appearing before this Court must abide by the New York Rules, and although federal courts look to state disciplinary rules when considering motions for disqualification, "such rules need not be rigidly applied, as they merely provide general guidance." *Mori*, 785 F. Supp. 2d at 432 (citations omitted). As explained, even a violation of disciplinary rules "may not warrant disqualification." *BabyCenter*, 618 F.3d at 209 (citation omitted). Rather, disqualification of an attorney to avoid violation of ethical principles "is a matter committed to [my] sound discretion." *Cresswell*, 922 F.2d at 72–73 (citations omitted).

Under New York Rule 8.4(c), cited by Plaintiff, "[a] lawyer or law firm shall not . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" N.Y. Rule 8.4(c). Although I find Defendants' explanations concerning the filings of the three-page Terms and Conditions of Service dubious at best, given Shayne's apparent involvement in the drafting and signing of most of the filings, (*see* Doc. 154-1, Ex. S), I cannot conclude that Defendants'

15

actions warrant disqualification. I reach the same conclusion with respect to the three email exhibits Defendants filed on August 16, 2022 and the two sets of email printouts that Defendants filed on January 4, 2023.

I am mindful that my role in this dispute is not as an ad hoc grievance committee. *See, United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) ("[D]isqualification is called for only where 'an attorney's conduct tends to taint the underlying trial,' because federal and state disciplinary mechanisms suffice for other ethical violations."); *see also W. T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976) ("The business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it."). Although Defendants' actions evince a profound carelessness in producing and checking their work product, given they eventually corrected their errors, there is no indication that Defendants violated the New York Rules or otherwise "taint[ed] the underlying trial," including the pre-trial process. *Prevezon*, 839 F.3d at 241.

Accordingly, Plaintiff's motions to disqualify Defendants' counsel are DENIED.

### III. Motions for Default Judgment, Dismissal, and Attorneys' Fees for Fraud on the Court

Because I find no basis on which to conclude that Defendant Chen or counsel for Defendants intentionally committed any wrongdoing through their representations to me, Plaintiff's motions for default judgment, dismissal, and attorneys' fees for fraud on the court are DENIED.

### IV. Defendants' Motion for, Among Other Things, a Disbursement of Funds

Defendants' so-called motion for disbursement of funds, in which they apparently withdrew their prior request for a temporary restraining order and preliminary injunction while

making additional requests, (*see* Doc. 183), is also DENIED.

Despite acknowledging that "USES must be a party to a litigation in order to obtain a temporary restraining order and preliminary injunction[, and that Defendants were] therefore taking steps necessary to obtain a temporary restraining order and preliminary injunction in a different jurisdiction," (Doc. 183-2 at 14), Defendants inexplicably asked me to issue various orders related to the cargo, discovery, and to hold a hearing on the topic of standing. (*See* Doc. 183 at 1.) Specifically, Defendants requested:

1. An order permitting either the liquidation of the cargo being held in USES's warehouse located at 380 Bergen Avenue, Kearny, New Jersey 07031 and directing that the funds be utilized to pay USES for the present unpaid storage and related expenses, which, upon information and belief is presently $30,746 and ongoing at a monthly rate of approximately $7,200
2. [A]n order depositing the net proceeds of sales of the cargo into court pending the resolution of this action
3. [A]n order vacating the order dated June 6, 2022 staying depositions in this case (see ECF 135);
4. [A]n order directing the deposition of Xiyan Zhang on or before February 28, 2024
5. [A]n order directing the deposition of Pete Wolfgram . . . on or before February 28, 2024
6. [A]n order directing that a "framed issue" hearing be held to determine whether or not Plaintiff has standing to assert the claims in this action before any further discovery shall proceed

(Doc. 183 at 1.) However, Defendants failed to provide a memorandum of law or cite any caselaw in support of their requests. Instead, Defendants provided two affidavits and a handful of exhibits that detail the payments Defendant Chen apparently made in relation to the inspection of the cargo. (*See* Doc. 183-2 at 6.) Regarding requests 1 and 2, Defendants do not indicate how the order they seek—from a judge sitting in the Southern District of New York—may or may not conflict with another order they apparently seek from a judge in a different jurisdiction. Regarding requests 3, 4, and 5, Defendants are aware of my order staying documentary and testimonial discovery pending the resolution of Plaintiff's (first) motion for default judgment and

17

dismissal, and provided no explanation for the need to depose attorneys Zhang and Wolfgram by February 28, 2024.  Finally, regarding request 6, Defendants request that a "framed issue" hearing be held to determine whether Plaintiff has standing to assert the claims in this action before any further discovery shall proceed, despite Defendants having previously withdrawn their motion to dismiss for lack of standing over four years ago, and without explaining a basis for renewing that motion now.  (*See* Doc. 31.)

      Defendants' so-called motion for disbursement of funds, as well as Defendants' accompanying requests, are DENIED.

### V. Conclusion

For the foregoing reasons: (1) Defendants' motion to disqualify Plaintiff's counsel is DENIED; (2) Plaintiff's motion to disqualify Defendants' counsel is DENIED; (3) Plaintiff's motion for default judgment, dismissal, and attorneys' fees for fraud on the court is DENIED; (4) Plaintiff's second motion for default judgment, dismissal, and attorneys' fees for fraud on the court is DENIED; and (5) Defendants' motion for, among other things, a disbursement of funds, and for other relief is DENIED.

Plaintiff's letter motion, (Doc. 197), to expedite consideration of the motions decided in this Opinion & Order is DENIED AS MOOT.

The Clerk of Court is respectfully directed to terminate the pending motions at Docs. 145, 163, 168, 183, and 197.

It is **ORDERED** that by October 25, 2024, the parties shall submit a joint status letter regarding the next steps in this litigation.

SO ORDERED.

Dated:  October 1, 2024
       New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge