STRATUMLAW LLC
18 Campus Blvd. Ste. 100
Newtown Square, PA 19073

MEMO ENDORSED

HON. VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE

**Dated: September 17, 2026**

Defendants are directed to provide a response to this letter by **September 23, 2026**.

Honorable Valerie Figueredo
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: Ameriway Corporation v. May Yan Chen and Ability Customs, Inc., No. 19-CV-09407 (VSB) (VF) - **Plaintiff's Letter-Motion to Compel Documents and Invoice Payment**

Dear Judge Figueredo:

Pursuant to Rules 26, 34, and 37, Local Civil Rule 37.2, and Your Honor's Individual Practices, Plaintiff Ameriway Corporation requests a discovery conference and an Order: (1) compelling Defendants to produce the native files and other documents concerning the disputed Terms and Conditions of Service; (2) directing Defendants to pay Plaintiff's $2,760 invoice for reconstructing and reproducing the discovery record pursuant to the Court's order during the June 18, 2026 Conference; and (3) awarding Plaintiff its reasonable expenses and fees incurred in making this motion under Rule 37(a)(5)(A).

**Meet-and-Confer Certification.** On September 4, 2026, at 12:00 p.m. PT, Counsel Pete Wolfgram and Quynh Chen held a 43-minute telephonic conference concerning issues in both parties' discovery responses. On September 14, 2026, at 3:30 p.m. PT, Counsel Xiyan Zhang and Ms. Chen held a further 15-minute telephonic conference concerning the issues raised here. The parties did not resolve either issue. Plaintiff's written efforts to resolve the deficiencies are also attached as **Exhibit E.**

**1. Defendants should be compelled to produce the documents necessary to test their Terms-and-Conditions defense.**

This action stems from the Defendants' unlawful detention of five shipping containers owned by the Plaintiff. While the Defendants claim a contractual lien over the containers based on a "Terms and Conditions of Service" document allegedly provided to the Plaintiff, the Plaintiff disputes its authenticity and asserts that Chen fabricated the document to manufacture a general lien defense for this litigation.

Defendants contend that the document is not fabricated because it existed before Ameriway became their customer and was routinely sent to all customers, including Ameriway, or Ameriway's Importer of Record, Eagle Trading USA LLC. Eagle/Ameriway deny receiving it and dispute the authenticity of both the document and certain emails offered as purported evidence of transmission. Native files and contemporaneous transmission records are necessary to determine when the document was created or modified and whether it was actually sent before April 11, 2017.

Ameriway first sought this evidence in February 2022. RFP Nos. 42–45 requested native files of the Terms and Conditions and the alleged April 10, 2017 email to Ameriway. RFP Nos. 46–55

requested customer transmissions, internal communications, website records, third-party communications, and documents showing the document's creation date. **Ex. A.**

Defendants responded that they did not understand what "native files" meant; could not locate the alleged April 10, 2017 email; did not recall where or when they obtained the Terms and Conditions; possessed no documents showing its creation date; and had no documents concerning creation or updating of the relevant webpage. Defendants withheld customer-transmission emails and even internal employee communications under 19 C.F.R. § 111.24. **Ex. B** at Resp. No. 42-25.

Plaintiff's Fourth RFPs sought the same evidence with greater specificity. RFP Nos. 64–67 seek every version of the Terms and Conditions in native format with metadata, its source materials, original paper copies, and available scanner or device records. RFP Nos. 68–70 seek internal, third-party, and expert communications concerning its creation, revision, storage, dating, authenticity, and distribution. RFP Nos. 71–74 seek documents identifying customers whom Defendants contend received the document, evidence of transmission or acceptance, and pre-April 11, 2017 onboarding materials and procedures. **Ex. C.** Defendants' September 9 supplemental responses confirm that all responsive customer records are available, but Defendants are withholding the documents under Section 111.24. **Ex. D.**

Rule 34 permits a requesting party to specify the form of production and requires ESI to be produced as ordinarily maintained or in another reasonably usable form. Fed. R. Civ. P. 34(b)(1)(C), (b)(2)(E). Thus far, Defendants have only produced flattened formats (scanned PDFs) of the Terms and Conditions of Service, which is insufficient when authenticity is challenged, as is the case here. Native production is necessary because the creation, modification, author, sender, recipient, attachment, and transmission metadata bears directly on the authenticity of the Terms and Conditions of Service document, a central issue bearing on Chen's lien defense. Native files are those that originate from the actual application from which they were produced. They are produced in HTML or JSON format and contain metadata that can be used to certify the authenticity of the document. Plaintiff thus sought native files for a self-evident reason: authentication of the Terms and Conditions of Service. *See Edwards v. Junior Am. Found.*, 2021 U.S. Dist. LEXIS 78887 (2021), excluding all evidence of messages where associated native files and metadata were deleted or not preserved. "Here, the screenshots will not suffice as an "original" because the screenshots are not an "output" that "accurately" reflect the information. Only native files can ensure authenticity."

Section 111.24 does not prohibit this discovery. It expressly permits disclosure "on subpoena or court order by a court of competent jurisdiction." 19 C.F.R. § 111.24. Any legitimate customer confidentiality concern can be addressed through limited redactions and an appropriate protective order. Defendants cannot rely on alleged distribution of the Terms and Conditions of Service document to other customers while withholding every contemporaneous record capable of testing that assertion.

During the September 4, 2026 meet-and-confer, Defendants' counsel again stated that she did not understand what a "native file" was, notwithstanding that Plaintiff's requests specifically sought the original electronic files and their associated metadata. During the September 14 follow-up

conference, after Plaintiff's counsel again explained the nature and relevance of the requested native files, Ms. Chen maintained that Defendants could withhold the requested files and customer-transmission records under 19 C.F.R. § 111.24

Plaintiff requests an order requiring Defendants to: (a) produce all responsive, nonprivileged documents under RFP Nos. 64–74, including all existing native files and reasonably available metadata for every version of the Terms and Conditions and every email allegedly transmitting it to Ameriway, Eagle or other customer before April 11, 2017; (b) identify the custodians, accounts, devices, and locations searched; and (c) certify that the production is complete or state under oath that specified materials do not exist or cannot be located after reasonable inquiry.

**2. Defendants should be directed to pay the $2,760 reproduction invoice.**

At the June 18, 2026 conference, the Court directed that Defendants bear the reasonable cost of reproducing the prior discovery record for their new counsel. Ameriway thereafter reconstructed and reproduced more than 80,000 pages, including dozens of discovery requests and responses, Ameriway's productions, and even the entirety of Defendants' own prior productions and discovery responses.

The materials were maintained in multiple folders by Ameriway's two attorneys. Because Defendants demanded assurance that the reconstructed production was complete and accurate—including Defendants' own documents—counsel had to collect, organize, compare, sequence, and verify the materials. Ameriway billed 6.9 hours at $400 per hour representing the works of two attorneys, totaling $2,760. **Ex. F.**

On September 10, Ms. Chen acknowledged in writing that the Court ordered payment of a "reasonable" cost, but rejected the invoice and asserted that reasonable cost included only placing the files in a shared drive. **Ex. G.** However, the billed time was necessary to reconstruct and verify the production that Defendants requested; it was not time spent reacquainting counsel with the case. Plaintiff requests an order directing payment within five business days.

During the September 14, 2026 meet-and-confer, Plaintiff's counsel explained in detail how the 6.9 hours reflected in the invoice were incurred. Despite that explanation, Ms. Chen again refused to pay the $2,760 invoice and maintained that Defendants should pay only for the mechanical act of placing files in a shared drive.

**3. Plaintiff should receive its expenses and fees.**

Plaintiff served detailed deficiency letters and participated in two live conferences, but Defendants continued to withhold central authenticity evidence based on a regulation that expressly permits court-ordered disclosure. If this motion is granted—or Defendants produce the requested discovery after filing—Rule 37(a)(5)(A) requires an award of Plaintiff's reasonable expenses, including attorney's fees, absent substantial justification or other circumstances making an award unjust. Plaintiff requests such an award, with the amount to be established through contemporaneous billing records.

/s/Xiyan Zhang
Xiyan Zhang
Pete Wolfgram
Stratum Law LLC
18 Campus Blvd. Ste. 100
Newtown Square, PA 19073
*Counsel for Plaintiff*

cc: All counsel of record via ECF